

56

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
  Plaintiff and
  Counter-Defendant,

      Civil Action No. 77-71100

      Honorable John Fiekens

v.

STATE OF MICHIGAN,
  Defendant and Cross-
  Plaintiff and Cross-
  Defendant

**IN RE:  EMERGENCY MOTION TO
ALLOW PRODUCTION PLATING, INC.
TO DISCHARGE PRETREATED
WASTEWATER IN COMPLIANCE
WITH ALL APPLICABLE
EFFLUENT LIMITATIONS**

v.

CITY OF DETROIT, a Municipal
corporation and the DETROIT WATER
AND SEWERAGE DEPARTMENT,
  Defendant and
  Cross-Plaintiff

v.

ALL COMMUNITIES AND AGENCIES UNDER
CONTRACT WITH THE CITY OF DETROIT
FOR SEWERAGE TREATMENT SERVICES,
 **- IN RE: PRODUCTION PLATING, INC.**

v.

THE DETROIT AREA LAUNDRY POLLUTION CONTROL
GROUP, a Voluntary Non-Profit Unincorporated
Association, AND ITS MEMBERS, on its own Behalf
and on Behalf of All Those Other Commercial, Industrial
and Linen Laundries Similarly Situated Who Are Served
by the Detroit Water & Sewerage Department,

v.

THE FOOD AND ALLIED INDUSTRIES COMMITTEE
OF METROPOLITAN DETROIT, a Voluntary
Non-Profit Unincorporated Association,
AND ITS MEMBERS,

v.

THE GREATER DETROIT CHAMBER OF COMMERCE,
a Michigan non-profit corporation, and ITS
MEMBERS

**IN RE: EMERGENCY MOTION TO ALLOW
PRODUCTION PLATING, INC.,
TO DISCHARGE PRETREATED WASTEWATER IN
COMPLIANCE WITH ALL APPLICABLE EFFLUENT LIMITATIONS**

1,498

**IN RE:   EMERGENCY MOTION TO ALLOW
PRODUCTION PLATING, INC.
TO DISCHARGE PRETREATED WASTEWATER IN
COMPLIANCE WITH ALL APPLICABLE EFFLUENT LIMITATIONS**

NOW COMES Production Plating, Inc., by and through its attorneys, TANNIAN & MACUGA, P.C., PETER W. MACUGA, and states in support of its Emergency Motion to allow discharge of pretreated wastewater in compliance with all applicable effluent limitations as follows:

A.   **THIS COURT EXPRESSLY RETAINED JURISDICTION OVER THE ISSUES INVOLVED IN THIS EMERGENCY MOTION IN ITS ORDER DATED JULY 10, 1981.**

1.   Production Plating, Inc. ("PPI") is a suburban customer, user and ratepayer of the Detroit Water and Sewerage Department's ("DWSD") sewerage system.

2.   As a suburban customer, user and ratepayer of the sewerage system, PPI is subject to and bound by the original Consent Judgment and Rate Settlement agreements entered with and approved by this Court in the Captioned case on July 21, 1982.

3.   The matters involved in this Emergency Motion are related to the issues in case No. 77-71100 and have a common nexus based on the facts and related solutions.

4.   Pursuant to the Order of this Court, the Industrial Waste Control Division ("IWC") of the DWSD adopted and implemented the self-reporting program as defined in the Order of this Court and documents filed with the United States Environmental Protection Agency.

5.   On July 21, 1982, the Order of this Court became effective over suburban contract customers and municipalities or other local governmental units provided a delegation agreement

existed.

6.   Upon information and belief, a Delegation Agreement, executed pursuant to past Orders of this Court to enable jurisdiction of the DWSD to control sewerage operations, between the City of Eastpointe and the City of Detroit did not exist until August 1992.

7.   This Court expressly retained jurisdiction to determine rate challenge issues preserved by its Order "and any other issues concerning the implementation thereof" on July 10, 1981.

8.   PPI held Wastewater Discharge Permit No. 021-009 which became effective March 15, 1990 and expired on March 1, 1993, (reapplication submitted) in accordance with the provisions of applicable law including but not limited to the City of Detroit Ordinance 23-86 ("Ordinance").  (See Exhibit No. 1).

9.   On March 4, 1993, the Detroit Water and Sewerage Department ("DWSD"), purportedly acting pursuant to authority granted by the Ordinance unlawfully denied PPI's reapplication for a wastewater discharge permit, stating that PPI had not "demonstrated consistent compliance" with its former wastewater discharge permit. (See Exhibit No. 2).

10.   On March 12, 1993, PPI filed an Appeal pursuant to the Ordinance, Sections 56-62.(d) and 56-3-67.1(d), to stay DWSD's action of unlawful denial of PPI's permit reapplication. (See Exhibit No. 3).

11.   Under the Ordinance, subsection 56-3-67.1(d), the filing of an appeal to the Board of Water Commissioners, shall stay any action by the Department.

12.  In providing for appeals from adverse decisions of the DWSD, regarding permit applications, the Ordinance states at Section 56-3-67.1, as follows:

> Any permit applicant, permit holder, authorized industrial wastewater discharger, or other discharger adversely affected by any decision, act, or determination made by or on behalf of the Department . . . may file with the Department a written request for reconsideration . . . The filing of a request for reconsideration, or for appeal and appearance before the Board shall stay any action by the Department . . . .

13.  On March 17, 1993, without staying the action of the DWSD, or allowing a presentation or review of the facts of this unlawful permit denial, the Board of Water Commissioners directed PPI's March 12, 1993, appeal letter to "staff" for a report that will be considered at the next scheduled meeting of the Board of Water Commissioners on April 7, 1993.

14.  In the City's letter denying PPI's permit reapplication, the City stated that PPI shall not discharge or release any nonsanitary wastewater until a wastewater discharge permit is issued for this facility. (See Exhibit No. 2).

15.  The continued unlawful discharge prohibition preventing PPI from discharging properly pretreated wastewater will put PPI out of business.

B.  **PPI WILL SUFFER IRREPARABLE HARM IF IT IS NOT ALLOWED TO DISCHARGE PRETREATED WASTEWATER MEETING ALL EFFLUENT LIMITATIONS INTO THE SEWER.**

16.  PPI has a right to batch discharge pretreated wastewater into the sewer system providing that testing such pretreated wastewater demonstrates compliance with all the standards for such discharge by a metal finisher pursuant to PPI's unamended

4

Wastewater Discharge Permit No. 021-009, effective March 15, 1990 and 40 CFR § 413.14.  (<u>See</u> Exhibits Nos. 1 and 4).

17.  Without the ability to discharge its wastewater, PPI is unable to operate its plating process and can neither produce plated parts nor fulfill its contractual obligations to the Defense Department - including those covered by the National Security Act, 50 U.S.C. §§ 401 to 432.

18.  Because of the precise requirements of these contracts, PPI is the only company capable of executing these contracts to provide parts used in daily United States Air Force and United States Navy fighter aircraft flight operations.
(<u>See</u> Exhibit No. 5).

19.  Without the ability to discharge pretreated wastewater into the sewer, in compliance with the effluent limitation standards set for metal finishers in 40 CFR § 413.14 which were included in PPI's Wastewater Discharge Permit No. 021-009, effective March 15, 1990, PPI is unable to meet its obligations to provide aircraft parts to the United States government pursuant to the above referenced Defense Department contracts.

20.  Without the ability to discharge pretreated wastewater into the sewer, in compliance with the standards for electro-platers, PPI will be required to layoff all, or most of, its employees.

21.  Without the ability to discharge pretreated wastewater into the sewer system, PPI and the United States government will suffer irreparable harm.

5

**C.**   **THE CITY WILL SUFFER NO HARM IF PPI IS ALLOWED TO DISCHARGE PRETREATED WASTEWATER INTO THE SEWER.**

22.   In disregarding the clear and unambiguous language of its own Ordinance, the City forced PPI to substantially diminish its plating operations and prohibited PPI's right, as provided by the City's own Ordinance to discharge pretreated wastewater in accordance with all applicable limits, until such time as PPI is allowed a now unnecessarily delayed hearing on its appeal of the City's decision to deny PPI's wastewater discharge permit reapplication.

23.   The City justified its decision to deny PPI's wastewater discharge permit reapplication based upon the City's finding that PPI was not in "consistent compliance" with the applicable effluent limitations.  (See Exhibit No. 2).

24.   In concluding that PPI's permit reapplication should be denied the city never provided PPI with any opportunity at which PPI could contest the City's determination that PPI was not in consistent compliance with the applicable effluent limitations.

25.   Nowhere in any pronouncement of the City, nor in any Statute, Ordinance or regulation relied upon by the City, has the City ever defined the term "consistent compliance".

26.   On March 18, 1992, the City unilaterally amended PPI's wastewater discharge permit to add a dilution factor to PPI's permitted discharge limitations.  (See Exhibit No. 6).

27.   PPI immediately challenged these onerous discharge limitations by Appeal on April 2, 1992.  To date, DWSD has neither answered this Appeal, nor stayed the effect of the amended

Wastewater Discharge Permit pursuant to its own Ordinance, nor granted PPI a hearing on this matter. (See Exhibit No. 7).

28. PPI took immediate steps to ensure that non-process cooling water would no longer be discharged with the process wastewater and spent well over one hundred thousand dollars ($100,000.00) to capture all of its process water effluent inside a weir within the plant that would also serve as an end of process line sampling site.

29. The City was not satisfied with the changes made by PPI and suggested other changes which PPI immediately proceeded to attempt to implement. (See Exhibit No. 8).

30. The DWSD continues to hinder and to delay the implementation of further structural changes planned by PPI, by delaying approval of a construction permit for the creation of a single sampling location that has already been approved by the City of Eastpointe.

31. The City's own analyses of samples from PPI demonstrates, for the majority of the parameters sampled, PPI is in compliance with PPI's unamended permit and the effluent limitation standards for an electroplater with percentages above 90%, based upon sampling without the dilution factor.

32. As the City unilaterally and without a hearing, denied PPI's permit reapplication, PPI has not been provided with an opportunity to submit the above referenced evidence to demonstrate that it is, and continues to be in, consistent compliance with all applicable effluent limitations found in PPI's unamended Wastewater Discharge Permit effective March 15, 1990 and in 40 CFR § 413.14. (See Exhibits Nos. 1 and 4).

33.   Upon information and belief, the City, in determining that PPI was not in "consistent compliance," only reviewed the number of occasions according to its own sampling, in which PPI was out of compliance pursuant to an unreasonably imposed dilution factor requirement that even the City's own incoming water supply fails to meet.

34.   Upon information and belief, the City, in determining that PPI was not "in consistent compliance", did not consider either the total number of sampling events or the percentage which PPI was in compliance without applying the challenged onerous dilution factor.

35.   The City has never informed PPI as to the meaning of the term "consistent compliance."

36.   PPI, at considerable additional expense to the monies already expended, has very recently installed a <u>batch</u> wastewater discharge system.

37.   In utilizing this batch wastewater discharge system, the wastewater is pretreated to remove contaminant materials and then pumped to a storage tank.

38.   All of the wastewater which is in the storage tank can then be tested to ensure compliance with the applicable regulations for a metal finisher, before it is discharged into the sewer.  (<u>See</u> Exhibits Nos. 1 and 4).

39.   PPI can only attempt to operate its plating facility by pumping its wastewater discharge into holding tanks that have a maximum capacity of twenty thousand (20,000) gallons.   If no discharge is allowed pursuant to a batch treatment system, PPI and

8

its customers, including the United States government, will suffer irreparable harm as PPI will be forced to cease operating.

40.    The wastewater stored in PPI's holding tanks will be analyzed prior to discharge in order to demonstrate that it is in compliance with all applicable effluent limitations.

41.    Through operations of its plating process, PPI's interior holding tanks are now at capacity.

42.    In praying that this court allow PPI to discharge into the sewer, PPI desires only to discharge pursuant to a batch discharge procedure.   Thus, PPI prays only that it be allowed to discharge a batch of pretreated wastewater which, <u>after testing is found to be in complete compliance with all applicable effluent limitations for an electroplater after treatment</u>.

43.    In granting PPI's prayer to discharge pretreated wastewater, the City <u>will suffer no harm</u> as only wastewater meeting all applicable effluent limitations for a metal finisher will be discharged.

WHEREFORE, Production Plating, Inc., respectfully prays that this Honorable Court issue an order allowing PPI to discharge into the sewer only that wastewater which after pretreatment and testing is found to be in compliance with all applicable effluent limitations for a metal finisher pursuant to 40 CFR § 413.14 and PPI's unamended Wastewater Discharge Permit No. 021-009 effective on March 15, 1990.

