UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff and Counter-Defendant,

vs.                                                                                        Civil Action No. 77-71100
                                                                                             Honorable John Feikens

STATE OF MICHIGAN,

    Defendant and Cross-Plaintiff
    And Cross-Defendant,

vs.

CITY OF DETROIT, a municipal corporation, and
DETROIT WATER AND SEWERAGE DEPARTMENT,

    Defendant and Cross-Plaintiff,

vs.

ALL COMMUNITIES AND AGENCIES UNDER
CONTRACT WITH THE CITY OF DETROIT FOR
SEWAGE TREATMENT SERVICES,

*et al.*

_____

**OPINION AND ORDER APPROVING CONTRACTS AND ORDERING
REMEDY FOR WHOLESALE CUSTOMERS AS TO CONTRACT WS-623**

       The Mayor of Detroit has requested that I use this Court's equitable power to approve five contracts with the Detroit Water and Sewerage Department (DWSD): WS-650; WS-657; WS-651; WS-623; and DWS-812C.  For the reasons below, I exercise my equitable power to approve the contracts, but require that by June 19, 2006, DWSD report to this Court on its proposed method of remedying the approximately $500,000 overcharge to wholesale customers for contract WS-623.

**FACTUAL AND PROCEDURAL BACKGROUND**

In late February, the Mayor of Detroit requested that I approve five contracts, four of which deal with water main work in the City of Detroit and one of which deals with improvements to the Imlay Pumping Station. (Request dated Feb. 27, 2006.) His request indicated he had intended to use the power of his Special Administratorship to approve these contracts, but my termination in January 2006 of that position due to excellent progress toward compliance had prevented him from carrying through with these plans. Id. The Infrastructure Management Group examined contracts WS-623 and DWS-812C in accordance with prior court orders, and it recommended going forward with both. (Filing of Mar. 30, 2006.)

Wayne and Oakland Counties filed objections to my approval of these contracts. After further briefing, I ruled that Wayne County's objections could not be considered because it is not a "water supply customer" and therefore cannot be injured by this Court's actions on the five contracts. (Order of Apr. 28, 2006, slip op. at 2.) Additionally, because contracts WS-650, WS-657, and WS-651 involve work to elements of the system that serve only Detroit and were not billed to any wholesale customers, I found Oakland County lacked standing to object to those three contracts.[1] Id.

Briefing in this case has brought out some important facts as to contract WS-623. It appears that although the work on contract WS-623 applied only to water infrastructure that services City residents exclusively, construction charges stemming from that contract were in fact billed as common costs, and therefore, suburban customers paid approximately $500,000

---

[1] Oakland did not object to that ruling in later filings. (Br. of May 10, 2006.) I note that whether Oakland County may speak for other parties in this case (cities within Oakland County) is not relevant to my decision here, and therefore I make no finding on that point.

towards improvements that were not a cost of their service. (Detroit Br. May 10, 2006.) Detroit argues that this is not an unreasonable judgment given the overall amount of rates.

**ANALYSIS**

My analysis is divided into several questions. First, I must decide whether I have to consider Wayne County's objections, by deciding whether their new arguments for standing can prevail. I find they do not, and therefore, I cannot consider Wayne County's objections to the request that I approve these contracts. I then turn to the arguments that I do not have the power to approve these contracts because they pertains to the water infrastructure only, and similarly, the arguments that it is beyond my power to order a remedy for the suburban customers who should not have been charged for the work done pursuant to WS-623. Finally, I turn to objections that apply to WS-623 and DWS-812C, namely that I should not use my equitable power to approve these contracts.

**A. Whether Wayne Has Standing as a Ratepayer to Object**

Wayne County has filed materials challenging my ruling that they lack standing to object, because while it is not a wholesale water customer, it is a retail water customer of DWSD. (Br. of May 5, 2006.) I note that this would also be true of nearly every home and business in the entire region, so that allowing Wayne County standing to object on this basis would also require me to allow any individual in the region to become a party to this case.

Allowing any retail ratepayer to object to any contract would be creating "ratepayer standing" – a concept analogous to taxpayer standing, which the courts have consistently limited to unusual circumstances not present here. See, e.g., Massachusetts v. Mellon, 262 U.S. 447 (1923) ("interest in the moneys of the Treasury . . . is shared with millions of others; is

comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity."), quoted for this proposition by DaimlerChrysler Corp. v. Cuno, 2006 WL 1310731, 5, 2006 U.S. LEXIS 3956 (U.S. May 15, 2006).

