UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                    Honorable Sean F. Cox

City of Detroit, *et al.*,                            Case No. 77-71100

    Defendants.
_____/

## **ORDER**

The United States Environmental Protection Agency ("EPA") initiated this action in 1977 against the City of Detroit ("the City") and the Detroit Water and Sewerage Department (the "DWSD"), alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. ("the Clean Water Act").  The violations, which are undisputed, involve the DWSD's wastewater treatment plant ("WWTP") and its National Pollutant Discharge Elimination System ("NPDES") permit.

As set forth in this Court's September 9, 2010 Opinion & Order (Docket Entry No. 2397):

> For the more than 34 years during which this action has been pending, the City and the DWSD have remained in a recurring cycle wherein the DWSD is cited for serious violations of its NPDES permit, the City and the DWSD agree to a detailed remedial plan aimed at compliance, but the DWSD is unable to follow the plan and is again cited for the same or similar violations.  Although this Court has taken various measures, designed to eliminate the various impediments to compliance that have been identified by experts and acknowledged by the City, those measures have proven inadequate to achieve sustained compliance.

(*Id.* at 1).

In September 2009, the DWSD was again unable to maintain compliance with its NPDES

1

permit and was again cited for violations by the Michigan Department of Environmental Quality ("DEQ"). In January of 2010, Detroit Mayor Dave Bing appointed a Chief Operating Officer who assumed the position of acting Director of the DWSD. Thereafter, the City worked with the DEQ to develop another plan for compliance and worked with Oakland County, Wayne County and Macomb County to resolve longstanding issues regarding the DWSD.

On July 8, 2011, the City and the DEQ entered into an Administrative Consent Order ("the ACO"), aimed at achieving long-term compliance with the DWSD's NPDES permit and the Clean Water Act. After the ACO was executed, the City filed a motion asking the Court to order that the requirements set forth in the ACO are substituted for the requirements of the Second Amended Consent Judgment, find that the DWSD has made substantial progress toward achieving full compliance with its NPDES permit and the Clean Water Act, and dismiss this case.

As explained in detail in this Court's September 9, 2010 Opinion & Order, this Court denied that motion. In doing so, this Court noted that *after* executing the ACO on July 8, 2011, the DWSD self-reported serious violations of its NPDES permit to the DEQ. Thus, the City had not established that the DWSD has achieved even short-term compliance with the ACO and the Clean Water Act. In addition, this Court concluded that the extensive record in this case establishes that, unless more fundamental corrective measures are taken to address the institutional and bureaucratic barriers to compliance, sustained compliance with the Clean Water Act and the ACO will simply not occur. This Court further explained:

> Although the City has had ample opportunity to propose solutions to the root causes of noncompliance that were identified early on in this case, to date, it

> has not proposed or implemented a plan that has sufficiently addressed those root causes.
>
> To be fair, the City has been constrained in the measures it has proposed or implemented to date because the City is bound by various provisions of the City's Charter and ordinances, and by existing contracts, that prevent the City from making fundamental changes in the identified problem areas. This Court, however, has broad equitable power to order any relief necessary to achieve compliance with the Clean Water Act and this Court *is not* constrained by the provisions of the City's Charter or ordinances. Nevertheless, this Court is mindful that remedies that override state or local law should be narrowly tailored and that, to the extent possible, local officials should at least have the opportunity to devise their own solutions to remedy a violation of federal law.

(*Id*. at 2).

Accordingly, this Court ordered the Mayor of the City of Detroit (and/or his designee), the City Council President and President Pro Tem, and a current member of the Board of Water Commissioners ("BOWC") (to be chosen by the BOWC) to meet and confer and, within 60 days of the date of this order, propose a plan that addresses the root causes of non-compliance that are discussed in this Opinion & Order. (*Id*. at 44). The Court directed that, in making such recommendations to the Court, these individuals *shall not* be constrained by any local Charter or ordinance provisions or by the provisions of any existing contracts. Finally, the Court cautioned that "[i]f the local officials fail to devise and propose a workable solution to remedy the underlying causes of the recurrent violations of the Clean Water Act in this case, this Court will order a more intrusive remedy on its own." (*Id.* at 43).

Following this Court's September 9, 2010 Opinion & Order, the above individuals have been meeting and conferring in order to devise and propose a workable solution to remedy the underlying root causes of noncompliance ("the Root Cause Committee"). On November 2,

2011, the Root Cause Committee submitted a written proposed "Plan of Action" to the Special Master in this action, which the Special Master then submitted to the Court on that same date. (Docket Entry No. 2409).

