UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                 Hon. Sean F. Cox

v.
                                 Case No. 77-71100

CITY OF DETROIT, *et al.*,

      Defendants.

---

**THE DETROIT WATER AND SEWERAGE DEPARTMENT'S VERIFIED
MOTION FOR INTERIM ORDER CLARIFYING
NOVEMBER 4, 2011 ORDER AND FOR EXPEDITED BRIEFING SCHEDULE**

      The Detroit Water and Sewerage Department ("DWSD") hereby moves this Court for an interim order clarifying and aiding implementation of this Court's November 4, 2011 Order ("November 4 Order," Docket Entry No. 2410). As detailed below, DWSD moves for an interim order that is needed to address uncertainties and ambiguities that arise primarily out of the November 4 Order's requirements that DWSD simultaneously remain a City of Detroit ("City") Department yet be operationally independent of the traditional City requirements in areas that have been identified as root causes of non-compliance. Because of the need to resolve the issues addressed by this motion expeditiously in order to enable DWSD to move forward with implementing the November 4 Order, DWSD also moves for an expedited briefing schedule regarding this motion.

      In support of its motion, DWSD states as follows:

1

*DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243*

## BACKGROUND AND REQUEST FOR COMPREHENSIVE EQUITABLE RELIEF

1.     The November 4 Order provides, among other things, that DWSD simultaneously (a) continue to be a City Department, albeit one that is operated as an enterprise fund with assets that are not comingled with those of the City, and (b) operate independently from the traditional City bureaucracy in the areas of law, finance, human resources, and procurement—areas shown to be root causes of DWSD's past non-compliance with the Clean Water Act and DWSD's National Pollutant Discharge Elimination System ("NPDES") Permit.

2.     Since issuance of the November 4 Order, DWSD has made substantial progress in implementing certain of its provisions.  This progress includes DWSD's (a) establishment of its own Human Resources Division, (b) hiring its first General Counsel, (c) setting up its own bank accounts pursuant to the trust indenture for its recent sewer bond issue, and (d) entering into new DWSD-specific collective bargaining agreements ("CBAs") with eleven of the twenty unions that represent DWSD employees.

3.     DWSD also has recently received a report from its consultant, EMA Inc. ("EMA"), that is based on EMA's ninety-day organizational assessment of DWSD.  EMA and DWSD have together identified a path forward to improve compliance and efficiency within DWSD that will help to achieve several important aspects of the November 4 Order.  *See also*, "Procurement" section of this Motion, below.

4.     An interim order is, however, needed to facilitate and enable compliance with the November 4 Order, primarily because of some continuing uncertainties and ambiguities related to the November 4 Order's requirements that DWSD simultaneously (a) continue to be a City Department but also (b) operate independently from the traditional City structures and requirements in the areas of law, finance, human resources, and procurement.  These uncertainties and ambiguities, the particulars of which are set forth below, are adversely

2

impacting the long-term path to compliance with the November 4 Order and prevent preparation of a final Director's Compliance Report at the present time.

5.      Although particular areas that need to be addressed by an interim order are identified below, experience has shown that neither DWSD nor the Court can identify every City ordinance, charter provision, resolution, executive order, policy, or procedure that is currently inconsistent with and/or is adversely impacting the long-term path to compliance with the November 4 Order.  Experience likewise has shown that neither DWSD nor the Court can anticipate all future actions by Detroit's legislative and executive branches that may be inconsistent with the intent of the November 4 Order and/or adversely impact the long-term path to compliance with the November 4 Order.  Comprehensive equitable relief that enjoins the application of City laws and rules that are inconsistent with DWSD's operational independence mandated by the November 4 Order and requires the City to work cooperatively with DWSD to implement the November 4 Order is, therefore, necessary to facilitate long-term compliance with the November 4 Order.

WHEREFORE, to ensure that uncertainties and ambiguities stemming from DWSD's continuing role as a City Department do not adversely impact compliance with the November 4 Order and to enable DWSD to continue on its path forward in improving compliance and efficiency within DWSD that will help to achieve several important aspects of the November 4 Order, DWSD moves for an interim order that:

(1)     Enjoins the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or practices that are inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance; and

(2)     Orders the City to work cooperatively with DWSD to implement the November 4 Order in an efficient and timely manner and authorizes the City to pass along charges for these transition services to DWSD at their actual cost.

3

**THE CITY OF DETROIT'S FINANCIAL STABILITY AGREEMENT**

6.     Since entry of the November 4 Order, the City has entered into a Financial Stability Agreement ("FSA") with the State of Michigan in seeking to improve Detroit's financial condition.

7.     While the FSA does not expressly address its applicability to DWSD, clarification of whether or to what extent the FSA applies to DWSD is needed.  Specifically, so that the FSA does not impede the DWSD operational independence mandated by the November 4 Order, DWSD requests the Court to clarify or declare in an order that the FSA is applicable to DWSD only to the extent that it is not inconsistent with the November 4 Order and the other orders of this Court.

8.     The  November 4 Order's provisions regarding DWSD CBAs provide a specific example of the potential adverse impact of the FSA necessitating clarification.  In the November 4 Order, this Court found that certain CBA provisions and work rules have been impeding the DWSD from achieving and maintaining both short-term and long-term compliance with its NPDES Permit and the Clean Water Act over a long period of time.  This Court, accordingly, ordered that "DWSD shall act on behalf of the City of Detroit to have its own CBAs that cover DWSD employees" and that such CBAs "shall not include employees of any other City of Detroit departments." (November 4 Order, Docket Entry No.  2410 at 6, ¶ 3).  The November 4 Order further provided that the "Director of the DWSD shall have final authority to approve CBAs for employees of the DWSD." (*Id.*).

