UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                     Honorable Sean F. Cox

City of Detroit, *et al.*,                              Case No. 77-71100

      Defendants.

_____/

**OPINION & ORDER**
**REGARDING THE DWSD'S MOTION FOR INTERIM ORDER**

This matter is currently before the Court on a "Motion for Interim Order Clarifying November 4, 2011 Order and for Expedited Briefing Schedule" (D.E. No. 2473), filed by the Detroit Water and Sewerage Department ("DWSD") on September 24, 2012. The Court issued orders setting forth an expedited briefing schedule, and the briefing on this motion has concluded. The Court finds that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided without oral argument.

For the reasons that follow, the Court shall grant the motion in part, deny the motion in part, take certain requests under advisement, and order supplemental briefing regarding certain requests in the motion. The Court shall GRANT the motion to the extent that it shall:

    1)    Enjoin the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or practices that are inconsistent with the express terms of this Court's Orders;

1

2)   Order that the City and its employees and agents shall work cooperatively with the DWSD to implement this Court's Orders in a timely and efficient manner;

3)   Declare that the BOWC's June 26, 2012 Resolution is in accordance with this Court's November 4th Order and shall be effective and controlling until this Court orders otherwise;

4)   Clarify that the DWSD's General Counsel, rather than the City's Corporation Counsel, may provide legal advice to the DWSD regarding implementing this Court's rders;

5)   Declare that in determining whether monetary approval thresholds are triggered under the existing DWSD Procurement Policy adopted by this Court, amounts are to be determined on a fiscal year basis for multi-year contracts;

6)   Declare that expert witness engagements and other expert consulting contracts on pending legal matters authorized by the DWSD's General Counsel shall be exempt from the competitive bidding requirements of the DWSD Procurement Policy;

7)   Declare that the DWSD has the authority to purchase its own information technology systems, which may differ from those of the City;

8)   Declare that: a) the DWSD is free to establish its own sub-units and programs within its Finance Division to implement the November 4 Order, including debt management, accounts payable, accounts receivable, accounting, budget, cash management, asset management, and deferred compensation; and b) the DWSD is not bound by City Finance Policies;

9)   Declare that: a) the DWSD is exempt from the application of City ordinances, the City's human resources policies and regulations, Civil Service Commission Rules, and City resolutions and orders, pertaining to payroll, employee benefits, and employee and labor relations; and b) the DWSD is not bound by the Civil Service Commission as provided in Section 6-405 of the City's Charter;

10)  Enjoin any Charter provision, ordinance, resolution, or any other rule or practice, that prohibits or restricts the DWSD's ability to rehire DWSD's employees following their retirement from the DWSD;

11)  Order that the current BOWC members may establish terms of office for

2

existing members and a rotation schedule; and

12)     Clarify that the Court does not construe the Root Cause Committee's Plan of Action, or this Court's November 4, 2011 Order adopting it, as prohibiting the DWSD's organizational structure from being modified in the future.

The Court shall DENY the motion to the extent that the Court shall DENY:

1)     Any request for an order enjoining the City from applying existing or future Charter provisions, ordinance, etc. "that are inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance";

2)     Any request for the Court to delegate authority to the DWSD to interpret this Court's Orders and bind the City to such interpretations;

3)     The DWSD's request for the Court to clarify or declare that "the November 4 Order grants DWSD authority to proceed with contracts to assess outsourcing opportunities and/or to outsource functions of DWSD solely upon the approval of the BOWC and without regard to the dollar value of the contract";

4)     The DWSD's request that the DWSD be exempted from the City of Detroit's Prevailing Wage Ordinance; and

5)     The DWSD's request that it be granted authority to adopt additional Local Economic Development policies.

The Court shall allow SUPPLEMENTAL BRIEFING from the parties with respect to the

following issues / requests for relief:

1)     Specific requests regarding the chargeback of transition services;

2)     The DWSD's request that the BOWC be allowed to delegate settlement approval authority to the Director of the DWSD;

3)     The DWSD's requests regarding Sections 7.5-208 and 7.5-209 of the Detroit City Charter;

4)     Any requested alternative method for obtaining tax clearances;

5)     The DWSD's request that the BOWC be granted authority to further define

3

the DWSD Procurement Policy;

6)    Whether the DWSD may obtain and utilize its own Employer Identification Number;

7)    Establishing separate bank accounts and establishing a separate self insurance fund;

8)    Issuance and approval of debt;

9)    Obtaining and utilizing a separate EIN; and

10)    Requests relating to a Defined Contribution Plan.

Finally, the Court shall take the following requests UNDER ADVISEMENT:

1)    The DWSD's request for clarification from the Court as to MERC's jurisdiction over matters relating to the DWSD; and

2)    The DWSD's request for an additional six months to file the Director's Final Compliance Report.

## BACKGROUND

This action, which was filed in 1977 and has been active since that time, has an exceptionally long history that is more fully set forth in this Court's September 9, 2011 Opinion & Order (D.E. No. 2397) and its November 4, 2011 Order (D.E. No. 2410).

The United States Environmental Protection Agency ("EPA") initiated this action in 1977 against the City of Detroit ("the City") and the DWSD, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("the Clean Water Act"). The violations, which are undisputed, involve the DWSD's wastewater treatment plant ("WWTP") and its National Pollutant Discharge Elimination System ("NPDES") permit. As explained in this Court's September 9, 2011 Opinion & Order:

For the more than 34 years during which this action has been pending, the

4

> City and the DWSD have remained in a recurring cycle wherein the DWSD is cited
> for serious violations of its NPDES permit, the City and the DWSD agree to a
> detailed remedial plan aimed at compliance, but the DWSD is unable to follow the
> plan and is again cited for the same or similar violations.  Although this Court has
> taken various measures, designed to eliminate the various impediments to
> compliance that have been identified by experts and acknowledged by the City,
> those measures have proven inadequate to achieve sustained compliance.

(*Id.* at 1).

In September of 2009, the DWSD was again unable to maintain compliance with its NPDES permit and was again cited for violations by the Michigan Department of Environmental Quality ("MDEQ").  In January of 2010, Detroit Mayor Dave Bing appointed a Chief Operating Officer who assumed the position of acting Director of the DWSD.  Thereafter, the City worked with the MDEQ to develop another plan for compliance and worked with Oakland County, Wayne County and Macomb County to resolve longstanding issues regarding the DWSD.

On July 8, 2011, the City and the MDEQ entered into an Administrative Consent Order ("the ACO"), aimed at achieving long-term compliance with the DWSD's NPDES permit and the Clean Water Act.  After the ACO was executed, the City filed a motion asking the Court to order that the requirements set forth in the ACO are substituted for the requirements of the Second Amended Consent Judgment, find that the DWSD has made substantial progress toward achieving full compliance with its NPDES permit and the Clean Water Act, and dismiss this case.

This Court denied that motion.  In doing so, this Court noted that *after* executing the ACO on July 8, 2011, the DWSD self-reported serious violations of its NPDES permit to the MDEQ.  Thus, the City had not established that the DWSD has achieved even short-term compliance with the ACO and the Clean Water Act.  In addition, this Court concluded that the extensive record in this case establishes that, unless more fundamental corrective measures are taken to address the

institutional and bureaucratic barriers to compliance, sustained compliance with the Clean Water Act and the ACO will simply not occur.

Thus, this Court was faced with the unenviable task of determining how to remedy these ongoing and serious violations of the Clean Water Act, given the complex nature of the problem and the fact that the rather extraordinary actions taken over the past four decades have proven inadequate.

