UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                            Case No. 77-71100

CITY OF DETROIT, *et al.*        Hon. Sean F. Cox

        Defendants.

---

**DETROIT WATER AND SEWERAGE DEPARTMENT'S RESPONSE
IN OPPOSITION TO SECOND MOTION BY LOCAL 207 OF THE AMERICAN
FEDERATION OF STATE, CITY AND MUNICIPAL EMPLOYEES (AFSCME)
AND BY THE SENIOR ACCOUNTANTS AND ANALYSTS ASSOCIATION TO
INTERVENE FOR THE PURPOSE OF OPPOSING THE DWSD'S MOTION TO
'CLARIFY' THE COURT'S NOVEMBER 4, 2011 ORDER AND OF OPPOSING
ITS REQUEST FOR AN EXPEDITED BRIEFING SCHEDULE**

Defendant Detroit Water and Sewerage Department ("DWSD"), through its attorneys, Dykema Gossett PLLC, hereby responds in opposition to Local 207 of the American Federation of State, City and Municipal Employees and the Senior Accountants and Analysts Association ("Local 207") Second Motion to Intervene for the Purpose of Opposing the DWSD's Motion to 'Clarify' the Court's November 4, 2011 Order and of Opposing its Request for an Expedited Briefing Schedule ("Second Motion to Intervene"). In support of this response, DWSD relies on its accompanying brief and respectfully requests that Local 207's Second Motion to Intervene be denied in its entirety.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

DYKEMA GOSSETT PLLC


By: *s/Lauren M. Phillips*
Robert J. Franzinger (P25539)
Mark D. Jacobs (P41878)
Lauren M. Phillips (74102)
Attorneys for Detroit Water and Sewerage
Department
400 Renaissance Center
Detroit, MI 48243
(313) 568-6690/568-5416
rfranzinger@dykema.com
lmphillips@dykema.com

Date: November 7, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        Case No. 77-71100

CITY OF DETROIT, *et al.*                 Hon. Sean F. Cox

      Defendants.

---

**BRIEF IN SUPPORT OF DETROIT WATER AND SEWERAGE DEPARTMENT'S
RESPONSE IN OPPOSITION TO SECOND MOTION BY LOCAL 207 OF THE
AMERICAN FEDERATION OF STATE, CITY AND MUNICIPAL EMPLOYEES
(AFSCME) AND BY THE SENIOR ACCOUNTANTS AND ANALYSTS ASSOCIATION
TO INTERVENE FOR THE PURPOSE OF OPPOSING THE DWSD'S MOTION
TO 'CLARIFY' THE COURT'S NOVEMBER 4, 2011 ORDER AND OF OPPOSING
ITS REQUEST FOR AN EXPEDITED BRIEFING SCHEDULE**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF ISSUES PRESENTED.......................................................... v

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ............................. vi

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS ................................................................................ 1

    A.    The Filing Of This Action And The Court's Grant Of Plenary Authority To Detroit's Mayor, As The Court's Administrator, Over DWSD's Operations, Including The Entirety Of Its Relationship With Its Unionized Employees. ..........1

    B.    Union Recognition More Than Thirty Years Ago That The Disposition Of This Action Would Adversely Affect Interests Of Unions Representing DWSD Employees And Their Collective-Bargaining Agreements. ....................................3

    C.    The Court Again Grants Plenary Authority To Detroit's Mayor, As The Court's Administrator, Over DWSD's Operations, Including DWSD's Relationship With Its Unionized Employees. ...................................................................3

    D.    Personnel Issues Were Again Identified In 2009 As A Root Cause of DWSD's Noncompliance With The CWA And Court Judgments.........................................4

    E.    DWSD's Motion To Dismiss And County Responses Seeking Orders Overriding Collective Bargaining Agreements And Work Rules Governing DWSD Unionized Employees. ...................................................................................6

    F.    In Lieu Of Granting The Relief Sought By The Counties, The Court Solicited Input From Representatives Of Detroit And The DWSD On Appropriate Relief For Achieving Compliance. ..............................................................................7

    G.    The Court's November 4 Order. .................................................................9

    H.    Denial Of Local 207's Prior Motion and Similar Union Motions To Intervene Because They Were Untimely. ...................................................................10

    I.    Motion And Opinion Regarding The Interim Order.............................................11

    J.    Local 207's Second Motion To Intervene. ...................................................12

ARGUMENT ...............................................................................................13

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

i

I.   THE SECOND MOTION TO INTERVENE SHOULD BE DENIED
     AS UNTIMELY...........................................................................................................13

     A.   Standards Governing The Timeliness Of Motions To Intervene...........................13

     B.   The First Two Timeliness Factors Weigh Heavily Against The Timeliness Of
          Local 207's Second Motion To Intervene. ...........................................................16

          1.   Local 207's Attempt To Re-Litigate Its Alleged Right To Intervene
               Further Demonstrates Its Untimeliness.......................................................16

          2.   Local 207 Knew Or Should Have Known Of Its Interest In This Case
               Virtually Throughout The More Than Thirty Five Years That This Case
               Has Progressed Enormously. ....................................................................17

     C.   The Purpose For Which Intervention Is Sought Weighs Against Intervention. ....19

     D.   DWSD And The Public Would Be Prejudiced By Any Delay In The
          Implementation Of The November 4 Order And October 5 Order. ......................19

     E.   The Existence Of Unusual Circumstances Militates Against Intervention. ..........20

CONCLUSION.....................................................................................................................20

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blount-Hill v. Zelman,*
  636 F.3d 278 (6th Cir. 2011) .................................................................. vi, 13, 14, 15

