# OTTENWESS, ALLMAN & TAWEEL, PLC
## ATTORNEYS AT LAW

**David M. Ottenwess**
Direct Dial (313) 965-2121 ext. 211
E-Mail: dottenwess@ottenwesslaw.com

The Buhl Building
535 Griswold, Suite 850
Detroit, Michigan 48226
(313) 965-2121
(313) 965-7680
www.ottenwesslaw.com

Of Counsel
Manuel L. Papista (1930-2010)
Anthea E. Papista

November 9, 2012

Honorable Sean F. Cox
United States District Court
Eastern District of Michigan
Theodore Levin United States Courthouse
231 W. Lafayette Boulevard
Detroit, Michigan 48226

FILED
NOV 09 2012
CLERK'S OFFICE
DETROIT

RE: *United States of America v. City of Detroit, et al.*
Case No. 77-71100

Dear Judge Cox:

Enclosed please find a copy of a letter dated November 8, 2012 from Board of Water Commissioner's Chairman James Fausone, regarding the Root Cause Committee's Plan of Action Clarification Report. I also enclose a copy of the actual Root Cause Committee's Plan of Action Clarification Report for your review.

Please let me know if you have any questions regarding this matter.

Very Truly Yours,

David M. Ottenwess
Acting as Special Master to the
Honorable Sean F. Cox
Case No: 77-71100

DMO/bz
Enclosure



CITY OF DETROIT
WATER AND SEWERAGE DEPARTMENT
BOARD OF WATER COMMISSIONERS

735 RANDOLPH STREET
DETROIT, MICHIGAN 48226-2830
PHONE: 313-224-4704 TTY:311
FAX: 313-224-6067
WWW.DETROITMI.GOV

November 8, 2012

VIA EMAIL ONLY

David M. Ottenwess
Ottenwess Allman & Taweel, PLC
535 Griswold Street, Suite 850
Detroit, Michigan 48226

FILED
NOV 09 2012
CLERK'S OFFICE
DETROIT

    RE:    United States of America v City of Detroit, et al.
             Case No. 77-71100

Dear Mr. Ottenwess:

    The Root Cause Committee, after deliberation, has issued a "Root Cause Committee Plan of Action Clarification of November 8, 2012." Attached hereto is a copy of the signed Clarification Report for submission to the Court.

                                  Sincerely,

                                    James G. Fausone
                                    Chair

JGF:emf
cc (via email):    Charles Pugh
                      Gary Brown
                      Chris Brown
                      Sue McCormick
                      Matt Schenk

X:\JGF\DWSD Board Water Commissioners\Correspondence\Ottenwess Ltr 110812.doc

**Root Cause Committee's Plan of Action**
**Clarification**

November 8, 2012

FILED
NOV 09 2012
CLERK'S OFFICE
DETROIT

### I. **PREAMBLE**

On September 30, 2012, the Detroit Water and Sewerage Department ("DWSD") filed a motion for clarification before the Court on various aspects of the Root Cause Committee's Plan of Action and the Court's November 4, 2011 Order. Many of the items within the request for clarification were initially raised in the Director's Interim Compliance Report of May 4, 2012 and in the responses received from the Board of Water Commissioners, the City Council's Research and Analysis Division, and the Michigan Department of Environmental Quality.

The Root Cause Committee recognizes that its November 2, 2011 Plan of Action was intended to recommend a structure for the Department to operate in order to achieve and maintain both short and long-term compliance. The Plan of Action was never expected to answer every operational question that could arise over time, but rather set forth a framework for the DWSD to operate in a more autonomous and independent manner while maintaining a clear statement of City of Detroit ownership and control over the assets of DWSD. The Root Cause Committee was, and continues to be, keenly aware that its Plan of Action must ultimately achieve the compliance objectives or else the Court is likely to order a more intrusive solution to achieve that objective.

On October 5, 2012, the Honorable Sean F. Cox issues an interim order with respect to DWSD's September 24 request for clarification. Within that interim order, the Court granted certain DWSD's requests, denied a few other request, and requested supplemental briefing on other items.

As the Root Cause Committee has continued to meet, at least monthly, on DWSD's compliance efforts and strategies to implement the November 4, 2011 Order, we felt it was important to issue this interim report and weigh in on some of the items under consideration for the Court.

