UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                         Honorable Sean F. Cox

City of Detroit, *et al.*,                 Case No. 77-71100

    Defendants.
_____/

**OPINION & ORDER
RULING ON REMAINING REQUESTS
IN THE DWSD'S MOTION FOR INTERIM ORDER**

    This matter is currently before the Court with respect to three outstanding requests for relief that were initially raised in a Motion for Interim Order (D.E. No. 2473) filed by the Detroit Water and Sewerage Department ("DWSD") on September 24, 2012. In compliance with this Court's orders, the DWSD filed a supplemental brief regarding these outstanding requests on January 4, 2013. The City of Detroit filed a supplemental brief, objecting to requests by the DWSD relating to two Charter provisions. No other briefs regarding the remaining requests for relief have been filed and the time permitted for doing so has expired. The Court finds that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the remaining requests for relief will be decided without oral argument.

    As explained below, the Court shall DENY the DWSD's requests relating to the Michigan Employment Relations Commission ("MERC"). Nevertheless, the Court shall clarify the limited scope of its injunction as to the MERC and the Wayne County Circuit Court. In

1

addition, the Court shall DENY the DWSD's requests relating to two Charter provisions because the Court is not convinced that the provisions at issue are impeding the DWSD from complying with its NPDES Permit, the Clean Water Act, the current ACO with the MDEQ, or this Court's orders.

## BACKGROUND

This action, which was filed in 1977 and has been active since that time, has an exceptionally long history that is more fully set forth in this Court's September 9, 2011, Opinion & Order (D.E. No. 2397), its November 4, 2011 Order (D.E. No. 2410), and its October 5, 2012 Opinion & Order Regarding The DWSD's Motion For Interim Order (D.E. No. 2489). Only a truncated version of the background facts is included here.

The United States Environmental Protection Agency ("EPA") initiated this action in 1977 against the City of Detroit ("the City") and the DWSD, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. ("the Clean Water Act"). The undisputed violations in this case involve the DWSD's wastewater treatment plant and its National Pollutant Discharge Elimination System ("NPDES") permit. As explained in this Court's September 9, 2011, Opinion & Order:

> For the more than 34 years during which this action has been pending, the City and the DWSD have remained in a recurring cycle wherein the DWSD is cited for serious violations of its NPDES permit, the City and the DWSD agree to a detailed remedial plan aimed at compliance, but the DWSD is unable to follow the plan and is again cited for the same or similar violations. Although this Court has taken various measures, designed to eliminate the various impediments to compliance that have been identified by experts and acknowledged by the City, those measures have proven inadequate to achieve sustained compliance.

(*Id.* at 1).

In September of 2011, this Court was faced with the unenviable task of determining how

to remedy these ongoing and serious violations of the Clean Water Act, given the complex nature of the problem and the fact that extraordinary actions taken over the past four decades proved inadequate. Rather than order a remedy on its own, without input from the City, this Court considered other options and ultimately took a unique approach. (D.E. No. 2397 at 42-43). This Court ordered "the Mayor of the City of Detroit (and/or his designee), the City Council President and President Pro Tem, and a current member of the Board (to be chosen by the Board) to meet and confer and, within 60 days of the date of this order, propose a plan that addresses the root causes of non-compliance that are discussed in this Opinion & Order. In making such recommendations to the Court, these individuals *shall not* be constrained by any local Charter or ordinance provisions or by the provisions of any existing contracts." (*Id*. at 42-43) (emphasis in original).

Thereafter, the City officials and BOWC member identified therein ("the Root Cause Committee", hereafter the "RCC") met to devise and propose a workable solution to remedy the underlying root causes of noncompliance. On November 2, 2011, the RCC submitted a written proposed "Plan of Action" (D.E. No. 2409), which this Court found adequately addressed the majority of the root causes of non-compliance outlined in this Court's September 9, 2011, Opinion & Order. On November 4, 2011, this Court issued an Order adopting the Plan of Action proposed by the RCC and ordered its implementation. (D.E. No. 2410).

