UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                  Case No.:  77-71100
                                                   Hon. Sean F. Cox

CITY OF DETROIT, ET AL,

      Defendants.
_____/

## RESPONSE TO DWSD VERIFIED MOTION FOR AN ORDER CLARIFYING AND ENFORCING THE COURT'S ORDERS BARRING CERTAIN COLLATERAL PROCEEDINGS BEFORE THE MICHIGAN EMPLOYMENT RELATIONS COMMISSION

NOW COMES Michigan American Federation of State, County and Municipal Employees, Council 25 and its affiliated Local 207 (altogether "AFSCME") with this Response to DWSD's Motion for an Order Clarifying and Enforcing the Court's Order, and for its response AFSCME states as follows:

      1.      For its Response, AFSCME relies upon the attached brief in support.

WHEREFORE, AFSCME respectfully requests that this Court deny the DWSD Motion's requested relief, and clarify its November 4, 2011 Order to permit the AFSCME unfair labor practice charge (MERC Case No C14 E-060) and unit clarification petition (MERC Case No UC14 F-010) to proceed, forthwith, and that MERC has uninhibited jurisdiction to preside over those AFSCME Filings.

Dated: February 26, 2015                    /s/ Richard G. Mack, Jr.
                                            Richard G. Mack, Jr., Esq.
                                            MILLER COHEN PLC
                                            600 West Lafayette Blvd., 4th Floor
                                            Detroit, MI 48226-3191
                                            Telephone: (313) 964-4454
                                            Facsimile: (313) 964-4490
                                            richardmack@millercohen.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.                                    Case No.:  77-71100
                                                Hon. Sean F. Cox

**CITY OF DETROIT, ET AL,**

       Defendants.

_____/

## BRIEF IN SUPPORT OF RESPONSE TO DWSD VERIFIED MOTION FOR AN ORDER CLARIFYING AND ENFORCING THE COURT'S ORDERS BARRING CERTAIN COLLATERAL PROCEEDINGS BEFORE THE MICHIGAN EMPLOYMENT RELATIONS COMMISSION

## <u>ORAL ARGUMENT REQUESTED</u>

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

1.  Should this Honorable Court Permit the Michigan Employment Relations Commission to Exercise its Statutory Jurisdiction Over Labor Disputes Concerning the Detroit Water and Sewerage Department, Particularly Where Such Disputes Do Not Seek Relief Which Impedes Enforcement of Orders of this Court?

    AFSCME answers: "YES."

## STATEMENT OF MOST CONTROLLING AUTHORITY

M.C.L.A. §§ 423.209, 423.210, 423.211, 423.213

*Michigan State University Bd. Of Trustees*, 6 MPER ¶ 24061 (1993)

# I.  INTRODUCTION

The Detroit Water and Sewerage Department, on February 6, 2015, filed its Motion (DWSD Motion, Docket No. 2540), requesting this Court to clarify the Court's November 4, 2011 Order. (Nov 2011 Order, Docket No. 2410).  This DWSD Motion was filed in an effort to block the continuation of AFSCME's "unit clarification petition", and "unfair labor practice charge", currently pending before the Michigan Employment Relations Commission ("MERC").  The unit clarification petition is MERC Case Number UC 14 F-010.  The unfair labor practice charge is MERC Case Number C14 E-060.  Both pleadings together are "AFSCME Filings".