Respectfully submitted,

PETER W. MACUGA (P-28114)

STEVEN D. LIDDLE, (P-45110)

MARTA E. ROSS, M.D. (P-45093)
Attorneys for Defendant PPI
3900 Penobscot Building
Detroit, Michigan 48226
313/ 965-0045
Dated:  March 22, 1993



CONFIDENTIAL



CERTIFIED MAIL

*Detroit Water and Sewerage Department*
*Industrial Waste Control*
*303 S. Livernois*
*Detroit, Michigan 48209*
*(313) 297-9400*

*Coleman A. Young, Mayor*
*City of Detroit*

April 6, 1990

Mr. Vito Raimondo
Production Plating, Inc.
23120 Gratiot
East Detroit, Michigan  48021-1628

Dear Mr. Raimondo:

Re:  Industrial Wastewater Discharge Permit

Enclosed, please find your Industrial Wastewater Discharge permit as issued by the **Detroit Water and Sewerage Department (DWSD)**. The permit is based upon information previously submitted by your company and from your recent six-month reports. Permits are staggered to expire at random periods of up to five (5) years.

Your permit contains the specific discharge limitations, self-monitoring and reporting requirements for your facility. Please make special note of the self-monitoring and reporting requirements in Sections C and D.

Please note that any and all penalties, pretreatment schedules and/or compliance agreements previously imposed as a consequence of violations by the user, prior to the issuance of this permit, remain in full force and effect. This permit contains the conditions under which the user is permitted to operate and the limitations with which it must comply. No enforcement action is either intended or implied.

For your convenience, we have included a "Split Sample Request Form" for your completion. Please return this form only if you desire to receive split samples on a routine basis. Split samples may still be requested during any individual DWSD sampling whether or not this form is completed.

CONFIDENTIAL

Mr. Vito Raimondo
Production Plating, Inc.
23120 Gratiot
April 6, 1990
Page 2


Should you have any questions, please contact the Industrial Waste Control
Division - Permits Section at 297-9448 or 297-9411. All appeals to permit
terms should be made in writing.

Sincerely yours,

Charlie J. Williams
Director

CJW/GC/rrj
Enclosure

CONFIDENTIAL





*Detroit Water and Sewerage Department*
*Industrial Waste Control*
*303 South Livernois*
*Detroit, Michigan 48209*
*(313) 297-9400*

*Coleman A. Young, Mayor*
*City of Detroit*

## DETROIT

### WATER AND SEWERAGE DEPARTMENT

#### WASTEWATER DISCHARGE PERMIT – TYPE 2

Section A:  **General Information:**

Permit No.:   021-009

Company Name:  Production Plating, Inc.

Premise Address:  23120 Gratiot

City:  East Detroit                    ,MI      Zip Code:  48021

Mailing Address:  same

City:                          ,MI      Zip Code:

Primary Standard Industrial Classification (SIC) Code:  3471

Other SIC Codes:

The above Industrial User is authorized to discharge industrial wastewater to the City of Detroit sewer system in compliance with the City's Wastewater Discharge Ordinance and any applicable provisions of federal or state law or regulation, and in accordance with discharge point(s), effluent limitations, monitoring requirements, and other conditions set forth herein.

This permit is granted in accordance with the application filed in the office of the Director of DWSD, and in conformity with plans, specifications, and other ....... .......ted to the City in support of the above application.

Effective Date:  March 15, 1990

Expiration Date:  March 1, 1993

Charlie J. Williams
Director

CONFIDENTIAL

Production Plating, Inc.
23120 Gratiot
East Detroit, Michigan  48021

Page No.   2

Permit No.   021-009

## Section 3:  Discharge Limitations and Monitoring Requirements

### Federal Categorical Industries

Point Source Category:  Electroplating          40 CFR part   413.14

Subcategory:  Jobshop; Discharge less than 10,000 GPD

Representative Sampling Location:  22' EEPL, 2' N. of S. curb of Aurora.

The following  (x) Concentration  ( ) Production based  standards shall  be
applied to this location.

### Federal Categorical Pretreatment Standards *

| Parameter | 4-Day Average (mg/l) | Daily Maximum (mg/l) | Self-Monitoring Required (Y/N)** |
|---|---|---|---|
| Total Arsenic (As) | --- | 1.0 | Yes |
| Total Cadmium (Cd) | 0.7 | 1.2 | Yes |
| Total Copper (Cu) | --- | 4.5 | Yes |
| Total Cyanide (CN) | --- | 2.0 | Yes |
| Total Iron (Fe) | --- | 1000.0 | Yes |
| Total Lead (Pb) | 0.4 | 0.6 | Yes |
| Total Mercury (Hg) | --- | 0.005 | Yes |
| Total Nickel (Ni) | --- | 5.0 | Yes |
| Total Silver (Ag) | --- | 2.0 | Yes |
| Total Chromium (Cr) | --- | 25.0 | Yes |
| Total Zinc (Zn) | --- | 15.0 | Yes |
| Total Toxic Organics (TTO) | --- | 4.57 | Yes |
| Total Amenalde, Cyanide (CN$_A$) | 2.7 | --- | Yes |
| PCB - Arochlor 1260 | --- | 0.0005 | No |
| Total PCB | --- | 0.001 | No |
| Fats, Oil, Grease (FOG) | | 2000 | Yes |
| Total Suspended Solids (TSS) | | 10000 | Yes |
| Biochemical Oxygen Demand (BOD) | | 10000 | Yes |
| Phosphorus (P) | | 500 | Yes |

Other Requirements:

(1)  Compliance with the General Pollutant Prohibitions
(2)  pH between 5.0 - 10.0 (10.5 if alkalinity is less than 300 ppm

*   - All limitations based on composite samples, except for FOG, CN, pH, and
      the volatile fraction of TTO, which are based upon grab samples.

** - Please refer also to Sections C and D-3 regarding self-monitoring and
      reporting requirements.

CONFIDENTIAL

Page No.   3

Permit No.   021-009

Section C:   <u>Self-Monitoring Requirements</u> –

Monitoring frequencies for all significant industrial users will be determined based upon (i) their permit classification, and (ii) the discharge volume of process wastewater.

Permit Types 1 & 2 (Categorical Industries) shall be required to provide analytical data sufficient to demonstrate compliance with the daily maximum limitations as well as the applicable 4-day or 30 day monthly average, as defined in Section B of this permit, within a single . . . . . . .

1)   Monitoring periods for analytical testing shall be as follows:

( )  a.  <u>**Facilities discharging >25,000 gpd process water shall provide one set of data (as defined above) per quarter.**</u>

(x)  b.  <u>**Facilities discharging <25,000 gpd process water shall provide one set of data (as defined above) per six month period.**</u>

2)   These results shall be submitted every six months on or before June 30, and December 31 of each year as part of the Six Month Reporting Requirement.

3)   Sampling must be performed for all the parameters identified in Section B of this permit and sampled in accordance with approved methods. Sampling must be conducted at the location identified in Section B. Use of an alternate location is not acceptable unless concurrence is received from DWSD. Contact DWSD at 297-9411 if you wish to request use of an alternate location.

Grab samples must be used for pH, cyanide, total phenols, fats, oil & grease (FOG), sulfide, and volatile organics. All other pollutants should be collected by flow-proportional sampling techniques, or time composite sampling. A minimum of four (4) grab samples must be obtained for a representative time composite sample.

4)   If sampling performed by an Industrial User indicates a violation of the permit limitations, then

(i)   Notification must be made to DWSD within 24 hrs of becoming aware of the violation, and

(ii)  Repeat the analyses within 30 days of becoming aware of the violation, and submit the results to DWSD.

5)   Any Industrial User who monitors any pollutants more frequently than defined in paragraph 1, shall include the results of this analysis within the six month report defined in paragraph 2.

6)   The minimum number of samples (one set) required for acceptable 4-day average are 4 daily samples, analyzed individually. The initial number of samples (one set) required to demonstrate compliance with a monthly average is 10 days (these do not have to be consecutive events) per month, unless the user demonstrates to the IPP-Engineer that a lesser sampling frequency can satisfy this requirement.

CONFIDENTIAL

Page No.   4

Permit No.   021-009

Section D:   **Compliance Requirements**

1) **Compliance Agreement**

Should the permittee currently be under or enter into a Compliance Agreement at a future date, that agreement shall automatically become a part of this permit. Therefore, any requirement stipulated in the Compliance Agreement shall be adhered to as a permit requirement.

2) **Spill Prevention Plan (SPP)**

The permittee is required to submit a Spill Prevention Plan (SPP) in accordance with City of Detroit guidelines, to provide protection against accidental discharges to the POTW. If an acceptable Spill Prevention Plan has not been submitted, or if there are questions regarding your facility's status, the permittee should contact the Emergency Response Group at 297-9418. Note: Please disregard this section if your facility has been granted an exemption from the Spill Prevention Plan requirement.

3) **Reporting Requirements**

a) A Baseline Monitoring Report (BMR), as specified in the federal regulation for your category, shall be submitted to the Department.

b) A Six Month Discharge Report shall be submitted biannually to the Department by June 30 and December 31 of each year.

The report shall be signed, dated, and certified by an authorized representative of the Industrial User, or a registered professional engineer who is knowledgeable of the facility's discharge.

This report shall include:

(i)   Wastewater Analyses (see Section C)

(ii)  Report whether the applicable pretreatment standards are being met on a consistent basis and, if not, what additional operation and maintenance practices and/or pretreatment construction is necessary to bring the Industrial User into compliance.

(iii) The following additional requirement.

Attachment 1

## GENERAL TERMS AND CONDITIONS

The permittee shall apply the discharge limits specified in Section B of this permit and shall comply with all provisions of the City of Detroit Wastewater Discharge Control Ordinance, other applicable laws, rules, regulations user charges and fees established by the City of Detroit without repetition herein.

1) Records for monitoring activities shall be maintained in accordance with ordinance requirements, and shall include for all samples:

   a) The date, exact place, time and method of sampling

   b) The names of persons taking the sample

   c) The technique or method of analysis, the date and results of analysis

   d) The names of persons performing the analysis

2) **Notification**

   a) **Accidental Discharge**

   Within one (1) hour of becoming aware of an accidental discharge into the sewer system which exceeds or does not conform with federal, state or Detroit laws, rules, regulations or permit requirements and the degree of exceedance appears to be more than twice the allowable concentration, the permittee shall telephone the Department at its control centers as shown below. Within five (5) calendar days after the discharge, the permittee shall submit a detailed written report describing the cause of the discharge and the measures to be taken by the permittee to prevent similar future occurrences.

   b) **Upsets**

   The permittee shall submit information on the upset orally or in writing, within 24 hours of becoming aware of the upset. If information is provided orally, a written submission must be provided within five (5) days.

   **Control Centers**

   - Systems Control Center             224-4775
   - Wastewater Treatment Plant         297-9000
   - Industrial Waste Control Office    297-9402

3) <u>Limitations on Permit Transfer</u>

The wastewater discharge permit shall not be reassigned or transferred without the written approval of the City of Detroit Water and Sewerage Department.   The permittee shall notify the Department of any such changes thirty (30) days prior to the change.

4) <u>Modifications or Revisions of the Permit</u>

The permittee should notify the Department of any facility or operational changes which may affect the permit.
The terms and conditions of the permit may be subject to modification by the City of Detroit Water and Sewerage Department during the terms of the permit, in accordance with the City's ordinance.

5) <u>Confidential Information</u>

Except for data accepted by the City as confidential under the City ordinance, all information and data on the permittee obtained from written reports, questionnaires, permit applications, permits, monitoring programs and inspections shall be available to the public or other government agencies without restriction.

6) <u>Legal Actions</u>   (Ord. 23-86 Sec 56-3-66.1(f))

a) Any user who violates any provision of Ordinance 23-86, including the failure to pay any fees, charges, or surcharges imposed hereby, or any condition or limitation of a permit issued pursuant thereto or who knowingly makes any false statements, representations, or certification in any application, record, report, plan, or other document filed or required to be maintained pursuant to this ordinance or wastewater discharge permit or who tampers with, or knowingly renders inaccurate any monitoring device required under this ordinance is guilty of a misdemeanor and shall, upon conviction, be punished by a fine not to exceed $500 for each violation per day or by imprisonment for not more than 90 days or by both.