Therefore, I reaffirm my prior holding that Wayne County does not have standing to object to these contracts based on its status as a retail customer; it continues to have standing on those matters that affect it as a wholesale customer for sewage services.

**B. Whether My Power Extends to Approving WS-623 and Accompanying Remedy**

Oakland County argues that I do not have the power to approve contracts that relate only to water infrastructure and practices, because the Clean Water Act and Consent Judgments in this case are focused on ensuring sewer infrastructure and practices meet federal law. (Mar. 13, 2006 Br. at 3.) DWSD disagrees, arguing that this Court has previously found that some of the causes of non-compliance were structural in nature and correction of those problems required the power to affect practices (including contracting, personnel matters, and bonding) that reach into both the water and sewer side. (Oct. 26, 2005 Br. at 6-8.) DWSD has additionally filed the declarations of Bart Foster and John Joyner to the effect that the water and sewer sides of DWSD are intertwined in that they use similar support staff for contracting and in their payments and rate calculations, a setup that helps ensure efficiencies. (See Declarations filed of May 9, 2005.) I also note that DWSD's bond ratings, which are key to its compliance with the projects outlined in the consent decree, are unitary in that they are affected by both the water and sewer projects and rates. Through the years I have worked on this case, the most effective steps toward compliance (the hiring of Victor Mercado and of the Infrastructure Management Group), have

affected both the water and sewer infrastructure and personnel.  It is necessary for me to be able to take actions on both sides of the system in order to ensure that DWSD is in a position to regularly comply with federal and state law.  Therefore, I find that I have jurisdiction to approve contracts for water infrastructure.

I previously found that I have the power to order a look-back when it is necessary to rectify a wrong created by a use of this Court's equitable power.  (Opinion and Order of Feb. 6, 2006, n1.)   Detroit asks me to use my equitable power to approve this contract in time for the repairs to be made before other road work must commence.  As in all uses of my equitable power, I must consider the "ordinary rule that one who seeks equity must do equity" as well as the requirement that I take into account "'fairness' in order to achieve a just and equitable result."  Pan American Petroleum & Transp. Co. v. United States, 273 U.S. 456, 508 (1927); Kansas v. Colorado, 543 U.S. 86, 96 (2004).  In this case, it would not be equitable, fair, or just to give judicial imprimatur to Detroit's decision to charge approximately half a million dollars to wholesale suburban customers for infrastructure that serves only the City.  Therefore, pursuant to the use of my equitable power in approving contract WS-623, I find that I can and must order some kind of remedy for the charges billed to the wholesale customers as part of contract WS-623.  By June 19, 2006, I ORDER DWSD to report to this Court how it intends to remedy this overcharge of the suburban customers.

## C. Whether this Court Should Act

Finally, Oakland County urges this Court not to act on the contracts, arguing that the normal City procedures should be used.  Before examining this further, I note I am pleasantly surprised by their position, since it indicates that Oakland and Wayne Counties have such

confidence in the Detroit City Council to represent their interests that they would prefer that body to a federal court without pressures of an electoral constituency. Such an expression of support for the Detroit City Council by suburban leaders is a step forward for increased cooperation, but in this instance, I choose to act. I do so because the long delay in payment for past work is essentially due to this Court's discontinuance of the Special Administratorship, which no party had requested. Such delays can create difficulty in DWSD's ability to procure cost-effective and competent contracting for other critical projects, as contractors are understandably reluctant to do work for an organization that does not pay them in a timely fashion. In addition, it is important that there be no further delays to the work of repairing mains before roadwork begins and getting security improvements in place. In the future, I am optimistic that the DWSD and the City of Detroit will speedily act on contracting matters to make this kind of intervention unnecessary while continuing the great progress made toward compliance.

**CONCLUSION**

For the reasons above, I APPROVE contracts WS-650; WS-657; WS-651; WS-623; and DWS-812C, and ORDER Detroit to report how it intends to remedy this overcharge of the suburban wholesale customers on or before June 19, 2006. **IT IS SO ORDERED.**

Date:  May 18, 2006                             s/John Feikens
                                                United States District Judge

> Proof of Service
>
> I hereby certify that the foregoing order was served on the attorneys/parties of record on May 18, 2006, by U.S. first class mail or electronic means.
>
>                                  s/Carol Cohron
>                                  Case Manager