## I.     The Court Adopts The Plan Proposed By The Root Cause Committee.

Having studied the Plan of Action proposed by the Root Cause Committee, the Court concludes that the Plan of Action adequately addresses the majority of the root causes of non-compliance that are outlined in this Court's September 9, 2011 Opinion & Order. As such, the Court **ADOPTS** the Plan of Action proposed by the Root Cause Committee (Ex. A to this Order), which includes a DWSD Procurement Policy (Ex. B to this Order), and **ORDERS** that the Plan of Action shall be implemented in order to remedy the recurring violations of the Clean Water Act in this case.

As the Committee noted in the Plan of Action, **the changes being ordered do not restructure the DWSD as a separate entity. The DWSD, and all of the assets of the DWSD, shall remain a department of the City of Detroit.**

## II.    The Court Concludes That The Plan Does Not Adequately Address CBA Issues And Orders Additional Relief Necessary For The DWSD To Achieve Short-Term And Long-Term Compliance.

DWSD employees are members of 20 different collective bargaining units, each of which has its own collective bargaining agreement ("CBA") that expires on June 30, 2012. (*See* Docket Entry No. 2409, Ex. C, Appx. 12). The Root Cause Committee reviewed the record in this case, and consulted with several outside sources, and concluded that "[i]t is evident from the various historical reports, and current conditions, that certain CBA provisions and work rules have limited DWSD from maintaining long-term environmental compliance." (Plan of Action at

4

3). The Root Cause Committee agreed that certain changes to existing CBAs need to occur. Despite earnest efforts of all members, however, the Committee could not agree on how to achieve the necessary changes.

Based on the record in this case, the Court concludes that certain CBA provisions and work rules are impeding the DWSD from achieving and maintaining both short-term and long-term compliance with its NPDES permit and the Clean Water Act. Given that the Committee was unable to agree on a proposed solution for remedying these impediments to compliance, this Court shall order its own remedy.

As the Root Cause Committee recognized, this Court may elect from several potential options in ordering a remedy to these impediments to compliance, including:

> (i) the approach provided in State legislation for emergency managers that would terminate all collective bargaining agreements; (ii) suspension of the duty to bargain for 5 years as provided in certain State emergency laws; (iii) establishing a regional authority as a new employer for DWSD employees; (iv) terminating the workforce so DWSD would start with a blank slate; (v) outsourcing plant operations so corporate representations or warranties of compliance could be enforced; and (vi) ordering that negotiations take place to address the various identified problems.

(Plan of Action at 3). The Court has carefully considered all options and concludes that the least intrusive means of effectively remedying these impediments to compliance is to: 1) keep all current CBAs that cover DWSD employees in force, but strike and enjoin those current CBA provisions or work rules that threaten short-term compliance; and 2) Order that, in the future, the DWSD shall negotiate and sign its own CBAs that cover only DWSD employees, and prohibit future DWSD CBAs from containing certain provisions that threaten long-term compliance.

Specifically, the Court hereby **ORDERS** that:

1. The Director of the DWSD, with the input and advice of union leadership, shall develop a DWSD employee training program, a DWSD employee assessment program, and a DWSD apprenticeship training program.

2. Any City of Detroit Executive Orders imposing furlough days upon City employees shall not apply to DWSD employees.

3. The DWSD shall act on behalf of the City of Detroit to have its own CBAs that cover DWSD employees ("DWSD CBAs"). DWSD CBAs shall not include employees of any other City of Detroit departments. The Director of the DWSD shall have final authority to approve CBAs for employees of the DWSD.

4. The Court hereby strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ("bump") into the DWSD based on seniority. Future DWSD CBAs shall adopt a seniority system for the DWSD that does not provide for transfer rights across City of Detroit Departments (ie., does not provide for "bumping rights" across city departments).

5. DWSD management must be able to explore all available means and methods to achieve compliance with its NPDES permit and the Clean Water Act. DWSD CBAs shall not prohibit subcontracting or outsourcing and the Court hereby strikes and enjoins any provisions in current CBAs that prohibit the DWSD from subcontracting or outsourcing.

6. DWSD CBAs shall provide that excused hours from DWSD work for union activities are limited to attending grievance hearings and union negotiations, with prior notification to DWSD management. The Court strikes and enjoins any current CBA provisions to the contrary.

7. DWSD CBAs shall include a three-year time period pertaining to discipline actions.

8. The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs

       shall include those revised employee classifications.

9.     DWSD CBAs shall provide that promotions in the DWSD shall be at the discretion of management and based upon skill, knowledge, and ability, and then taking seniority into account. The Court strikes and enjoins and current CBA provisions to the contrary.