9.     On June 26, 2012, the Detroit Board of Water Commissioners ("BOWC") passed a resolution (the "Resolution" that City Employment Terms ("CETs") are applicable to DWSD unions that have not settled CBAs until such time as (a) the relevant union signs an agreement with DWSD or (b) negotiations reach an impasse and DWSD imposes its own terms and

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

4

conditions of employment on that union. The Resolution was adopted to recognize and declare

that, until a union signs a collective bargaining agreement with DWSD, it is still subject to the

City 's actions with respect to its last CBA including terms and conditions of employment

applicable to City unions that are not inconsistent with this Court's Orders. Despite the '

Resolution and DWSD's sharing information regarding its adoption with the City's Labor

Relations Division, the City has not implemented the Resolution. Therefore, clarification is

needed that the Resolution is effective and controlling upon DWSD, its unions and unionized

employees, and the City of Detroit.

WHEREFORE, DWSD moves for an interim order that:

(1)     Clarifies or declares that the FSA is applicable to DWSD only to the extent that it
        is not inconsistent with the November 4 Order and the other orders of this Court;
        and

(2)     Clarifies or declares that the Resolution adopted by the 'BOWC on June 26, 2012
        implements and is consistent with the November 4 Order and is effective and
        controlling, regardless of whether it might otherwise be impacted by the FSA.

## LEGAL REPRESENTATION AND AUTHORITY

10.     The November 4 Order ordered that, once a new DWSD Director was hired, the

new Director would have primary responsibility for implementing the November 4 Order's

requirements. (November 4 Order, Docket Entry No. 2410, § IV(1)).

11.     On several occasions during the past several months, City administrative

departments have declined to act in accordance with the Director's interpretation of the

November 4 Order and the Director's plan for implementing that order and/or have expressed

their disagreement with the Director's interpretation of the November 4 Order. Examples of this

are the City's Labor Relations Director's refusing to recognize that the CETs applied to City

unions that did not sign agreements with DWSD prior to implementation of the CETs; City Law

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Department advice that DWSD is still bound by the tax-clearance process identified by the City Finance Department prior to awarding a contract rather than a DWSD alternative process; and City Labor Relations' and Law Department's interpreting an employee reversion as being distinguishable from this Court's November 4 Order to prevent transferring and bumping of employees from the City to DWSD, and others. These circumstances have been identified in the Director's May 4, 2012 Compliance Report and reports issued by the Special Master appointed by this Court.

12.     The November 4 Order provided that legal settlements and claims may be approved by the Director of DWSD upon approval of the BOWC. As the BOWC meets on a monthly basis and some legal settlements and claims can be resolved for nominal amounts, DWSD seeks clarification that the BOWC's approval authority contained within the November 4 Order also inherently includes the Board's authority to delegate its approval authority over certain smaller claims and settlements as it deems appropriate.

13.     The City of Detroit's Corporation Counsel has recently taken the position that the City's Corporation Counsel can operate independently of direction from the Mayor in initiating litigation. The assertion of that position, together with delays initiated by the Michigan Department of Treasury, led to delays in DWSD's ability to issue debt, resulted in downgrades to DWSD's bond rating, and cost ratepayers up to $60 million in increased borrowing costs. In addition, the Corporation Counsel initiated litigation challenging the validity of the City FSA that resulted in a delay in closing a State Revolving Fund loan to the DWSD for needed capital investment. These types of delays and added costs negatively impact compliance.

WHEREFORE, to avoid recurrence of the above-described actions, remedy past confusion over the authority and responsibility for interpreting the November 4 Order, provide

clear direction to the Director of DWSD who is responsible for implementing this Court's orders, and make the approval process of certain legal matters more efficient, DWSD moves for an interim order that:

    (1)    Clarifies or declares that legal responsibility for interpreting the November 4 Order and advising the Director of DWSD regarding legal aspects of its implementation lies with DWSD's General Counsel;

    (2)    Clarifies or declares that the BOWC may delegate certain approval threshold limits to DWSD management for approval of legal settlements, contract claims, and pre-litigation settlement offers without further BOWC approval; and

    (3)    Clarifies or declares that Sections 7.5-208 and 7.5-209 of the Detroit City Charter regarding intra-governmental disputes and enforcement of the Charter shall not apply to issues related to DWSD and the implementation of and applicability of this Court's Orders.

## PROCUREMENT

14.    The Root Cause Committee's Plan of Action and Procurement Policy ("Committee Plan", November 4 Order, Docket Entry No. 2410, Exhibit A) did not specifically address the following areas, clarity on which is important to DWSD's efforts to implement the November 4 Order: (a) applicability of the City of Detroit's Prevailing Wage ordinance, (b) the applicability of City Executive Orders to DWSD's Procurement Policy, and (c) the authority of DWSD to adopt its own Local Economic Development plan.

15.    The Committee Plan also did not address specific types of legal procurements, such as retention of expert witnesses and the need to retain outside counsel quickly to address pressing legal matters. DWSD's ability to act independently with respect to such matters is critical to its operational independence on legal matters that is contemplated and mandated by the November 4 Order.

16.    Additionally, as noted above, as an important step forward in its implementation of the November 4 Order, DWSD obtained a ninety-day organizational assessment of DWSD

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT,MICHIGAN 48243

that was performed by its consultant EMA. Based on that assessment, EMA and DWSD together have identified a path forward to improve compliance and efficiency within DWSD that will help to achieve some important aspects of the November 4 Order.

17.     Among other things, EMA's Organizational Assessment identified significant opportunities for DWSD to enhance its compliance with the November 4 Order. These opportunities include (a) reducing future operational expenses, (b) improving compliance with selective outsourcing of non-core functions, (c) changing job designs, (d) improving business processes and enterprise (IT) and Supervisory Control and Data Acquisition ("SCADA") technology and (e) optimizing technology for operations and maintenance effectiveness and efficiency.

18.     Following EMA's organizational assessment, on September 7, 2012 the BOWC voted unanimously to authorize DWSD to move forward with a five-year contract with EMA for, *inter alia,* organizational optimization work that was recommended in EMA's organizational assessment. DWSD is negotiating the terms of a five-year contract with EMA (the "EMA Contract"), with the assistance of the BOWC's legal committee.

19.     Under the proposed EMA Contract, EMA will work with DWSD to develop new job designs resulting in a projected reduction in the number of employee classifications from 267 to 31. The EMA Contract scope of work will also include piloting those job designs and business process designs, developing an information technology master plan, examining human resources and payroll systems, optimizing DWSD's Computerized Maintenance Management System, and improving the reliability of equipment through improved asset management. For that work EMA will receive compensation of approximately $17 million, with an additional $2.5 million set aside for expenses.

8

20.     In addition to the services listed above, EMA will work on the development, assessment, and implementation of non-core outsourced services as originally identified within the ninety-day operational assessment.  Non-core services include building maintenance, grass cutting, snow removal, and janitorial services.  Over the term of the EMA Contract, it is anticipated that such outsourced services will cost roughly $21 million, resulting in an expected net savings to DWSD of more than $50 million.

21.     The Committee Plan, which this Court adopted and ordered to be implemented in the November 4 Order, found that DWSD should not be bound by either the City's Privatization ordinance nor the anti-Privatization provisions of the Detroit City Charter, stating as follows:

> In order to achieve long-term compliance, this committee agrees that DWSD will need to be relieved of the requirement to fully comply with the existing provisions of the City of Detroit's Procurement Ordinance.  As a by-product of this decision, it is also clear that DWSD cannot be expected to fully comply with the Charter provisions related to Privatization (Charter Section 6-307).

(RCC Plan of Action p. 8, Section III).  Pursuant to Section 6-307 of the Detroit City Charter, the Detroit City Council would otherwise have had approval authority over the issuance of outsourcing RFPs and approval of outsourcing contracts by a super-majority vote.  (Detroit City Charter, Subsections 3 and 7).  Therefore, the Committee Plan clearly intended to provide limits on City Council's role in being involved in DWSD's decisions to outsource work of the Department.

22.     Additionally, the Root Cause Committee recognized that its recommended Procurement Policy would not cover all types of procurements and, accordingly, provided for a general catch all on page 7 as follows:

> In addition to all powers currently vested in DWSD pursuant to the City Charter, City Ordinances, State Law, and the By-Laws for the Detroit Water and Sewerage Department Board of Water Commissioners ("BOWC"), DWSD, acting through its Director

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN  48243

9

upon authorization by the Board of Water Commissioners, shall have final authority to approve the following types of documents without any further approvals from other departments, board, agencies, or offices of the City of Detroit:

\* \* \*

- Those procurements not covered by the Board of Water Commissioners' and the Detroit City Council's approval outlined in the attached DWSD Procurement Policy."

23.     The foregoing findings of the Committee Plan adopted by this Court evidence a clear intent to leave procurements not specifically addressed in the Plan to the sole discretion of the DWSD Director with approval from the Board of Water Commissioners.

24.     Under the terms of the November 4 Order, there is an ambiguity concerning whether DWSD's outsourcing authority discussed therein was intended to be limited by the dollar thresholds for approval authority by the BOWC and the Council within the Committee Plan procurement policy. DWSD does not believe that the Order should be read in that manner for the reasons that follow.

25.     DWSD submits that, subjecting DWSD's ability to outsource to City Council approval, after BOWC approval, would undermine fundamental objectives of that order by placing important means of achieving compliance beyond the control of the Director of DWSD, whom that order makes responsible for achieving compliance. It would similarly undermine a fundamental structural imperative of that order, which is to make the DWSD operationally independent from the City in the areas of human resources and procurement. Simply stated, the DWSD cannot be operationally independent from the traditional City bureaucracy on matters of human resources and procurement if its ability to utilize the important tool of outsourcing lies beyond its control.

26.     DWSD further submits that, for similar reasons, subjecting DWSD's outsourcing to City Council approval would be inconsistent with basic structural provisions of the November

10

4 Order. For example, as noted above, the November 4 Order authorizes and requires DWSD to enter into CBAs that cover DWSD employees exclusively. These CBAs become effective upon approval by the BOWC and ratification by the Director of DWSD, with no express or implied role for the Detroit City Council. In furtherance of this requirement, DWSD has entered into CBAs with eleven unions representing its employees, each of which is required by Court Order to allow for outsourcing. Those CBA provisions and DWSD's exercise of its authority to negotiate them could be nullified or at least seriously undermined if the resulting contracts necessary to implement such outsourcing to support DWSD's compliance efforts could be nullified by the Detroit City Council, particularly if based upon a philosophical objection to outsourcing or privatization.[1]

27. Additionally, the Court's November 4 Order made clear that the BOWC and the DWSD administration have the exclusive authority to approve and implement the DWSD budget, respectively. Therefore, it is left to DWSD management to recommend and the BOWC to modify and/or approve that policy decision concerning the proper ratio of salary/wage expense to contractual services expenses. Again, if the November 4 Order were interpreted to permit

---

[1] *Detroit City Council Slams Belle Isle Lease*, The Detroit News, September 19, 2012: "City Council members on Tuesday ripped into two of Mayor Dave Bing's key restructuring efforts, calling the proposed Belle Isle Lease "stupid' and voting to seek a court order to block the transfer of a city department to a nonprofit agency"; See also: *Kenyatta Attacks Bing over Outsourcing Two Departments*, Detroit News, September 7, 2012: "City Councilman Kwame Kenyatta is calling for an investigation by the city's newly appointed inspector general into the outsourcing of two city departments to outside agencies"; See also: *New York Radio Host Loses DDOT Post*, The Detroit News, August 23, 2012: "(Bill) Nojay's job-juggling has been a concern to City Council members and union officials. Bing outsourced bus management in January to a New York-based company, Parsons Brinckerhoff, on a $2 million 11-month contract, saying the department needed a major overhaul. Nojay, who worked in public transportation in Rochester, N.Y., was hired by a subcontractor, TransPro. ... 'An employee's political beliefs are their political beliefs,' said (Councilman Ken) Cockrel, 'It does play into the worst fears of a lot of folks. The administration on a certain level continues to be politically tone-deaf.'"

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Council to approve or reject outsourcing contracts, the Council would be granted *de facto* veto authority over DWSD and BOWC budget decision making authority.

WHEREFORE, to clarify the intent of the November 4 Order and otherwise address procurement issues relating to DWSD's compliance with the November 4 Order, DWSD moves for an interim order that:

(1)    Clarifies or declares that the November 4 Order grants DWSD authority to proceed with contracts to assess outsourcing opportunities and/or to outsource functions of DWSD solely upon the approval of the BOWC and without regard to the dollar value of the contract;

(2)    Clarifies or declares that, in determining whether monetary approval thresholds are triggered under the existing DWSD Procurement Policy, amounts should be determined on a fiscal year basis for multi-year contracts;

(3)    Clarifies or declares that DWSD is not bound by the City's Prevailing Wage Ordinance;

(4)    Clarifies or declares that expert witness engagements as well as other expert consulting contracts on pending legal matters authorized by DWSD's General Counsel are exempt from the competitive bidding requirements of the DWSD Procurement Policy;

(5)    Grants DWSD authority to establish its own process to define and obtain tax clearances that is consistent with applicable state law and, upon doing so, will no longer be bound by the City's tax-clearance process;

(6)    Clarifies or declares that the BOWC's authority to further define the procurement policy over time to address areas not inconsistent with the Court's orders includes the authority to (a) modify the bid protest and appeal process, (b) include a debarment process within the Procurement Policy, (c) add additional definitions to the Procurement Policy, (d) provide for additional exemptions, by category, from the competitive bidding process, and (e) define and establish a separate approval process for grant applications, grant agreements, and intergovernmental agreements;

(7)    Clarifies or declares that the requirement that DWSD have its own separate finance, human resources and procurement functions includes its authority to purchase its own information technology systems which may differ from those of the City; and

(8)    Clarifies or declares whether DWSD was intended to be free to adopt additional Local Economic Development policies or whether the equalization credits

12

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

contained within the Root Cause Committee's recommended Procurement Policy were intended to be the exclusive local business preference for DWSD contracts.

## FINANCE

28.     The Committee Plan (Section II(A)(1) at page 2) required that DWSD have an autonomous Finance Division that reports to the Director of DWSD and does not have any reporting requirement to the City.  DWSD has worked hard to implement the Committee Plan in this area.

29.     DWSD, however, needs additional clarification and instruction from the Court relating to the creation of its autonomous Finance Division.

30.     Specifically, DWSD needs clarification regarding whether it (a) was intended to establish bank accounts that are separate from the accounts of the City Treasurer, (b) is free to establish its own sub-units and programs within its Finance Division to implement the November 4 Order, including debt management, accounts payable, accounts receivable, accounting, budget, cash management, asset management, deferred compensation, and any other sub-units that it deems appropriate, (c) is bound by City Finance Policies in areas where DWSD has adopted its own policies (*i.e.*, debt management, investment, budget, *etc.*), and (d) may pursue the establishment of its own self-insurance fund separate from the City's.

31.     DWSD also requires clarification on the scope of its ability to issue debt and whether BOWC, Detroit City Council, and/or the City of Detroit is required to approve such debt where the full faith and credit of the City is not being pledged.

WHEREFORE, to clarify the intent of the November 4 Order and otherwise address issues relating to DWSD's compliance with the November 4 Order insofar as it requires DWSD to establish its own Finance Division, DWSD moves for an interim order that:

(1)     Clarifies or declares that DWSD (i) is authorized to establish bank accounts that are separate from the accounts of the City Treasurer and is, therefore, not bound

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

13

by section 6-305 of the Detroit City Charter, (ii) is free to establish its own sub-units and programs within its Finance Division to implement the November 4 Order, including debt management, accounts payable, accounts receivable, accounting, budget, cash management, asset management, deferred compensation, and any other sub-units that it deems appropriate, (iii) is not bound by City Finance Policies in areas similar to those in which DWSD has adopted its own policies (*i.e.*, debt management, investment, budget, *etc.*), and (iv) may pursue the establishment of its own self-insurance fund separate from the City's; and

(2) Clarifies or declares that (i) DWSD may issue new debt, refinance existing debt, and/or enter into loan arrangements upon the approval of the BOWC and (ii) approval of the City and the City Council is required only in circumstances where DWSD's debt issuance would involve a pledge of the City's full faith and credit.

## HUMAN RESOURCES

32.    While DWSD is further along in implementing its own Human Resources Division and team than it is in implementing other functions identified in the November 4 Order and the Committee Plan, DWSD also has experienced greater resistance in this area than in the other areas.

33.    The resistance that DWSD has experienced has, to a substantial degree, been due to or premised on various City ordinances, Human Resources policies, and similar items. Accordingly, to enable DWSD to overcome the resistance it has encountered in the Human Resources area and further enable it to comply with the November 4 Order in that area, DWSD needs a clarification or declaration providing explicitly that DWSD is exempt from application of City ordinances, Human Resources policies, and similar items that have or may affect or impair DWSD's ability to establish an independent Human Resources Division and team.

34.    For similar reasons, DWSD requires clarification (a) of its status and rights as an employer with authority to determine the terms and conditions of employment for its non-union employees and (b) whether it may pursue its own payroll services and utilize its own Employer Identification Number ("EIN") if it determines that doing so would serve DWSD's best interest.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

35.     DWSD also confronts additional obstacles to its implementation of the November 4 Order relating to the employee Defined Contribution Plan.

36.     The Detroit General Retirement System (DGRS) has not yet implemented the City's 1998 ordinance that established a City Defined Contribution Plan.

37.     Since June of 2012, in implementing the November 4 Order, DWSD has ratified eleven tentative CBAs that, among other things, require all new employees to participate in the City Defined Contribution Plan.  Despite this fact, the DGRS has not indicated that it will implement the ordinance as it is legally obligated to do.

38.     Therefore, in order to insure implementation of the CBAs ratified pursuant to the November 4 Order, DWSD needs guidance on the appointment of a Plan Administrator for DWSD's Defined Contribution Plan, the structure of DWSD's Defined Contribution Plan, and the authority of the new Plan Administrator.

39.     Although the November 4 Order required DWSD to establish its own Human Resources Division, it did not expressly address whether or to what extent the DWSD must or should interact with the Civil Service Commission, as provided in Section 6-405 of the Detroit City Charter.  This is significant because the City Human Resources Department is inextricably connected to the Civil Service Commission by Charter.  Thus, DWSD cannot become truly operationally independent from the City's Human Resources Department so long as it is bound by the Civil Service Commission and its Rules and Policies.  As such, further clarification is needed on this issue as well.

40.     DWSD has determined that its ability to rehire certain DWSD employee to perform services for DWSD within the one-year period after termination of their employment would significantly improve DWSD's ability to comply with the Root Cause Committee's Plan

15

of Action which was adopted by the Court through its November 4 Order.  Specifically, Section II A(3)(b) of the Root Cause Committee's Plan of Action required DWSD Management to develop and present a formal succession plan to the BOWC for approval.  Additionally, the eleven collective bargaining agreements that have been ratified by the BOWC provide for DWSD and the Unions to jointly develop an Early Retirement Incentive Program for DWSD employees.  Reading these requirements together while recognizing that close to twenty-five percent of the workforce would have been eligible for the City of Detroit's spring 2012 proposed Early Retirement Incentive Program negotiated with the Union Coalition,[2] it is clear that DWSD needs to be free to utilize the services of former employees as part of a practical succession planning process.  As such, DWSD requests that, to the extent Section 2-106.5 of the Detroit City Charter would prohibit DWSD from rehiring a DWSD employee to perform services for DWSD for a period of one-year after employment, that provision shall not apply to DWSD.

WHEREFORE, to clarify the intent of the November 4 Order and otherwise address Human Resources issues relating to DWSD's compliance with the November 4 Order, DWSD moves for an interim order that:

(1)     Clarifies or declares that DWSD is exempt from application of City Ordinances, Human Resources Policies, Human Resources Regulations, Civil Service Commission Rules, City Council Resolutions, Administrative or Executive Orders, and other such City Human Resources documents and requirements pertaining to payroll, employee benefits, employee relations, labor relations, and other Human Resources matters;

(2)     Clarifies or declares DWSD's status and rights as an employer that (i) has authority to determine the terms and conditions of employment for its non-union employees as well as its unionized employees, (ii) may pursue its own payroll services separate and apart from the rest of the City, and (iii) may utilize its own Employer Identification Number ("EIN") if it determines that doing so would serve DWSD's best interest;

---

[2] While the Coalition Tentative Agreement was initially recommended by both the union side and City leadership, it was never formally ratified after the Michigan Department of Treasury expressed concerns during negotiations on the Financial Stability Agreement.

16

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

(3)    Clarifies or declares that DWSD may (i) nominate its own Plan Administrator for implementation of the Defined Contribution Plan as required by DWSD's collective bargaining agreements, (ii) develop the plan design and documents necessary to implement the Defined Contribution Plan for its employees, and (iii) provide for the authority of its Plan Administrator pursuant to its plan documents;

(4)    Clarifies or declares that DWSD is not bound by the Civil Service Commission as provided in Section 6-405 of the Detroit City Charter; and

(5)    Clarifies or declares that, to the extent Section 2-106.5 of the Detroit City Charter would otherwise prohibit DWSD from rehiring any DWSD employee to perform services for DWSD for a period of one-year after employment, such provision shall not apply to DWSD.

## BOARD OF WATER COMMISSIONERS

41.    On February 11, 2011, the parties to this action agreed to a stipulated order that modified the composition and appointment authority for the BOWC.

42.    The February 11, 2011 Stipulated Order ordered the BOWC to amend its by-laws so as to make them consistent with the terms of that Stipulated Order, which the BOWC has done.

43.    As the BOWC noted in its response to the Director's Compliance Report, the November 4 Order did not identify specific terms of office for BOWC Commissioners.

44.    Since entry of the November 4 Order, the current BOWC members have agreed to establish terms of office for existing members and a proposed rotation schedule going forward.

45.    In addition, while the Committee Plan proposed an organizational structure comprised of two divisions (Operations and Administration), DWSD believes that compliance with the November 4 Order may be enhanced by alternative organizational structures, provided that DWSD provides adequately for succession planning within them.

WHEREFORE, to clarify the intent of the November 4 Order and otherwise address BOWC-related issues relating to DWSD's compliance with the November 4 Order, DWSD moves for an interim order that:

17

(1)     Clarifies or declares that the current BOWC members may establish terms of office for existing members and a proposed rotation schedule going forward; and

(2)     Clarifies or declares that DWSD may adopt an organizational structure other than one comprised of two divisions (Operations and Administration), as long as DWSD provides adequately for succession planning within them.

## MICHIGAN EMPLOYMENT RELATIONS COMMISSION JURISDICTION

46.     The November 4 Order enjoined (a) the Michigan Employment Relations Commission ("MERC") from exercising jurisdiction over disputes arising from the changes required by the November 4 Order and (b) the unions from filing any grievance, unfair labor practices, or arbitration demands over disputes arising from such changes. (November 4 Order, Docket Entry No. 2410, at 7, ¶ 13).

47.     With respect to the current round of union negotiations that are occurring within DWSD pursuant to the November 4 Order, the November 4 Order (a) kept all current CBAs covering DWSD employees in force, (b) struck and enjoined those current CBA provisions or work rules that threatened DWSD's short-term compliance, (c) ordered DWSD, in the future, to negotiate and sign its own CBAs covering DWSD employees exclusively, and (d) barred future DWSD CBAs from containing certain provisions that threaten long-term compliance. (November 4 Order, Docket Entry No. 2410, at 5, ¶ 13).

48.     As this Court is aware, on various occasions following entry of the November 4 Order, MERC questioned the scope of the November 4 Order's injunction regarding its authority, consequently declined to take action that was important to implementation of the November 4 Order and thereby delayed and impeded implementation of that Order.

49.     For example, in defiance of the November 4 Order's mandate requiring separate CBAs covering DWSD employees exclusively, unions representing both DWSD and non-DWSD City employees—*i.e.*, the Association of Municipal Engineers ("AME"), the Association

18

of Detroit Engineers ("ADE"), and the Association of Professional and Technical Employees ("APTE")—adamantly refused to either negotiate separate DWSD-specific CBAs or agree to severance of DWSD employees from the pre-existing mixed bargaining units.  In addition, although it had entered into a CBA with DWSD covering its DWSD employees, the Association of Professional Construction Inspectors ("APCI") re fused to agree to the formal severance of the bargaining unit.

50.    To address these unions' obstruction and move forward with implementing the November 4 Order's mandate of DWSD-specific CBAs, DWSD filed Unit Clarification Petitions with MERC that sought severance of DWSD employees from the four mixed bargaining units.

51.    MERC, however, declined to take action on DWSD's petitions out of concern that doing so may violate this Court's November 4, 2011 Order (*i.e.*, paragraph 13 on Page 7). MERC advised the DWSD that its Unit Clarification Petitions would be held in abeyance pending further direction from this Court.  MERC further advised DWSD that it would act on the petitions if the DWSD obtained written clarification of the November 4 Order.  (*See* Docket Entry No. 2469, Exhibit B).

52.    MERC's refusal to act compelled DWSD to file a motion with this Court seeking various alternative forms of relief to move forward with implementing the November 4 Order. (Docket Entry No. 2469).  Pursuant to DWSD's motion, this Court entered an order (Order dated August 23, 2012, Docket Entry No. 2470, at 2) stating that the Court:

(1)    CLARIFIES that Paragraph 3 on Page 6 of this Court 's November 4, 2011 Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees and requires that non-DWSD City employees may not serve as negotiating team members with respect to DWSD CBAs; and

(2)     ORDERS that MERC is not enjoined from ruling on the DWSD's pending Clarification Petitions in order to effectuate the above severance thing ordered by this Court.

53.     While the Court's salutary order ultimately solved that problem, MERC's confusion about its jurisdiction caused an unnecessary delay that impeded progress toward full implementation of the November 4 Order.

54.     MERC also has raised questions about its jurisdiction to address unfair labor practice charges filed by both SCATA and AFSCME unions.

55.     MERC presently has before it requests from AFSCME requesting mediation and from both ADE and AME for fact finding related to the current round of negotiations being conducted pursuant to the November 4 Order.

56.     The delays in having the above-identified and other employee-related matters decided by MERC because of its uncertainty concerning the scope of its jurisdiction and authority consistent with the November 4 Order have impaired, are impairing and, absent the clarification requested herein, are likely to continue to impair compliance with the November 4 Order.

WHEREFORE, to clarify the intent of the November 4 Order, otherwise address MERC issues relating to DWSD's compliance with the November 4 Order, and facilitate compliance with the November 4 Order, DWSD moves for an interim order that:

(1)     Clarifies or declares the scope of MERC's authority and jurisdiction to decide issues relating to DWSD consistent with the November 4 Order; and

(2)     Clarifies or declares  that MERC lacks the authority and jurisdiction to mediate and engage in fact-finding, including the requests from AFSCME requesting mediation and from both ADE and AME for fact finding related to the current round of negotiations being conducted pursuant to the November 4 Order.

DYKEMA GOSSETT-A PROFESSIONAL LIMITED LIABILITY COMPANY-400 RENAISSANCE CENTER-DETROIT, MICHIGAN 48243

## FINAL DIRECTOR'S COMPLIANCE REPORT

57.    The November 4 Order provided that the Director of DWSD would submit a final Director's Compliance Report on October 4, 2012.  In light of the issues cited above that have adversely impacted the Department's ability to implement the November 4 Order and this motion for an interim order clarifying and aiding implementation of the November 4 Order, DWSD is requesting an extension in the deadline for filing the Compliance Report.  Were the Department to file a report by October 4, the report would be very similar to the May 4 Interim Compliance Report, as the issues raised in that report have not changed in any material manner.

58.    The interim order sought by this motion is intended to clear up ambiguities, eliminate obstacles that have caused delays and otherwise aid in the implementation of various aspects of the November 4 Order.  Upon receipt of clarification, the Department intends to move forward with implementation more quickly and be in a stronger position to prepare a Final Compliance Report within the next six months.

WHEREFORE, in order clarify the timeframe for implementation of the November 4 Order, DWSD moves for an interim order that:

> Extends the deadline for DWSD to file its Final Director's Compliance Report from October 4, 2012 to April 4, 2013.

## REQUEST FOR EXPEDITED BRIEFING SCHEDULE

59.    As detailed above, prompt resolution of the issues raised by this motion is critical to DWSD's ability to move forward with implementing this Court's important November 4 Order.

WHEREFORE, in order to enable a prompt resolution of the issues raised by this motion that are necessary for DWSD to move forward expeditiously with further implementation of the November 4 Order, DWSD moves for an expedited briefing schedule on this motion.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/Robert J. Franzinger
    Robert J. Franzinger (P25539)
    Mark D. Jacobs (P41878)
    Attorneys for DWSD
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6690
    (313) 568-6845
    rfranzinger@dykema.com

Date:   September 24, 2012

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

## **VERIFICATION**

STATE OF MICHIGAN    )
                        ) SS.
COUNTY OF WAYNE    )

     MATTHEW SCHENK, being first duly sworn, states that he has read the foregoing Verified Motion For Interim Order Clarifying November 4, 2011 Order and states that the allegations of fact contained therein are true to his own personal knowledge and belief or, where so stated, are true to the best of his information and belief.

 

                              MATTHEW SCHENK
                              Chief Operating Officer / Chief Compliance Officer
                              Detroit Water and Sewerage Department

Subscribed and sworn to before
me this 24th day of September, 2012.

Notary Public, Wayne County, Michigan
My Commission Expires: 3-2-2018
Acting in Wayne County

DEBRA L RAGLAND
Notary Public - Michigan
Wayne County
My Commission Expires Mar 2, 2018
Acting in the County of Wayne

23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                            Hon. Sean F. Cox

v.

                            Case No. 77-71100

CITY OF DETROIT, *et al.*,

     Defendants.

---

**BRIEF IN SUPPORT OF THE DETROIT WATER AND
SEWERAGE DEPARTMENT'S VERIFIED MOTION
FOR INTERIM ORDER CLARIFYING NOVEMBER 4,
<u>2011 ORDER AND FOR EXPEDITED BRIEFING SCHEDULE</u>**

i

## STATEMENT OF ISSUES PRESENTED

Should the Court enter an interim order clarifying and aiding implementation of this Court's November 4, 2011 Order ("November 4 Order," Docket Entry No. 2410) where the interim order is needed to address uncertainties and ambiguities that arise primarily out of the November 4, 2011 Order's requirements that DWSD simultaneously remain a City of Detroit ("City") Department yet be operationally independent of the traditional City requirements in areas that have been identified as a root causes of non-compliance?

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

DWSD relies on a federal court's inherent power to fashion equitable relief and to enforce its own judgments and orders. *See Peacock v. Thomas*, 516 U.S. 349, 356, 116 S. Ct. 862 (1996); *U.S. v. Production Plated Plastics, Inc.*, 61 F.3d 904, *7 (6th Cir. 1995). DWSD also relies on a federal court's equitable discretion to fashion a remedy that is no broader than necessary to remedy a violation of law. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320, 102 S. Ct. 1798, 1807 (1982); *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (1995), and *Bylinski v. City of Allen Park*, 8 F. Supp. 2d 965 (1998).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

In support of its Verified Motion For Interim Order Clarifying November 4, 2011 Order And for Expedited Briefing Schedule ("Verified Motion"), the Detroit Water and Sewerage Department ("DWSD") relies on the facts and assertions set forth in its Verified Motion and, to avoid duplication, limits this Brief to an exposition the legal authority supporting DWSD's Verified Motion and the interim order that it seeks.

## **ARGUMENT**

This Court has the legal authority to enter the relief requested in DWSD's Verified Motion for several reasons. First, a federal court has inherent power to fashion equitable relief and to enforce its own judgments and orders. *See Peacock v. Thomas*, 516 U.S. 349, 356, 116 S. Ct. 862 (1996); *U.S. v. Production Plated Plastics, Inc.*, 61 F.3d 904, *7 (6th Cir. 1995) (finding court had authority to fashion equitable relief and enforce its prior orders). As such, the Court has the power to enter an order clarifying its November 4, 2011 Order.

Moreover, the Court has the equitable discretion to fashion a remedy that is no broader than necessary to remedy a violation of law. The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, permits the exercise of a court's equitable discretion "to order that relief it considers necessary to secure prompt compliance with the Act." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320, 102 S. Ct. 1798, 1807 (1982). The Court's authority in this regard is not constrained by state or local law. To the contrary, "Once a court has found a federal constitutional or statutory violation . . . a state law cannot prevent a necessary remedy. Under the Supremacy Clause, the federal remedy prevails. 'To hold otherwise would fail to take account of the obligations of local governments, under the Supremacy Clause, to fulfill the requirements that the Constitution imposes on them.'" *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (1995) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 57-58, 110 S. Ct. 1651, 1666 (1990)). For

DYKEMA GOSSETT-A PROFESSIONAL LIMITED LIABILITY COMPANY-400 RENAISSANCE CENTER-DETROIT, MICHIGAN 48243

4

example, "upon properly supported findings that such a remedy is *necessary* to rectify a *violation of federal law*, the district court can approve a consent decree which overrides state law provisions." *Id.* at 216 (emphasis in the original).

Nevertheless, "remedies that override state law must be narrowly tailored so as to infringe state sovereignty as minimally as possible." *Id.* at 217 (citing *Jenkins*, 495 U.S. at 57, 58, 110 S. Ct. at 1666-67). "Federal remedial powers can 'be exercised only on the basis of a violation of the law and [can] extend no farther than required by the nature and extent of the violation.'" *Id.* at 217 (quoting *General Bldg. Contractors v. Pennsylvania*, 458 U.S. 375, 399, 102 S. Ct. 3141, 3154 (1982)).

Like the present action, *Bylinski v. City of Allen Park*, 8 F. Supp. 2d 965 (1998) was an action brought to enforce provisions of the Act in connection with the operations of a municipally owned sewer system. The court in that action had entered a consent decree which, among other things, ordered system improvements that were intended to bring the defendant municipalities' operation of the sewer system into compliance with the Act and obligated the defendant municipalities to either pay for their share of the costs of the required improvements in cash or levy taxes to pay for them.

In *Bylinski*, the court rejected a claim by taxpayers seeking to enjoin certain of the municipalities from levying taxes required by the consent decree on the ground that they violated taxation limitations imposed by state law. The court ruled, relying upon *Missouri v. Jenkins*, that its order requiring the levying of taxes was valid even if such taxes were otherwise proscribed by state law. The court, citing the general welfare clause and the commerce clause, found that there was a Constitutional basis for its enforcement of a local government unit tax levy to satisfy the mandates of the Clean Water Act, "despite state statutory or constitutional limitations on

5

taxation." *Id.* at 971.   Thus, a federal court has the power to issue an order to take actions prohibited by state law that are necessary to comply with the Act.

Here, the relief requested in the Verified Motion is necessary to achieve the sustained compliance required by the CWA.   Furthermore, this Court has the inherent authority to enforce, clarify, and aid in the implementation of its November 4, 2011 Order.   As such, DWSD respectfully requests that the relief requested in its Verified Motion be granted.


DYKEMA GOSSETT PLLC


By: */s/Robert J. Franzinger*
Robert J. Franzinger (P25539)
Mark D. Jacobs (P41878)
Attorneys for DWSD
400 Renaissance Center
Detroit, MI 48243
(313) 568-6690
rfranzinger@dykema.com

Date:  September 24, 2012

6

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record and that I caused copies of same to be mailed via U.S. mail as follows:

Joseph W. Colaianne
Oakland County Corporation Counsel
1200 N. Telegraph Road
Suite 419 Bldg. 14E
Pontiac, MI 48341-0419

John H. Fildew
Fildew Hinks
26622 Woodward Avenue
Suite 225
Royal Oak, MI 48067

Robert J. Hribar
16931 19 Mile Road
Mount Clemens, MI 48044

Charles E. Lowe
Lowe, Lewandowski
905 W. Ann Arbor Trail
Plymouth, MI 48170

DYKEMA GOSSETT PLLC

By: */s/Robert J. Franzinger*
    Robert J. Franzinger (P25539)
    Mark D. Jacobs (P41878)
    Attorneys for City of Detroit and DWSD
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6690
    rfranzinger@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243