Rather than order a remedy on its own, without input from the City, this Court considered other options and ultimately decided to take an admittedly unique approach:

> The Court further concludes that an effective equitable remedy to achieve sustained compliance will require this Court to order structural changes regarding the DWSD that will likely override the City of Detroit's Charter, its local ordinances, and/or some existing contracts.
>
> This Court does not arrive at this conclusion lightly. As noted above, Judge Feikens attempted several less intrusive measures, over several decades, but those less intrusive measures have not enabled the DWSD to achieve sustained compliance. In addition, although the City has had ample opportunity to devise and implement its own solutions to the underlying causes of noncompliance that have been identified and discussed since the inception of this case, to date, it has not proposed or implemented a plan that has sufficiently addressed those root causes.
>
> To be fair, the City has been constrained in the measures it has proposed or implemented to date because the City is bound by various provisions of the City's Charter and ordinances, and existing contracts, that prevent *the City* from making fundamental changes in the identified problem areas.
>
> *This Court*, however, has broad equitable power to order any relief necessary to achieve compliance with the Clean Water Act and this Court *is not* constrained by the provisions of the City's charter or ordinances. *Weinberger,* 456 U.S. at 318; *Perkins,* 47 F.3d at 216.
>
> This Court appreciates that its broad equitable authority is to be "tempered by precepts of comity and federalism." *Kendrick* , 740 F.2d at 437. As then-Judge (now Justice) Stephen Breyer explained in *Metropolitan District Commission*,[1] considerations of comity and federalism, however, do not give a state or

---

[1]*United States v. Metropolitan District Commission*, sometimes referred to as the Boston Harbor case, is another case involving Clean Water Act violations continuing over many years.

6

municipality the legal power to violate federal law or to continue violations of the
Clean Water Act over a thirty-four year period. *United States v. Metropolitan
District Commission*, 930 F.2d at 136. Maintaining the status quo is not an option.

Nevertheless, this Court is mindful that remedies that override state or local
law should be narrowly tailored and that, to the extent possible, local officials
should at least have the opportunity to devise their own solutions to remedy a
violation of federal law.

Accordingly, the Court shall ORDER the Mayor of the City of Detroit
(and/or his designee), the City Council President and President Pro Tem, and a
current member of the Board (to be chosen by the Board) to meet and confer and,
within 60 days of the date of this order, propose a plan that addresses the root
causes of non-compliance that are discussed in this Opinion & Order. In making
such recommendations to the Court, these individuals *shall not* be constrained by
any local Charter or ordinance provisions or by the provisions of any existing
contracts.

(*Id*. at 42-43) (emphasis in original). This Court ordered the above individuals to submit their

proposed plan no later than November 4, 2011. (*Id.* at 44).

Following this Court's September 9, 2011 Opinion & Order, the City leaders and BOWC

member identified therein met to devise and propose a workable solution to remedy the

underlying root causes of noncompliance ("the Root Cause Committee"). On November 2, 2011,

the Root Cause Committee submitted a written proposed "Plan of Action" to the Special Master

in this action, which the Special Master then submitted to the Court on that same date. (Docket

Entry No. 2409). The Root Cause Committee spent considerable time in developing their

proposed Plan of Action. The Root Cause Committee members noted that they were "permitted

to solicit and receive input from various sources" with knowledge of the DWSD and utility

operations and they noted that they received input from: 1) the Detroit City Council; 2) the Board

of Water Commissioners; 3) DWSD Management Staff; 4) Union Representatives; 5)

Management-side Labor Counsel; 6) Industry Professionals; 7) Current DWSD Vendors; 8) a Rate

Consultant; and 9) Regulatory Agency Input. (D.E. No. 2409-1 at 2).

7

On November 4, 2011, this Court issued an Order (D.E. No. 2410), wherein this Court found that the proposed Plan of Action adequately addresses the majority of the root causes of non-compliance outlined in this Court's September 9, 2011 Opinion & Order.  This Court therefore adopted the Plan of Action (D.E. No. 2410-1), which includes a DWSD Procurement Policy (D.E. No. 2410-2), proposed by the Root Cause Committee and ordered its implementation.  (D.E. No. 2410).

Although the Root Cause Committee agreed that certain changes to existing collective bargaining agreements ("CBAs") need to occur, despite earnest efforts, the Committee could not agree on how to achieve the necessary changes.   Because the proposed Plan of Action did not adequately address collective bargaining issues, the Court considered the issue on its own:

> Based on the record in this case, the Court concludes that certain CBA provisions and work rules are impeding the DWSD from achieving and maintaining both short-term and long-term compliance with its NPDES permit and the Clean Water Act.  Given that the Committee was unable to agree on a proposed solution for remedying these impediments to compliance, this Court shall order its own remedy.

> . . . .

> The Court has carefully considered all options and concludes that the least intrusive means of effectively remedying these impediments to compliance is to: 1) keep all current CBAs that cover DWSD employees in force, but strike and enjoin those current CBA provisions or work rules that threaten short-term compliance; and 2) Order that, in the future, the DWSD shall negotiate and sign its own CBAs that cover only DWSD employees, and prohibit future DWSD CBAs from containing certain provisions that threaten long-term compliance.

> Specifically, the Court hereby **ORDERS** that:
> 1.    The Director of the DWSD, with the input and advice of union leadership, shall develop a DWSD employee training program, a DWSD employee assessment program, and a DWSD apprenticeship training program.

8

2.     Any City of Detroit Executive Orders imposing
        furlough days upon City employees shall not apply to
        DWSD employees.

3.     The DWSD shall act on behalf of the City of Detroit to
        have its own CBAs that cover DWSD employees
        ("DWSD CBAs").  DWSD CBAs shall not include
        employees of any other City of Detroit departments.
        The Director of the DWSD shall have final authority to
        approve CBAs for employees of the DWSD.

4.     The Court hereby strikes and enjoins any provisions in
        current CBAs that allow an employee from outside the
        DWSD to transfer ("bump") into the DWSD based on
        seniority.  Future DWSD CBAs shall adopt a seniority
        system for the DWSD that does not provide for
        transfer rights across City of Detroit Departments (ie.,
        does not provide for "bumping rights" across city
        departments).

5.     DWSD management must be able to explore all
        available means and methods to achieve compliance
        with its NPDES permit and the Clean Water Act.
        DWSD CBAs shall not prohibit subcontracting or
        outsourcing and the Court hereby strikes and enjoins
        any provisions in current CBAs that prohibit the
        DWSD from subcontracting or outsourcing.

6.     DWSD CBAs shall provide that excused hours from
        DWSD work for union activities are limited to
        attending grievance hearings and union negotiations,
        with prior notification to DWSD management.  The
        Court strikes and enjoins any current CBA provisions
        to the contrary.

7.     DWSD CBAs shall include a three-year time period
        pertaining to discipline actions.

8.     The Director of the DWSD shall perform a review of

9

the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.

9.   DWSD CBAs shall provide that promotions in the DWSD shall be at the discretion of management and based upon skill, knowledge, and ability, and then taking seniority into account. The Court strikes and enjoins and current CBA provisions to the contrary.

10.  Past practices on operational issues shall not limit operational changes initiated by management with respect to DWSD CBAs.

11.  The Court strikes and enjoins any provisions in existing CBAs that prevent DWSD management from assigning overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management. DWSD CBAs shall provide that management has the discretion to assign overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management.

12.  Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated.

13.  The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(D.E. No. 2410 at 4-7).

Thereafter, Sue McCormick was hired as the Director of the DWSD and began work on

10

January 1, 2012.  In addition, following a request by the Root Cause Committee, this Court

issued an order authorizing the DWSD to hire a Chief Operating Officer / Compliance Officer.

(*See* D.E. No. 2456, "the Court agrees that, given the volume and nature of the work entailed to

implement this Court's November 4, 2011 Order, and comply with the ACO, the creation of a

new position at the DWSD is warranted and appropriate.").  Matt Schenk was then hired as the

DWSD's COO/CO.

The DWSD has been working toward implementing this Court's November 4th Order,

pursuant to which it was to file certain reports by specified dates.  The November 4th Order

required the Director to file an initial compliance report by May 4, 2012, identifying any

additional barriers to long-term compliance with the ACO and the Clean Water Act, and making

any additional requests needed for compliance.  The Order provided for that report to be

circulated among the BOWC, the Mayor of the City of Detroit, the Detroit City Council, and the

MDEQ, who could then provide comments, suggestions and recommendations to the Director

before a final Director's Report of Compliance would be filed with the Court on August 4, 2012.

(D.E. No. 2410 at 9-10).

On May 4, 2012, the DWSD filed an initial compliance report (D.E. No. 2460) that, for

several reasons, asked the Court to extend the date for the filing of the Director's Final

Compliance Report to October 4, 2012.  (*Id*. at 17-18).  This Court granted that request in an

Order issued on May 17, 2012 (D.E. No. 2461) and, therefore, the Final Director's Report was

due to be filed on October 4, 2012.

On August 20, 2012, the DWSD filed a "Motion for Relief Essential to Compliance with

this Court's November 4, 2011 Order Mandating DWSD-Specific Collective Bargaining

Agreements." (D.E. No. 2469). This Court issued an Order that granted that motion, to the extent that it ordered as follows:

[T]he Court hereby:

1)      CLARIFIES that Paragraph 3 on Page 6 of this Court's November 4, 2011 Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees; and

2)      ORDERS that MERC is not enjoined from ruling on the DWSD's pending Clarification Petitions, in order to effectuate the above severancing ordered by this Court.

IT IS SO ORDERED.

(D.E. No. 2470 at 3).

On September 24, 2012, the DWSD filed the instant "Motion for Interim Order Clarifying November 4, 2011 Order and for Expedited Briefing Schedule." (D.E. No. 2473). The DWSD asserts that it needs an interim order to address uncertainties and ambiguities that arise out of this Court's November 4th Order, that are impeding the DWSD's ability to implement the November 4th Order. The pending motion includes multiple requests for injunctive relief.

On September 25, 2012, this Court granted the request for expedited consideration and issued an order for expedited briefing providing that parties may file responses to the motion no later than 4:00 p.m. on October 1, 2012.

On September 28, 2012, Macomb County filed a response brief indicating that it supports the DWSD's motion, but stating that any clarification from the Court with respect to additional Local Economic Development policies "should contain a clear directive that all policies pertaining to procurement shall insure that goods and services are provided in a cost-effective

12

manner and contractors are selected by cost and qualification." (D.E. No. 2475).

Oakland County also filed a response brief, indicating that it generally supports the relief requested by the DWSD, but that it objects to the requested six-month extension for filing the Director's Final Compliance Report. (D.E. No. 2483). Oakland County asserts that a three-month extension should be adequate. (*Id.* at 1 n.1).[2]

On October 1, 2012, the City filed a 23-page response brief challenging several requests for relief contained in the motion and requesting additional time to respond to the DWSD's Motion. (D.E. No. 2480).

Thereafter, on October 2, 2012, this Court held a Status Conference with the parties to address the City's request for additional time to respond to the motion. At the conference, Counsel for the City advised that, although the City filed a brief responding to multiple issues, it may, or may not, wish to supplement that brief. The City requested that it be allowed until October 5, 2012, at 12:00 p.m. to supplement its brief. The Court granted that request; but, on October 4, 2012, the City advised that it would not be filing a supplemental brief. Thus, the briefing as to this motion has now concluded.

**Standard For Granting Injunctive Relief**

Rule 65 of the Federal Rules of Civil Procedure governs injunctions and provides, in pertinent part, that "[e]very order granting an injunction and every restraining order" must state the reasons why it issued, state its terms specifically, and describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d)(1).

As the Supreme Court has explained, the specificity requirements of Rule 65(d) are

---

[2]Oakland County's motion also addresses issues not raised in the pending motion.

"designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). An injunction "should clearly let defendant know what he is ordered to do or not to do." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001). Rule 65(d) is satisfied "only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008); 11A Fed. Prac. & Proc. Civ. § 2955, *Form and Scope of Injunctions or Restraining Orders* (2d ed.) (The standard established by Rule 65(d) "is that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.").

## ANALYSIS

With the above standard in mind, the Court shall address the relief requested in the pending motion. The DWSD's motion contains nine separately titled sections that contain specific requests for injunctive relief. Each section will be addressed in turn.

## I.      Request for Comprehensive Equitable Relief

The first section of the pending motion, titled "Request for Comprehensive Equitable Relief," contains three requests.

First, the DWSD asks the Court to enjoin "the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or practices that are inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance." (DWSD's Motion at 3). The DWSD asserts that such relief is needed because "experience has shown that neither DWSD nor

14

the Court can identify every City ordinance, charter provision, resolution, executive order, policy, or procedure that is currently inconsistent with and/or is adversely impacting the long-term path to compliance with the November 4 Order." (*Id.* at 3).

The specific injunctive relief requested by DWSD – an order enjoining the City from applying existing or future Charter provisions, ordinances, etc. "that are inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance" – would not satisfy the specificity requirements of Rule 65(d). Every order for injunctive relief "should clearly let defendant know what he is ordered to do or not to do. A court order should be phrased in terms of objective actions, not legal conclusions." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001). Rule 65(d) is satisfied "only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008). If this Court were to order the requested injunctive relief, the City would not be able to ascertain, from the terms of the order, whether a given Charter provision or ordinance is enjoined or not by virtue of being "inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance."

Nevertheless, the Court concludes that an order enjoining the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or practices *that are inconsistent with the terms of this Court's Orders* is appropriate and within the permissible scope of Rule 65(d). Accordingly, the Court hereby **ENJOINS** the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or

15

practices that are inconsistent with the terms of this Court's Orders.

Second, the DWSD asks the Court to order the "City to work cooperatively with DWSD to implement the November 4 Order in an efficient and timely manner".  (DWSD's Motion at 3). Although not explicitly stated in the November 4th Order, this Court fully expects the City to work cooperatively with the DWSD to implement the changes ordered by this Court.  To the extent that such clarification is necessary, the Court hereby **ORDERS** that the City and its employees and agents shall work cooperatively with the DWSD to implement this Court's Orders in a timely and efficient manner.  The Court further directs that, if the City and/or its agents and employees fail or refuse to implement the terms of this Court's Orders, the DWSD shall file a motion so advising the Court, at which time the Court may order the City and/or its employees and agents to show cause why they should not be held in contempt.

Third, the DWSD asks the Court to authorize the City "to pass along charges" for "transition services" provided to the DWSD, at the City's "actual cost." (DWSD's Motion at 3).

The City objects to this request, noting that no specific services are identified in the motion.

The Root Cause Committee's Plan of Action stated that implementation may result in a reduction in chargeback revenues to the City from the DWSD that would need to be addressed but also stated it did not have adequate information to make a recommendation as to that issue. (Plan of Action, D.E. No. 2410-1, at 6).  In adopting the Plan of Action, this Court ordered the Root Cause Committee to "continue to meet and confer, and to gather necessary financial records, in order to make specific recommendations regarding how the reduction in chargeback issue should be addressed during the transition period" and to submit a written recommendation

16

to the Court by January 4, 2012.  (11/4/11 Order, D.E. No. 2410, at 8).  To date, however, the

Court has not received a written submission with specific recommendations on this issue, and the

DWSD's pending motion does not contain any specific recommendations or requests regarding

the chargeback of transition services.  Thus, the DWSD's motion does not provide sufficient

detail as to this requested relief such that the Court can properly evaluate it at this time.  The

Court therefore **ORDERS** that the DWSD may file a supplemental brief no later than October

26, 2012, that explains precisely what the DWSD is requesting and why the requested relief is

needed.  No later than November 9, 2012, the City, and any other party, may file a response to

any supplemental brief filed by the DWSD on this issue.  No later than November 16, 2012, the

DWSD may file a reply brief.

## II.    The City of Detroit's Financial Stability Agreement

The second section of the pending motion relates to the City of Detroit's Financial

Stability Agreement ("FSA"), which the City entered into after this Court's November 4, 2011

Order.  The FSA does not address its applicability to the DWSD.  Because it was issued before

the FSA existed, the November 4th Order does not address whether, or to what extent, the FSA

applies to the DWSD.

This Court ordered that "DWSD shall act on behalf of the City of Detroit to have its own

[collective bargaining agreements ("CBAs")] that cover DWSD employees" and that such CBAs

"shall not include employees of any other City of Detroit departments."  (11/4/11 Order at 6).

The November 4th Order also provides that the "Director of the DWSD shall have final authority

to approve CBAs for employees of the DWSD."  (*Id.*).

The DWSD's verified motion states that, following the November 4th Order, the DWSD

has entered into new DWSD-specific CBAs with eleven of the twenty unions that represent

DWSD employees.   That leaves nine unions, comprised of DWSD employees, whose most

recent CBAs expired that have not reached a new agreement with the DWSD.

"When most City union contracts expired in June 2012, the City imposed terms of

employment (City Employment Terms or "CET[s]")."  (City's Br. at 5).  The City, however, has

not applied the CETs to any DWSD personnel because of this Court's November 4th Order.  That

leaves the DWSD in a position where the CBAs that previously governed DWSD employees

have expired and, for those unions who have not reached a new DWSD-specific CBA, the

DWSD must determine what employment terms will be in effect until new agreements are

reached.

It appears undisputed that, absent this Court's Order, the City's CETs would be applied.

On June 26, 2012, the BOWC passed a Resolution that CETs are applicable to DWSD unions

that have not settled CBAs until such time as: (a) the relevant union signs an agreement with the

DWSD; (b) negotiations reach an impasse and the DWSD imposes its own terms and conditions

of employment on that union.  (*See* D.E. No. 2476-3).

The DWSD's motion asks this Court to clarify or declare "that the FSA is applicable to

DWSD only to the extent that it is not inconsistent with the November 4 Order and the other

orders of this Court".  (DWSD's Motion at 5).  But as the City notes, the DWSD "identifies only

one provision of the FSA that it wants applied" – the City's CETs that were imposed on non-

DWSD City unions after their contracts expired in June of 2012.  (City's Br. at 5).

The DWSD also asserts that, "[d]espite the Resolution and DWSD's sharing information

regarding its adoption with the City's Labor Relations Division, the City has not implemented the

18

Resolution." (DWSD's Motion at 5). It asks the Court to clarify or declare "the Resolution adopted by the BOWC on June 26, 2012 implements and is consistent with the November 4 Order and is effective and controlling, regardless of whether it might otherwise be impacted by the FSA." (DWSD's Motion at 5).

In response, the City states that it has no objection to DWSD implementing the City's CETs – if directed to do so by the Court. (*Id*. at 6). The City has not done so to date, however, for several reasons, including that it believed that doing so may be contrary to this Court's November 4th Order.

The Court agrees that, in order for the DWSD to continue to progress in implementing this Court's November 4th Order, the Court must provide the parties clarification and direction on this issue. The Court **DECLARES** that the BOWC's June 26, 2012 Resolution is in accordance with this Court's November 4th Order and shall be effective and controlling until this Court orders otherwise.

## III.    Legal Representation and Authority

The third section of the pending motion, titled "Legal Representation and Authority", contains three requests for injunctive relief.

The DWSD first asks the Court to clarify or declare "that legal authority for interpreting the November 4 Order and advising the Director of DWSD regarding legal aspects of its implementation lies with DWSD's General Counsel". (DWSD's Motion at 7). The DWSD asserts that "on several occasions during the past several months, City administrative departments have declined to act in accordance with the Director's interpretation of the November 4 Order and the Director's plan for implementing that order and/or have expressed

19

their disagreement with the Director's interpretation of the November 4 Order.  Examples of this

are the City's Labor Relations Director's refusing to recognize that the CETs applied to City

unions that did not sign agreements with DWSD prior to implementation of the CETs; City Law

Department advice that DWSD is still bound by the tax-clearance process identified by the City

Finance Department prior to awarding a contract rather than a DWSD alternative process; and

City Labor Relations' and Law Department's interpreting an employee reversion as being

distinguishable from this Court's November 4 Order to prevent transferring and bumping of

employees from the City to DWSD, and others."  (*Id*. at 5-6).

The Court is unsure as to precisely what relief DWSD is requesting.  To the extent that

the DWSD asks the Court to clarify that the DWSD's General Counsel, rather than the City's

Corporation Counsel, may provide legal advice to the DWSD regarding implementing this

Court's orders, the Court agrees that the DWSD's General Counsel may provide such advice and

counsel to the DWSD and **GRANTS** that request.

To the extent that the DWSD is asking for some type of delegated authority to interpret

this Court's Orders and bind the City to such interpretations, that request is **DENIED.**  Again, in

order to comply with the specificity requirements of Rule 65, the DWSD and the City should be

able to ascertain from the four corners of this Court's orders what acts are required or enjoined.

To the extent that a provision in this Court's orders is unclear, or the DWSD and the City

disagree as to whether the order requires or enjoins a given act, the parties should seek

clarification from this Court.  In addition, as stated above, the Court is directing that, if the City

and/or its agents and employees fail or refuse to implement the terms of this Court's Orders, or

violate the terms of the Orders, the DWSD should file a motion so advising the Court, at which

time the Court may order the City and/or its employees or agents to show cause why they should not be held in contempt.

The Root Cause Committee's Plan of Action, adopted by this Court in its November 4th Order, provides that the "DWSD, acting through its Director upon authorization by the Board of Water Commissioners, shall have final authority to approve" "Legal Settlements and Claims paid by DWSD." (Plan of Action, D.E. No. 2410-1, at 7). As its second request in this section of the motion, the DWSD asks this Court to clarify or declare "that the BOWC may delegate certain approval threshold limits to DWSD management for approval of legal settlements, contract claims, and pre-litigation settlement offers without further BOWC approval". (DWSD's Motion at 7).

In its response brief, the City states that it does not oppose this request but states that "it might be prudent for the Court to set the threshold amount that may be delegated. (City's Br., D.E. No. 2480, at 8).

The DWSD's motion, however, does not identify a requested threshold amount and it does not explain why it wishes to have the above provision modified in order to delegate approval authority. The Court concludes that the DWSD's motion does not provide sufficient information such that the Court can properly evaluate this requested relief and **ORDERS** that the DWSD may file a supplemental brief no later than October 26, 2012 that explains precisely what the DWSD is requesting and why the requested relief is needed. No later than November 9, 2012, the City, and any other party, may file a response to any supplemental brief filed by the DWSD on this issue. No later than November 16, 2012, the DWSD may file a reply brief.

As its third request in this section of the motion, the DWSD asks the Court to clarify or

declare that "Sections 7.5-208 and 7.5-209 of the Detroit City Charter regarding intra-governmental disputes and enforcement of the Charter shall not apply to issues related to DWSD and the implementation of and applicability of this Court's Orders". (DWSD's Motion at 7). The DWSD's motion, however, does not discuss the substance of either of the above Charter provisions, nor does it sufficiently explain how the DWSD believes that those provisions are impeding the DWSD from complying with its NPDES Permit, the Clean Water Act, the current ACO with the MDEQ, or this Court's orders. In addition, it is unclear to this Court as to the precise relief that the DWSD is requesting as to these two Charter provisions. The Court therefore **ORDERS** that the DWSD may file a supplemental brief no later than October 26, 2012, that explains precisely what the DWSD is requesting and why the requested relief is needed. No later than November 9, 2012, the City, and any other party, may file a response to any supplemental brief filed by the DWSD on this issue. No later than November 16, 2012, the DWSD may file a reply brief.

## IV.    Procurement

The fourth section of the pending motion, which relates to procurement issues, contains numerous requests for injunctive relief. (DWSD's Motion at 7-13).

First, the DWSD asks the Court to clarify or declare that "the November 4 Order grants DWSD authority to proceed with contracts to assess outsourcing opportunities and/or to outsource functions of DWSD solely upon the approval of the BOWC and without regard to the dollar value of the contract". (DWSD's Motion at 12). In support of this first request for relief, the DWSD notes that the Root Cause Committee's Plan of Action stated:

> In order to achieve long-term compliance, this committee agrees that DWSD will
> need to be relieved of the requirement to fully comply with the existing provisions

22

of the City of Detroit's Procurement Ordinance.  As a by-product of this decision,
it is also clear that DWSD cannot be expected to fully comply with the Charter
provisions related to Privatization (Charter Section 6-307).

(Plan of Action, D.E. No. 2410-1, at 8).  The DWSD asserts that the Root Cause Committee's

Plan of Action, which was adopted by this Court, therefore "intended to provide limits on City

Council's role in being involved in DWSD's decisions to outsource work of the Department."

(DWSD's Motion at 9).  The DWSD further asserts that the Root Cause Committee recognized

that the "recommended Procurement Policy would not cover all types of procurements and,

accordingly, provided for a general catch all on page 7".  (*Id*.).  It contends that the Plan of

Action thus evidences an "intent to leave procurements not specifically addressed in the Plan to

the sole discretion of the DWSD Director with approval from the Board of Water

Commissioners."  (*Id*. at 10).  The DWSD argues that "there is an ambiguity concerning whether

DWSD's outsourcing authority discussed therein was intended to be limited by the dollar

thresholds for approval authority by the BOWC and the Council" within the Procurement Policy.

The DWSD contends that the Order should be read so as to grant it the authority to proceed with

contracts to assess outsourcing opportunities solely upon the approval of the BOWC and without

regard to the dollar value of the contract.

The Court agrees that the Root Cause Committee's Plan of Action and Procurement

Policy, which were both adopted by this Court, intended to provide limits on City Council's role

in approving contracts.  But those limits are set forth in the Procurement Policy's provision

governing the approval required for various contracts:

(6) Approval of Contracts

(A) Approval by the Director of DWSD

23

The DWSD Director shall have full and final approval to approve procurements of the following types of goods and services at dollar values that do not exceed the following limits:

> (i) Personal Services contracts that do not exceed $50,000;

> (ii) Goods or commodities contracts that do not exceed $100,000;

> (iii) Professional Services contracts that do not exceed $250,000;

> (iv) Construction contracts that do not exceed $500,000; and

> (v) Sale of land or equipment contracts that do not exceed $500,000, pursuant to a written appraisal from a licensed appraiser.

(B) Approval by the Board of Water Commissioners

The Board of Water Commissioners shall be required to approve the following types of procurements prior to execution by the DWSD Director:

> (i) Personal Services contracts that exceed $50,000;

> (ii) Goods or commodities contracts that exceed $100,000;

> (iii) Professional Services contracts that exceed $250,000;

> (iv) Construction contracts that exceed $500,000 and

> (v) Sale of land or equipment contracts that exceed $500,000, pursuant to a written appraisal from a licensed appraiser.

(C) Approval by the Detroit City Council

In addition to requiring approval of the Board of Water Commissioners, the following types of procurements shall also require the approval of the Detroit City Council prior to execution by the Director of DWSD:

> (i) Personal Services contracts that exceed $150,000;

> (ii) Goods or commodities contracts that exceed $2,000,000;

24

(iii) Professional Services contracts that exceed $2,000,000;

(iv) Construction contracts that exceed $5,000,000; and

(v) Sale of land or equipment contracts that exceed $2,500,000, pursuant to a written appraisal from a licensed appraiser.

(Procurement Policy, D.E. No. 2410, at 6-7).  Thus, the Procurement Policy agreed to by the Root Cause Committee and adopted by this Court, provides that:  1) professional services contracts that do not exceed $250,000 can be approved by the Director of the DWSD, without approval from the BOWC or the Detroit City Council; 2) professional services contracts that exceed $250,000 require the approval of both the Director of the DWSD and the BOWC; and 3) professional services contracts that exceed $2,000,000 require the approval of the Detroit City Council, in addition to the approval of the Director of the DWSD and the BOWC.  The Court finds no ambiguity in the Procurement Policy agreed to by the Root Cause Committee, and adopted by this Court, and shall **DENY** this request.[3]

Second, the DWSD asks the Court to clarify or declare that "in determining whether monetary approval thresholds are triggered under the existing DWSD Procurement Policy, amounts should be determined on a fiscal year basis for multi-year contracts".  (DWSD's Motion at 12).  The Procurement Policy recommended by the Root Cause Committee, and adopted by

---

[3]The DWSD's Reply Brief states that it is seeking a declaration that City Council approval is not necessary for it to "move forward with the EMA Contract and other outsourcing matters" and asserts that it believes that unions comprised of DWSD employees will put inordinate political pressure on City Council not to approve the EMA Contract or other contracts that deal with outsourcing and therefore this Court should declare that the EMA Contract and future outsourcing contracts do not require City Council approval.  (DWSD's Reply Br. at 4-5).  The Court finds that argument, based on a hypothetical scenario, and lacking an explanation as to how such relief is necessary for compliance with the DWSD's NPDES Permit, the Clean Water Act, or this Court's November 4th Order, premature.

25

this Court, contains a section that governs the approval of contracts (Procurement Policy, D.E. No. 2410-2, at 6-7). The DWSD asks the Court to clarify that the monetary approval thresholds provided in that section are determined on a fiscal year basis for multi-year contracts. The Court agrees that although implicit in the Root Cause Committee's Plan of Action, the Court should clarify this issue and hereby **DECLARES** that in determining whether the monetary approval thresholds are triggered under the existing DWSD Procurement Policy, amounts should be determined on a fiscal year basis for multi-year contracts.

Third, the DWSD asks the Court to clarify or declare that "DWSD is not bound by the City's Prevailing Wage Ordinance". (DWSD's Motion at 12). The Root Cause Committee did not make any recommendations to the Court regarding the DWSD being exempt from the City's Prevailing Wage Ordinance, and the Court's November 4th Order did not order DWSD exempt from the City's Prevailing Wage Ordinance. Moreover, although the DWSD's motion asks the Court to now declare that the DWSD is not bound by the City's Prevailing Wage Ordinance, the DWSD's motion does not explain why such relief is needed in order to achieve compliance with the DWSD's NPDES permit, the Clean Water Act, or this Court's November 4, 2011 Order. The Court hereby **DENIES** this request.

Fourth, the DWSD asks the Court to clarify or declare that "expert witness engagements as well as other expert consulting contracts on pending legal matters authorized by DWSD's General Counsel are exempted from the competitive bidding requirements of the DWSD Procurement Policy". (DWSD's Motion at 7 & 12). The DWSD asserts that it needs to retain expert witnesses and consultants on pending legal matters quickly and therefore such contracts should not be subject to the competitive bidding requirements in the Procurement Policy. The

26

Court agrees that, if the DWSD were required to follow the competitive bidding requirements for such contracts, the DWSD would be unable to meet court-imposed deadlines. Due to the expedited nature of the need to hire expert witnesses and consultants in the course of litigation, such contracts must be exempt from the competitive bidding requirements of the Procurement Policy. The Court hereby **GRANTS** this request and **DECLARES** that expert witness engagements and other expert consulting contracts on pending legal matters authorized by the DWSD's General Counsel are exempted from the competitive bidding requirements of the DWSD Procurement Policy.

Fifth, the DWSD asks the Court to grant "DWSD authority to establish its own process to define and obtain tax clearances that is consistent with applicable state law and, upon doing so, will no longer be bound by the City's tax-clearance process". (DWSD's Motion at 12). The DWSD's motion, however, does not sufficiently explain what the City's current tax-clearance process is, what specific substitute process it wishes to use, or how complying with the City's current process impedes the DWSD's ability to comply with its NPDES Permit, the Clean Water Act, or this Court's November 4th Order. The Court therefore **ORDERS** that the DWSD may file a supplemental brief no later than October 26, 2012, that explains precisely what the DWSD is requesting and why the requested relief is needed. No later than November 9, 2012, the City, and any other party, may file a response to any supplemental brief filed by the DWSD on this issue. No later than November 16, 2012, the DWSD may file a reply brief.

Sixth, the DWSD asks the Court to clarify or declare that the BOWC has the authority "to further define the procurement policy over time to address areas not inconsistent with the Court's orders includes the authority to (a) modify the bid protest and appeal process, (b) include

27

a debarment process within the Procurement Policy, (c) add additional definitions to the

Procurement Policy, (d) provide for additional exemptions, by category, from the competitive

bidding process, and (e) define and establish a separate approval process for grant applications,

grant agreements, and intergovernmental agreements".  (DWSD's Motion at 12).

The Procurement Policy agreed to by the Root Cause Committee, and adopted by this Court,

contains a provision governing bid protests and appeals.  (Procurement Policy, D.E. No. 2410-2,

at 7).  The DWSD's motion does not explain how the BOWC wishes to modify that provision or

why such a modification is needed.  Nor does the DWSD's motion explain: 1) what additional

definitions in the Procurement Policy need to be added or why such definitions are needed; 2)

what additional exceptions from the competitive bidding process are needed and why such

definitions are needed; 3) what kind of approval process is needed for grant applications, grant

agreements and intergovernmental agreements, and why such a process is needed. The Court

therefore **ORDERS** that the DWSD may file a supplemental brief no later than October 26,

2012, that explains precisely what the DWSD is requesting and why the requested relief is

needed.  No later than November 9, 2012, the City, and any other party, may file a response to

any supplemental brief filed by the DWSD on these issues.  No later than November 16, 2012,

the DWSD may file a reply brief.

Seventh, the DWSD asks the Court to clarify or declare that "the requirement that DWSD

have its own separate finance, human resources and procurement functions includes its authority

to purchase its own information technology systems which may differ from those of the City".

(DWSD's Motion at 12).  In response, the City notes that its own Human Resources Deputy

Director agrees in principle "that DWSD should obtain its own payroll system."  (City's Br. at

12).  The City asserts, however, that implementing such a system will take a significant amount

of time and asserts that, because the City may soon be implementing its own new system,

implementing both systems simultaneously will be difficult.  (*Id.* at 12-13).

The Court concludes that, in order to implement the changes set forth in this Court's

November 4th Order, which are needed for long-term compliance with the DWSD's NPDES

Permit, the Clean Water Act, and the ACO, the DWSD must be able to obtain its own payroll

system.  The Court hereby **DECLARES** that the requirement that DWSD have its own separate

finance, human resources, and procurement functions includes its authority to purchase its own

information technology systems which may differ from those of the City.  The Court further

ORDERS that the City and its employees and administrators shall give the DWSD necessary

access to existing systems during the transition process.

Eighth, the DWSD asks the Court to clarify or declare "whether DWSD was intended to

be free to adopt additional Local Economic Development policies or whether the equalization

credits contained within the Root Cause Committee's recommended Procurement Policy were

intended to be exclusive local business preference for DWSD contracts".  (DWSD's Motion at

12-13).  The Root Cause Committee's Procurement Policy sets forth specific equalization credits,

that were agreed to by the Root Cause Committee, that would apply to the bidding of DWSD

contracts.  (Procurement Policy, D.E. No. 7, at 4-5).  In adopting that provision, this Court

enjoined the application of any contrary City Charter provisions or ordinances to the DWSD.

The DWSD's motion does not state what additional local economic development policy or

equalization credits it wishes to adopt, nor does it explain why the equalization credits agreed to

by the Root Cause Committee should modified or how a modification is needed to comply with

29

the DWSD's NPDES Permit, the Clean Water Act, or this Court's November 4th Order.  The

Court **DENIES** this request.

## V.      Finance

The Fifth Section relates to finance and includes multiple requests for relief.

First, it asks the Court to clarify or declare that "DWSD (i) is authorized to establish bank

accounts that are separate from the accounts of the City Treasurer and is, therefore, not bound by

section 6-305 of the Detroit City Charter, (ii) is free to establish its own sub-units and programs

within its Finance Division to implement the November 4 Order, including debt management,

accounts payable, accounts receivable, accounting, budget, cash management, asset management,

deferred compensation, and any other sub-units that it deems appropriate, (iii) is not bound by

City Finance Policies (i.e., debt management, investment, budget, etc.), and (iv) may pursue the

establishment of its own self-insurance fund separate from the City's".  (DWSD's Motion at 13-

14).

With respect to the request set forth in subsections (ii) and (iii) above, the Court shall

GRANT those requests.  As set forth in this Court's September 9, 2011 Opinion, and the Plan of

Action adopted by the Court in its November 4th Order, one of the central causes of the DWSD's

inability to  achieve long-term compliance with its NPDES and the Clean Water Act has been

bureaucratic and institutional barriers relating to finance.  This relief is necessary for the DWSD

to fully implement the Plan of Action, adopted by this Court's November 4th Order.  The Court

hereby **DECLARES** that: 1) the DWSD is free to establish its own sub-units and programs

within its Finance Division to implement the November 4th Order, including debt management,

accounts payable, accounts receivable, accounting, budget, cash management, asset management,

and deferred compensation; and 2) the City is not bound by City Finance Policies.

With respect to the requests for relief set forth in subsections (i) and (iv), however, the DWSD's motion does not sufficiently explain why the requested relief is necessary to comply with its NPDES Permit, the Clean Water Act, the ACO, or this Court's November 4th Order. The Court therefore **ORDERS** that the DWSD may file a supplemental brief no later than October 26, 2012, that explains precisely what the DWSD is requesting and why the requested relief is needed. No later than November 9, 2012, the City, and any other party, may file a response to any supplemental brief filed by the DWSD on this issue. No later than November 16, 2012, the DWSD may file a reply brief.

Second, the DWSD asks the Court to clarify or declare that "(i) DWSD may issue new debt, refinance existing debt, and/or enter into loan agreements upon the approval of the BOWC and (ii) approval of the City and the City Council is required only in circumstances where DWSD's debt issuance would involve a pledge of the City's full faith and credit". (D.E. No. 2374). The Court again concludes that the DWSD's motion does not sufficiently explain why the requested relief is necessary to comply with its NPDES Permit, the Clean Water Act, the ACO, or this Court's November 4th Order. The Court therefore **ORDERS** that the DWSD may file a supplemental brief no later than October 26, 2012, that explains precisely what the DWSD is requesting and why the requested relief is needed. No later than November 9, 2012, the City, and any other party, may file a response to any supplemental brief filed by the DWSD on this issue. No later than November 16, 2012, the DWSD may file a reply brief.

## VI.   Human Resources

The Sixth Section of the pending motion relates to human resources and includes multiple

requests for relief.

The DWSD asks the Court to Clarify or declare that "DWSD is exempt from application of City Ordinances, Human Resource Policies, Human Resource Regulations, Civil Service Commission Rules, City Council Resolutions, Administrative or Executive Orders, and other such City Human Resources documents and requirements pertaining to payroll, employee benefits, employee relations, labor relations, and other Human Resource matters". (DWSD's Motion at 16). It also asks the Court to "Clarify or declare that "DWSD is not bound by the Civil Service Commission as provided in Section 6-405 of the Detroit City Charter". (*Id*. at 17). As explained in this Court's September 9, 2011 Opinion, human resources issues have been a chronic problem for the DWSD since the inception of this case. Over the past four decades, the City's personnel policies, civil service rules, and other restrictions have repeatedly been identified by experts, and acknowledged by the City, as impediments to the DWSD's compliance with its NPDES Permit and the Clean Water Act. (*See, e.g.* 9/9/11 Opinion, D.E. No. 2397, at 12-15, 17-18, 21-23, and 26). The Court shall **GRANT** this request and **DECLARES** that: 1) the DWSD is exempt from the application of City ordinances, the City's human resources policies and regulations, Civil Service Commission Rules, and City resolutions and orders, pertaining to payroll, employee benefits, and employee and labor relations; and 2) the DWSD is not bound by the Civil Service Commission as provided in Section 6-405 of the City's Charter.

The DWSD also asks the Court to Clarify or declare that "DWSD's status and rights as an employer that (i) has authority to determine the terms and conditions of employment for its non-union employees as well as its unionized employees, (ii) may pursue its own payroll services separate and apart from the rest of the City, and (iii) may utilize its own Employer Identification

Number ("EIN") if its determines that doing so would serve DWSD's best interest".  The requests for relief in the first two subsections (i) and (ii) have already been addressed and granted in this Opinion & Order.

As to the remaining request, set forth in subsection (iii), the Court notes that the City has objected to that relief, questioning whether the DWSD, as a department of the City, may legally obtain its own EIN.  (City's Br. at 13).  Moreover, the Court concludes that the DWSD's motion does not sufficiently explain why the requested relief is necessary to comply with its NPDES Permit, the Clean Water Act, the ACO, or this Court's November 4th Order.  The Court therefore **ORDERS** that the DWSD may file a supplemental brief no later than October 26, 2012, that explains precisely what the DWSD is requesting and why the requested relief is needed.  No later than November 9, 2012, the City, and any other party, may file a response to any supplemental brief filed by the DWSD on this issue.  No later than November 16, 2012, the DWSD may file a reply brief.

The DWSD also asks the Court to clarify or declare that "DWSD may (i) nominate its own Plan Administrator for implementation of the Defined Contribution Plan as required by DWSD's collective bargaining agreements, (ii) develop the plan design and documents necessary to implement the Defined Contribution Plan for its employees, and (iii) provide for the authority of its Plan Administrator pursuant to its plan documents".  (DWSD's Motion at 17).  The City objects to this request for relief and, among other things, questions whether state law or Internal Revenue Service rules allow a department of a municipal corporation to establish a separate employee retirement benefit plan.  (City's Br. at 15).  The Court concludes that supplemental briefing as to this request is also warranted.  The Court therefore **ORDERS** that the DWSD may

33

file a supplemental brief no later than October 26, 2012, that explains precisely what the DWSD

is requesting and why the requested relief is necessary for compliance with its NPDES Permit,

the Clean Water Act, or this Court's Orders.  No later than November 9, 2012, the City, and any

other party, may file a response to any supplemental brief filed by the DWSD on this issue.  No

later than November 16, 2012, the DWSD may file a reply brief.

  The DWSD also asks the Court to clarify or declare that, "to the extent Section 2-106.5 of

the Detroit City Charter would otherwise prohibit DWSD from rehiring any DWSD employee to

perform services for DWSD for a period of one-year after employment, such provision shall not

apply to DWSD".  (DWSD's Motion at 15-17).  This Court's September 9, 2011 Opinion &

Order sets forth, in detail, how human resource and succession planning problems have plagued

the DWSD for decades.  (*See e.g.*,  D.E. No. 2397 at 9, 15, 17-18, 20-23, 26, 28, & 33-34).  In

short, the DWSD is at a juncture where a significant portion of its experienced staff, who have

key institutional knowledge and technical expertise, are eligible for retirement and the DWSD

has not had a succession plan in place to adequately account for that.  It is imperative that the

DWSD, if needed, be able to rehire experienced employees, on a contractual basis, following

their retirement.  Any Charter provision, ordinance, or resolution that prohibits the DWSD from

doing so threatens the DWSD's ability to comply with its NPDES Permit, the Clean Water Act,

and its current Administrative Consent Order with the MDEQ, which includes minimum staffing

levels.  Accordingly, the Court **GRANTS** this request and **ENJOINS** any Charter provision,

ordinance, resolution, or any other rule or practice, that prohibits or restricts the DWSD's ability

to rehire DWSD's employees following their retirement from the DWSD.

## VII.    Board of Water Commissioners

The seventh section of the pending motion relates to the Board of Water Commissioners ("BOWC") and it includes two requests for relief.

First, it asks the Court to clarify or declare that "the current BOWC members may establish terms of office for existing members and proposed rotation schedule going forward". (DWSD's Motion at 18).   The Court shall **GRANT** this first request for relief.  As explained in this Court's September 9, 2011 Opinion (D.E. No. 2397 at 29-30), on February 11, 2011, the City, along with the counties of Wayne, Oakland and Macomb, determined that a more empowered BOWC would enhance the DWSD's ability to comply with its NPDES permit and the Clean Water Act, and entered into a Stipulated Order to that effect.  (*See* D.E. No. 2334). That Stipulated Order provides for minimum qualifications for BOWC members and provides them with support staff.  It also provides that no more than two current members of the BOWC could remain on the BOWC and that the remaining five members would be newly appointed.  In compliance with the Stipulated Order, on April 1, 2011, Mayor Bing appointed a new BOWC, which consisted of two current members of the BOWC and five newly appointed members.  On July 27, 2011, the BOWC amended its by-laws to incorporate the provisions of the Stipulated Order.   (9/9/11 Opinion at 30).

The February 11, 2011 Stipulated Order did not address the terms for BOWC members. The City's Charter provides that the term of membership on the BOWC is four years and that not more than two of the seven members' terms may expire in a given year.   Because the Stipulated Order provides that five new members were appointed in 2011, however, unless the terms of the existing BOWC members are adjusted, the terms of five members will expire in one given year.

This Court agrees that it would be detrimental to the BOWC and the DWSD for more than two BOWC members' terms to expire in a given year.  Accordingly, the Court hereby **ORDERS** that the current BOWC members may establish terms of office for existing members and a rotation schedule.

Second, the pending motion asks the Court to clarify or declare that "DWSD may adopt an organizational structure other than one comprised of two divisions (Operations and Administration), as long as DWSD provides adequately for succession planning within them". (DWSD's Motion at 18).  DWSD has not brought to the Court's attention, however, any Charter provision, or any state or local ordinances, that would prohibit the DWSD from adopting a different organizational structure.  Moreover, although the Root Cause Committee's Plan of Action recommended breaking down the DWSD "into two divisions – operations and administration", it appears that it did so for purposes of making specific recommendations as to changes needed in each of the divisions.  The Court does not construe the Root Cause Committee's Plan of Action, or this Court's November 4, 2011 Order adopting it, as prohibiting the DWSD's organizational structure from being modified in the future.

## VIII.   Michigan Employment Relations Commission Jurisdiction

The eighth section relates to the jurisdiction of the Michigan Employment Relations Commission ("MERC") and it asks the Court to:  1) clarify or declare "the scope of MERC's authority and jurisdiction to decide issues relating to DWSD consistent with the November 4 Order" and 2) clarify or declare that "MERC lacks the authority and jurisdiction to mediate and engage in fact-finding, including the requests from AFSCME requesting mediation and from both ADE and AME for fact finding related to the current round of negotiations being conducted

pursuant to the November 4 Order". (DWSD's Motion at 18).

In its November 4th Order, this Court enjoined "the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court" and enjoined "the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court." (11/4/11 Order at 7). Following the November 4th Order, the DWSD and several individuals and/or unions filed various petitions with MERC but MERC has declined to take action on those petitions, out of concern that doing so may violate this Court's November 4th Order. (*See, e.g.*, D.E. No. 2469-1). MERC has directed the parties to such petitions to seek clarification from this Court as to whether MERC may proceed with the petitions in light of this Court's November 4th Order. This Court has already acted with respect to one such request – clarifying that: 1) this Court's November 4, 2011 Order was intended to order the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees; and 2) that MERC is not enjoined from so ruling on any petitions in order to effectuate or confirm the severancing ordered by this Court.

Although unintended, it is now apparent that this Court's November 4th Order does not provide MERC with sufficient direction as to the scope of its jurisdiction over petitions filed relating to the DWSD. The Court agrees that clarification by this Court is needed. The Court shall take this request under advisement, until the supplemental briefing on this motion has concluded, at which time it will address this issue. Any party desiring to file a supplemental brief on this issue may do so by October 26, 2012.

### IX.    Final Director's Compliance Report

In this Court's November 4th Order, the Director of the DWSD was ordered to file an initial compliance report by May 4, 2012, identifying any additional barriers to long-term compliance with the ACO and the Clean Water Act, and making any additional requests to this Court that are needed for compliance.  The Order provides for that report to be circulated among the BOWC, the Mayor of the City of Detroit, the Detroit City Council, and the MDEQ, who could then provide comments, suggestions and recommendations to the Director before a final Director's Report of Compliance would be filed with the Court on August 4, 2012.  (11/4/11 Order at 9-10).

On May 4, 2012, the DWSD filed an initial compliance report that, for several reasons, asked that the Court to extend the date for the filing of the Director's Final Compliance report to October 4, 2012.  This Court granted that request in an Order issued on May 17, 2012, and, therefore, the Final Director's Report was due to be filed on October 4, 2012.

The final section of the DWSD's pending motion, however, again asks the Court to extend the date for the filing of that report.  It asks the Court to "[e]xtend the date for filing the Final Director's Compliance Report from October 4, 2012 to April 4, 2013."  (DWSD's Motion at 21).

The Court shall extend the filing date beyond the current deadline, which has now passed. But as to the request for additional six months to file the report, the Court shall take that request under advisement until after the supplemental briefing on this motion has concluded.

38

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that the DWSD's motion is GRANTED IN

PART.  The motion is GRANTED to the extent that the Court:

1)      ENJOINS the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or practices that are inconsistent with the express terms of this Court's Orders;

2)      ORDERS that the City and its employees and agents shall work cooperatively with the DWSD to implement this Court's Orders in a timely and efficient manner;

3)      DECLARES that the BOWC's June 26, 2012 Resolution is in accordance with this Court's November 4th Order and shall be effective and controlling until this Court orders otherwise;

4)      CLARIFIES that the DWSD's General Counsel, rather than the City's Corporation Counsel, may provide legal advice to the DWSD regarding implementing this Court's orders;

5)      DECLARES that in determining whether monetary approval thresholds are triggered under the existing DWSD Procurement Policy adopted by this Court, amounts are to be determined on a fiscal year basis for multi-year contracts;

6)      DECLARES that expert witness engagements and other expert consulting contracts on pending legal matters authorized by the DWSD's General Counsel shall be exempt from the competitive bidding requirements of the DWSD Procurement Policy;

7)      DECLARES that the DWSD has the authority to purchase its own information technology systems which may differ from those of the City;

8)      DECLARES that: a) the DWSD is free to establish its own sub-units and programs within its Finance Division to implement the November 4 Order, including debt management, accounts payable, accounts receivable, accounting, budget, cash management, asset management, and deferred compensation; and b) the DWSD is not bound by City Finance Policies;

9)      DECLARES that: a) the DWSD is exempt from the application of City

ordinances, the City's human resources policies and regulations, Civil Service Commission Rules, and City resolutions and orders, pertaining to payroll, employee benefits, and employee and labor relations; and b) the DWSD is not bound by the Civil Service Commission as provided in Section 6-405 of the City's Charter;

10)   ENJOINS any Charter provision, ordinance, resolution, or any other rule or practice, that prohibits or restricts the DWSD's ability to rehire DWSD's employees following their retirement from the DWSD;

11)   ORDERS that the current BOWC members may establish terms of office for existing members and a rotation schedule; and

12)   CLARIFIES that the Court does not construe the Root Cause Committee's Plan of Action, or this Court's November 4, 2011 Order adopting it, as prohibiting the DWSD's organizational structure from being modified in the future.

IT IS FURTHER ORDERED that the motion is DENIED IN PART.  The motion is

DENIED to the extent that the Court:

1)   DENIES the DWSD's request for an order enjoining the City from applying existing or future Charter provisions, ordinance, etc. "that are inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance";

2)   DENIES any request for the Court to delegate authority to the DWSD to interpret this Court's Orders and bind the City to such interpretations;

3)   DENIES the DWSD's request for the Court to clarify or declare that "the November 4 Order grants DWSD authority to proceed with contracts to assess outsourcing opportunities and/or to outsource functions of DWSD solely upon the approval of the BOWC and without regard to the dollar value of the contract";

4)   DENIES the DWSD's request that the DWSD be exempted from the City of Detroit's Prevailing Wage Ordinance; and

5)   DENIES the DWSD's request that it be granted authority to adopt additional Local Economic Development policies.

IT IS FURTHER ORDERED that supplemental briefing shall be allowed with respect to

40

the following issues / requests for relief:

1)      Specific requests regarding the chargeback of transition services;

2)      The DWSD's request that the BOWC be allowed to delegate settlement approval authority to the Director of the DWSD;

3)      The DWSD's requests regarding Sections 7.5-208 and 7.5-209 of the Detroit City Charter;

4)      Any requested alternative method for obtaining tax clearances;

5)      The DWSD's request that the BOWC be granted authority to further define the DWSD Procurement Policy;

6)      Whether the DWSD may obtain and utilize its own Employer Identification Number;

7)      Establishing separate bank accounts and establishing a separate self-insurance fund;

8)      Issuance and approval of debt;

9)      Obtaining and utilizing a separate EIN; and

10)      Requests relating to a Defined Contribution Plan.

IT IS FURTHER ORDERED that the following requests are taken under advisement by the Court:

1)      The DWSD's request for clarification from the Court as to MERC's jurisdiction over matters relating to the DWSD;[4] and

2)      The DWSD's request for an additional six months to file the Director's Final Compliance Report.

---

[4]Any party may file a supplemental brief regarding this issue, as provided in this Opinion & Order.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 5, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
October 5, 2012, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

42