*Creusere v. Board of Education of the City School District of City of Cincinnati,*
  88 Fed. Appx. 813 (6th Cir. 2003) ....................................................................15

*Jordan v. Michigan Conference of Teamsters Welfare Fund,*
  207 F.3d 854 (6th Cir. 2000) ....................................................................13

*Michigan Assoc. for Retarded Citizens v. Smith,*
  657 F.2d 102 (6th Cir. 1981) .................................................................. vi, 13, 14, 18

*Niemi v. NHK Spring Co., Ltd.,*
  543 F.3d 294 (6th Cir.2008) ....................................................................17

*Rouse v. DaimlerChrysler Corp. UAW,*
  300 F.3d 711 (6th Cir. 2002) ....................................................................17

*S.H. v. Stickrath,*
  251 F.R.D. 293 (S.D. Ohio 2008) ....................................................................15, 16

*Scott v. Churchill,*
  377 F.3d 565 (6th Cir. 2004) ....................................................................17

*Stotts v. Memphis Fire Dep't,*
  679 F.2d 579 (6th Cir. 1982) ....................................................................15

*Stupak-Thrall v. Glickman,*
  226 F.3d 467 (6th Cir. 2000) ....................................................................13

**RULES**

Fed. R. Civ. P. 24 .................................................................................. vi

Fed. R. Civ. P. 24(a)(2) ....................................................................15

Fed. R. Civ. P. 24(c) ....................................................................19

**STATUTES**

33 U.S.C. 1251, *et seq.*....................................................................1

**OTHER AUTHORITIES**

28 F.R.D. at 299 ...................................................................................................................16

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## **STATEMENT OF ISSUES PRESENTED**

Whether Local 207's Second Motion to Intervene should be denied as untimely where Local 207's prior motion to intervene was untimely and where Local 207 has been on notice throughout the more than 35 years this action has been pending and progressed enormously to near its conclusion that the disposition of this action may impair or impede its ability to protect its interests and DWSD and the public would be prejudiced by any delay in implementation of the Order and Interim Order that Local 207 seeks to challenge through intervention?

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

DWSD relies primarily on Fed. R. Civ. P. 24, *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011); *Michigan Assoc. for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981).

## INTRODUCTION

Defendant Detroit Water and Sewerage Department ("DWSD"), through its attorneys, Dykema Gossett PLLC, submits this brief in opposition to Local 207 of the American Federation of State, City and Municipal Employees and the Senior Accountants and Analysts Association ("Local 207") Second Motion to Intervene for the Purpose of Opposing the DWSD's Motion to 'Clarify' the Court's November 4, 2011 Order ("November 4 Order") and of Opposing its Request for an Expedited Briefing Schedule ("Second Motion to Intervene").

Local 207's Second Motion to Intervene should be denied because, like its first motion for intervention, it is untimely.  Indeed, the Second Motion to Intervene fails to address the elements required to establish timeliness and, instead, simply states in conclusory fashion that "there is now no question of timeliness[.]"  (D.E. No. 2493, p. 4).  Contrary to Local 207's conclusion, however, because the first motion to intervene was untimely, this second motion, filed approximately a year later and after substantial progress has been made toward implementing the November 4 Order that Local 207 seeks to undermine, is even more untimely. As such, the Second Motion to Intervene should be denied.

## STATEMENT OF FACTS

**A.    The Filing Of This Action And The Court's Grant Of Plenary Authority To Detroit's Mayor, As The Court's Administrator, Over DWSD's Operations, Including The Entirety Of Its Relationship With Its Unionized Employees.**

More than 34 years ago, on May 6, 1977, the United States, through the Environmental Protection Agency ("EPA"), initiated this action through the filing of a Complaint that alleged that the effluent discharged from DWSD's waste water treatment plant ("WWTP") violated the Federal Clean Water Act of 1972, 33 U.S.C. 1251, *et seq.* ("CWA") and that a significant cause of the CWA violations was deficient training of DWSD's employees, including unionized employees covered by collective bargaining agreements ("CBAs").  (D.E. No. 2374-2.)  On

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

September 14, 1977, Judge Feikens entered a Consent Judgment ("Consent Judgment") that, among other things, established a compliance schedule for DWSD to correct its violations of the CWA and DWSD's NPDES Permit ("Permit") and required DWSD to implement a staff training program.  (D.E. No. 366.)

In March 1979, in response to the EPA's request for the appointment of a receiver over DWSD, Judge Feikens appointed Detroit's then-Mayor Coleman A. Young as an officer of the Court—*i.e.,* the Court's "Administrator"—"for the purposes of carrying out the obligations of the City of Detroit under the Consent Judgment…."  (D.E. No. 1848-2 at 2.)  Judge Feikens granted the Administrator plenary authority over DWSD management and operations, including granting the Administrator:

> . . . full power and authority to control, manage and operate the City of Detroit Wastewater Treatment Plant, including all of the functions, duties, powers and authority of the Board of Water Commissioners of the City of Detroit, the Detroit Water and Sewerage Department and any and all departments, boards or other Divisions of the City of Detroit insofar as they affect the Wastewater Treatment Plant and the City of Detroit's compliance with the Consent Judgment, without the necessity of any actions on the part of the Common Council of the City of Detroit when in the judgment of the Administrator the same might unavoidably delay or impede accomplishment by the City of Detroit with the provisions of the Consent Judgment.

(*Id.* at 3.)  With respect to DWSD's employees, including unionized employees covered by CBAs, Judge Feikens granted the Administrator "the authority required or necessary for the complete management and control of the [waste water treatment] plant, including but not limited to … the **supervision of all employees of the system, including the hiring or dismissal thereof**…."  (*Id.* at 4 (emphasis added).)

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

**B.      Union Recognition More Than Thirty Years Ago That The Disposition Of This Action Would Adversely Affect Interests Of Unions Representing DWSD Employees And Their Collective-Bargaining Agreements.**

In 1979, DWSD adjusted employee WWTP shift schedules to ensure that employees had adequate time to participate in the training required by the Consent Judgment.  (Petition for Instructions, copy attached as Exhibit A.)   In response to this adjustment, Local 207 filed grievances claiming that the schedule changes violated its CBA.  (*Id.*)   When an arbitrator resolved these grievances in Local 207's favor, the Court's Administrator petitioned the Court to (1) override the arbitrator's ruling and the CBA rights on which it was based and (2) enforce the revised shift schedule to enable DWSD to comply with the Consent Judgment.  (*Id.*)

Local 207's February 22, 1980 response to the Administrator's petition (copy attached as Exhibit B) explicitly recognized the obvious fact that disposition of the Administrator's petition and future rulings in this action similarly related to enforcement of the Court's judgments were virtually certain to impact the CBAs and other interests of DWSD's unionized employees.   In this regard, Local 207 stated:

> If the City of Detroit can use the broadening mandate of a training program to sanction violations of the contract [CBA],… then the Court may well face other labor relations disputes in the near future.   The Master Agreement provides restrictions on **discipline, promotions, layoffs and bumping, working conditions, work classifications, and many other terms and conditions of employment**.   There are literally hundreds of grievances involved in these issues, and on any one of them, **the City could petition the Court for further instructions to violate or modify the contract**.

Exhibit B (emphasis added).)

**C.      The Court Again Grants Plenary Authority To Detroit's Mayor, As The Court's Administrator, Over DWSD's Operations, Including DWSD's Relationship With Its Unionized Employees.**

In 1997 DWSD again fell out of compliance with its Permit, prompting Judge Feikens to appoint a committee to investigate the causes of the non-compliance.   The committee again

3

identified deficiencies in employee training and constraints on hiring, promoting and job classifications imposed by CBAs as causes of noncompliance.  (D.E. No. 2400, at 44-45.)

In February 2000 the Court again appointed Detroit's Mayor as an officer of the Court – *i.e.,* the Court's "Special Administrator" – "for the purposes of correcting the causes of non-compliance and for the purpose of achieving long-term, sustained compliance with the NPDES permit" and with a "mandate to address training and staffing and to 'revisit existing union contracts and civil service rules'…." (D.E. No. 1848-3 at 3-4.)  The Court again granted the Special Administrator the plenary authority granted to its prior Administrator.  In a Supplement to Order Appointing Special Administrator, the Court specifically granted the Special Administrator the power of "[s]upervision of all employees of the system, including the hiring, **assignment** and dismissal thereof, **whether or not such employees are or may be covered by collective bargaining agreements**…." (D.E. No. 1652 (emphasis added).)

> **D.    Personnel Issues Were Again Identified In 2009 As A Root Cause of DWSD's Noncompliance With The CWA And Court Judgments.**

In September 2009, DWSD again fell out of compliance with its Permit.  On November 12, 2009, the Michigan Department of Environmental Quality ("DEQ") issued a Notice of Violation to the DWSD for the Permit violations.  On April 14, 2010, DEQ issued a Second Notice of Violation to the DWSD, which alleged that the violations identified in the November 12, 2009 Notice were continuing.

The Court then requested that Dr. Jonathan Bulkley, the Court's Monitor, investigate the renewed Permit violations.  On June 15, 2010, Dr. Bulkley provided a written report to the Court in which he stated that "DWSD has been cited for significant violations for seven consecutive months (September, 2009—March, 2010)."  (D.E. No. 2296 at 2.)  Dr. Bulkley further stated "[i]t is apparent that the current permit violations are similar to the problems that have occurred

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

since the issuance of the original Consent Judgment in 1977." (*Id*. at 4.) He continued by stating that "[t]he nine (9) causes identified in the January 12, 2000 Report of the Committee of Investigation are very similar to certain of the issues that appear to be contributing to the current . . . violations from the DWSD's wastewater treatment plant." (*Id*.) The 2010 Bulkley Report concluded "[t]he changes implemented in 2000 were apparently insufficient to maintain compliance over the long term, as evidenced by the recurring solids build up problem and the related permit violations. It may be appropriate to consider more fundamental corrective measures to address the institutional problems which are adversely impacting the performance of DWSD's wastewater treatment plant." (*Id.* at 4.)

Following the renewed violations in 2009, the Engineering Society of Detroit was asked to assess and identify immediate emergency corrective steps and a sustainable, long-term remediation strategy for DWSD. On July 26, 2010, its Consensus Action Report ("CAP Report") was provided to the Court. (D.E. No. 2400, Item 8.) The CAP Report stated that "[a] critical problem facing DWSD and WWTP is lack of sufficient qualified personnel" and that this "stark reality" drives home the importance of human resources. (CAP Report at 7.) It also found serious problems with existing human resources services provided to the DWSD, stating that Detroit's Human Resources Department "has provided inconsistent or nonexistent services to DWSD in the past." (*Id*. at 8.) It stated that there "is little, if any, ongoing training of plant supervision personnel" and "[t]here is no succession planning for plant supervision personnel." (*Id*. at 7.) Further addressing human resources problems, it stated:

> Faced with its own staff reduction of over 34%, Human Resources fully understands the challenges. The current process barriers driven by real or perceived requirements due to city ordinances, civil service rules and procedures, requisition practices and collection bargaining agreements have impacted the ability of the Human Resources Department to fill the personnel needs of DWSD and WWTP. Workings between DWSD and HR are bureaucratic in nature and the

process challenges EACH face in carrying out their responsibilities with the other have not been fully shared. Each has legitimate reasons why the process has not been successful, but joint problem-solving efforts have not yet occurred.

Putting any fault assessment aside, the lack of an effective succession planning process has again resulted in workarounds that increase the risk of noncompliance due to lack of qualified personnel.

(*Id.* at 8.)

E.    **DWSD's Motion To Dismiss And County Responses Seeking Orders Overriding Collective Bargaining Agreements And Work Rules Governing DWSD Unionized Employees.**

Effective July 8, 2011, Detroit, DWSD and DEQ entered into an Administrative Consent

Order ("ACO") that was aimed at achieving compliance with the Permit and the CWA. (D.E.

No. 2365–1.) The ACO contains provisions that impact staffing at the DWSD, such as the

following:

The DWSD shall develop a Staffing Plan to establish a minimum staffing level for the WWOG [Waste Water Operations Group] that includes DWSD employees and contractual skilled trades, identify the basis for determining the number of maintenance and operations staff necessary to properly operate and maintain the Detroit WWTP and CSO facilities and a strategy for successful succession planning and training to ensure competent staff.

(D.E. No. 2365–1 at 9.)

On July 25, 2011, Detroit and DWSD filed a Motion to Dismiss And For Relief From

The Second Amended Consent Judgment ("Motion to Dismiss"), which asserted that the ACO

was the statutorily preferred vehicle for enforcing the CWA and better suited than the Second

Amended Consent Judgment ("SACJ") to achieving CWA compliance. (D.E. No. 2365.) The

Motion to Dismiss, accordingly, sought to have the ACO substituted for the SACJ and for this

action to be dismissed.

On August 8, 2011, Oakland County and Macomb County (the "Counties") each filed a

detailed response opposing the Motion to Dismiss. Each County response cited the extensive

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

record in this action demonstrating that CBAs and work rules had impeded and were continuing to impede the DWSD's compliance with the CWA, the Permit and the SACJ. The Counties' responses, accordingly, asked the Court to override and relieve DWSD from complying with the CBA provisions and work rules that were preventing DWSD from achieving the required compliance. (D.E. Nos. 2374 & 2375.) Macomb County's response in particular explained that constraints that had long prevented DWSD from achieving compliance included the "hiring and personnel practices, work rules and labor contract terms" applicable to DWSD employees. (D.E. No. 2375 at 3.) Macomb County's response also detailed the Court's legal authority to, *inter alia*, override CBAs and work rules that Macomb County was seeking and asserted that "[t]he City, Mayor and City Council and any other person should be enjoined from enforcing provisions of any charter, ordinance, city policy **or labor contract** that interferes with the BOWC's full exercise of such authority." (*Id.* at 37 (emphasis added).) Macomb County's response further stated that "DWSD's employees are covered by 21 different labor contracts" and asked the Court to "enjoin any provisions of these contracts which purport to prevent or inhibit BOWC's [the Detroit Board Of Water Commissioners'] authority and ability to develop job classifications, qualifications and compensation tailored to DWSD's needs." (*Id.* at 40.)

F.    **In Lieu Of Granting The Relief Sought By The Counties, The Court Solicited Input From Representatives Of Detroit And The DWSD On Appropriate Relief For Achieving Compliance.**

Although the Counties' requests to have DWSD be relieved from complying with CBAs and work rules impacting its CWA and Permit compliance were under consideration and ripe for decision in August 2011, the Court did not grant this requested relief at that time. Rather, on September 9, 2011—*i.e.*, more than a month after the Counties asked the Court to relieve DWSD from complying with CBAs and work rules—the Court denied the Motion to Dismiss in a 44–page Opinion and Order ("September 9 Order", D.E. No. 2397). The September 9 Order made

7

numerous findings and conclusions, including several that related to the adverse impact that CBAs and union work rules were having on DWSD's CWA compliance.  (*Id.* at 12-13, 14-15, 17-18, 20, 22, 26, 39-40, 42)   The Court further found that "the DWSD's violations of its NPDES permit and the Clean Water Act are serious and continuing and present a serious health, safety and environmental risk to the people of Southeastern Michigan."  (*Id*. at 37.)   In the September 9 Order, the Court concluded that it was necessary for the Court to order structural changes to eliminate bureaucratic barriers impairing DWSD's ability to achieve sustained CWA and Permit compliance, including an equitable remedy overriding existing contracts, stating:

> [T]his Court concludes that, in order to achieve long-term compliance with the Clean Water Act, other less intrusive measures, over many years and many attempts, having proved unsuccessful, more fundamental and intrusive corrective measures are required. The record in this case establishes that, unless more fundamental corrective measures are taken to address the institutional and bureaucratic barriers to sustained compliance that have been identified by experts and acknowledged by the City, the DWSD will remain in this recurring cycle and will never achieve sustained compliance with its NPDES permit, the ACO, and the Clean Water Act.
>
> *The Court further concludes that an effective equitable remedy to achieve sustained compliance will require this Court to order structural changes regarding the DWSD that will likely override the City of Detroit's Charter, its local ordinances, and/or some existing contracts.*

(*Id.* at 42 (emphasis in original).)

Accordingly, the Court appointed a committee comprised of local officials ("the Root Cause Committee") to propose a plan that addressed the root causes of noncompliance identified in the September 9 Order, which included obstacles posed by CBAs and work rules applicable to DWSD's unionized employees.  The Court made clear that, in fashioning a plan, the Root Cause Committee would not be constrained by CBAs, stating:

> Accordingly, the Court shall ORDER the Mayor of the City of Detroit (and/or his designee), the City Council President and President Pro Tem, and a current member of the Board (to be chosen by the Board) to meet and confer and, within 60 days of the date of this order, propose a plan that addresses the root causes of

8

non-compliance that are discussed in this Opinion & Order.  In making such recommendations to the Court, **these individuals shall not be constrained by any local Charter or ordinance provisions or by the provisions of any existing contracts**.  If the local officials fail to devise and propose a workable solution to remedy the underlying causes of the recurrent violations of the Clean Water Act in this case, this Court will order a more intrusive remedy on its own.

(*Id*. at 42–43 (emphasis added).)  The Court ordered the Root Cause Committee to submit its proposed plan no later than November 4, 2011.  (*Id*. at 44.)

There was considerable media coverage of the September 9 Order.  Newspaper articles covering the Opinion appeared on the front pages of both The Detroit Free Press and The Detroit News.  For example, an article that appeared on the front page of The Detroit Free Press on September 10, 2011 stated that "U.S. District Judge Sean Cox ordered Detroit officials Friday to disregard union contracts, local ordinances and even the city charter in their efforts to clean up pollution at the city's sewerage plant on the Detroit River."  (D.E. No. 2413-1.)

### G.     The Court's November 4 Order.

On November 2, 2011, the Root Cause Committee submitted a written proposed "Plan of Action" to the Special Master and the Special Master submitted it to the Court on that same date.  (D.E. No. 2409.)  On November 4, 2011, the Court issued an Order ("November 4 Order," D.E. No. 2410) wherein it found that the proposed Plan of Action adequately addressed the majority of the root causes of non-compliance outlined in the September 9 Order.  The Court, therefore, adopted the Plan of Action proposed by the Root Cause Committee and ordered its implementation.  (*Id*. at 4.)

Although the Root Cause Committee agreed that certain changes to existing CBAs were necessary to achieve compliance, the Committee members could not agree on the specifics of how best to achieve the necessary changes.  (D.E. No. 2409-1 at 4.)  Because the proposed Plan

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

of Action did not adequately address collective bargaining issues, the Court considered the issue

on its own and concluded as follows:

> Based on the record in this case, the Court concludes that certain CBA provisions
> and work rules are impeding the DWSD from achieving and maintaining both
> short-term and long-term compliance with its NPDES permit and the Clean Water
> Act. Given that the Committee was unable to agree on a proposed solution for
> remedying these impediments to compliance, this Court shall order its own
> remedy.

*      *      *

> The Court has carefully considered all options and concludes that the least
> intrusive means of effectively remedying these impediments to compliance is to:
> 1) keep all current CBAs that cover DWSD employees in force, but strike and
> enjoin those current CBA provisions or work rules that threaten short-term
> compliance; and 2) Order that, in the future, the DWSD shall negotiate and sign
> its own CBAs that cover only DWSD employees, and prohibit future DWSD
> CBAs from containing certain provisions that threaten long-term compliance.

(*Id.* at 5).   The November 4 Order went on to detail specific requirements that included

overriding CBAs and work rules.  These requirements, to a large extent, reflected the Counties'

requests that had been pending since early August.  (*Id.* at 6-7.)

> ### H.     Denial Of Local 207's Prior Motion and Similar Union Motions To Intervene
> ### Because They Were Untimely.

On November 14, 2011, Michigan AFSCME Council 25 filed a Motion To Intervene As

Of Right.  (D.E. No. 2412.)  This Court denied that motion on November 18, 2011 because it

was untimely.  (D.E. No. 2413.)  On November 28, 2011, Local 207 filed its first motion to

intervene.  (D.E. No. 2415.)  This Court denied Local 207's motion to intervene as untimely on

December 13, 2011.  (D.E. No. 2422.)

Local 207 appealed this Court's denial of its motion to intervene and moved to stay the

November 4 Order during the pendency of its appeal.  The Sixth Circuit Court of Appeals denied

Local 207's motion for stay on December 21, 2011, finding, *inter alia*, that Local 207 had "not

made a strong showing of abuse of discretion" by this Court in its ruling that Local 207's motion

10

to intervene was untimely.  (D.E. No. 2425 at 4.)  The Court of Appeals also concluded that, "in view of the continuing violations found by the District Court, the parties to this action and the public would be harmed by a stay of the District Court's injunction pending this appeal."  (*Id.*)  The Sixth Circuit heard oral arguments on Local 207's appeal from the Court's denial of its first motion to intervene on October 9, 2012, but has not issued an opinion in that appeal.

### I.      Motion And Opinion Regarding The Interim Order.

On September 24, 2012, DWSD filed a Verified Motion for Interim Order Clarifying November 4, 2011 Order and for Expedited Briefing Schedule (D.E. No. 2473) ("Motion for Interim Order").  In its components that Local 207 seeks to oppose through intervention, the Motion for Interim Order sought an order clarifying the November 4 Order by (1) declaring that the Board of Water Commissioners' ("BOWC's") June 26, 2012 Resolution addressing City of Detroit Employment Terms ("CETs") was in accordance with the November 4 Order and effective (the "CET Request") and (2) defining the scope of the Michigan Employment Relations Commission ("MERC's") jurisdiction with respect to the current round of DWSD collective bargaining agreement ("CBA") negotiations ordered by the November 4 Order (the "MERC Request").  On September 25, 2012, the Court set an expedited briefing schedule for the Motion for Interim Order, requiring (1) all responses be filed by 4:00 p.m. on October 1, 2012 and (2) DWSD's Reply Brief to be filed by 4:00 PM on October 3, 2012.  (D.E. No. 2474.)

On September 28, 2012, DWSD moved for equitable relief barring Local 207's then-threatened illegal strike against DWSD.  After Local 207 actually commenced the illegal strike on September 30, 2012, the Court entered a Temporary Restraining Order And Order To Show Cause Why A Preliminary Injunction Should Not Issue on October 1, 2012.  (D.E. No. 2477.)  Also on October 1, 2012, Local 207 filed a second motion to disqualify this Court, citing the pending Motion for Interim Order.  Although all response briefs to the Motion for Interim Order

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

had been ordered to be filed by October 1, Local 207 did not move to intervene when it filed its motion to qualify on October 1 and would not do so until two weeks later.[1] DWSD filed its reply brief on October 3, 2012. (D.E. No. 2484).

On October 5, 2012, the Court issued its Opinion and Order regarding the Motion for Interim Order ("October 5 Order"). (D.E. No. 2489.) The October 5 Order granted the motion in part, denied the motion in part, took certain requests under advisement and permitted further briefing on certain requests. (*Id*.) Significantly, for purposes of the instant motion, the matters on which the Court permitted additional briefing did not include either the CET Request or the MERC Request, the two matters Local 207's Second Motion to Intervene sought intervention to oppose. To the contrary, the Court (1) granted DWSD's CET Request and (2) took the MERC Request under advisement. (D.E. No. 2489 at 2, 4.)

### J. Local 207's Second Motion To Intervene.

On October 15, 2012, Local 207 filed it Second Motion to Intervene. (D.E. No. 2493.) As noted above, the stated basis for the Second Motion to Intervene is to afford Local 207 and opportunity to oppose the CET Request and the MERC Request. Somewhat surprisingly, given that the Court's prior denial of Local 207's motion to intervene was based on entire untimeliness, Local 207's Second Motion to Intervene failed to address any of the factors relevant to determining the timeliness of a motion to intervene. Instead, Local 207's motion merely made the conclusory assertion that "there is now no question of timeliness" and its supporting brief merely asserted, albeit incorrectly, that that there can "be no timeliness issue" because the "Court has not decided the DWSD motion and both the EPA and the City have rightly asked for

---

[1] On October 2, 2012, the Court amended the expedited briefing schedule to give the City of Detroit the option to file a supplemental brief not later than October 5, 2012. (D.E. No. 2481.) The City chose not to file such a supplemental brief.

12

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

additional briefing time." (D.E. No. 2493 at pp. 4 and 14.)  Despite Local 207's conclusions, the Second Motion to Intervene should be denied because the request for intervention, filed almost a year after the November 4 Order was entered, is even more untimely than Local 207's previously-denied first motion to intervene.

## ARGUMENT

## I.   THE SECOND MOTION TO INTERVENE SHOULD BE DENIED AS UNTIMELY.

### A.   Standards Governing The Timeliness Of Motions To Intervene.

The timeliness of a motion to intervene is a "threshold issue," and untimely motions to intervene must be denied.  *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011); *Michigan Assoc. for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981).  The timeliness of a motion for intervention is a matter addressed to the discretion of the court and the court's assessment of timeliness is reviewable under an abuse of discretion standard.  *See, e.g., Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000), *see also* D.E. No. 2425 at 4 (citing *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000)).

In determining whether intervention is timely, courts consider several factors, including (1) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case; (2) the point to which the suit has progressed; (3) the purpose for which intervention is sought; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.  *Id.*

Courts in this circuit have consistently held that would-be intervenors must seek to intervene as soon as they know or should know of the possibility that their interests **may be impacted by the case,** and they may not wait until they know that relief specifically affecting

13

their interests is being sought. *Michigan Association for Retarded Citizens*, *supra*, for example, involved a motion by a labor union to intervene in a class action in which the plaintiffs sought orders improving conditions for mentally handicapped residents at a care facility. The motion to intervene was filed after entry of a consent decree requiring "more stringent employment standards, training programs to increase employee skills and the development of employee disciplinary policies and procedures" at the facility. 657 F.2d at 104. The union there argued that its motion to intervene was timely because it "did not consider the interests of the employees to be adversely affected by the [prior] interim orders issues by this Court." *Id.* at 105. The Sixth Circuit affirmed the district court's rejection of the union's argument, noting that "[t]his is not, however, a situation in which the employees and their bargaining representative were caught **totally unaware of the possibility** that the rights of the Center's residents would have to be protected by means which would affect conditions of employment at the Center." *Id.* at 105 (emphasis added). The district court pointed to earlier orders it had entered that impacted employment conditions and noted that the case "has generated a great deal of public concern and scrutiny, and has thus received extensive media coverage." *Id.* The district court found, therefore, that waiting to intervene until after the entry of a consent decree when the labor union was "aware of the broad scope of this litigation," rendered the motion untimely and the court of appeals affirmed this conclusion. *Id.*

*Blount-Hill v. Zelman*, *supra*, was an action arising out of a challenge to the constitutionality of an Ohio statute governing the funding of charter schools. The Sixth Circuit held that proposed intervenors, a charter school facing potential closure and parents of students enrolled at the school, were required to seek intervention as soon as they knew that their interests **could be** affected by the outcome of the action and could not wait and see if subsequent events—

14

there, the outcome of the 2008 election for Ohio Attorney General—might render such

intervention unnecessary.  In so ruling, this Court stated:

> The problem with proposed Intervenors' argument is that it concedes prior
> knowledge of the Attorney General's agreement to target certain schools,
> including proposed Intervenor HOPE Northwest.  Instead of seeking to intervene
> **promptly after discovering their interest in the litigation, as Rule 24(a) (2)**
> **requires, proposed Intervenors by their own admission did not act, but**
> **instead waited for the results of the 2008 Election.  Such conduct plainly**
> **makes their motion untimely**.  *See Tennessee*, 260 F.3d at 594 (citing *Stotts v.*
> *Memphis Fire Dep't*, 679 F.2d 579, 584 & n. 3 (6th Cir. 1982) (opining that the
> applicants "'**should have attempted to intervene when they first became**
> **aware of the action, rather than adopting a 'wait-and-see' approach'''**).

636 F.3d at 285-286 (emphasis added).

*Creusere v. Board of Education of the City School District of City of Cincinnati*, 88 Fed.

Appx. 813 (6th Cir. 2003), also involved an attempt by a union to intervene three years after the

case had been commenced and after discovery was completed.  The Sixth Circuit affirmed the

district court's ruling that the motion was untimely, stating:

> The district court concluded that the Union should have known of its interest from
> the beginning of the litigation, and although its interest is heightened because of
> the state court's ruling, **its interest was not new**.  Therefore, the Union could
> have intervened as soon as this case was filed, but as it did not, its motion was too
> late.  As the Union was most likely aware of the litigation for years, but did not
> seek to intervene until the late date, the district court did not abuse its discretion in
> deciding the motion was untimely.

88 Fed. Appx. at 825 (emphasis added).

In *S.H. v. Stickrath*, 251 F.R.D. 293 (S.D. Ohio 2008), an action commenced to address

allegations of systemic violence in Ohio juvenile corrections facilities, a union representing over

1,000 employees of the facilities moved to intervene two weeks before the parties agreed on a

final draft of a stipulated injunction after three years of settlement negotiations, and over two

months after a comprehensive report that contained far-reaching remedial measures was

proposed.  The union admitted to knowing about the case but argued that "it had no interest in

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

the litigation until recently when, according to the union: (1) the gravamen of the class action, which had previously centered on health care and education, shifted to allegations of violence and misconduct by union members; (2) the litigation changed from an adversarial to a remedial posture; and (3) the proposed stipulated injunction expanded the scope of the litigation such that the settlement undermined the CBA.  The court found each of these contentions to be "baseless." 28 F.R.D. at 299.  Most importantly, the court found that the "nature and breadth of this case ha[d] been obvious for quite some time."  *Id*. at 301.  "Ultimately, [the labor union] should have known that this litigation affected its interests for some time."  *Id*. at 302.

**B.**     **The First Two Timeliness Factors Weigh Heavily Against The Timeliness Of Local 207's Second Motion To Intervene.**

The first two factors weigh heavily against the timeliness of Local 207's Second Motion to Intervene because (1) Local 207, as the Court correctly found, has known or should have known of its interest in this case throughout the more than 34 years it has been progressing toward its present very advanced stage and (2) Local 207 Second Motion to Intervene is untimely, *a fortiori*, because it was filed **almost a year later** than Local 207's prior untimely motion to intervene.

**1.**     **Local 207's Attempt To Re-Litigate Its Alleged Right To Intervene Further Demonstrates Its Untimeliness.**

Local 207 improperly concludes that its Second Motion to Intervene is timely because the Court ordered supplemental briefing on certain topics raised by DWSD's Motion for Interim Order in its October 5 Order.  In asserting this conclusion, however, Local 207 ignores the legal standards for timeliness.   It is not relevant under the standards that the Court asked for supplemental briefing in its October 5 Order.  As shown above, the pertinent question is when Local 207 knew or should have known of its interest in this action, not whether its interest would be affected in the specific way it now claims.  As this Court already determined in denying Local

16

207's first motion to intervene, Local 207 knew or should have known of its interest in this litigation for decades before it sought to intervene and, at the latest, after the Court issued its September 9, 2011 Opinion & Order.  (D.E. No. 2422 p. 23, 29-30).[2] Moreover, as also shown above, the supplemental briefing relied upon by Local 207 does not even include the CET Request or the MERC Request that Local 207 claims to seek intervention to oppose.

The further progress of this action since Local 207's first motion further undermine Local 207's position on the first two factors of the timeliness analysis.  For example, since Local 207's first motion to intervene was denied, DWSD has made substantial progress in implementing provisions of the November 4 Order, including entering into new DWSD-specific collective bargaining agreements ("CBAs") with twelve of the twenty unions that represent DWSD employees.  Moreover, the fact that this is Local 207's second and significantly later attempt at intervention weighs heavily in favor of finding this motion untimely.  Because the first motion was untimely due to the fact that Local 207 waited to see what would happen after being put on notice of its interest in this action, then this second motion is even more untimely.

> **2.**  **Local 207 Knew Or Should Have Known Of Its Interest In This Case Virtually Throughout The More Than Thirty Five Years That This Case Has Progressed Enormously.**

As detailed in the Statement of Facts, above, there have been many developments throughout this action that put Local 207 on notice that the scope of the case could affect its CBA covering DWSD employees and related work rules.  This Court, in denying Local 207's first motion for intervention, recognized that this case has generated considerable media attention

---

[2]  In addition, Local 207's Second Motion to Intervene should be denied because this Court's previous determination of the untimeliness of its request for intervention is the law of the case. (D.E. No. 2422.)  "Under the law-of-the-case doctrine, rulings made at one point in the litigation should continue to govern in subsequent stages of that litigation."  *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 308 (6th Cir.2008) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004); *Rouse v. DaimlerChrysler Corp. UAW*, 300 F.3d 711, 715 (6th Cir. 2002)).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

over the years, and "the risk that orders in this action may affect collective bargaining agreements and union work rules, as they relate to the DWSD, has been apparent for decades." (D.E. No. 2422, p. 23). The Court noted that the case proceeded over 34 years with the potential to affect Local 207's interests without Local 207's seeking to intervene. (*Id.* at 24.) The Court also noted that the motions and orders in August and September 2011 made clear that CBAs may be affected, "nevertheless, not one of the 20 unions that represent employees of the DWSD sought to intervene after this Court issued its September 9, 2011 Opinion & Order." (*Id.* at 29.) The Court continued:

> In other words, although Local 207 and SAAA knew or should have known of this Court's September 9, 2011 Opinion & Order, and its potential ramifications, they chose not to seek to intervene during the 60-day period that the Root Cause Committee was developing their Proposed Plan of Action. Local 207 and SAAA did not move to intervene until November 28, 2011 – after the Root Cause Committee had submitted their proposed Plan of Action, after the Court had issued its November 4, 2011 Order, and after this Court had denied AFSCME Council 25's Motion to Intervene. This delay following the September 9, 2011 Opinion & Order was more than twice as long as AFSCME's delay in *Michigan Assoc. for Retarded Citizens* [*v. Smith*, 657 F.2d 102 (6th Cir. 1981)], which was held to be untimely.

(*Id.* at 30.)

Local 207 has not presented because it cannot present any reasonable explanation why this Second Motion for Intervention is timely after Local 207 was clearly put on notice prior to the time it filed its first motion in November 2011. Moreover, mirroring its delay in moving for intervention the first time around, Local 207 again waited to see what the outcome of the Motion for Interim Order would be prior to moving to intervene. On October 1, 2012, Local 207 sought, for the second time, to disqualify Judge Cox and relied on, among other things, the pending Motion for Interim Order. (D.E. No. 2478). Yet, Local 207 did not move to intervene when that motion was filed. The Court then issued its October 5 Order. While Local 207 argues that the additional briefing ordered by the Court in its October 5 Order renders its intervention timely, the

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

matters on which the Court permitted additional briefing did not include either the CET Request or the MERC Request, the two matters raised by Local 207's Second Motion to Intervene.  To the contrary, the Court granted DWSD's CET Request and  took the MERC Request under advisement.  (D.E. No. 2489 at 2, 4.)  After issuance of the October 5 Order, Local 207 waited 10 more days to file this Second Motion to Intervene.  This wait-and-see approach is exactly the kind of conduct the timeliness requirement for intervention is intended to prevent.

### C.       The Purpose For Which Intervention Is Sought Weighs Against Intervention.

Fed. R. Civ. P. 24(c) requires that a motion to intervene "be accompanied by a pleading that sets outs the claim or defense for which intervention is sought."  In violation of this rule, Local 207 failed to submit any pleading setting forth its claim or defense.

As such, this factor does not weigh in favor of intervention.

### D.       DWSD And The Public Would Be Prejudiced By Any Delay In The Implementation Of The November 4 Order And October 5 Order.

Prejudice to the original parties and the public also weighs against intervention.  Local 207's delay in seeking intervention was considerable, and given the number of years the parties have been working on the issues addressed by the November 4 Order and the October 5 Order and the progress that has recently been made, the prejudice that would be caused by stopping this progress at this point would be significant.  Moreover, as the Court previously found in denying Local 207's first motion for intervention, DWSD's violations of its Permit and the CWA "present a serious health, safety and environmental risk to the people of Southeastern Michigan," and any delay in the implementation of the November 4, 2011 Order will prejudice the public. (D.E. No. 2422 at 32.)  Notably, the Sixth Circuit agreed with this Court on this point in denying Local 207's motion for a stay. (D.E. No. 2425 at 4.)

### E.     The Existence Of Unusual Circumstances Militates Against Intervention.

This case is unique in both its duration and its ability to impact the public health and safety of Southeastern Michigan.  Because intervention would cause a substantial delay in the implementation of the November 4 Order and October 5 Order, these unique factors weigh heavily against allowing intervention at this late stage in the litigation.  Indeed, as the District Court found in denying Local 207's first motion to intervene, "the **extensive passage of time**" coupled with the progress that has been made in this action in the past 35 years "weigh heavily against intervention."  (D.E. No. 2422 at 19.)  As such, this "unusual circumstance" exists, it weighs against intervention.

### <u>CONCLUSION</u>

For the foregoing reasons and those stated in this Court's prior orders and opinions denying earlier-filed union motions for intervention, including its denial of Local 207's first motion to intervene (D.E. No. 2422), DWSD respectfully requests that this Court deny Local 207's Second Motion to Intervene in its entirety.

DYKEMA GOSSETT PLLC


By: _s/Lauren M. Phillips_____
    Robert J. Franzinger (P25539)
    Mark D. Jacobs (P41878)
    Lauren M. Phillips (P74102)
    Attorneys for Detroit Water and Sewerage
    Department
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6690/568-5416
    rfranzinger@dykema.com
    lmphillips@dykema.com

Date:  November 7, 2012

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record and that I caused copies of the same to be mailed to the following:

Joseph W. Colaianne
Oakland County Corporation Counsel
1200 N. Telegraph Road
Suite 419 Bldg. 14E
Pontiac, MI 48341-0419

John H. Fildew
Fildew Hinks
26622 Woodward Avenue
Suite 225
Royal Oak, MI 48067

Robert J. Hribar
16931 19 Mile Road
Mount Clemens, MI 48044

Charles E. Lowe
Lowe, Lewandowski
905 W. Ann Arbor Trail
Plymouth, MI 4817

DYKEMA GOSSETT PLLC

By: *s/Lauren M. Phillips*
Robert J. Franzinger (P25539)
Mark D. Jacobs (P41878)
Attorneys for Detroit Water and Sewerage Department
400 Renaissance Center
Detroit, MI 48243
(313) 568-6690/568.5416
lmphllips@dykema.com

DET01\1145343.3
ID\LAN - 014201\0003

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

21