### II. **RECOGNITION OF CHANGES SINCE NOVEMBER 4, 2011**

Last year, the Root Cause Committee met for roughly sixty days to prepare a Plan of Action for the Court to consider in issuing interim relief to DWSD in its efforts to achieve and maintain both short and long-term compliance. That process included representation from the Detroit City Council, the Mayor's Office, and the Board of Water Commissioners. The past year has demonstrated that the Plan of Action has produced meaningful improvements for the Department, and it is worth noting that DWSD has not experienced a permit violation during the past twelve months.

While we pause to appreciate the progress that has been made in the past twelve months, it is also instructional to note that much has changed within DWSD and the City of Detroit during that same

Page | 1

period. On the DWSD side, the Department hired a Director who started in January of 2012 as well as a Chief Operating Officer /Chief Compliance Officer who began in April 2012. In addition, the Department has hired new Human Resources Staff and a General Counsel to begin implementing the Plan of Action and the requirements of the November 4, 2011 Order.

On the City's side, the Detroit City Council approved a Financial Stability Agreement between the City of Detroit and the State of Michigan on April 9, 2012. That agreement, among other things, called for the creation of two new positions within the Administration consisting of the Program Management Director and the Chief Financial Officer. In addition, the agreement created a Financial Advisory Board with authority to act independently of the Detroit City Council on significant matters related to the City's reform agenda.

Additionally, there have been two very significant elections in the past twelve months. First, in November of 2011, voters in the City of Detroit adopted a new City Charter that provided some significant changes in the structure of City Government. Second, in this week's election, the repeal of Public Act 4 and some Charter amendments in the City of Detroit lead to some uncertainty over the future of the City's financial stability agreement and the potential impacts on imposed terms and conditions of employment that may take substantial time to resolve.

These facts are significant in that the governance assumptions that were present at the time of the Root Cause Committee's Plan of Action on November 2, 2011, are no longer accurate today. Additionally, we have now experienced approximately one year of efforts to implement the requirements of the November 4, 2011 Order and have operational experience with which to anticipate future challenges.

### III. OPERATIONAL INDEPENDENCE

#### A. Root Cause Committee's Philosophy

The DWSD motion for clarification is, at its heart, an attempt to clarify how independent DWSD's operations were intended to be in the initial Root Cause Committee's Plan of Action. This problem was contemplated within our initial Plan of Action and the need for subsequent clarifications was expressly understood.[1] The intent was clear, however, that the Root Cause Committee recommended that DWSD's new administrative functions of Law, Human Resources, Finance, and Procurement would operate independently of the equivalent functions within the City. The report very clearly stated:

> DWSD shall establish an autonomous administrative structure within the Department to provide for its own divisions of Purchasing, Human Resources, Law, and Finance. These divisions shall report to the

---

[1] "However, in recognizing that the Court's judicial relief must be as minimally intrusive as possible to achieve long-term compliance, we believe that there may need to be additional changes made in the future, possibly through a second-phase plan once we have the ability to work with the implementation of this plan." (p.2)

Page | 2

> Director of DWSD and *shall not have any reporting requirements to the similar functions of the City.* (p. 2, emphasis added)

The vast majority of the requests for Clarification within DWSD's motion relate to the challenges of DWSD continuing to interact with the equivalent functions within the City Administration. By stating that DWSD should not have to report to the equivalent functions within the City, we intended to avoid those functions operating and being treated as "satellite" divisions of the City's Finance, Legal, Human Resources, and Purchasing functions. Rather, they were intended to operate independently in order to achieve both short and long-term compliance.

### B. Review of the October 5, 2012 Interim Order – Grants and Denials

Understanding that the City is in a different place than it was with the original order and also having reviewed the intent of the Root Cause Committee in issuing its original Plan of Action, it is helpful to now turn to the specifics of the October 5, 2012 Interim Order. The Root Cause Committee has reviewed the items that were granted within the Court's order, and we agree with those items and the decision that was issued by the Court. The Court's order, in these areas, is fully consistent with the Root Cause Committee's Plan of Action.

The Root Cause Committee has also reviewed the items that were denied by the Court in its October 5, 2012 Order and we were unable to achieve consensus on some of those items. Specifically, the handling of Outsourcing and Local Economic Development which were the subject of substantial discussion and debate within the Root Cause Committee, without recognizing a clear path forward.

While the members of Root Cause could not agree on a recommendation for how to specifically resolve all the concerns that were raised by DWSD in its motion for clarification, the Committee does note that it was always assumed and understood that the Board of Water Commissioners ("BOWC") would be free to amend its Procurement Policy over time:

> We recognize that the policy is a broad overview of a full procurement process and may need to be expanded to be fully implemented by the Department. (p.3)

Further, the original Plan of Action also contemplated that items not originally contemplated within the initial procurement policy could move forward solely on the basis of BOWC approval:

> DWSD, acting through its Director upon authorization by the Board of Water Commissioners shall have final authority to approve the following types of documents without any further approvals from other departments, board, agencies, or offices of the City of Detroit:
> 
> - Those procurements not covered by the Board of Water Commissioners' and the Detroit City Council's approval outlined in the attached DWSD Procurement Policy. (p.7)

Therefore, the Root Cause Committee does recommend that the Court expressly empower the Board of Water Commissioners to amend its procurement policy over time, as it deems appropriate, provided that the policy is amended by a super-majority of the Board, consisting of five affirmative votes. This is a necessary step for the Department's long-term compliance efforts so that the Department can adequately respond to changed circumstances over time.

Further, the Root Cause Committee does acknowledge that DWSD will be requesting reconsideration from the Court on its express denial of the Board's authority to approve outsourcing contracts without regard to the dollar value and its authority to adopt its own Local Economic Development policy. While the Committee was unable to achieve consensus on a recommendation on this request for reconsideration, the Root Cause Committee does understand that a conflict would be created if certain procurement related requests are denied by the Court but then the Court authorizes the Board to amend its policy over time to respond to the Department's future needs.

### C. Review of the October 5, 2012 Interim Order – Items Requiring Supplemental Briefing

There were ten specific requests for clarification sought by DWSD that the Court requested supplemental briefing to address. The need for the supplemental briefing, we believe, was brought on by the Detroit Law Department objecting to the specific requests, though neither the Mayor nor the City Council authorized the Law Department to file objections. The Root Cause Committee has been regularly updated on the status of DWSD's efforts to work with the City to resolve the areas of objection. Specifically, two meetings were facilitated by the Special Master between the City's Deputy Corporation Counsel and DWSD's General Counsel and Chief Operating Officer/Chief Compliance Officer. As has been reported to the Root Cause Committee, those meetings demonstrated the fact that the Law Department philosophically disagrees with the 2011 Root Cause Committee's Plan of Action and the November 4, 2011 Court Order that adopted that Plan.

Additionally, there have been a series of meetings between DWSD and the City's new Chief Financial Officer to discuss the specific requests that relate to finance. As a result of those meetings, most of the objections from the Law Department which were purportedly made on behalf of the Finance Department have been resolved. As a result, the Root Cause Committee would recommend the following actions with respect to the items ordered for supplemental briefing:

(1) That the Court adopt this Root Cause Committee supplemental Plan of Action in lieu of requiring supplemental briefing on the items contained within this report.

(2) That DWSD reimburse the City of Detroit for all actual costs, which include the indirect cost, of providing transition services to DWSD.

(3) That the Board of Water Commissioners be authorized to delegate its final approval authority at thresholds of its choosing for the settlement of litigation and for the resolution of contract claims paid by DWSD to the DWSD Director or DWSD General Counsel.

(4) That DWSD work with the City's Chief Financial Officer to establish a reasonable fee for access to the City's tax system that would enable DWSD to perform its own Tax Clearances.

(5) That the Board of Water Commissioners is authorized to amend its procurement policy upon the affirmative vote of five members provided that any amendment to the policy that changes the approval threshold limits for the Board of Water Commissioners and/or the Detroit City Council shall also require approval by a super-majority vote of an Ad Hoc Root Cause Committee consisting of the Chairman of the Board of Water Commissioners, the Director of DWSD, the President of the Detroit City Council, the Chair of the Detroit City Council's Public Health and Safety Committee, and a representative appointed by the Mayor of the City of Detroit.

(6) That DWSD is authorized to establish bank accounts in its own name without the City Treasurer as a signer, provided that the City is able to obtain information on those accounts necessary for the City's external auditors to perform required work related to the Certified Annual Financial Reports ("CAFR").

(7) That DWSD be authorized to establish its own self-insurance fund.

(8) That DWSD be authorized to approve the issuance of debt and to refinance debt upon the sole approval of the Board of Water Commissioners unless the debt contains a full or partial general obligation pledge of the City of Detroit, in which case City Council approval would be required prior to issuance.

(9) That DWSD be given additional time to work with the City of Detroit to better understand the financial impact, if any, that DWSD's establishment of a Defined Contribution Plan would have upon the City of Detroit's general fund. If DWSD ultimately moves forward with its request to establish its own Defined Contribution Plan or to act as its own Plan Administrator, then DWSD should be expressly authorized to obtain its own Employee Identification Number ("EIN"). If not, there is likely not a reason for DWSD to maintain its own EIN.

(10) That DWSD should file a supplemental brief with respect to the issue of whether Corporation Counsel should be enjoined from acting under Sections 7.5-208 and 7.5-209 of the Detroit City Charter with respect to DWSD. The Root Cause Committee understands that it is inconsistent with the Plan of Action and the November 4, 2011 order for Corporation Counsel to independently act to file suit over Court orders that expressly find certain sections of the Charter inapplicable to DWSD. Similarly, the Plan of Action has clearly contemplated operational independence for DWSD in a number of areas that could lead to inter-governmental disputes between DWSD and administrative departments of the City. We recognize that this Court, and not the Corporation Counsel's mediation dispute mechanism, is the proper forum for addressing concerns over the interpretation of this Court's Orders.

In addition to the ten items cited above, the Court has taken under advisement that DWSD is seeking clarification on the role of MERC in DWSD labor matters going forward as well as the amount of time to be granted to the Director in submitting her final compliance report. The Root Cause Committee agrees with the need to further clarify each of the points, but is not in a position to offer a direct suggestion on these matters at this time. As the Court may recall, both of these items were addressed within the Court's November 4, 2011 order and were not part of the Root Cause Committee's Plan of Action.

IV. **EMA Operational Optimization Project**

Perhaps no aspect of DWSD's operational changes has received more public attention and media coverage than the organizational assessment conducted by EMA, Inc. EMA conducted a 90-day assessment of DWSD based upon interviews with approximately 200 employees. Based upon that assessment, EMA concluded that there was the opportunity for DWSD to achieve meaningful savings of up to $150 million annually by engaging in a process to look at the following key areas: (1) job re-design and the reduction of the number of employee classifications; (2) strategic outsourcing of non-core functions; (3) integration of existing technology solutions and business process redesign; and (4) capital investment in SCADA technology. DWSD management recommended that the Department proceed with the first three strategies with EMA and deferred the SCADA investment at this time. That recommendation was unanimously approved by the Board of Water Commissioners on September 7, 2012.

The DWSD sought clarification on whether contracts such as EMA would require City Council approval under the November 4, 2011 Order and received direction on October 5, 2012 that the dollar threshold within the procurement policy would apply to contracts such as EMA. DWSD submitted the contract for Council approval on October 10, 2012 and held meetings with staff and individual Council members, and made a public presentation to the Council's committee on public health and safety. To date, there has been no action taken by the Council with respect to the contract.

Without taking a position on the contract itself, the Committee does note that the scope of service within the contract is consistent with the direction of our Plan of Action and the Court's November 4, 2011 Order. If successfully implemented, the organizational optimization will result in a reduction in the number of employee classifications within the Department, leading to a more flexible workforce, with more training, and greater opportunities for career advancement for the staff. Further, the Root Cause Committee has reviewed the due diligence materials prepared by the Board of Water Commissioners and acknowledges that EMA's work has improved compliance efforts in other jurisdictions.

The Root Cause Committee does not view it as our place to opine on specific contracts that are pending for approval. However, we do believe that it is important to acknowledge that DWSD has made and is continuing to make significant strides in implementing the Root Cause Committee's Plan of Action and the Court's November 4, 2011 Order. This is not an easy task and we recognized last year that in

recommending our Plan of Action, there would be challenges along the way. We continue to believe that the Root Cause Committee, with its composition of City of Detroit elected officials and representatives and DWSD board and staff representatives are in a better position to recommend a workable solution to resolve the long-term compliance struggles of DWSD than a more intrusive alternative from the Court.

We the undersigned, hereby submit this supplemental report to the Special Master with our recommendation that the Court accept the Root Cause Committee's recommendations on the need for clarification of its Plan of Action and the Court's November 4, 2011 Order.

_____
Chris Brown
Chief Operating Officer
Mayor's Office

_____
James Fausone
Chairman
Board of Water Commissioners

_____
Sue F. McCormick
Director
Detroit Water and Sewerage Dept.

_____
Charles Pugh
President
Detroit City Council

_____
Gary Brown
President Pro Tem
Detroit City Council

_____
Matthew Schenk
Chief Operating Officer / Chief Compliance Officer
Detroit Water and Sewerage Dept.