Although the RCC agreed that certain changes to existing collective bargaining agreements ("CBAs") needed to occur, it did not agree on how to achieve the necessary changes. Accordingly, this Court considered the issue on its own and ordered specific relief relating to CBAs. Among other things, the Court ordered that "[t]he DWSD shall act on behalf of the City

3

of Detroit to have its own CBAs that cover DWSD employees ('DWSD CBAs').  DWSD CBAs shall not include employees of any other City of Detroit departments.  The Director of the DWSD shall have final authority to approve CBAs for employees of the DWSD."  (D.E. No. 2410 at 6).  The November 4th Order also contains the following provision:

> 13. The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court.  The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(*Id*. at 7).

The DWSD has since been working toward implementing this Court's November 4, 2011, Order.  That order provides that, until the order has been fully implemented, or this case has been dismissed, the RCC shall meet at least once a month to discuss the implementation of the plan.

On September 24, 2012, the DWSD filed a "Motion for Interim Order Clarifying November 4, 2011 Order and for Expedited Briefing Schedule."  (D.E. No. 2473).  The DWSD asserted that it needs an interim order to address uncertainties and ambiguities that arise out of this Court's November 4, 2011, Order, that are impeding the DWSD's ability to implement it.  That motion included multiple requests for injunctive relief.

On October 5, 2012, this Court issued an "Opinion & Order Regarding The DWSD's Motion For Interim Order" (D.E. No. 2489).  This Court granted the motion in part, denied it in part, took certain requests under advisement, and ordered supplemental briefing regarding certain requests.

Meanwhile, the RCC was still meeting on a regular basis to discuss the implementation of the November 4, 2011, Order.

On November 9, 2012, the Special Master submitted a "Root Cause Committee Plan of Action Clarification of November 8, 2012" to the Court, that had been submitted to the Special Master.  (*See* D.E. No. 2505).  The RCC's Plan of Action Clarification stated that the RCC was aware of the pending motion seeking clarification of the November 4th Order and, because it actually devised the Plan of Action that was adopted by the Court, it "felt it was important to issue this interim report and weigh in on some of the items under consideration for the Court." (D.E. No. 2505 at 3).  The RCC made recommendations regarding several of the DWSD's pending requests for relief.  Among other things, the RCC recommended that the "DWSD should file a supplemental brief with respect to the issue of whether Corporation Counsel should be enjoined from acting under Sections 7.5-208 and 7.5-209 of the Detroit City Charter with respect to DWSD."  (*Id.*).  The RCC agreed that clarification is needed as to MERC's role in DWSD labor relations matters going forward, but offered no recommendation on that issue.  (*Id.* at 6).

On November 15, 2012, the DWSD filed a "Motion For Order Adopting The Root Cause Committee Plan Of Clarification" (D.E. No. 2507) wherein the DWSD moved the Court to: 1) adopt the RCC's Plan of Clarification as an order of the Court; and 2) extend the time for the DWSD to file its supplemental brief until fourteen (14) days after the Court rules on the Motion to Adopt the RCC's Plan of Clarification.

On December 14, 2012, this Court issued an Opinion & Order (D.E. No. 2512) wherein it: 1) adopted the RCC's Plan of Clarification as an order of the Court, thereby resolving the majority of the requests for relief that had been raised in the DWSD's Motion for Interim Order;

5

and 2) granted another extension for supplemental briefs on the DWSD's requests for relief as to two Charter provisions (Section 7.5-208 and 7.5-209 of the Detroit City Charter) and requests relating to the scope of the Court's injunction as to MERC.

On January 4, 2013, the DWSD filed its supplemental brief on these outstanding requests. On January 18, 2013, the City filed a supplemental brief objecting to the DWSD's requests relating to two Charter provisions. On January 25, 2013, the DWSD filed a supplemental reply brief. No other briefs relating to the remaining requests for relief have been filed and the time permitted for doing so has expired.

## ANALYSIS

**I. The Court Shall Deny The DWSD's Requested Relief As To MERC But Shall Nevertheless Clarify The Narrow Scope Of Its Injunction As To MERC And The Wayne County Circuit Court.**

This Court's November 4, 2011, Order enjoined MERC and the Wayne County Circuit Court from "exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court." (D.E. No. 2410 at 7).

As this Court later realized, however, the above language left the parties and MERC unsure as to the scope of that injunction.

This Court's August 23, 2012, Order later clarified that: 1) Paragraph 3 on Page 6 of this Court's November 4, 2011, Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that

6

cover only DWSD employees; and 2) MERC is not enjoined from ruling on clarification petitions, in order to effectuate the above severancing ordered by this Court. (D.E. No. 2470 at 3).

The DWSD's September 24, 2012, Motion for Clarification asked the Court to further address issues relating to the jurisdiction of MERC.

This Court's October 5, 2012, Opinion & Order recognized that further clarification of the scope of its injunction as it relates to MERC is needed:

> Although unintended, it is now apparent that this Court's November 4th Order does not provide MERC with sufficient direction as to the scope of its jurisdiction over petitions filed relating to the DWSD. The Court agrees that clarification by this Court is needed.

(D.E. No. 2489 at 37). The Court allowed the parties to file supplemental briefs on the issue.

The DWSD's supplemental brief states that "MERC presently has before it requests (1) from AFSCME for mediation and (2) from both the Association of Detroit Engineers ('ADE') and the Association of Municipal Engineers ('AME') for fact-finding related to the current round of negotiations" for new union contracts following this Court's November 4, 2011, Order. (DWSD's Supp. Br. at 5). The DWSD states that the "issues which are unresolved in DWSD's eight unsettled bargaining units" concern "wage, health insurance, pension, other fringe benefits and other terms and conditions of employment." (*Id.* at 13).

The DWSD asks the Court to "declare that MERC is prohibited from exercising jurisdiction over disputes arising from the CBA changes ordered by the Court or, in the alternative, limit MERC's exercise of jurisdiction to avoid interference with DWSD's implementation of this Court's Orders." (*Id.* at 8).

The Court will address these requests in turn. First, the DWSD asks the Court to declare

that MERC is "prohibited form exercising jurisdiction over disputes arising from the CBA changes ordered by the Court." But so ordering would clarify little, if anything, for the parties or for MERC.

In its November 4, 2011, Order, this Court ordered the following injunctive relief that relates to DWSD unions and CBAs:

Specifically, the Court hereby **ORDERS** that:

1. The Director of the DWSD, with the input and advice of union leadership, shall develop a DWSD employee training program, a DWSD employee assessment program, and a DWSD apprenticeship training program.

2. Any City of Detroit Executive Orders imposing furlough days upon City employees shall not apply to DWSD employees.

3. The DWSD shall act on behalf of the City of Detroit to have its own CBAs that cover DWSD employees ("DWSD CBAs"). DWSD CBAs shall not include employees of any other City of Detroit departments. The Director of the DWSD shall have final authority to approve CBAs for employees of the DWSD.

4. The Court hereby strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ("bump") into the DWSD based on seniority. Future DWSD CBAs shall adopt a seniority system for the DWSD that does not provide for transfer rights across City of Detroit Departments (ie., does not provide for "bumping rights" across city departments).

5. DWSD management must be able to explore all available means and methods to achieve compliance with its NPDES permit and the Clean Water Act. DWSD CBAs shall not prohibit subcontracting or outsourcing and the Court hereby strikes and enjoins any provisions in current CBAs that prohibit the DWSD from subcontracting or outsourcing.

6. DWSD CBAs shall provide that excused hours from DWSD work for union activities are limited to attending grievance hearings and union negotiations, with prior notification to DWSD management. The Court strikes and enjoins

       any current CBA provisions to the contrary.

7. DWSD CBAs shall include a three-year time period pertaining to discipline actions.

8. The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.

9. DWSD CBAs shall provide that promotions in the DWSD shall be at the discretion of management and based upon skill, knowledge, and ability, and then taking seniority into account. The Court strikes and enjoins and current CBA provisions to the contrary.

10. Past practices on operational issues shall not limit operational changes initiated by management with respect to DWSD CBAs.

11. The Court strikes and enjoins any provisions in existing CBAs that prevent DWSD management from assigning overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management. DWSD CBAs shall provide that management has the discretion to assign overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management.

12. Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated.

13. The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(Docket Entry No. 2410 at 6-7).

      This Court's injunction as to MERC (and the Wayne County Circuit Court) was intended to be quite limited in scope. This Court only intended to enjoin MERC and the Wayne County

Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court.  This Court did not intend to enjoin MERC from exercising jurisdiction over every dispute relating to collective bargaining that involves the DWSD.  For example, this Court did not intend to enjoin MERC from exercising jurisdiction over the union requests that are currently pending before it, which relate to negotiations for new union contracts and involve disputes over wages, health insurance, fringe benefits, and other conditions of employment.

Second, the DWSD asserts that unless this Court either enjoins MERC from exercising jurisdiction over DWSD-related labor disputes altogether, or issues an order creating new DWSD-specific processes and procedures for MERC to follow, the resolution of labor disputes by MERC will delay the implementation of this Court's November 4, 2012 Order.

The Court disagrees.  This Court has already ordered the severancing of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees.  Those new DWSD-specific units must now negotiate new CBAs.  But until they execute such agreements, this Court has expressly enjoined those few provisions of currently-existing CBAs that have been shown to impede compliance with the Clean Water Act and the DWSD's NPDES permit.  For example, this Court's November 4, 2011 Order "strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ('bump') into the DWSD based on seniority" and "strikes and enjoins any provisions in

10

current CBAs that prohibit the DWSD from subcontracting or outsourcing." (D.E. No. 2410 at 6, ¶¶ 4 & 5). Thus, MERC exercising jurisdiction over disputes relating to negotiations for new union contracts, which involve disputes over issues such as wages and health insurance, will not impede this Court's November 4, 2011 Order as it relates to the specific CBA provisions and work rules that this Court found to be impeding the DWSD from achieving and maintaining compliance with its NPDES permit and the Clean Water Act.

Accordingly, this Court will now clarify the limited scope of its injunction as to MERC and the Wayne County Circuit Court. To the extent that the DWSD asks the Court for a broader injunction, or an order creating new DWSD-specific processes and procedures for MERC to follow, those requests shall be denied.

## II.     The Court Shall Deny The DWSD's Requests Relating To Two Specific Charter Provisions.

In its September 24, 2012, Motion for Clarification, the DWSD asked the Court to clarify or declare that "Sections 7.5-208 and 7.5-209 of the Detroit City Charter regarding intra-governmental disputes and enforcement of the Charter shall not apply to issues related to DWSD and the implementation of and applicability of this Court's Orders." (DWSD's Motion at 7). The DWSD's motion, however, did not discuss the substance of either of the above Charter provisions, nor did it sufficiently explain how the DWSD believes that those provisions are impeding the DWSD from complying with its NPDES Permit, the Clean Water Act, the current ACO with the MDEQ, or this Court's orders. In addition, it was unclear to this Court as to the precise relief that the DWSD is requesting as to these two Charter provisions. This Court, therefore, ordered that DWSD and other parties could file supplemental brief relating to these requests.

The DWSD filed its supplemental brief on January 4, 2013. On January 18, 2013, the City filed its supplemental brief, wherein it objects to both requests. On January 25, 2013, the DWSD filed a supplemental reply brief.

Having reviewed the DWSD's supplemental briefs, and the City's objections, the Court is not convinced that the two Charter provisions at issue are impeding the DWSD from complying with its NPDES Permit, the Clean Water Act, the current ACO with the MDEQ, or this Court's orders. As such, the Court shall DENY the DWSD's requests relating to Sections 7.5-208 and 7.5-209 of the Detroit City Charter.

## CONCLUSION & ORDER

IT IS ORDERED that the Court hereby CLARIFIES the limited scope of the injunction imposed relating to MERC and the Wayne County Circuit Court. This Court is only enjoining MERC and the Wayne County Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court.

Accordingly, the Court now ORDERS that it SHALL NOT constitute an unfair labor practice for the DWSD:

1) to take actions to develop a DWSD employee training program, a DWSD employee assessment program, or a DWSD apprenticeship training program;

2) to not apply any City of Detroit Executive Orders imposing furlough days to DWSD employees;

3) to act on behalf of the City of Detroit to have its own CBAs that cover only DWSD employees;

4)       to prohibit or prevent a City of Detroit employee from outside the DWSD to transfer ("bump") into the DWSD based on seniority;

5)       to adopt a seniority system for the DWSD that does not provide for transfer rights across City of Detroit Departments (ie., does not provide for "bumping rights" across city departments);

6)       to require or, demand during contract negotiations, that DWSD CBA's do not contain any provisions that prohibit subcontracting or outsourcing;

7)       to limit excused hours from DWSD work to attending grievance hearings and union negotiations, with prior notification to DWSD management;

8)       to require or, demand during contract negotiations, that DWSD CBAs limit excused hours from DWSD work for union activities to attending grievance hearings and union negotiations, with prior notification to DWSD management;

9)       to consider a three-year time period when considering employee discipline actions;

10)       to require or, demand during contract negotiations, that DWSD CBAs include a three-year time period pertaining to discipline actions;

11)       to perform a review of current employee classifications at the DWSD and reduce the number of DWSD employee classifications;

12)       to require or, demand during contract negotiations, that DWSD CBAs include those revised and reduced employee classifications;

13)       to promote DWSD employees based upon skill, knowledge, and ability, and then taking seniority into account;

14)       to require or, demand during contract negotiations, that DWSD CBAs contain provisions stating that DWSD employees shall be promoted based upon skill, knowledge, and ability, and then taking seniority into account;

15)       to assign overtime work to employees most capable of performing necessary work within a classification; or

16) to require or, demand during contract negotiations, that DWSD CBAs contain provisions stating that DWSD shall assign overtime work to employees most capable of performing necessary work within a classification.

The Court FURTHER ORDERS that both MERC and the Wayne County Circuit Court are ENJOINED from exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon:

1) the development of a new DWSD employee training program, DWSD employee assessment program, or DWSD apprenticeship training program;

2) DWSD employees being exempted or excluded from any City of Detroit Executive Orders imposing furlough days upon City of Detroit employees;

3) actions of the DWSD to have its own CBAs that cover only DWSD employees;

4) the prohibition of any City of Detroit employee from outside the DWSD from transferring ("bumping") into the DWSD based on seniority;

5) the adoption or application of a seniority system for the DWSD that does not provide for transfer rights across City of Detroit Departments (ie., does not provide for "bumping rights" across city departments);

6) contract negotiation statements or demands that DWSD CBAs do not contain any provisions that prohibit subcontracting or outsourcing;

7) the DWSD limiting excused hours from DWSD work to attending grievance hearings and union negotiations, with prior notification to DWSD management;

8) contract negotiation statements or demands that DWSD CBAs limit excused hours from DWSD work for union activities to attending grievance hearings and union negotiations, with prior notification to DWSD management;

9) application of a three-year time period when considering employee discipline actions for DWSD employees;

10) contract negotiation statements or demands that DWSD CBAs include a

14

        three-year time period pertaining to discipline actions for DWSD employees;

11)     the DWSD's court-ordered review and reduction of current employee classifications;

12)     contract negotiation statements or demands that DWSD CBAs include those court-ordered revised and reduced employee classifications;

13)     contract negotiation statements or demands that DWSD CBAs contain provisions stating that DWSD employees shall be promoted based upon skill, knowledge, and ability, and then taking seniority into account; and

14)     contract negotiation statements or demands that DWSD CBAs contain provisions stating that DWSD shall assign overtime work to employees most capable of performing necessary work within a classification.

IT IS FURTHER ORDERED That, to the extent that the DWSD asks the Court for additional injunctive relief, or for a broader injunction, those requests are DENIED.

IT IS FURTHER ORDERED that, with respect to the DWSD's requests for relief as to two Charter Provisions (Sections 7.5-208 and 7.5-209 of the Detroit City Charter), those requests are DENIED.

IT IS SO ORDERED.

                                                S/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: January 30, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2013, by electronic and/or ordinary mail.

                                                S/Jennifer McCoy
                                                Case Manager