The DWSD Motion mischaracterizes the impact of the AFSCME Filings, before the MERC, on the implementation of the Nov 2011 Order.   Indeed, AFSCME's MERC filings do not challenge or seek to overturn the actions required by the Court's November 4, 2011 Order.  It is also inaccurate for the City to suggest that AFSCME ignored this Court's Orders and sought to proceed with its charges before MERC; indeed AFSCME requested a "pre-hearing conference" in order to discuss the City's position on whether this Court's Orders impacted its filings before the MERC.  (*Exhibit A*)

Since this Court's November 4, 2011 Order, the City has returned to this Honorable Court, repeatedly, to extract more autonomy over the operation of the DWSD, reciting the unsubstantiated refrain that such autonomy was necessary for

the sake of the operation.  The City's requests were made *vis a vis*, and at the expense of, the unionized workforce, governance and oversight provided by Detroit's elected officials, oversight of the state court system and the MERC, and others.  This author counts more than thirty (30) total requests for clarification. One request was for the Court to excuse the DWSD from, literally, having to follow any local laws or rules that were "inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance"; there was no indication of how DWSD defined the inconsistency or the necessities of the operation. (October 5, 2012 Order, Docket No. 2489, pg 14)  Many of these requests have been denied by this Court. The instant request should be denied as well.

The City's effort in the instant motion is again seeking autonomy; specifically to re-determine the union membership of its City employees.  Per state labor statutes that have been in place for one-half of a century (Public Employment Relations Act), employees are permitted to vote on whether they will be unionized, and to what union they will belong.  The majority decision controls.  M.C.L.A. § 423.211.  The City in 2014, however, disregarded the union selection of hundreds of unionized employees within the City's Department of Water and Sewerage (DWSD).  The City unilaterally reassigned City employees into new unions, following adjustments in their job duties or even assignments to new job titles.

Public employers within Michigan are typically given the ability to adjust, eliminate or combine job titles within the workforce; DWSD has had such ability for decades (a fact apparently omitted from the filings of the parties before this Court). When a public employer makes such adjustments, the MERC is statutorily vested with the responsibility to determine the appropriate union membership of the new or changed job titles. A "unit clarification petition" initiates this process. As provided in Section 13 of PERA, "[t]he commission shall decide in each case, to insure public employees the full benefit of their right to self-organization … the unit appropriate for the purposes of collective bargaining …" M.C.L.A. § 423.213. Thus, when the City was ordered to reorganize its work force, per this Court's November 4, 2011 Order, AFSCME's unit clarification petition asked MERC to determine the appropriate membership of the new and changed job titles. The unit clarification petition merely requests for union membership to be aligned, given the City's reorganization.

As explained below, PERA specifically prohibits DWSD, as a public employer, from adjusting or deciding union membership of its employees. M.C.L.A. § 423.209. DWSD is statutorily prohibited from frustrating the employees' "free choice" regarding their selection of union membership. DWSD commits an unfair labor practice charge by compelling employees to join a union of DWSD's choosing.

AFSCME's amended charge, filed January 9, 2015 (attached as Exhibit 1 to DWSD Motion for Clarification), makes this assertion.

The AFSCME Filings are not asking MERC to alter the new or changed job titles within DWSD's reorganization.  Nor do the AFSCME Filings seek to override this Court's Orders.  The November 2011 Order states that the "Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility."  The Order further provides that "[f]uture DWSD CBAs shall include those revised employee Classifications." (November 2011 Order, Docket No. 2410, pgs 6-7)  This Order, however, says nothing about the DWSD being able to unilaterally assign employees into unions of the DWSD's choosing.

Thus, AFSCME requests of this Honorable Court that it clarify its November 4, 2011 Order, to permit the AFSCME Filings at MERC to proceed.

## II.  BACKGROUND FACTS ON NOVEMBER 2011 ORDER

### A.    Root Causes Committee Findings

The United States Environmental Protection Agency ("EPA") initiated an action in 1977 against the City and DWSD, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. (Case No. 77-71100, United States District Court Eastern District of Michigan).  The action was originally assigned to Honorable John

Feikens.  After Judge Feikens retired on November 29, 2010, the case was reassigned to this Court, the Honorable Sean F. Cox. (Docket No. 2323)

In the September 2011 Order, this Court established a "Root Causes Committee" – to investigate the "root causes" of the City's failure to comply with National Pollutant Discharge Elimination System Permit (NPDES).  The Root Cause Committee consisted of Chris Brown (then Chief Operating Officer), Charles Pugh (then City Council President), Gary Brown (then City Council President Pro Tem), and James Fausone (Board of Water Commissioners member).  On November 2, 2011 the Committee released a report, containing its view of the "root causes" of the DWSD challenges of complying with environmental laws and regulations.

The Root Cause Committee asserted that labor laws and union contracts prohibited the ability of DWSD to successfully operate.  As one example, the Root Cause Committee suggested that the City DWSD was unable to reduce or restructure the DWSD classifications.  However, for decades the City has had the autonomy – under labor law and union contracts – to create and eliminate titles, and establish the job duties of those titles.  See for example *City of Detroit (DWSD),* 3 MPER ¶ 21035 (1990) (*Exhibit B*) (The MERC held that "[t]he contract between AFSCME and Respondent gave Respondent the right to 'establish the methods and processes by which such work is performed.'")

5

After receiving the Plan of Action proposed by the "Root Cause Committee", this Court issued another Order on November 4, 2011. (November 2011 Order, Docket No. 2410)  The Court concluded that the plan did not adequately address CBA issues and it ordered additional relief necessary for the DWSD to achieve short-term and long-term compliance.  Specifically, the Court ordered the following (as pertinent to DWSD's motion):

> 8.  The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.

> 13. The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(*Id*. pgs. 6-7) (emphasis added)

## B.    Repeated DWSD Requests for Clarifications

The City has sought repeated "clarifications" and enforcement actions of this Order.  On August 23, 2012, this Court responded to DWSD requests concerning four separate unions within DWSD, and their obligation to segregate their DWSD membership within their bargaining units.  The DWSD requested that the Court order the unions to sever their bargaining units – DWSD and non-DWSD.  The City also filed a unit clarification petition – the type of petition AFSCME has before

MERC – asking that MERC sever the bargaining units.  When MERC refused to rule on the petition without an order from this Court, the City sought clarification of the November 2011 Order to either enable MERC to rule on the issue or for the Court to order the units be severed. (August 23, 2012 Order, Docket No. 2470) The court gave the following clarification:

> Paragraph 3 on Page 6 of this Court's November 4, 2011 Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees.

(*Id.* pg. 3)  This Court further clarified "that MERC is not enjoined from ruling on the DWSD's pending Clarification Petitions, in order to effectuate the above severancing ordered by this Court." (*Id.*)

The hypocrisy of DWSD's position - seeking its own unit clarification petition to proceed before MERC but blocking AFSCME's unit clarification petition – should not be lost on the reader.  If MERC was sophisticated enough to rule on the DWSD's clarification issue notwithstanding the existence of the November 4 Order, then AFSCME's clarification issue is properly placed before it.

On October 5, 2012, this Court issued another Opinion and Order, following a DWSD motion to again clarify the November 2011 Order.  DWSD made approximately twenty-three (23) specific injunctive relief requests that were addressed in this one Order.  Some highlights are below:

* DWSD asked that the Court excuse DWSD from following any local laws, policies or rules in operating the Department. The specific request was that the Court enjoin "the City from applying any existing or future Charter provisions, ordinances, resolutions, executive orders, city policies, regulations, procedures or similar rules or practices that are inconsistent with the operational independence of DWSD necessary to achieve short and long term compliance." (emphasis added) DWSD explained the breadth of this request by saying that it could not "identify every City" law or policy. (Id)  The Court denied that broad request only excusing the City from complying with local laws and rules inconsistent with the Court's Orders. (Id)

* The DWSD raised a concern that agents of the City were not acting "in accordance with the [DWSD] Director's interpretation of the November 4 Order …" The DWSD, therefore, asked this Court to declare that the "legal authority for interpreting the November 4 Order and advising the DWSD Director regarding the legal aspects of its implementation lies with DWSD's General Counsel." Id., at 19-20)  While holding that the DWSD counsel should advise the DWSD director, the Court declined to grant DWSD "some type of delegated authority to interpret this Court's Orders and bind the City to such interpretations …" (Id., at 20)

* DWSD requested a Court ruling that the newly-enacted City Charter provisions, concerning intra-governmental disputes, not apply to it.  Yet the DWSD failed to discuss the substance of the Charter provisions or how the provisions were

"impeding the DWSD from complying with its NPDES Permit, the Clean Water Act, the current ACO with the MDEQ, or this Court's orders." Thus, the Court permitted the DWSD additional briefing on the issue. (Id., at 22)

* The Root Cause Committee had adopted a DWSD Procurement Policy which outlined the necessary approvals for when DWSD management sought to execute contracts for goods or services with third parties. (November 2011 Order, Docket No. 2410-2)  DWSD management, instead, asked the Court to order that DWSD had "authority to proceed" with contracts solely upon the approval of the Water Commissioners. (Id., at 22)  The Court denied the request, and relied upon the Root Cause Committee's Procurement Policy. (Id., at 25)

* The DWSD asked the Court to declare that it was not required to follow the Prevailing Wage Ordinance – an ordinance establishing a minimum wage for a contractor's employees on certain DWSD contracts.  The Court again pointed out that DWSD "does not explain why such relief is needed in order to achieve compliance with the DWSD's NPDES permit, the Clean Water Act, or this Court's November 4, 2011 Order."  The Court denied the request. (Id., at 26)

* DWSD asked to be allowed to avoid the City's "tax clearance processes".  The DWSD failed to explain what the process was, what substitute process should be used, and why the City process impeded its ability to comply with the Court's

November 2011 Order or its environmental requirements.  The Court permitted additional briefing on the issue. (Id., at 27)

 * The DWSD asked that the Court clarify the scope of MERC's jurisdiction. It also asked that the Court prohibit MERC from exercising authority and jurisdiction over mediation and fact finding (non-binding, dispute-resolution efforts where MERC agents assist in bridging an impasse in bargaining a new union contract). MERC itself sought clarification from the Court as to its role in presiding over DWSD-union issues.  The Court took the matter under advisement.

 On <u>December 14, 2012</u>, Judge Cox issued an Opinion and Order clarifying the DWSD's ability to impose employment terms on unionized employees within union contracts in place. (December 14, 2012 Order, Docket No. 2512, 17-18)  The Court clarified that its "November 4, 2011 Order does not stand as an obstacle to the DWSD implementing the CETs for DWSD employees – if permitted to do so under otherwise applicable law.  As to this issue, the DWSD-unions stand in the same shoes as other unions with CBAs with the City of Detroit." (Id)

 On <u>January 30, 2013</u> Judge Cox issued an Opinion and Order further ruling on MERC's jurisdiction. (January 30, 2013 Order, Docket No. 2520)  The DWSD had revisited the issue of MERC's jurisdiction at the invitation of the Court, and requested that the Court "declare that MERC is prohibited from exercising jurisdiction over disputes arising from the CBA changes ordered by the Court or, in

the alternative, limit MERC's exercise of jurisdiction to avoid interference with DWSD's implementation of this Court's Orders." (Id., at 7) Judge Cox clarified paragraph 13 of its November 4, 2011 order:

> This Court's injunction as to MERC was intended to be quite limited in scope. This Court only intended to enjoin MERC and the Wayne County Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court. This Court did not intend to enjoin MERC from exercising jurisdiction over every dispute relating to collective bargaining that involves the DWSD. For example, this Court did not intend to enjoin MERC from exercising jurisdiction over the union requests that are currently pending before it, which relate to negotiations for new union contracts and involve disputes over wages, health insurance, fringe benefits, and other conditions of employment.

(Id. pgs. 9-10)

More specifically, DWSD sought the Court to enjoin MERC from exercising jurisdiction over DWSD-labor disputes altogether, or order new DWSD-specific processes for MERC to follow. (Id., at 10) The Court rejected both efforts:

> "This Court has already ordered the severancing of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees. Those new DWSD-specific units must now negotiate new CBAs. But until they execute such agreements, this Court has expressly enjoined those few provisions of currently existing CBAs that have been shown to impede compliance with the Clean Water Act and the DWSD's NPDES permit. For example, this Court's November 4, 2011 Order 'strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ('bump') into the DWSD based on seniority' and 'strikes and enjoins any provisions in current CBAs that prohibit the DWSD from subcontracting or outsourcing.' (Docket No. 2410 at 6, ¶¶ 4 & 5). Thus, MERC exercising jurisdiction over disputes relating to negotiations

for new union contracts, which involve disputes over issues such as wages and health insurance, will not impede this Court's November 4, 2011 Order as it relates to the specific CBA provisions and work rules that this Court found to be impeding the DWSD from achieving and maintaining compliance with its NPDES permit and the Clean Water Act."

The Court then narrowed the limit on MERC's jurisdiction further:

"This Court is only enjoining MERC and the Wayne County Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court."

(Id)  Importantly, this Court was permitting MERC to exercise jurisdiction over issues that were not based upon specific relief of the Court.  In other words, if the issue was not "specifically" mentioned in the November 4, 2011 Order, MERC was not stripped of jurisdiction.  The Order finished by stating: "To the extent that the DWSD asks the Court for a broader injunction, or an order creating new DWSD-specific processes and procedures for MERC to follow, those requests shall be denied."[1] (Id., at 11)  (emphasis added)

On March 27, 2013, Judge Cox issued an Opinion and Order Terminating Second Amended Consent Judgment and Closing This Case. (March 27, 2013 Order, Docket No. 2528)

---

[1] One way to read this last statement of the Court is a preemptive denial of DWSD's future requests for a "broader injunction."  That would preclude DWSD from pursuing its instant motion.

### III.  BACKGROUND ON FACTS CONCERNING UNIONS[2]

The DWSD recently reorganized many of its job classifications, eliminating certain positions and creating new positions. Many DWSD employees were removed from prior classifications, and placed into new classifications.   In this process, DWSD unilaterally removed employees from their current union, and placed them into other unions.  As a result, AFSCME is losing hundreds of union members within DWSD (well over 300).

The DWSD has approximately 1700 total employees, and approximately 26 unions represent sections of this workforce.  As with any unionized workforce, the employees voted to join their respective unions.  AFSCME at the time represents approximately 900 DWSD employees.

AFSCME is the exclusive bargaining representative of certain classifications within DWSD.  Michigan AFSCME Council 25 has three locals in the DWSD: Locals 207, 2920 and 2394.  AFSCME Local 2920 and the DWSD are parties to a collective bargaining agreement ("CBA"), in existence from 2013-2018.  AFSCME Local 207 and Local 2394 have expired CBAs.

---

[2] For its factual assertions, AFSCME relies on the Catherine Phillips Declaration, attached to AFSCME's Motion to Intervene.

The three AFSCME locals in DWSD bargain union contracts, separate from the locals representing employees in general fund departments.   This is per November 2011 Order of this Court.

On May 21, 2014, AFSCME and its Locals 207, 2920 and 2394 filed unfair labor practice charges (ULPs) at MERC, contending that these adjustments in union membership violated state labor laws.   On June 16, 2014, AFSCME filed a unit clarification petition to have MERC clarify the union membership of the new/charged titles.   The most recent AFSCME filings are attached to the DWSD Motion as Exhibits 1 and 2.   (DWSD Motion, Docket No. 2540-2 and 2540-3)

The City of Detroit emerged from bankruptcy on the Effective Date of the Plan of Adjustment, December 10, 2014.   After that point, AFSCME sought to have MERC convene a pre-hearing conference to discuss the advancement of the unit clarification petition and unfair labor practice charge.   (*Exhibit A*)  AFSCME did not disregard the orders of this Court.

## IV.  ARGUMENT

MERC has been entrusted by statute with special authority to remedy unfair labor practice charges and to determine unit clarifications.   The Public Employment Relations Act ("PERA"), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*, governs public sector labor law.   The court, in *Rockwell v. Crestwood School Dist.*, declared

the PERA to be the "dominant" and "governing" law regulating "public employee labor relations":

> "This Court has consistently construed the PERA as the dominant law regulating public employee labor relations. . . ."

> "The supremacy of the provisions of the PERA is predicated on the Constitution (Const.1963, art. 4, s 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations."

393 Mich. 616, 629-630, 227 N.W.2d 736 (1975) (emphasis added). The court explained in *Rockwell* that "MERC alone has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the PERA." 393 Mich. at 630, 227 N.W.2d 736.

State labor law is very clear that an employer cannot unilaterally remove employees from a bargaining unit, after it implements a reorganization of the workforce. As to the unit clarification petition, PERA (MCLA § 423.213) provides for MERC, as opposed to the City unilaterally, to decide the issue of an appropriate collective bargaining unit for new or modified classifications:

> Sec. 13. The commission shall decide in each case, to insure public employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining.

Further, Section 9 of PERA states that employees are permitted to "negotiate or bargain collectively with their public employers through representatives of their own free choice". M.C.L.A. § 423.209(1) (emphasis added). Section 9(2) continues:

15

"[n]o person shall … compel or attempt to compel any public employee to …
[b]ecome or remain a member of a labor organization …" Further, Section 10(1)(a)
of PERA makes it an unfair labor practice for an employer to "[i]nterfere with,
restrain, or coerce public employees in the exercise of their rights guaranteed in
section 9." M.C.L.A. § 423.210(1)(a).

The *Michigan State University Bd. of Trustees*, 6 MPER ¶ 24061 (1993)
(*Exhibit C*) case involved a major reorganization by the employer, comprised
changed job classifications.  As here, the employer unilaterally removed employees
from unions as a result of the reorganization.  In protest, as here, the union filed an
unfair labor practice charge and a unit clarification petition.  The charge asserted that
the removal of members from the union violated PERA.

The MERC reaffirmed the principle that "bargaining unit placement is neither
a mandatory subject of bargaining nor a matter of managerial prerogative but a
matter reserved to the Commission by Section 13 of PERA." Id.  It continued:

> "an employer may not alter bargaining unit placement unilaterally or after
> bargaining to impasse, but must either obtain the union's agreement to
> changes in bargaining unit composition or obtain an order from this
> Commission by filing a unit clarification proceeding."

Id.  The employer defended its unilateral actions by claiming that the union agreed
to the reorganization, a claim the Commission rejected.  The Commission held that
"the Employer acted unlawfully in removing positions from the Charging Party's
unit without its agreement." Id.

Importantly, in the *Michigan State University* case, the MERC focused on the change in the union membership of the employees after they had their job classifications and duties changed. The charge was filed concerning bargaining unit placement. As here, the issue was removing employees from the bargaining unit. MERC stated even though the parties anticipated there may be some bargaining unit changes, the union didn't agree that the unit placement should be made by the employer's agent.

In considering AFSCME's unit clarification petition, MERC would conduct an evidentiary hearing to evaluate the working conditions of the newly created position, compared to those of other positions within AFSCME. As shown in *Kalamazoo Public School District*, 27 MPER ¶ 38 (2013), MERC must "find appropriate the single largest unit in which the employees share a community of interest." The community of interest is determined by examining a number of factors: "similarities in duties, skills and working conditions; similarities in wages and employee benefits; amount of interchange or transfer between groups of employees; centralization of the employer's administrative and managerial functions; degree of central control of labor relations; common promotion ladders and common supervision." Id.

Repeatedly, the DWSD has been cautioned by this Court that its request for "clarification" of the November 2011 Order should explain the justification for the

proposed change.  See, for example, October 5, 2012 Order, Docket No. 2489, pg 22.  The DWSD has here, again, failed to explain why allowing MERC to address the AFSCME Filings would impede compliance with various this Court's Orders or its environmental requirements.  The absence of an explanation from the DWSD underscores the fact that none exists.  The AFSCME Filings do not seek to undo the reorganization itself.  Instead, it seeks to realign the union membership, which the City improperly changed following the reorganization.

Empowering an employer to reward its selected unions with additional members (and presumably additional dues payers) invites the type of employer influence within unions which the labor laws have sought to prevent.  This is not to say such influence was wielded here.  However, MERC was given the right to select union membership, for new or changed job titles, in order to avoid even the appearance or potential for such influence.

DWSD makes the point that some of the unions which have been given additional positions, due to the DWSD unilateral selection of unionization, have already signed union contracts with those new positions included.  DWSD does not mention when these new contracts were signed, but it is likely they were executed after June 16, 2014, when AFSCME filed its unit clarification petition.  At the time it was negotiating those new contracts, DWSD knew that AFSCME was asking MERC to realign the union membership for the new/changed positions.  Thus,

DWSD plowed forward at its peril by inserting the new / changed positions into new union contracts, knowing that MERC would have to pass on the appropriate membership based upon AFSCME's unit clarification petition.  The existence of these contracts does not divest MERC of the ability to decide on these positions.

Further, the realignment of the union membership of these new/changed positions, even if working under new union contracts, will not disrupt the DWSD operations.  The DWSD can still direct those employees where to work, what to do, can still decide the shift times and location of the work performance, etc.  DWSD has the burden to establish how changing the recipient of these employees' union dues payments will impact, let alone frustrate, the DWSD operations.  It has failed to even address this issue beyond empty, conclusory statements.[3]

## CONCLUSION

WHEREFORE, AFSCME respectfully requests that this Court deny the DWSD Motion's requested relief, and clarify its November 4, 2011 Order to permit the AFSCME unfair labor practice charge (MERC Case No C14 E-060 and unit

---

[3] At this time, AFSCME is primarily concerned with the advancement of the AFSCME Filings.  Thus, its brief omits a response to the DWSD's argument alleging that the order was an "unquestionably lawful exercise".  This omission should not be taken as agreement to the DWSD claim. See 28 U.S.C. § 2283 (the Anti-Injunction Act) and *Martingale LLC v. City of Louisville*, 361 F.3d 297 (6th 2004); see also 29 U.S.C. § 101 et seq (Norris LaGuardia Act).

clarification petition (MERC Case No UC14 F-010) to proceed, forthwith, and that

MERC has uninhibited jurisdiction to preside over those AFSCME Filings.

Dated: February 26, 2015          /s/ Richard G. Mack, Jr.
                                  Richard G. Mack, Jr., Esq.
                                  MILLER COHEN PLC
                                  600 West Lafayette Blvd., 4th Floor
                                  Detroit, MI 48226-3191
                                  Telephone: (313) 964-4454
                                  Facsimile: (313) 964-4490
                                  richardmack@millercohen.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.                                   Case No.:  77-71100
                                          Hon. Sean F. Cox

**CITY OF DETROIT, ET AL,**

       Defendants.

_____/

**PROOF OF SERVICE**

      The undersigned certifies that on February 26, 2015, the American Federation of State, County and Municipal Employees Council 25 (AFSCME) electronically filed their *Response Brief to DWSD Verified Motion for an Order Clarifying and Enforcing the Court's Orders Barring Certain Collateral Proceedings Before the Michigan Employment Relations Commission*, with the Clerk of the Court for the United States District Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically, as well as serving an electronic copy on counsel for DWSD.

                            /s/ Richard G. Mack, Jr.
                            Richard G. Mack, Jr., Esq.
                            MILLER COHEN PLC
                            600 West Lafayette Blvd., 4th Floor
                            Detroit, MI 48226-3191
                            Telephone: (313) 566-4787
                            Facsimile: (313) 964-4490
                            richardmack@millercohen.com