The Department is hereby authorized to seek, through its counsel, prosecution of criminal charges against any person violating any provision of this ordinance.

b) If any person discharges sewage, industrial wastes, or other wastes into the POTW contrary to the provisions of this ordinance, permit or order issued thereunder, the Director or Board may commence a civil action to enjoin such discharge or to enforce compliance with this ordinance, permit or order issued thereunder, in the Circuit Court for the County of Wayne or other appropriate court. Upon a proper showing of a violation of this ordinance, permit or order issued thereunder, a permanent or temporary injunction may be granted without bond. The Department or Board may also seek additional legal and/or equitable relief.

CONFIDENTIAL

Instituting suit in the Circuit Court does not constitute an exclusive election of remedies and does not prohibit the Department, Director, Board, or City of Detroit from commencing action in Federal Court for discharges believed to be in violation of this ordinance, State and federal requirements pursuant to the Clean Water Act, the City's NPDES permit, or other applicable laws or requirements.

The City of Detroit may also recover reasonable attorney fees, court costs, court reporters' fees, and other unusual expenses related to enforcement activities or litigation against the person found to have violated this ordinance or the orders, rules, regulations, and permits issued hereunder.

c) All fines, costs, and penalties which are imposed by any court of competent jurisdiction shall be payable to the clerk of such court, who shall deposit the same with the City Treasurer, all of which fines, costs, and penalties shall be credited to the appropriate fund of the Water and Sewerage Department.

7) All reports shall be addressed to:

> Detroit Water and Sewerage Department
> Industrial Waste Control Division
> 303 S. Livernois
> Detroit, Michigan 48209
>
> Attention: IPP Section

GTC.IPP
Rev1/19/89





*Detroit Water and Sewerage Department*
*Industrial Waste Control*
*303 S. Livernois*
*Detroit, Michigan 48209*
*(313) 297-9400*

*Coleman A. Young, Mayor*
*City of Detroit*

March 4, 1993

Mr. John Egle
Production Plating, Inc.
23120 Gratiot
EastPointe, MI 48021-1628

Dear Mr. Egle;

RE: <u>Review of March 1, 1993 Permit Reapplication</u>

Production Plating, Inc.'s Wastewater Discharge Permit request is denied.

The Detroit Water and Sewerage Department ("Department") has received a permit reapplication request from Production Plating, Inc. on March 1, 1993. This reapplication had been submitted as a result of the Department's notification that the Wastewater Discharge Permit 021-009 would expire at midnight, March 1, 1993.

In accordance with the provisions of applicable law, including but not limited to the City of Detroit Ordinance 23-86 and the City of Eastpointe Ordinance 703, the permit reapplication request has been reviewed. This review has included (i) the information submitted in support of the permit reapplication request, (ii) the existing compliance history, and (iii) other information existing in Production Plating, Inc.'s file. As a result of the review, the Department has determined that:

1. Production Plating, Inc. is required to have a wastewater discharge permit issued by the Department for any discharge of non-sanitary wastewater into the sewer system,

2. Production Plating, Inc. is a Significant Industrial User (SIU) as defined by applicable law, including but not limited to Ordinances 23-86 and 703,

Mr. John Egle
Production Plating, Inc.
March 4, 1993

> 3. Production Plating, Inc. is a user subject to the
> Electroplating Point Source Category 40 CFR 403.13.

> 4. Production Plating, Inc. has not demonstrated consistent
> compliance with its former wastewater discharge permit 021-
> 009.

The City of Detroit and the City of Eastpointe have ordained that
the protection of the public health and safety require that the
quantity and quality of wastes admitted to, or discharged into
the wastewater collection and treatment system comply with
applicable local, State and federal laws. The wastewater
discharge permit reapplication request, and the facility's
existing compliance history do not demonstrate the facility's
compliance with applicable local, State or federal law, and
therefore the request for a wastewater discharge permit is
denied.

There shall be no discharge or release of any non-sanitary
wastewater from this facility unless and until a wastewater
discharge permit is issued for this facility by the Department.
Failure of Production Plating, Inc. to comply with the terms and
requirements of this Order shall be cause for the Department to
initiate\and to seek any and all remedies available to it under
applicable law.

                          Sincerely yours,

                          Stephen J. Koplicki
                          Manager, IWC

cc: Avery Williams, Esq., CF&Z
    Hon. Harvey M. Curley, City of Eastpointe
    Wes Mc Allister, City of Eastpointe
    K. Desai
    Robert Hribar, Esq.



# TANNIAN & MACUGA, P.C.

### ATTORNEYS & COUNSELORS AT LAW

PHILIP G. TANNIAN
PETER W. MACUGA II

SUITE 3900, PENOBSCOT BUILDING
DETROIT, MICHIGAN 48226
TELEPHONE (313) 965-0045
FACSIMILE (313) 965-2829

JOHN D. SWARTZ
STEVEN D. LIDDLE
MARTA E. ROSS, M.D.

March 12, 1993

Mr. John Lamerato, President
Water Commission Board
506 Water Board Building
735 Randolph
Detroit, MI  48226

**CERTIFIED MAIL**

RE:  Production Plating, Inc.
     23120 Gratiot Avenue
     Eastpointe, MI  43021

Dear Mr. Lamerato:

This letter is to inform you that Production Plating, Inc., hereby appeals the DWSD denial of its permit reapplication.  As the DWSD is purportedly acting under Detroit City Ordinance No. 23-86, this appeal of the DWSD's decision to deny Production Plating, Inc.'s permit reapplication, under the authority of the Detroit City Ordinance No. 23-86, Sections 56-62.(d) and 56-3-67.1(d) stays the DWDS' action of denying Production Plating, Inc.'s permit reapplication.

If the DWSD desires to contest, or object to, the position of Production Plating, Inc., that this appeal to the Board of Water Commissioners hereby stays the DWSD's denial of Production Plating, Inc.'s permit reapplication until such time as Production Plating, Inc., is granted a hearing on its appeal please inform me, in writing, with its objections immediately.

Very truly yours,

Peter W. Macuga II

SDL:mb

cc:  Bennie L. Benjamin, Director
     Detroit Water & Sewerage Department

     Avery K. Williams
     Corporate Counsel

     Stephen Kuplicki, Manager
     Industrial Waste Control



## § 413.01

within the ducks subcategory, which is a user of a publicly owned treatment works (and which would be a new source subject to section 306 of the Act, if it were to discharge pollutants to the navigable waters), shall be the standard set forth in part 128, for the purpose of this chapter, except that, for the purpose of this section, § 128.133 of this title shall be amended to read as follows:

In addition to the prohibitions set forth in 40 CFR 128.131, the pretreatment standard for incompatible pollutants introduced into a publicly owned treatment works shall be the standard of performance for new sources specified in 40 CFR 412.15; *Provided That,* if the publicly owned treatment works which receives the pollutants is committed, in its NPDES permit, to remove a specified percentage of any incompatible pollutant, the pretreatment standard applicable to users of such treatment works shall, except in the case of standard providing for no discharge of pollutants, be correspondingly reduced in stringency for that pollutant.

## PART 413—ELECTROPLATING POINT SOURCE CATEGORY

### General Provisions

Sec.
413.01 Applicability and compliance dates.
413.02 General definitions.
413.03 Monitoring requirements.
413.04 Standards integrated facilities.

### Subpart A—Electroplating of Common Metals Subcategory

413.10 Applicability; Description of the electroplating of common metals subcategory.
413.11 Specialized definitions.
413.12—413.13 [Reserved]
413.14 Pretreatment standards for existing sources.

### Subpart B—Electroplating of Precious Metals Subcategory

413.20 Applicability; Description of the electroplating of precious metals subcategory.
413.21 Specialized definitions.
413.22—413.23 [Reserved]
413.24 Pretreatment standards for existing sources.

### 40 CFR Ch. I (7-1-92 Edition)

Sec.

### Subpart C—Electroplating of Specialty Metals Subcategory [Reserved]

### Subpart D—Anodizing Subcategory

413.40 Applicability; Description of the anodizing subcategory.
413.41 Specialized definitions.
413.42—413.43 [Reserved]
413.44 Pretreatment standards for existing sources.

### Subpart E—Coatings Subcategory

413.50 Applicability; Description of the coatings subcategory.
413.51 Specialized definitions.
413.52—413.53 [Reserved]
413.54 Pretreatment standards for existing sources.

### Subpart F—Chemical Etching and Milling Subcategory

413.60 Applicability; Description of the chemical etching and milling subcategory.
413.61 Specialized definitions.
413.62—413.63 [Reserved]
413.64 Pretreatment standards for existing sources.

### Subpart G—Electroless Plating Subcategory

413.70 Applicability; Description of the electroless plating subcategory.
413.71 Specialized definitions.
413.72—413.73 [Reserved]
413.74 Pretreatment standards for existing sources.

### Subpart H—Printed Circuit Board Subcategory

413.80 Applicability; Description of the printed circuit board subcategory.
413.81 Specialized definitions.
413.82—413.83 [Reserved]
413.84 Pretreatment standards for existing sources.

AUTHORITY: Secs. 301, 304(a), 307, 308, 309, 402, 405, 501(a), Clean Water Act, as amended (33 U.S.C. 1311, 1314(e), 1317, 1318, 1319, 1322, 1325 and 1361(a)).

SOURCE: 46 FR 9467, Jan. 28, 1981, unless otherwise noted.

### General Provisions

### § 413.01 Applicability and compliance dates.

(a) This part shall apply to electroplating operations in which metal is electroplated on any basis material and to related metal finishing oper-

**248**

## Environmental Protection Agency

ations as set forth in the various subparts, whether such operations are conducted in conjunction with electroplating, independently, or as part of some other operation. The compliance deadline for metals and cyanide at integrated facilities shall be June 30, 1984. The compliance date for metals and cyanide at non-integrated facilities shall be April 27, 1984. Compliance with TTO for all facilities shall be July 15, 1986. These part 413 standards shall not apply to a facility which must comply with all the pollutant limitations listed in § 433.15 (metal finishing PSES).

(b) Operations similar to electroplating which are specifically excepted from coverage of this part include:

(1) Electrowinning and electrorefining conducted as a part of nonferrous metal smelting and refining (40 CFR part 421);

(2) Metal surface preparation and conversion coating (40 CFR part 465);

(3) Metal surface preparation and immersion plating or electroless platimmersion plating or electroless enameling (40 CFR part 466) and electroenameling (40 CFR part 466) and electroless plating conducted as a part of porcelain ing conducted as a part of porcelain enameling (40 CFR part 466); and

(4) Electrodeposition of active electrode materials, electroimpregnation, and electroforming conducted as a part of battery manufacturing (40 CFR part 461).

(c) Metallic platemaking and gravure cylinder preparation conducted within or for printing and publishing facilities, and continuous strip electroplating conducted within iron and steel manufacturing facilities which introduce pollutants into a publicly owned treatment works are exempted from the pretreatment standards for existing sources set forth in this part.

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act, the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et. seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32482, July 15, 1983; 48 FR 41410, Sept. 15, 1983; 51 FR 40421, Nov. 7, 1986]

### § 413.02 General definitions.

In addition to the definitions set forth in 40 CFR part 401 and the chemical analysis methods set forth in 40 CFR part 136, both of which are in-

corporated herein by reference, the following definitions apply

(a) The term *CN.A* shall mean cyanide amenable to chlorination as defined by 40 CFR 136.

(b) The term *CN.7* shall mean cyanide, total.

(c) The term *Cr, VI* shall mean hexavalent chromium.

(d) The term *electroplating process wastewater* shall mean process wastewater generated in operations which are subject to regulation under any of subparts A through H of this part.

(e) The term *total metal* is defined as the sum of the concentration of mass of Copper (Cu), Nickel (Ni), Chromium (Cr) (total) and Zinc (Zn).

(f) The term *strong chelating agent* is defined as all compounds which, by virtue of their chemical structure and amount present, form soluble metal complexes which are not removed by subsequent metals control techniques such as pH adjustment followed by clarification or filtration.

(g) The term *control authority* is defined as the POTW if it has an approved pretreatment program; in the absence of such a program, the NPDES State if it has an approved pretreatment program or EPA if the State does not have an approved program.

(h) The term *integrated facility* is defined as a facility that performs electroplating as only one of several operations necessary for manufacture of a product at a single physical location and has significant quantities of process wastewater from non-electroplating manufacturing operations. In addition, to qualify as an "integrated facility" one or more plant electroplating process wastewater lines must be combined prior to or at the point of treatment (or proposed treatment) with one or more plant sewers carrying process wastewater from non-electroplating manufacturing operations.

(i) The term *TTO* shall mean total toxic organics, which is the summation of all quantifiable values greater than 0.01 milligrams per liter for the following toxic organics:

Acenaphthene

**249**

## § 413.03 — 40 CFR Ch. I (7-1-92 Edition)

Acrolein
Acrylonitrile
Benzene
Benzidine
Carbon tetrachloride (tetrachloromethane)
Chlorobenzene
1,2,4-trichlorobenzene
Hexachlorobenzene
1,2-dichloroethane
1,1,1-trichloroethane
Hexachloroethane
1,1-dichloroethane
1,1,2-trichloroethane
1,1,2,2-tetrachloroethane
Chloroethane
Bis (2-chloroethyl) ether
2-chloroethyl vinyl ether (mixed)
2-chloronaphthalene
2,4,6-trichlorophenol
Parachlorometa cresol
Chloroform (trichloromethane)
2-chlorophenol
1,2-dichlorobenzene
1,3-dichlorobenzene
1,4-dichlorobenzene
3,3-dichlorobenzidine
1,1-dichloroethylene
1,2-trans-dichloroethylene
2,4-dichlorophenol
1,2-dichloropropane
1,3-dichloropropylene (1,3-dichloropropene)
2,4-dimethylphenol
2,4-dinitrotoluene
2,6-dinitrotoluene
1,2-diphenylhydrazine
Ethylbenzene
Fluoranthene
4-chlorophenyl phenyl ether
4-bromophenyl phenyl ether
Bis (2-chloroisopropyl) ether
Bis (2-chloroethoxy) methane
Methylene chloride (dichloromethane)
Methyl chloride (chloromethane)
Methyl bromide (bromomethane)
Bromoform (tribromomethane)
Dichlorobromomethane
Chlorodibromomethane
Hexachlorobutadiene
Hexachlorocyclopentadiene
Isophorone
Naphthalene
Nitrobenzene
2-nitrophenol
4-nitrophenol
2,4-dinitrophenol
4,6-dinitro-o-cresol
N-nitrosodimethylamine
N-nitrosodiphenylamine
N-nitroso-di-n-propylamine
Pentachlorophenol
Phenol
Bis (2-ethylhexyl) phthalate
Butyl benzyl phthalate
Di-n-butyl phthalate
Di-n-octyl phthalate
Diethyl phthalate
Dimethyl phthalate

1,2-benzanthracene
 (benzo(a)anthracene)
Benzo/a/pyrene (3,4-benzopyrene)
3,4-Benzofluoranthene
 (benzo(b)fluoranthene)
11,12-benzofluoranthene
 (benzo(k)fluoranthene)
Chrysene
Acenaphthylene
Anthracene
1,12-benzoperylene
 (benzo(ghi)perylene)
Fluorene
Phenanthrene
1,2,5,6-dibenzanthracene
 (dibenzo(a,h)anthracene)
Indeno (1,2,3-cd) pyrene
 (2,3-o-phenylene pyrene)
Pyrene
Tetrachloroethylene
Toluene
Trichloroethylene
Vinyl chloride (chloroethylene)
Aldrin
Dieldrin
Chlordane (technical mixture and metabolites)
4,4-DDT
4,4-DDE (p,p-DDX)
4,4-DDD (p,p-TDE)
Alpha-endosulfan
Beta-endosulfan
Endosulfan sulfate
Endrin
Endrin aldehyde
Heptachlor
Heptachlor epoxide
(BHC-hexachlorocyclohexane)
Alpha-BHC
Beta-BHC
Gamma-BHC
Delta-BHC
(PCB-polychlorinated biphenyls)
PCB-1242 (Arochlor 1242)
PCB-1254 (Arochlor 1254)
PCB-1221 (Arochlor 1221)
PCB-1232 (Arochlor 1232)
PCB-1248 (Arochlor 1248)
PCB-1260 (Arochlor 1260)
PCB-1016 (Arochlor 1016)
Toxaphene
2,3,7,8-tetrachlorodibenzo-p-dioxin (TCDD)

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32483, July 15, 1983; 48 FR 43681, Sept. 26, 1983; 51 FR 40421, Nov. 7, 1986]

§ 413.03 Monitoring requirements.

(a) In lieu of monitoring for TTO, the control authority may allow indus-

---

## Environmental Protection Agency

subcategory from the corresponding daily and 4 day average values of the table below.

| If the maximum for any 1 day is | And the maximum 4 day average is |
|---|---|
| 0.6 | 0.4 |
| 1.2 | 7 |
| 1.8 | 2.6 |
| 2.6 | 2.6 |
| 4.1 | 2.6 |
| 4.2 | 2.7 |
| 4.5 | 6.8 |
| 5.0 | 13.4 |
| 7.0 | 16 |
| 10.5 | 23 |
| 20.0 | 26 |
| 23 | 27 |
| 47 | 39 |
| 53 | 36 |
| 85 | 65 |
| 107 | 85 |
| 169 | 89 |
| 160 | 100 |
| 178 | 102 |
| 273 | 156 |
| 385 | 229 |
| 374 | 232 |
| 401 | 241 |
| 410 | 267 |
| 623 | 372 |
| 935 | 509 |

trial users of POTWs to make the following certification as a commitment to the periodic reports required by § 403.12(e): "Based on my inquiry of the person or persons directly responsible for managing compliance with the pretreatment standard for total toxic organics (TTO), I certify that, to the best of my knowledge and belief, no dumping of concentrated toxic organics into the wastewaters has occurred since filing the last discharge monitoring report. I further certify that this facility is implementing the toxic organic management plan submitted to the control authority."

(b) In requesting that no monitoring be required industrial users of POTWs shall submit a toxic organic management plan that specifies to the control authority's satisfaction the toxic organic compounds used; the method of disposal used instead of dumping, such as reclamation, contract hauling, or incineration; and procedures for assuring that toxic organics do not routinely spill or leak into the wastewater.

(c) If monitoring is necessary to measure compliance with the TTO standard the industrial user need analyze only for those pollutants which would reasonably be expected to be present.

(Approved by the Office of Management and Budget under control number 2040-0074)

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[48 FR 32483, July 15, 1983; 48 FR 43681, Sept. 26, 1983, as amended at 49 FR 41823, Sept. 4, 1984]

§ 413.04 Standards for integrated facilities.

Pretreatment standards for integrated facilities shall be computed required by § 403.6(e) of EPA's General Pretreatment Regulations. In cases where electroplating process wastewaters are combined with regulated wastewaters which have 30 days average standards, the corresponding 30 day average standard for the electroplating wastewaters must be determined. The 30 day average standard is determined for pollutants in the regulated

### Subpart A—Electroplating of Common Metals Subcategory

§ 413.10 Applicability. Description of the electroplating of common metals subcategory.

The provisions of this subpart apply to dischargers of pollutants in process wastewaters resulting from the process in which a ferrous or nonferrous basis material is electroplated with copper, nickel, chromium, zinc, tin, lead, cadmium, iron, aluminum, or any combination thereof.

§ 413.11 Specialized definitions.

For the purpose of this subpart:

(a) The term sq m (sq ft) shall mean the area plated expressed in square meters (square feet).

(b) The term operation shall mean any step in the electroplating process in which a metal is electrodeposited on a basis material and which is followed by a rinse; this includes the related operations of alkaline cleaning, acid

## § 413.14

pickle, stripping, and coloring when each operation is followed by a rinse.

§§ 413.12—413.13 [Reserved]

### § 413.14 Pretreatment standards for existing sources.

Except as provided in §§ 403.7 and 403.13 of this title, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR Part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No user introducing wastewater pollutants into a publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total substitute for adequate treatment to achieve compliance with this standard.

(b) For a source discharging less than 38,000 liters (10,000 gal) per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART A—COMMON METALS FACILITIES DISCHARGING LESS THAN 38,000 LITERS PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,A | 5.0 | 2.7 |
| Pb | .6 | .4 |
| Cd | 1.2 | .7 |

(c) For plants discharging 38,000 liters (10,000 gal) or more per calendar day of electroplating process wastewater the following limitations shall apply:

## 40 CFR Ch. I (7-1-92 Edition)

SUBPART A—COMMON METALS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 1.9 | 1.0 |
| Cu | 4.5 | 2.7 |
| Ni | 4.1 | 2.6 |
| Zn | 7.0 | 4.0 |
| Cr | 4.8 | 2.6 |
| Cd | 1.2 | .7 |
| Total metals | 10.5 | 6.8 |

(d) Alternatively, the following mass-based standards are equivalent to and may be applied in place of those limitations specified under paragraph (c) of this section upon prior agreement between a source subject to these standards and the publicly owned treatment works receiving such regulated wastes:

SUBPART A—COMMON METALS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/SQ M-OPERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 74 | 39 |
| Cu | 176 | 105 |
| Ni | 160 | 100 |
| Zn | 273 | 156 |
| Cr | 164 | 102 |
| Cd | 47 | 29 |
| Total metals | 410 | 267 |

(e) For wastewater sources regulated under paragraph (c) of this section, the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong chelating agents, after reduction of

## Environmental Protection Agency

hexavalent chromium wastes, and after neutralization using calcium oxide (or hydroxide) the following limitations shall apply:

SUBPART A—COMMON METALS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 1.9 | 1.0 |
| Cu | 4.5 | 2.7 |
| Cd | 1.2 | .7 |
| TSS | 20.0 | 13.4 |
| pH | (1) | (1) |

(1) Within the range 7.5 to 10.0.

(f) In addition to paragraphs (a) and (b) the following limitation shall apply for plants discharging less than 38,000 (10,000 gal) per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day | Milligrams per liter (mg/l) |
|---|---|---|
| TTO | | 4.57 |

(g) In addition to paragraphs (a), (c), (d), and (e) the following limitation shall apply for plants discharging 38,000 (10,000 gal) or more per calendar day of electroplating process wastewater:

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) the following shall apply: An existing source submitting a certification in lieu of monitoring pursuant to § 413.03 of this regulation must implement the toxic organic management plan approved by the control authority.

| Pollutant or pollutant property | Maximum for any 1 day | Milligrams per liter (mg/l) |
|---|---|---|
| TTO | | 2.13 |

(Secs. 301, 304, 306, 307, 308, and Clean Water Act (the Federal Water Pollution Control Act Amendments of ... U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217.

[46 FR 9467, Jan. 28, 1981; 46 FR 32..., June 10, 1981, as amended at 46 FR 32..., June 15, 1983; 48 FR 43681, Sept. 26, 1983]

## Subpart B—Electroplating of Precious Metals Subcategory

### § 413.20 Applicability: Description of electroplating of precious metals subcategory.

The provisions of this subpart apply to discharges of process wastewater resulting from the process in which a ferrous or nonferrous basis material is plated with gold, silver, iridium, palladium, platinum, rhodium, ruthenium, or any combination of these.

### § 413.21 Specialized definitions.

For the purpose of this subpart:

(a) The term $sq\ m$ ("sq ft") shall mean the area plated expressed in square meters (square feet).

(b) The term operation shall mean any step in the electroplating process in which a metal is electrodeposited on a basis material and which is followed by a rinse. This includes the related operations of alkaline cleaning, acid pickle, stripping, and coloring when each operation is followed by a rinse.

§§ 413.22—413.23 [Reserved]

### § 413.24 Pretreatment standards for existing sources.

Except as provided in 40 CFR §§ 403.7 and 403.13, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No user introducing wastewater pollutants into a publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total substitute for adequate treatment to achieve compliance with this standard.

## § 413.24

endar day of electroplating process wastewater the following limitations shall apply:

SUBPART B—PRECIOUS METALS FACILITIES DISCHARGING LESS THAN 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN.A | 5.0 | 2.7 |
| Pb | .6 | .7 |
| Cd | 1.2 | |

(c) For plants discharging 38,000 liters (10,000 gal) or more per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART B—PRECIOUS METALS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| Ag | 1.2 | 0.7 |
| CN.T | 1.9 | 1.0 |
| Cd | 4.5 | 2.7 |
| Ni | 4.1 | 2.6 |
| Cu | 7.0 | 4.0 |
| Zn | 4.2 | 2.6 |
| Pb | .6 | .4 |
| Cd | 1.2 | .7 |
| Total metals | 10.5 | 6.8 |

(d) Alternatively, the following mass-based standards are equivalent to and may apply in place of those limitations specified under paragraph (c) of this section upon prior agreement between a source subject to these standards and the publicly owned treatment works receiving such regulated wastes.

---

## 40 CFR Ch. I (7-1-92 Edition)

SUBPART B—PRECIOUS METALS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/SQ M-OPERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| Ag | 47 | 29 |
| CN.T | 74 | 39 |
| Pb | 176 | 105 |
| Ni | 160 | 100 |
| Cu | 273 | 156 |
| Zn | 164 | 102 |
| Pb | 23 | 16 |
| Cd | 47 | 29 |
| Total metals | 410 | 267 |

(e) For wastewater sources regulated under paragraph (c) of this section, the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong chelating agents, after reduction of hexavalent chromium wastes, and after neutralization using calcium oxide (or hydroxide) the following limitations shall apply:

SUBPART B—PRECIOUS METALS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN.T | 1.9 | 1.0 |
| Cd | .6 | .4 |
| Pb | 1.2 | .7 |
| TSS | 20.0 | 13.4 |
| pH¹ | | |

¹Within the range 7.5 to 10.0.

(f) In addition to paragraphs (a) and (b) the following limitation shall apply for plants discharging less than 38,000 l (10,000 gal) per calendar day of electroplating process wastewater:

---

## Environmental Protection Agency

| Pollutant or pollutant property | Maximum for any 1 day | Milligrams per liter (mg/l) |
|---|---|---|
| TTO | | 4.57 |

(g) In addition to paragraphs (a), (c), (d), and (e) the following limitation shall apply for plants discharging 38,000 l (10,000 gal) or more per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day | Milligrams per liter (mg/l) |
|---|---|---|
| TTO | | 2.13 |

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) the following shall apply. An existing source submitting a certification pursuant to § 413.03 of this regulation must implement the toxic organic management plan approved by the control authority.

(Secs. 301, 304, 306, 307, 308, and 601 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32484, July 15, 1983; 48 FR 43681, Sept. 26, 1983]

### Subpart C—Electroplating of Specialty Metals Subcategory [Reserved]

### Subpart D—Anodizing Subcategory

§ 413.40 Applicability: Description of the anodizing subcategory.

The provisions of this subpart apply to discharges of process wastewater resulting from the anodizing of ferrous or nonferrous materials.

§ 413.41 Specialized definitions.

For the purpose of this subpart:

(a) The term sq m ("sq ft") shall mean the area plated expressed in square meters (square feet).

(b) The term operation shall mean any step in the anodizing process in

---

which a metal is cleaned, anodized, colored when each such step is followed by a rinse.

§§ 413.42-413.43 [Reserved]

§ 413.44 Pretreatment standards for existing sources.

Except as provided in 40 CFR 403.7 and 403.13, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No user introducing wastewater pollutants into a publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total substitute for adequate treatment to achieve compliance with this standard.

(b) For a source discharging less than 38,000 liters (10,000 gal) per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART D—ANODIZING FACILITIES DISCHARGING LESS THAN 38,000 LITERS PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN.A | | 5.0 |
| Pb | | 0.6 |
| Cd | | 1.2 |

(c) For plants discharging 38,000 liters (10,000 gal) or more per calendar day of electroplating process wastewater the following limitations shall apply:

Case 2:75-cv-71100-... ECF No. 14... Page ID.19320 Filed... Page 31 of 56

## § 413.44

SUBPART D—ANODIZING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 1.9 | 1.0 |
| Cu | 4.5 | 2.7 |
| Ni | 4.1 | 2.6 |
| Cr | 7.0 | 4.0 |
| Zn | 4.2 | 2.6 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |
| Total metals | 10.5 | 6.8 |

(d) Alternatively, the following mass-based standards are equivalent to and may apply in place of paragraph (c) of this section upon prior agreement between a source subject to these standards and the publicly owned treatment works receiving such regulated wastes:

SUBPART D—ANODIZING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/SQ M-OPERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 74 | 39 |
| Cu | 176 | 105 |
| Ni | 160 | 100 |
| Cr | 273 | 156 |
| Zn | 164 | 102 |
| Pb | 23 | 16 |
| Cd | 47 | 28 |
| Total metals | 410 | 267 |

(e) For wastewater sources regulated under paragraph (c) of this section, the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong chelating agents, after reduction of

hexavalent chromium wastes, and after neutralization using calcium oxide (or hydroxide) the following limitations shall apply:

SUBPART D—ANODIZING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 1.9 | 1.0 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |
| Zn | 20.0 | 13.4 |
| TSS | (1) | (1) |
| pH | (1) | (1) |

1 Within the range 7.5 to 10.0

(f) In addition to paragraphs (a) and (b) the following limitation shall apply for plants discharging less than 38,000 l (10,000 gal) per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day |
|---|---|
| | Milligrams per liter (mg/l) |
| TTO | 4.57 |

(g) In addition to paragraphs (a), (c), (d), and (e) the following limitation shall apply for plants discharging 38,000 l (10,000 gal) or more per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day |
|---|---|
| | Milligrams per liter (mg/l) |
| TTO | 2.13 |

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) the following shall apply: An existing source submitting a certification pursuant to § 413.03 of this regulation must implement the toxic organic management plan approved by the control authority.

## Environmental Protection Agency

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95–217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32484, July 15, 1983; 48 FR 43681, Sept. 26, 1983]

### Subpart E—Coatings Subcategory

§ 413.50 Applicability; Description of the coatings subcategory.

The provisions of this subpart apply to discharges resulting from the chromating, phosphating or immersion plating on ferrous or nonferrous materials.

§ 413.51 Specialized definitions.

For the purpose of this subpart;

(a) The term sq m ("sq ft") shall mean the area processed expressed in square meters (square feet).

(b) The term operation shall mean any step in the coating process in which a basis material surface is acted upon by a process solution and which is followed by a rinse, plus the related operations of alkaline cleaning, acid pickle, and sealing, when each operation is followed by a rinse.

§§ 413.52–413.53 [Reserved]

§ 413.54 Pretreatment standards for existing sources.

Except as provided in 40 CFR 403.7 and 403.13, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR Part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No user introducing wastewater pollutants into a publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total substitute for adequate treatment to achieve compliance with this standard.

(b) For a source discharging less than 38,000 liters (10,000 gal) per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART E—COATINGS FACILITIES DISCHARGING LESS THAN 38,000 LITERS PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,A | 5.0 | |
| Pb | 0.6 | |
| Cd | 1.2 | |

(c) For plants discharging 38,000 liters (10,000 gal) or more per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART E—COATINGS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T | 1.9 | 1.0 |
| Cu | 4.5 | |
| Ni | 4.1 | |
| Cr | 7.0 | |
| Zn | 4.2 | |
| Pb | 0.6 | |
| Cd | 1.2 | |
| Total metals | 10.5 | |

(d) Alternatively, the following mass-based standards are equivalent to and may apply in place of those limitations specified under prior agreement between a source subject to these standards and the publicly owned treatment works receiving such related wastes:

## § 413.60

SUBPART E—COATINGS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/SQ M-OPERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 74 | 39 |
| Cu | 176 | 105 |
| Ni | 160 | 100 |
| Zn | 273 | 156 |
| Pb | 164 | 102 |
| Cd | 23 | 16 |
| Total metals | 410 | 267 |

(e) For wastewater sources regulated under paragraph (c) of this section, the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong chelating agents, and after reduction of hexavalent chromium wastes, and after neutralization using calcium oxide (or hydroxide) the following limitations shall apply:

SUBPART E—COATINGS FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 1.9 | 1.0 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |
| TSS | 20.0 | 13.4 |
| pH | (1) | (1) |

[1] Within the range 7.5 to 10.0

(f) In addition to paragraphs (a) and (b) of this section, the following limitation shall apply for plants discharging less than 38,000 l (10,000 gal) per calendar day of electroplating process wastewater:

---

## 40 CFR Ch. I (7-1-92 Edition)

| Pollutant or pollutant property | Maximum for any 1 day | Milligrams per liter (mg/l) |
|---|---|---|
| TTO | | 4.57 |

(g) In addition to paragraphs (a), (c), (d), and (e) of this section, the following limitation shall apply for plants discharging 38,000 l (10,000 gal) or more per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day | Milligrams per liter (mg/l) |
|---|---|---|
| TTO | | 2.13 |

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) of this section, the following shall apply: An existing source submitting a certification in lieu of this regulation must implement the toxic organic management plan approved by the control authority.

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et. seq. as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32484, July 15, 1983; 48 FR 43681, Sept. 26, 1983]

### Subpart F—Chemical Etching and Milling Subcategory

§ 413.60 Applicability: Description of the chemical etching and milling subcategory.

The provisions of this subpart apply to discharges of process wastewaters resulting from the chemical milling or etching of ferrous or nonferrous materials.

§ 413.61 Specialized definitions.

(a) The term sq m ("sq. ft.") shall mean the area exposed to process chemicals expressed in square meters (square feet).

---

## Environmental Protection Agency

(b) The term operation shall mean any step in the chemical milling or etching processes in which metal is chemically or electrochemically removed from the work piece and which is followed by a rinse; this includes related metal cleaning operations which preceded chemical milling or etching, when each operation is followed by a rinse.

§§ 413.62—413.63 [Reserved]

§ 413.64 Pretreatment standards for existing sources.

Except as provided in 40 CFR 403.7 and 403.13, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR Part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No User introducing wastewater pollutants into publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total substitute for adequate treatment to achieve compliance with this standard.

(b) For a source discharging less than 38,000 liters (10,000 gal.) per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART F—CHEMICAL ETCHING AND MILLING FACILITIES DISCHARGING LESS THAN 38,000 LITERS PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, A | 5.0 | 2.7 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |

(c) For plants discharging 38,000 liters (10,000 gal.) or more per calendar day of electroplating process wastewater the following limitations shall apply:

---

SUBPART F—CHEMICALS ETCHING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 1.9 | 1.0 |
| Cu | 4.5 | 2.7 |
| Ni | 4.1 | 2.6 |
| Zn | 4.2 | 2.6 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |
| Total metals | 10.5 | 6.8 |

(d) Alternatively, the following mass-based standards are equivalent to and may apply in place of those limitations specified under paragraph (c) of this section upon prior agreement between a source subject to these standards and the publicly owned treatment works receiving such isolated wastes.

SUBPART F—CHEMICAL ETCHING AND MILLING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/SQ M-OPERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 74 | 39 |
| Cu | 176 | 105 |
| Ni | 160 | 100 |
| Zn | 273 | 156 |
| Pb | 164 | 102 |
| Cd | 23 | 16 |
| Total metals | 410 | 267 |

(e) For wastewater sources regulated under paragraph (c) of this section, the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong

## § 413.70

chelating agents, after reduction of hexavalent chromium wastes, and after neutralization using calcium oxide (or hydroxide) the following limitations shall apply:

SUBPART F—CHEMICAL ETCHING AND MILLING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T................................. | 1.9 | 1.0 |
| Cu..................................... | 0.6 | 0.4 |
| Cd..................................... | 1.2 | 0.7 |
| TSS................................... | 20.0 | 13.4 |
| pH.................................... | (1) | (1) |

¹ Within the range 7.5 to 10.0

(f) In addition to paragraphs (a) and (b) of this section, the following limitation shall apply for plants discharging less than 38,000 l (10,000 gal) per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Milligrams per liter (mg/l) Maximum for any 1 day |
|---|---|
| TTO.................................. | 4.57 |

(g) In addition to paragraphs (a), (d), and (e) of this section, the following limitation shall apply for plants discharging 38,000 l (10,000 gal) or more per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Milligrams per liter (mg/l) Maximum for any 1 day |
|---|---|
| TTO.................................. | 2.13 |

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) of this section, the following shall apply: An existing source submitting a certification in lieu of monitoring pursuant to § 413.03 of this regulation must implement the toxic organic management

## 40 CFR Ch. I (7-1-92 Edition)

plan approved by the control authority.

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32464, July 15, 1983; 48 FR 43681, Sept. 26, 1983]

### Subpart G—Electroless Plating Subcategory

**§ 413.70 Applicability: Description of the electroless plating subcategory.**

The provisions of this subpart apply to discharges resulting from the electroless plating of a metallic layer on a metallic or nonmetallic substrate.

**§ 413.71 Specialized definitions.**

For the purpose of this subpart:

(a) The term *sq m* ("sq. ft.") shall mean the area plated expressed in square meters (square feet).

(b) The term *electroless plating* shall mean the deposition of conductive material from an autocatalytic plating solution without application of electrical current.

(c) The term *operation* shall mean any step in the electroless plating process in which a metal is deposited on a basis material and which is followed by a rinse; this includes the related operations of alkaline cleaning, acid pickle, and stripping, when each operation is followed by a rinse.

**§§ 413.72—413.73 [Reserved]**

**§ 413.74 Pretreatment standards for existing sources.**

Except as provided in 40 CFR 403.7 and 403.13, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No User introducing wastewater pollutants into publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total

## Environmental Protection Agency

substitute for adequate treatment to achieve compliance with this standard.

(b) For a source discharging less than 38,000 liters (10,000 gal) per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART G—ELECTROLESS PLATING FACILITIES DISCHARGING LESS THAN 38,000 LITERS PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,A................................. | 5.0 | 2.7 |
| Pb..................................... | 0.6 | 0.4 |
| Cd..................................... | 1.2 | 0.7 |

(c) For plants discharging 38,000 l (10,000 gal) or more per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART G—ELECTROLESS PLATING FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T.................................. | 1.9 | 1.0 |
| Cu..................................... | 4.5 | 2.7 |
| Ni...................................... | 4.1 | 2.6 |
| Cr...................................... | 7.0 | 4.0 |
| Zn..................................... | 4.2 | 2.8 |
| Pb..................................... | 0.6 | 0.4 |
| Cd..................................... | 1.2 | 0.7 |
| Total metals........................ | 10.5 | 6.8 |

(d) Alternatively, the following mass-based standards are equivalent to and may apply in place of those limitations specified under paragraph (c) of this section subject to these standards and the publicly owned treatment works receiving such regulated wastes:

SUBPART G—ELECTROLESS PLATING FACILITIES DISCHARGING 38,000 LITERS PER DAY PSES LIMITATIONS (MG... ERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T.................................. | 74 | |
| Cu..................................... | 176 | |
| Ni...................................... | 160 | |
| Cr...................................... | 273 | |
| Zn..................................... | 164 | |
| Pb..................................... | 23 | |
| Cd..................................... | 47 | |
| Total metals........................ | 410 | |

(e) For wastewater sources regulated under paragraph (c) of this section the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong chelating agents, after reduction of hexavalent chromium wastes, and after neutralization using calcium oxide (or hydroxide) the following limitations shall apply:

SUBPART G—ELECTROLESS PLATING FACILITIES DISCHARGING LESS THAN 38,000 LITERS PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN,T.................................. | 1.9 | 1.0 |
| Pb..................................... | 0.6 | 0.4 |
| Cd..................................... | 1.2 | 0.7 |
| TSS................................... | 20.0 | 13.4 |
| pH.................................... | (1) | (1) |

¹ Within the range 7.5 to 10.0

(f) In addition to paragraphs (a) and (b) of this section, the following limitation shall apply for plants discharging less than 38,000 l (10,000 gal) per

## § 413.80

calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day |
|---|---|
|  | Milligrams per liter (mg/l) |
| TTO | 4.57 |

(g) In addition to paragraphs (a), (d), and (e) of this section, the following limitation shall apply for plants discharging 38,000 1 (10,000 gal) or more per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day |
|---|---|
|  | Milligrams per liter (mg/l) |
| TTO | 2.13 |

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) of this section, the following shall apply: An existing source submitting a certification in lieu of monitoring pursuant to § 413.03 of this regulation must implement the toxic organic management plan approved by the control authority.

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 et seq., as amended by the Clean Water Act of 1977, Pub. L. 95-217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32464, July 15, 1983; 48 FR 43681, Sept. 26, 1983]

## Subpart H—Printed Circuit Board Subcategory

### § 413.80 Applicability; Description of the printed circuit board subcategory.

The provisions of this subpart apply to the manufacture of printed circuit boards, including all manufacturing operations required or used to convert an insulating substrate to a finished printed circuit board. The provisions set forth in other subparts of this category are not applicable to the manufacture of printed circuit boards.

### 40 CFR Ch. I (7-1-92 Edition)

### § 413.81 Specialized definitions.

For the purpose of this subpart:

(a) The term *sq ft* ("*sq m*") shall mean the area of the printed circuit board immersed in an aqueous process bath.

(b) The term *operation* shall mean any step in the printed circuit board manufacturing process in which the board is immersed in an aqueous process bath which is followed by a rinse.

### §§ 413.82—413.83 [Reserved]

### § 413.84 Pretreatment standards for existing sources.

Except as provided in 40 CFR 403.7 and 403.13, any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR part 403 and achieve the following pretreatment standards for existing sources (PSES):

(a) No user introducing wastewater pollutants into a publicly owned treatment works under the provisions of this subpart shall augment the use of process wastewater or otherwise dilute the wastewater as a partial or total substitute for adequate treatment to achieve compliance with this standard.

(b) For a source discharging less than 38,000 liters (10,000 gal) per calendar day of electroplating process wastewater the following limitations shall apply:

SUBPART H—PRINTED CIRCUIT BOARD FACILITIES DISCHARGING LESS THAN 38,000 LITERS PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, A | 5.0 | 2.7 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |

(c) For plants discharging 38,000 liters (10,000 gal) or more per calendar day of electroplating process wastewater the following limitations shall apply:

---

## Environmental Protection Agency

SUBPART H—PRINTED CIRCUIT BOARD FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 1.9 | 1.0 |
| Cu | 4.5 | 2.7 |
| Ni | 4.1 | 2.6 |
| Zn | 7.0 | 4.0 |
| Pb | 0.6 | 0.4 |
| Cd | 1.2 | 0.7 |
| Total metals | 10.5 | 6.8 |

(d) Alternatively, the following mass-based standards are equivalent to those limitations specified under paragraph (c) of this section upon prior agreement between a source subject to these standards and the publicly owned treatment works receiving such regulated wastes:

SUBPART H—PRINTED CIRCUIT BOARD FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/SQ M-OPERATION)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 169 | 89 |
| Cu | 401 | 241 |
| Ni | 365 | 229 |
| Zn | 623 | 356 |
| Pb | 374 | 232 |
| Cd | 53 | 36 |
| Total metals | 935 | 609 |

(e) For wastewater sources regulated under paragraph (c) of this section, the following optional control program may be elected by the source introducing treated process wastewater into a publicly owned treatment works with the concurrence of the control authority. These optional pollutant parameters are not eligible for allowance for removal achieved by the publicly owned treatment works under 40 CFR 403.7. In the absence of strong chelating agents, after reduced hexavalent chromium using … after neutralization using … oxide (or hydroxide) the following limitations shall apply:

SUBPART H—PRINTED CIRCUIT BOARD FACILITIES DISCHARGING 38,000 LITERS OR MORE PER DAY PSES LIMITATIONS (MG/L)

| Pollutant or pollutant property | Maximum for any 1 day | Average of daily values for 4 consecutive monitoring days shall not exceed |
|---|---|---|
| CN, T | 1.9 | 0.6 |
| Cd | 1.2 |  |
| TSS |  | 20.0 |
| pH |  | (1) |

¹ Within the range 7.5 to 10.0.

(f) In addition to paragraphs (a) and (b) the following limitation shall apply for plants discharging less than 38,000 1 (10,000 gal) per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day |
|---|---|
|  | Milligrams per liter (mg/l) |
| TTO |  |

(g) In addition to paragraphs (a), (d), and (e) the following limitation shall apply for plants discharging 38,000 1 (10,000 gal) or more per calendar day of electroplating process wastewater:

| Pollutant or pollutant property | Maximum for any 1 day |
|---|---|
|  | Milligrams per liter (mg/l) |
| TTO |  |

(h) In addition to paragraphs (a), (b), (c), (d), (e), (f), and (g) of this section, the following shall apply: An existing source submitting a certification in lieu of monitoring pursuant to § 413.03 of this regulation must implement the toxic organic management

**Pt. 414**

plan approved by the control authority.

(Secs. 301, 304, 306, 307, 308, and 501 of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1251 *et seq.*, as amended by the Clean Water Act of 1977, Pub. L. 95–217))

[46 FR 9467, Jan. 28, 1981, as amended at 48 FR 32485, July 15, 1983; 48 FR 43681, Sept. 26, 1983]

## PART 414—ORGANIC CHEMICALS, PLASTICS, AND SYNTHETIC FIBERS

### Subpart A—General

Sec.
414.10 General definitions.
414.11 Applicability.
414.12 Compliance date for pretreatment standards for existing sources (PSES).

### Subpart B—Rayon Fibers

414.20 Applicability; description of the rayon fibers subcategory.
414.21 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).
414.22 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]
414.23 Effluent limitations representing the degree of effluent reduction attainable by the application of best available technology economically achievable (BAT).
414.24 New source performance standards (NSPS).
414.25 Pretreatment standards for existing sources (PSES).
414.26 Pretreatment standards for new sources (PSNS).

### Subpart C—Other Fibers

414.30 Applicability; description of the other fibers subcategory.
414.31 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).
414.32 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]

**40 CFR Ch. I (7-1-92 Edition)**

Sec.
414.33 Effluent limitations representing the degree of effluent reduction attainable by the application of the best available technology economically achievable (BAT).
414.34 New source performance standards (NSPS).
414.35 Pretreatment standards for existing sources (PSES).
414.36 Pretreatment standards for new sources (PSNS).

### Subpart D—Thermoplastic Resins

414.40 Applicability; description of the thermoplastic resins subcategory.
414.41 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).
414.42 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]
414.43 Effluent limitations representing the degree of effluent reduction attainable by the application of best available technology economically achievable (BAT).
414.44 New source performance standards (NSPS).
414.45 Pretreatment standards for existing sources (PSES).
414.46 Pretreatment standards for new sources (PSNS).

### Subpart E—Thermosetting Resins

414.50 Applicability; description of the thermosetting resins subcategory.
414.51 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).
414.52 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]
414.53 Effluent limitations representing the degree of effluent reduction attainable by the application of the best available technology economically achievable (BAT).
414.54 New source performance standards (NSPS).
414.55 Pretreatment standards for existing sources (PSES).
414.56 Pretreatment standards for new sources (PSNS).

---

**Environmental Protection Agency**

### Subpart F—Commodity Organic Chemicals

414.60 Applicability; description of the commodity organic chemicals subcategory.
414.61 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).
414.62 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]
414.63 Effluent limitations representing the degree of effluent reduction attainable by the application of the best available technology economically achievable (BAT).
414.64 New source performance standards (NSPS).
414.65 Pretreatment standards for existing sources (PSES).
414.66 Pretreatment standards for new sources (PSNS).

### Subpart G—Bulk Organic Chemicals

414.70 Applicability; description of the bulk organic chemicals subcategory.
414.71 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).
414.72 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]
414.73 Effluent limitations representing the degree of effluent reduction attainable by the application of the best available technology economically achievable (BAT).
414.74 New source performance standards (NSPS).
414.75 Pretreatment standards for existing sources (PSES).
414.76 Pretreatment standards for new sources (PSNS).

### Subpart H—Specialty Organic Chemicals

414.80 Applicability; description of the specialty organic chemicals subcategory.
414.81 Effluent limitations representing the degree of effluent reduction attainable by the application of the best practicable control technology currently available (BPT).

Sec.
414.82 Effluent limitations representing the degree of effluent reduction attainable by the application of the best conventional pollutant control technology (BCT). [Reserved]
414.83 Effluent limitations representing the degree of effluent reduction attainable by the application of the best available technology economically achievable (BAT).
414.84 New source performance standards (NSPS).
414.85 Pretreatment standards for existing sources (PSES).
414.86 Pretreatment standards for new sources (PSNS).

### Subpart J—Direct Discharge Point Sources That Use End-of-Pipe Biological Treatment

414.90 Applicability; description of the sub-category of direct discharge point sources that use end-of-pipe biological treatment.
414.91 Toxic pollutant effluent limitations and standards for direct discharge point sources that use end-of-pipe biological treatment.

### Subpart J—Direct Discharge Point Sources That Do Not Use End-of-Pipe Biological Treatment

414.100 Applicability; description of the subcategory of direct discharge point sources that do not use end-of-pipe biological treatment.
414.101 Toxic pollutant effluent limitations and standards for direct discharge point sources that do not use end-of-pipe biological treatment.

APPENDIX A TO PART 414—NON-COMPLEXED METAL-BEARING WASTE STREAMS AND CYANIDE-BEARING WASTE STREAMS
APPENDIX B TO PART 414—COMPLEXED METAL-BEARING WASTE STREAMS

AUTHORITY: Secs. 301, 304, 306, 307, and 501, Pub. L. 92-500, 86 Stat. 816, Pub. L. 95-217, 91 Stat. 156, Pub. L. 100-4, 101 Stat. (33 U.S.C. 1311, 1314, 1316, 1317, and 1361).

SOURCE: 52 FR 42568, Nov. 5, 1987, unless otherwise noted.

### Subpart A—General

**§ 414.10 General definitions.**

As used in this part:

(a) Except as provided in this regulation, the general definitions, abbreviations and methods of analysis set forth in part 401 of this chapter shall apply to this part.



## AFFIDAVIT OF JONATHAN VALENTINE EGLE

STATE OF MICHIGAN )
                )ss.
COUNTY OF WAYNE   )

      I, Jonathan Valentine Egle, being first duly sworn, depose and state as follows:

      1.     That I am the owner of Production Plating, Inc.

      2.     That Production Plating, Inc. is located at 23120 Gratiot Avenue, Eastpointe, Michigan.

      3.     That Production Plating, Inc. employs approximately 36 employees.

      4.     That Production Plating, Inc. caters to the aircraft, aerospace industry by processing military components for the United States Government.

      5.     That the military components are primarily fighter aircraft components.

      6.     That the fighter aircraft components are utilized in daily flight operations.

      7.     That the fighter aircraft components are integral parts of military aircraft owned and operated by the United States Government.

      8.     That Production Plating, Inc. has held United States Government Defense Department contracts for 18 years.

      9.     That the United States Government Defense Department contracts are protected by the National Security Act.

      10.     That I have read paragraphs 17 through 21 of the In Re: Emergency Motion to Allow Production Plating, Inc. to Discharge Pretreated Wastewater in Compliance with All Applicable Effluent Limitations filed on behalf of Production Plating, Inc. and each

-1-

and every one of said paragraphs are true.

11.    That if Production Plating, Inc. is not able to discharge processed wastewater into the sewer system, Production Plating, Inc. will cease operations.

12.    That if Production Plating, Inc. ceases operations, there is no other company in the continental United States able to produce the parts that Production Plating, Inc. has been and is producing for the United States Government.

13.    That the plating operations of Production Plating, Inc. are proprietary in nature to myself and Production Plating, Inc.

14.    That the proprietary operations of Production Plating, Inc. are not capable of licensure by other plating operations.

15.    That if Production Plating, Inc. ceases operations, military components that are utilized in everyday flight operations of the United States Government will not be produced.

_____
JONATHAN VALENTINE EGLE

Subscribed and sworn to before me
this _____ day of March, 1993.

_____
CATHY JO WILLIAMS, Notary Public
Macomb County, Michigan acting in
Wayne County, Michigan
My commission expires:  8/4/96

-2-





*Detroit Water and Sewerage Department*
*Industrial Waste Control*
*303 South Livernois*
*Detroit, Michigan 48209*
*(313) 297-9400*

*Coleman A. Young, Mayor*
*City of Detroit*

March 18, 1992

Mr. John Egle
Production Plating, Inc.
23120 Gratiot
East Detroit, Michigan  48021

Dear Mr. Egle:

Re:  Modification(s) to Detroit Water and Sewerage Department
     Wastewater Discharge Permit No. 021-009

The Waste Discharge Permit No. 021-009 has been modified to incorporate the dilution effect of non-contact cooling and sanitary water discharge along with process wastewater.  These changes been made as a result of a comprehensive inspection conducted on March 6, 1992.

A copy of the modified permit in its entirety is enclosed.  Please note the changes, verify them and replace the current permit in your possession with the modified one enclosed herewith.

Should you have any questions or need clarification, please contact Mr. Ketan Desai of the Industrial Waste Control Division, Permits Section, at 297-9448 or myself at 297-9401.

Sincerely yours,

Stephen J. Kuplicki
Manager, IWC

SJK/KD/gc
Enclosure



*Detroit Water and Sewerage Department*
*Industrial Waste Control*
*303 South Livernois*
*Detroit, Michigan 48209*
*(313) 297-9400*

*Coleman A. Young, Mayor*
*City of Detroit*

## DETROIT

### WATER AND SEWERAGE DEPARTMENT

WASTEWATER DISCHARGE PERMIT – TYPE 2

Section A:   <u>General Information:</u>          Permit No.:   021–009

Company Name:    Production Plating, Inc.

Premise Address:  23120 Gratiot

City:        East Detroit          , MI      Zip Code:  48021

Mailing Address:  Same

City:                    , MI      Zip Code:

Primary Standard Industrial Classification (SIC) Code:  3471

Other SIC Codes:

The above Industrial User is authorized to discharge industrial wastewater to the City of Detroit sewer system in compliance with the City's Wastewater Discharge Ordinance or equivalent local ordinance and any applicable provisions of federal or state law or regulation, and in accordance with discharge point(s), effluent limitations, monitoring requirements, and other conditions set forth herein.

This permit is granted in accordance with the application filed in the office of the Director of DWSD, and in conformity with plans, specifications, and other data submitted to the City in support of the above application.

Effective Date:   February 11, 1988

Expiration Date:  March 1, 1993

Stephen J. Kuplicki
Manager, IWC

Production Plating, Inc.
23120 Gratiot
East Detroit, Michigan 48021

Revised
Date: 3/18/92
Page No. 2
Permit No. 021-009

## SECTION B: DISCHARGE LIMITATIONS AND MONITORING REQUIREMENTS

Federal Categorical Industries

Point Source Category: Electroplating      40 CFR part 413.14

Subcategory: Pretreatment Standards for Existing Sources

Representative Sampling Location: 22' E. of E. parking lot, 2' N. of S.
curb of Aurora Street.

The following **Concentration based standards**, considering effect of dilution,
shall be applied to this location.

| PARAMETER | 4-DAY AVERAGE (mg/l) | DAILY MAXIMUM (mg/l) | SELF-MONITORING REQUIRED (Y/N) |
|---|---|---|---|
| Total Arsenic (As) | --- | 1.0 | Y |
| Total Cadmium (Cd) | 0.17 | 0.29 | Y |
| Total Chromium (Cr) | 0.99 | 1.74 | Y |
| Total Copper (Cu) | 0.67 | 1.12 | Y |
| Total Cyanide ($CN_T$) | 0.25 | 0.47 | Y |
| Total Iron (Fe) | --- | 1000.0 | Y |
| Total Lead (Pb) | 0.099 | 0.15 | Y |
| Total Mercury (Hg) | --- | 0.005 | Y |
| Total Nickel (Ni) | 0.65 | 1.02 | Y |
| Total Silver (Ag) | --- | 2.0 | Y |
| Total Zinc (Zn) | 0.65 | 1.04 | Y |
| Total Metals | 1.69 | 2.60 | Y |
| Total Toxic Organics (TTO) | --- | 0.53 | Y |
| | | | |
| PCB - Arochlor 1260 | --- | 0.0005 | N |
| Total PCB | --- | 0.001 | N |
| | | | |
| Fats, Oil, Grease (FOG) | --- | 2000 | Y |
| Total Suspended Solids (TSS) | --- | 10000 | Y |
| Biochemical Oxygen Demand (BOD) | --- | 10000 | Y |
| Phosphorus (P) | | 500 | Y |

Other Requirements:

(1)  Compliance with the General Pollutant Prohibitions
(2)  pH between 5.0 - 10.0 (10.5 if alkalinity is less than 300 ppm)

All limitations are based on composite samples, except for FOG, CN, pH, and the
volatile fraction of TTO, which are based on grab samples.

See permit definition for above calculations.

Please refer also to Sections C and D-3 regarding self-monitoring and reporting
requirements.

Production Plating, Inc.
23120 Gratiot
East Detroit, Michigan   48021

Revised
Date:        3/18/92
Page No.     3
Permit No.   021-009

SECTION C:   **SELF-MONITORING REQUIREMENTS**

Monitoring frequencies for all significant industrial users will be determined based upon (i) their permit classification, and (ii) the discharge volume of process wastewater.

Permit Type 2 (Categorical Industries) shall be required to provide analytical data sufficient to demonstrate compliance with the applicable 4-day or monthly average, as defined in Section B of this permit, within a single reporting period.

1)  Monitoring periods for analytical testing shall be as follows:

   (x)  a.  **Facilities discharging >25,000 gpd process water shall provide one set of data (as defined above) per quarter.**
   ( )  b.  **Facilities discharging <25,000 gpd process water shall provide one set of data (as defined above) per six month period.**

2)  These results shall be submitted every six (6) months on or before June 30, and December 31 of each year as part of the Six Month Reporting Requirement.

3)  Sampling must be performed for all the parameters identified in Section B of this permit and sampled in accordance with approved methods. Sampling must be conducted at the location identified in Section B. Use of an alternate location is not acceptable unless concurrence is received from DWSD. Contact DWSD in writing if you wish to request use of an alternate location.

   Grab samples must be used for pH, cyanide, total phenols, fats, oil and grease, sulfide and volatile organics. All other pollutants should be collected by flow-proportional sampling techniques, or time composite sampling. A minimum of four (4) grab samples must be obtained for a representative time composite sample.

4)  If sampling performed by an Industrial User indicates a violation of the permit limitations, then

   (i)   Notification must be made to the Control Authority within 24 hours of becoming aware of the violation, and
   (ii)  Repeat the sampling and analysis, and submit the results of the repeat analysis to DWSD within 30 days of becoming aware of the violation.

5)  Any Industrial User who monitors any pollutants more frequently than defined in paragraph 1, shall include the results of this analysis within the six month report defined in paragraph 2.

6)  The minimum number of samples (one set) required for acceptable 4-day average are 4 daily samples, analyzed individually. The initial number of samples (one set) required to demonstrate compliance with a monthly average is 10 days (these do not have to be consecutive events) per month, unless the user demonstrates to the IPP-Engineer that a lesser sampling frequency can satisfy this requirement.

Production Plating, Inc.
23120 Gratiot
East Detroit, Michigan  48021

Revised
Date:        3/18/92
Page No.     4
Permit No.   021-009

SECTION D:   **COMPLIANCE REQUIREMENTS**

1) Compliance Agreement

   Should the permittee currently be under Compliance or Administrative Order and/or enter into a Compliance Agreement at a future date, that order or agreement shall automatically become a part of this permit.  Therefore, any requirement stipulated shall be adhered to as a permit requirement.

2) Slug Control/Spill Prevention Plan (SC/SPP)

   The permittee is required to submit a Slug Control/Spill Prevention Plan (SC/SPP) in accordance with City of Detroit guidelines, to provide protection against accidental discharges to the POTW.  If an acceptable Slug Control/Spill Prevention Plan has not been submitted, or if there are questions regarding your facility's status, the permittee should contact the Emergency Response Group at 297-9489.

   Note:  Please disregard this section if your facility has been granted an exemption from the Slug Control/Spill Prevention Plan requirement.

3) Reporting Requirements

   A Six Month Discharge Report shall be submitted biannually to the Department by June 30 and December 31 of each year.

   The report shall be signed, dated, and certified by an authorized representative of the Industrial User, or a registered professional engineer who is knowledgeable of the facility's discharge.

   This report shall include:

   (i)    Wastewater Analyses (see Section C)

   (ii)   Report whether the applicable pretreatment standards are being met on a consistent basis and, if not, what additional operation and maintenance practices and/or pretreatment construction is necessary to bring the Industrial User into compliance.

   (iii)  The following additional requirement.

          1) A Total Toxic Organic (TTO) analysis is required once per calendar year, to be submitted with a six month report.

          2) After an initial TTO analysis, as an alternative, a Toxic Organic Management Plan (TOMP) may be substituted.  Each six month report must contain a copy of the certification statement which is part of the TOMP.

          3) Your next Six-Month Report is due by June 30, 1992.

Company Name:   Production Plating, Inc.
                East Detroit, Michigan   48021

Revised      3/18/92
Permit No.   021-009
Page No.     5

## CONVERSION TO CONCENTRATION BASED LIMITS
### CONDSIDERING DILUTION EFFECT

Category:                  Electroplating 40 CFR 413.14

Subcategory/Process:       Pretreatment Standard for Existing Source

Total Discharge:           73,805 gallons per day

| Parameter | Federal Standard Concentration Based Limits (mg/l) | | Calculated Concentration Based Limits (mg/l) Considering Dilution Effect | |
|---|---|---|---|---|
| | Daily Max. | 30-Day Avg. | Daily Max. | 30-Day Avg. |
| Total Cadmium (Cd) | 1.12 | 0.7 | 0.29 | 0.17 |
| Total Chromium (Cr) | 7.0 | 4.0 | 1.74 | 0.99 |
| Total Copper (Cu) | 4.5 | 2.7 | 1.12 | 0.67 |
| Total Cyanide ($CN_T$) | 1.9 | 1.0 | 0.47 | 0.25 |
| Total Lead (Pb) | 0.6 | 0.4 | 0.15 | 0.099 |
| Total Nickel (Ni) | 4.1 | 2.6 | 1.02 | 0.65 |
| Total Zinc (Zn) | 4.2 | 2.6 | 1.04 | 0.65 |
| Total Metals | 10.5 | 6.8 | 2.60 | 1.69 |
| Total Toxic Organics (TTO) | 2.13 | --- | 0.53 | --- |

**PERMIT DEFINITION**

COMPANY NAME:  Production Plating, Inc.

PERMIT NO.:    021-009

1.  Facility and Process Description:

    This facility does nickel, copper, silver, gold, and zinc phosphating on
    aerospace, aircraft and military components.  Process consists of vapor
    degreasing, electrocleaning, rinse, rinse, acid cleaning, rinse, rinse,
    electroplating, rinse.

2.  Process Wastewater:

    Process wastewater generating operation is rinse from the plating lines and
    discharged to the sewer without any pretreatment.  In addition, non-contact
    cooling is combined with process rinse.  The sampling location represents
    the total plant flow that is process wastewater, non-contact cooling water,
    and sanitary water.  The discharge is continuous discharge.

3.  Applicable Classification:

    This  facility  is  classified  as  Categorical  Industrial  User  under
    40CFR413.14 Electroplating Category, Pretreatment Standards for Existing
    Sources, discharges more than 10,000 gpd.  Since facility is combining non-
    contact  cooling  and  sanitary  water  to  the  process  wastewater,  Combine
    Wastewater Formula (CWF) is applicable per General Pretreatment Regulations
    40CFR403.6(e).  The calculations to convert the Concentration Based Limits
    to Concentration Based Limits with Combine Wastewater Formula is derived as
    follows:

    Water Data*

    Process Wastewater Discharge                    – P = 18,320 gpd.
    Non-Contact Cooling and Sanitary                – D = 55,485 gpd.

    *Water consumption and discharge is based on December 1990 to December 1991
     water bills and discussion during comprehensive inspection conducted on
     March 6, 1992.

    FORMULA

    Permit Limit (CWF) mg/l

                        = Federal Limit mg/l x Dilution Factor

        Dilution Factor = $\dfrac{\text{Flow (total) - Flow (Dilution)}}{\text{Flow (total)}}$

                        = $\dfrac{\text{Process Flow}}{\text{Total Flow}}$    $\dfrac{P}{P + D}$

                        = $\dfrac{18,320}{18,320 + 55,485}$ = 0.248.



LAW OFFICES

## SEYBURN, KAHN, GINN,
## BESS, HOWARD AND DEITCH
PROFESSIONAL CORPORATION

2000 TOWN CENTER, SUITE 1500
SOUTHFIELD, MICHIGAN 48075-1195

TELEPHONE (313) 353-7620

BRUCE H. SEYBURN
BRUCE S. KAHN
JAMES M. GINN
BARRY R. BESS
JEFFREY L. HOWARD
LAURENCE B. DEITCH
JEFFREY A. ROBBINS
GORDON S. GOLD
MARK S. COHN
MARTIN A. BURNSTEIN
MICHAEL W. GROBBEL
 BE

KENNETH B. MORGAN
RICHARD C. BRUDER
FRED B. GREEN
TOVA G. SHABAN
ALAN M. STILLMAN
MARK A. BENTAS
PAUL D. KAPLAN
BETH S. GOTTHELF
NANCY S. MACHELSKI
FRANKLYN M. KRIEGER
LAWRENCE C. ATORTHY
STUART LEE SHERMAN

COUNSEL
GORDON S. SMITH

FACSIMILE
(313) 353-3727
(313) 353-4463

April 2, 1992

Mr. Stephen J. Kuplicki, P.E.
Manager
Industrial Waste Control
Livernois Center
303 S. Livernois
Detroit, Michigan 48209-3070

> Re:   Production Plating, Inc.
>       Permit Modification

Dear Mr. Kuplicki:

We are the attorneys for and this letter is written on behalf of Production Plating, Inc. located at 23120 Gratiot Avenue, East Detroit, Michigan 48021, Wastewater Discharge Permit No. 021-009.

On March 30, 1992, my client received your letter dated March 18, 1992, informing it that the Detroit Water and Sewerage Department ("DWSD") was modifying Production Plating's wastewater discharge permit "to incorporate the dilution affect of non-contact cooling and sanitary water discharged along with process wastewater. These changes [have] been made as a result of a comprehensive inspection conducted on March 6, 1992."

On March 6, 1992, Mr. Ketan Desai inspected the Production Plating facility. Production Plating at that time cooled its rectifiers with water. Mr. Desai and Mr. Jonathan Egle discussed the effect of water-cooled rectifiers. Following that discussion, Mr. Egle <u>immediately</u> converted the rectifiers to air-cooled. As a result, less than 1%, if any, of the non-contact cooling water is discharged along with process wastewater. Needless to say, Production Plating water usage has been substantially reduced since the conversion to approximately 9,000 gallons/day. Production Plating is taking daily readings of its water meter to verify this

LAW OFFICES
SEYBURN, KAHN, GINN,
BESS, HOWARD AND DEITCH
PROFESSIONAL CORPORATION

Mr. Stephen J. Kuplicki, P.E.
April 2, 1992
Page Two

reduction and will forward to you a copy of the readings once
**Production Plating has collected two weeks worth of data.**

Based on this cessation of non-contact cooling water discharge
and the reduction of water usage below 10,000 gallons per day,
Production Plating requests that its permit be modified to (a)
eliminate the reduction of effluent limits based on a combined
treatment formula and (b) correct the permit to show that the
facility discharges less than 10,000 gallons per day.

If you have any questions regarding this matter, please
contact me. Thank you for your prompt attention.

Sincerely,

SEYBURN, KAHN, GINN,
BESS, HOWARD & DEITCH, P.C.

Beth Gotthelf

BG:mlm

cc:   Jonathan Egle
      Bahi Habib
      Ketan Desai





CERTIFIED MAIL

Detroit Water and Sewerage Department
Industrial Waste Control
303 South Livernois
Detroit, Michigan 48209
(313) 297-9400

Coleman A. Young, Mayor
City of Detroit

February 24, 1993

Mr. Jonathan Egle
Production Plating Company
23120 Gratiot
East Pointe, MI 48021

Re: Sample Location - Information Discrepancy

Dear Mr. Egle:

In reference to your verbal inquiry regarding a possibility of change to your sample location. An inspection was conducted by IWC and City of East Pointe officials on February 4, 1993. While Production Plating representative had previously indicated that the inside proposed sampling box discharges only regulated stream, the inspection revealed that several unregulated streams which dilute the process water flowing into the proposed sampling box:

   a) Two (2) lines from the cooling systems (tank A-7 and C-5)(chiller water being discharged with regulated stream).

   b) Two (2) lines from sinks (One on north side plating line another at center of the shop).

   c) One (1) line from drinking fountain (North side of north plating line).

   d) Two  (2) lines from the steam return (North side plating line.

In addition to above,  there was a discharge from a 4" PVC overflow pipe connected to the Passivation tank. This overflow carries a concentrated solution which cannot be discharged without proper treatment.

In order for the Department to act promptly any request to modify a sampling location the industrial user must satisfy the requirement for an acceptable sampling location as follows:

I) **A sample location which represents only process wastewater without any dilution for Federal Categorical Standards.**

II) **A sample location which is representative for purpose of necessary compliance with Local Standards and location which is equipped with a flow measuring device to measure total plant flow.**

III) **Removal or rerouting of all the lines which discharge chemicals directly to the sewer without any pretreatment as indicated in paragraph 2 to provide for treatment or elimination of the discharge.**

**Should you have any questions, please call Mr. K. Desai at 297-9419.**

Sincerely,

Ireneo Valera, P.E
Engineer
Industrial Waste Control


cc: **Mr. P. Tannian**
    **Mr. A. Williams**
    **Mr. R. Haribar**
    **file**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
        Plaintiff and
        Counter-Defendant,
                            Civil Action No. 77-71100

v.
                            Honorable John Fiekens

STATE OF MICHIGAN,
        Defendant and Cross-
        Plaintiff and Cross-    **BRIEF IN SUPPORT OF IN RE:**
        Defendant                   **EMERGENCY MOTION TO ALLOW**
                               **PRODUCTION PLATING, INC., TO**
                               **DISCHARGE PRETREATED**
                             **WASTEWATER IN COMPLIANCE**
                             **WITH ALL APPLICABLE**
v.                                **EFFLUENT LIMITATIONS**
CITY OF DETROIT, a Municipal
corporation and the DETROIT WATER
AND SEWERAGE DEPARTMENT,
        Defendant and
        Cross-Plaintiff

v.
ALL COMMUNITIES AND AGENCIES UNDER
CONTRACT WITH THE CITY OF DETROIT
FOR SEWERAGE TREATMENT SERVICES,
 - IN RE: PRODUCTION PLATING, INC.

v.
THE DETROIT AREA LAUNDRY POLLUTION CONTROL
GROUP, a Voluntary Non-Profit Unincorporated
Association, AND ITS MEMBERS, on its own Behalf
and on Behalf of All Those Other Commercial, Industrial
and Linen Laundries Similarly Situated Who Are Served
by the Detroit Water & Sewerage Department,

v.
THE FOOD AND ALLIED INDUSTRIES COMMITTEE
OF METROPOLITAN DETROIT, a Voluntary
Non-Profit Unincorporated Association,
AND ITS MEMBERS,

v.
THE GREATER DETROIT CHAMBER OF COMMERCE,
a Michigan non-profit corporation, and ITS
MEMBERS

**BRIEF IN SUPPORT OF IN RE: EMERGENCY MOTION TO ALLOW
PRODUCTION PLATING, INC., TO
DISCHARGE PRETREATED WASTEWATER IN
COMPLIANCE WITH ALL APPLICABLE EFFLUENT LIMITATIONS**

<u>BRIEF IN SUPPORT OF IN RE: EMERGENCY MOTION
TO ALLOW PRODUCTION PLATING, INC.,
TO DISCHARGE PRETREATED WASTEWATER IN COMPLIANCE
WITH ALL APPLICABLE EFFLUENT LIMITATIONS</u>

Due to the expedited manner in which the Defendant, Production Plating, Inc., (hereinafter "PPI") prays that this Motion be heard. PPI will not over-burden this Court with a lengthy restatement of the facts already contained in its Motion and pursuant to Detroit City Ordinance 23-86 and Local Rules 7.1(e)(3), PPI hereby requests that this Honorable Court grant its Emergency Motion to Allow Discharge of Pretreated Wastewater in Compliance with all Applicable Effluent Limitations.

Respectfully submitted,

_____
PETER W. MACUGA (P28114)

_____
STEVEN D. LIDDLE (P45110)

_____
MARTA E. ROSS, M.D. (P45093)
Attorneys for Defendant PPI
3900 Penobscot Building
Detroit, MI 48226
(313) 965-0045

Dated: 3/22/93

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
       Plaintiff and
       Counter-Defendant,          Civil Action No. 77-71100

                              Honorable John Fiekens

v.
STATE OF MICHIGAN,
       Defendant and Cross-
       Plaintiff and Cross-
       Defendant

v.
CITY OF DETROIT, a Municipal
corporation and the DETROIT WATER
AND SEWERAGE DEPARTMENT,
       Defendant and
       Cross-Plaintiff

v.
ALL COMMUNITIES AND AGENCIES UNDER
CONTRACT WITH THE CITY OF DETROIT
FOR SEWERAGE TREATMENT SERVICES,
 - IN RE: PRODUCTION PLATING, INC.

v.
THE DETROIT AREA LAUNDRY POLLUTION CONTROL
GROUP, a Voluntary Non-Profit Unincorporated
Association, AND ITS MEMBERS, on its own Behalf
and on Behalf of All Those Other Commercial, Industrial
and Linen Laundries Similarly Situated Who Are Served
by the Detroit Water & Sewerage Department,

v.
THE FOOD AND ALLIED INDUSTRIES COMMITTEE
OF METROPOLITAN DETROIT, a Voluntary
Non-Profit Unincorporated Association,
AND ITS MEMBERS,

v.
THE GREATER DETROIT CHAMBER OF COMMERCE,
a Michigan non-profit corporation, and ITS
MEMBERS

## PROOF OF SERVICE

STATE OF MICHIGAN)
COUNTY OF WAYNE  )

    The undersigned certifies that the foregoing documents:

1.    Motion to Allow Production Plating, Inc. to Discharge
    Pretreated Wastewater in Compliance With all Applicable
    Effluent Limitations;

2.  Brief in Support of said Motion; and

3.  This Proof of Service

were served upon Avery K. Williams at the offices of Cooper, Fink & Zausmer located at 1917 Penobscot Building, Detroit, Michigan 48226 by Hand Delivery this 22nd day of March, 1993.

_____ M. Bennett

**MARGARET BENNETT**
Notary Public, Wayne County, Michigan
My Commission Expires September 12, 1994