10.    Past practices on operational issues shall not limit operational changes initiated by management with respect to DWSD CBAs.

11.    The Court strikes and enjoins any provisions in existing CBAs that prevent DWSD management from assigning overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management. DWSD CBAs shall provide that management has the discretion to assign overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management.

12.    Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated.

13.    The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

### III. The Court Orders Further Study Regarding Concepts And Issues That Are Not Fully Developed At This Time.

In a section of the Plan of Action titled "Additional Considerations" (Plan of Action at 6), the Root Cause Committee discussed the concepts of: 1) an "Efficient Compliance Payment;" and 2) a Payment in Lieu of Taxes arrangement. The Plan of Action also notes that the implementation of the Plan of Action may result in a reduction in chargeback revenues to the

7

City of Detroit from the DWSD that will need to be addressed during the transition period. The Committee stated that while it "believes these concepts are all important and that some combination of these concepts is critical to the long-term viability of this Plan, the Committee was unable to achieve consensus on a recommended path due to the complexity of the concepts under consideration and the amount of research required to complete this task in the time available." (*Id*.).

The Court **ORDERS** the Root Cause Committee to continue to meet and confer, and to gather necessary financial records, in order to make specific recommendations regarding how the reduction in chargeback issue should be addressed during the transition period. Within 60 days of this Order (by January 4, 2012), the Root Cause Committee shall submit a written supplement to the Plan of Action to the Special Master regarding that issue and recommendations regarding same.

The Court further **ORDERS** that the Root Cause Committee shall continue to meet and confer in order to further study the concepts of an "Efficient Compliance Payment" and/or a Payment in Lieu of Taxes arrangement. Within 90 days of this Order (by February 4, 2012), the Root Cause Committee may submit a written supplement to the Plan of Action to the Special Master regarding those concepts and any recommendations regarding same.

**IV.   The Court Orders Implementation Of The Adopted Plan Of Action And The Additional Relief Ordered By This Court.**

The Court hereby **ORDERS** the following with respect to implementation of the Plan of Action, and the additional relief ordered by this Court:

1. Implementation of the Plan of Action shall be the responsibility of the Mayor of the City of Detroit (or his designee) until such time as a

permanent Director of the DWSD has been hired. Once a new Director of the DWSD has been hired, that new Director shall assume primary responsibility for implementing this Order and shall join the Root Cause Committee.

2. Until the Plan of Action has been fully implemented, or this case has been dismissed, the Root Cause Committee shall meet at least once per month, at which time the individual vested with primary responsibility for implementing the Plan of Action shall apprise the Root Cause Committee of the status of the implementation.

3. In order to facilitate prompt implementation, until the Plan of Action has been fully implemented, or this case has been dismissed, the BOWC member that was chosen by the BOWC to serve on the Root Cause Committee shall serve as interim Chair of the BOWC.

4. The BOWC shall amend its by-laws within 60 days of this Order (by January 4, 2012), to make them consistent with the adopted Plan of Action and this Order.

5. Within 6 months from the date of this Order (by May 4, 2012), the Director of DWSD shall prepare a written Report of Compliance with the ACO that identifies any current or anticipated barriers to long-term compliance with the ACO and the Clean Water Act ("the Director's Report of Compliance"). The Director of the DWSD shall include within that report any additional recommendations or changes that are necessary to achieve long-term compliance.

6. The Director's Compliance Report shall be provided to the BOWC, the Mayor of the City of Detroit, the Detroit City Council, the DEQ, and the Special Master. The Director's Compliance Report shall request any comments, suggestions, or recommendations from the BOWC, the Mayor of the City of Detroit, the Detroit City Council, and the DEQ within 30 days.

7. To provide adequate time for review and consideration of the comments, suggestions, and recommendations made, and to allow an opportunity to

make necessary changes, the Director of the DWSD shall submit, to the Special Master, a final report to the Court on the status of compliance with the ACO, any remaining barriers to long-term compliance, together with proposed solutions, within 90 days of submission of the initial Director's Report of Compliance.

8. After receiving the final Director's Report of Compliance, the Court will determine whether it shall modify or amend this Order. If the Court determines that this Order needs to be amended, the amended order will be issued within 30 days after the Courts receipt of the final Director's Report of Compliance.

9. Thereafter, the DWSD may file a motion seeking to dismiss this case if it believes there has been substantial compliance with this Order (and any amendment of this order) and the July 8, 2011 ACO.

**IT IS SO ORDERED.**

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: November 4, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 4, 2011, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager