# EXHIBIT B



3 MPER ¶ 21035, 3 Michigan Pub. Employee Rep. ¶ 21035, 1990 WL 10609929

Page 1

Michigan Employment Relations Commission

CITY OF DETROIT (WATER AND SEWERAGE)

No. C87 L-321

No. C87 F-149

1990 MERC Lab Op 34

January 12, 1990

**Related Index Numbers**

43.521 Job Security, Elimination of Jobs, Assignment of Unit Duties Outside Unit
72.3524 Discrimination Related to Union Membership or Concerted Activity, Defenses Against Charges of Discrimination, Changes in Operation, Transfer of Department
72.584 Refusal to Bargain in Good Faith, Defenses to Refusal to Bargain Charge, De Minimis

**APPEARANCES:**

For the Respondent-Employer, John H. Willems, Assistant Corporation Counsel

For SCATA, John R. Runyan, Esq., Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C. (Mark Brewer, Esq., on the brief)

For AFSCME, Council 25, L. Rodger Webb, Esq.

**Case Summary**

City had no duty to bargain with union over transfer of driving and vehicle maintenance duties from one group of unit employees to another where there was no evidence of significant adverse impact on unit resulting from such transfer. Rather, evidence indicated that transfer of duties was motivated by need for higher skilled employees to perform duties formerly performed by unit members.

**Full Text**

**DECISION AND ORDER**

On December 27, 1988, Administrative Law Judge Nora Lynch issued her Decision and Recommended Order in the above case, and in Consolidated Case No. C87 F-149. The Administrative Law Judge recommended in Case No. C87 F-149 that Respondent City of Detroit be found guilty of refusing to bargain in violation of Section 10 of the Public Employment Relations Act (PERA or the Act), 1947 PA 336, as amended by 1965 PA 379 and 1973 PA 25, MCL 423.210, MSA 17.455(10). The Administrative Law Judge recommended that the charge in Case No. C87 L-321 be dismissed.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

The charge in Case No. C87 F-149 was filed by Sanitary Chemists and Technicians Association (SCATA) and the charge in Case No. C87 L-321 was filed by Michigan Council 25, AFSCME. Both labor organizations represent bargaining units of Water and Sewerage Department employees. Both charges alleged bargaining violations in connection with a June 1, 1987 transfer of duties from employees represented by AFSCME to employees represented by SCATA.

The Decision and Recommended Order of the Administrative Law Judge was served on the interested parties in accord with Section 16 of PERA. Exceptions to certain of the Administrative Law Judge's findings were timely filed both by Respondent and by AFSCME on February 2, 1989. Cross-exceptions to the Administrative Law Judge's decision were filed by SCATA on March 3, 1989. The SCATA charge was withdrawn on November 1, 1989.

We have considered the exceptions filed by Respondent and by AFSCME in light of the record, including briefs filed by all three parties. For reasons set forth below, we agree with the Administrative Law Judge that AFSCME's charge has no merit.

*Facts*

The facts of this case were stipulated to by the parties and are set out in the Administrative Law Judge's opinion. From about 1979 until June, 1987, water systems investigators represented by AFSCME were assigned to collect water samples at field sites, to perform a sample analysis at these sites, and to bring the samples back to laboratory locations for more extensive testing. The parties stipulated that an investigator's duties included the exclusive responsibility for driving the sample truck and for maintaining this vehicle. More extensive sample analysis was performed at laboratory sites by chemists and technicians represented by SCATA. However, SCATA-represented employees, on a rotating basis, were required to perform on-site testing in certain emergency situations. It is not clear from the parties' stipulations whether those emergencies ever required SCATA-represented employees to drive a truck or to maintain it. The incidence of these emergency situations increased between 1983 and 1987, after the Michigan Department of Natural Resources (DNR) instituted new requirements for certain testing to be done on-site or shortly after sampling. The parties' stipulated facts do not indicate how frequently SCATA-represented employees were required to perform these on-site tests between 1983 and 1987.

Because of increasing problems meeting DNR standards, effective June 1, 1987 Respondent began requiring chemists and technicians to drive trucks on a regular basis to various field sites, to perform certain tests at these sites, and to transport samples back to the laboratories. Chemists and technicians were also assigned responsibility for basic maintenance of the sample vehicles and their equipment.

As of June 1, 1987 when the reassignment of work went into effect, only four of the ten AFSCME-represented water investigator positions were filled. These four employees were transferred to other investigator positions within the AFSCME bargaining unit. The record does not indicate that they suffered any loss in pay.

Special conferences were held on June 16, 1987 with SCATA and with AFSCME. Respondent took the position with SCATA that the changes in the job duties of the chemists and technicians were permitted by their contract. With AFSCME, it claimed that it had the right to transfer the work in order to maintain an effective and productive operation. SCATA's charge was filed on June 30, 1987 and AFSCME's charge was filed on December 7, 1987.

The contract between AFSCME and Respondent gave Respondent the right to "establish the methods and pro-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

cesses by which such work is performed."

*Discussion and Conclusions of Law---Case No. C87 L-321*

The charge in Case No. C87 L-321 alleged that Respondent breached its duty to bargain over the transfer of the duties performed by water systems investigators in AFSCME's unit to the chemists and technicians in the SCATA unit.

The Administrative Law Judge applied the test for determining a bargaining duty set out in Southfield POA v. Southfield, 162 Mich App 729 (1987). Southfield involved the alleged transfer of work from positions in the police unit to positions in another bargaining unit. The Court of Appeals, reversing our dismissal of the charge on the basis that the transferred work had not been performed exclusively by the police unit, held that the key question in determining an employer's bargaining obligation over the reassignment of work to employees outside the unit is whether the reassignment would impose an adverse impact on unit members. The Court also indicated that the employer's bargaining obligation depended on whether the reassignment "would be inconsistent with previously established operating practices, would effect a change in conditions of employment, or result in a significant impairment of job tenure, employment security or reasonably anticipated work opportunities for those in the bargaining unit." Applying this test, the Administrative Law Judge held that the reassignment in the instant case did not have a sufficiently adverse impact on AFSCME members to warrant a bargaining order.

On August 22, 1989, the Michigan Supreme Court reversed the Court of Appeals in the Southfield case and reinstated our dismissal of the charges. 433 Mich 168 (1989). The Supreme Court held that since the non-exclusive work was not "bargaining unit work," the employer had no duty to bargain before reassigning more of this work to members of another bargaining unit.

In the instant case, the parties stipulated that the work of driving trucks to field sites to collect samples and the maintenance of these trucks had been performed exclusively by members of AFSCME's unit between 1979 and 1987. The record thus indicates that the transferred work was "bargaining unit work" within the meaning of the Southfield decision. However, we must nevertheless determine whether under the circumstances of this case Respondent had a duty to bargain over the reassignment of this bargaining unit work to the SCATA unit.

In Southfield, supra, the Supreme Court cited Lansing Fire Fighters Union, Local 421 IAFF v. Lansing, 133 Mich App 56 (1984) for the proposition that a public employer has the duty to bargain over a decision to remove work done by unit members and hire nonmembers to perform the work. In Lansing, the City hired a civilian outside of the Fire Fighters bargaining unit to fill the job of administrative assistant to the fire chief. The work had previously been performed by members of the fire fighters' unit. We found that the City had violated its duty to bargain when it removed the work from the bargaining unit without offering the fire fighters' bargaining representative an opportunity to bargain. On appeal, the City conceded that the transfer of the unit work was a mandatory subject of bargaining, and that it had not offered the union an opportunity to bargain. It argued, however, that the union had waived its right to bargain by contractual language and by past practice. The Court of Appeals agreed with our rejection of the waiver argument in that case, and it affirmed our bargaining order.

The Southfield court also cited Local 128, AFSCME v. Ishpeming, 155 Mich App 501 (1986), and United Teachers of Flint v. Flint School District, 158 Mich App 138 (1986), as holding that there is no duty to bargain over a decision to transfer work pursuant to a reorganization effort. In Ishpeming, the City of Ishpeming undertook a reorganization which impacted on several members of the charging party union's supervisory unit. One of the changes undertaken as part of the reorganization was the abolishing/retitling of a supervisory position and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

the transfer of that position to a nonsupervisory unit. The employee filling the old position was transferred to the new position, with no change in his job duties. Another supervisory position was also eliminated as part of the reorganization. The employee filling that position was laid off and his job duties were redistributed among existing positions outside the supervisory unit.

We found in that case that the employer had a continuing obligation to bargain with the union over the first position because its duties had not changed and the record indicated that it was appropriately included in the supervisory unit. We also found that the employer had a duty to bargain over the transfer of the work of the eliminated position outside the unit.

The Court of Appeals affirmed our bargaining order with respect to the first position. With regard to the second position, the Court held that the employer had both a contractual and a statutory right to reorganize without bargaining with the union. According to the Court, this right necessarily encompassed the right to transfer work to employees or positions not represented by the supervisory unit. Both a decision to eliminate a unit position and the concomitant decision as to which positions are to receive the duties previously associated with the old job are within an employer's managerial prerogative, the Court held. In a footnote, the Ishpeming Court noted that the Lansing Court had not specifically addressed the issue of whether the transfer was a mandatory subject of bargaining since the employer had argued only that the union had waived its rights. The Ishpeming Court concluded that in holding that the transfer in Lansing had violated the employer's bargaining duty, we had committed an error of law.

In United Teachers of Flint, supra, the Court of Appeals affirmed our dismissal of charges filed by the teachers' bargaining representative alleging an unlawful unilateral transfer of bargaining unit work, but on different grounds. The Flint district had employed three levels of Community School Director (CSD) positions. All of the CSDs were excluded from the teachers' unit as supervisors, but only the CSD I performed any teaching duties. The event provoking the charge was the District's decision to convert CSD II and III positions into CSD I jobs with teaching responsibilities, at the same time that teachers in the Charging Party's bargaining unit were being laid off. We dismissed the charge on the grounds that the work transferred had not been exclusive unit work. The Court of Appeals, however, citing Ishpeming, held that the decision to eliminate teaching positions pursuant to a reorganization in which teaching duties were assigned to a CSD position was within the scope of the management prerogative and was not a mandatory subject of bargaining.

In MESPA v. Schoolcraft College, 156 Mich App 754, a panel which included Justice Kelly from the Ishpeming case affirmed our dismissal of an allegation of unlawful unilateral transfer of unit work on the grounds that no transfer of work had actually been shown. The majority opinion cited Lansing Fire Fighters v. Lansing, supra, for the general proposition that a unilateral transfer of unit work is an unfair labor practice. Justice Kelly, in a separate concurrence, emphasized that his holding in Ishpeming was limited to the "narrow context of governmental reorganization."

As indicated above, both the Court of Appeals panel in Ishpeming and the Court of Appeals panel in Flint held that there was no duty to bargain where the transfer of work was pursuant to a "legitimate reorganization." In Ishpeming, the reorganization encompassed the reassignment and redistribution of several kinds of work among several classifications. In Flint, only one kind of work was involved and the transfer took place between only two classifications. Neither in Flint nor in Ishpeming was there any evidence of an attempt to destroy the bargaining unit or any anti-union motive. While the records in these cases did not include specific evidence of motive, the apparent motive behind both transfers was cost saving from more efficient use of personnel.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

However, the transfers of work which took place in both Lansing, supra and in Southfield also were apparently made for reasons of efficiency, and there was no evidence of an anti-union motive in either of those cases. Indeed, if cost savings and/or efficiency as the motive for a transfer are the hallmark of a "legitimate reorganization," most transfer and subcontracting decisions might fall within this category.

We do not believe that the legislature intended to remove a public employer's obligation to bargain over any transfer of unit work motivated by a desire to improve efficiency or effect cost-savings. As we observed in our decision in City of Ishpeming, 1985 MERC Lab Op 687, at pg 692:

We view a unilateral transfer of bargaining unit work as an action striking at the heart of the bargaining relationship. Such actions taken unilaterally, even where motivated by reasons of efficiency or economics, communicate to employees most clearly the futility of collective action. There is no case in which this is more true than where an employer unilaterally decides to lay off a bargaining unit employee and to retain nonunit employees to perform the unit work.

The principle that an employer must bargain over work reassignments which remove bargaining unit work from the unit has a long history in our caselaw. See, e.g., *Gibraltar School District*, 1970 MERC Lab Op 338; *City of Detroit (Police Dept.)*, 1979 MERC Lab Op 704; *Center Line School District*, 1982 MERC Lab Op 756. Moreover, employer decisions to transfer work out of a bargaining unit to other employees, like decisions to subcontract that work to nonemployees, have long been found to constitute mandatory subjects of bargaining under the National Labor Relations Act, 29 USC § 151. See, e.g., Fetzer Television, Inc, 131 NLRB 821 (1961), 48 LRRM 1165, enf'd 299 F2d 845 (6th Cir, 1962); American Needle & Novelty Co, 206 NLRB 534 (1973), 84 LRRM 1527.

However, we believe that once it has been established that the work at issue has been exclusively performed by the Charging Party union, two elements are essential before a duty to bargain over a non-discriminatory transfer of unit work can be imposed on a public employer.

First, the transfer must have a significant adverse impact on unit employees. The record must for example show that unit employees were laid off or terminated as a result of the transfer, that unit employees were demoted to lower paying jobs, that unit employees on layoff were not recalled as a direct result of the transfer, or that unit employees experienced a significant drop in overtime. A mere showing that positions were lost, or speculation regarding the loss of promotional opportunities for unit employees, is not enough to show a significant impact. We have not uniformly required proof of specific adverse impact in the past, see e.g., Lansing Fire Fighters, supra; Lenawee County Road Com'n, 1970 MERC Lab Op 761. However, unless the impact on unit employees is significant and real, as opposed to *de minimis* and speculative, there is no justification for restricting the employer's freedom to make decisions regarding the assignment of work. To the extent that our previous decision failed to make this clear, they were in error.

Secondly, the transfer dispute must be amenable to resolution through the collective bargaining process. The National Labor Relations Board (NLRB) has applied this standard to transfer-of-unit work cases. See Otis Elevator, subs. of United Technology (Otis Elevator II), 269 NLRB 89 (1984), 115 LRRM 1281, *corrected* 116 LRRM 1072 (1984); Brown Co, 278 NLRB No. 113 (1986), 121 LRRM 1250. To be amenable to resolution through the collective bargaining process, the decision to transfer work must be based at least in part on either labor costs or general enterprise costs which could be affected by the bargaining process.

In the instant case, the Administrative Law Judge concluded, as part of her analysis based on the Southfield test,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

that no significant adverse impact resulted to employees in AFSCME's unit from this transfer. She based this conclusion on the fact that there was no reduction in the number of budgeted investigation positions overall in the Department of Water and Sewerage, and on the fact that the existing water system investigators were transferred to other positions. AFSCME argues on exception that the Administrative Law Judge erred by looking only at the number of budgeted positions, without apparently recognizing that the AFSCME unit had in reality suffered a reduction in the number of actual unit positions. However, as indicated above, we believe that a mere reduction in the number of unit positions does not have a sufficiently significant adverse impact on employees to justify a bargaining order. We agree with the Administrative Law Judge that Respondent had no duty to bargain over the transfer of work in this case, because no significant adverse impact was shown.

Secondly, we find no indication in the record that this transfer decision was based on labor costs or other costs to make this dispute amenable to resolution through the collective bargaining process. Rather, the record indicates that the transfer of duties to SCATA members was motivated by the need for higher skilled employees to perform the duties formerly performed by AFSCME members.

*Conclusion*

We affirm the Administrative Law Judge's finding in Case No. C87 L-321 that Respondent had no duty to bargain with Charging Party AFSCME over the removal of driving and vehicle maintenance duties from its unit because the record did not show a significant adverse impact on the unit resulting from this transfer, and because the dispute in this case was not amenable to resolution through the collective bargaining process.

**ORDER**

Pursuant to Section 16 of PERA, we adopt the Administrative Law Judge's recommendation. The charge in Case No. C87 L-321 is dismissed in its entirety.

**DECISION AND RECOMMENDED ORDER OF ADMINISTRATIVE LAW JUDGE**

Pursuant to the provisions of Section 10 and 16 of the Public Employment Relations Act (PERA) 1947 PA 336, as amended by 1965 PA 379 and 1973 PA 25 MCLA 423.210, MSA 17.455(10), this matter came on for hearing at Detroit, Michigan on December 7, 1987, before Nora Lynch, Administrative Law Judge for the Michigan Employment Relations Commission. The proceedings were based upon unfair labor practice charges filed by the Sanitary Chemists and Technicians Association (SCATA) in Case No. C87 F-149 and Michigan Council 25 AFSCME, in Case No. C87 L-321 wherein it was alleged that the City of Detroit Water and Sewerage Department had violated Section 10 of PERA. Based upon the record in this proceeding, including the pleadings, transcript of the hearing, exhibits and briefs filed by the parties on or before February 26, 1988, the undersigned makes the following findings of fact and conclusions of law and issues the following recommended order pursuant to Section 16(b) of PERA:

*The Unfair Labor Practice Charges:*

The charge in Case No. C87 F-149 filed on June 30, 1987 alleges the following:

City of Detroit substituted chemists and technicians who are represented by Sanitary Chemists and Technicians Association, to work in place of assistant water systems investigators, who are represented by AFSCME on June 1, 1987, without consulting with SCATA and AFSCME and without refraining from making major changes in

employment conditions and circumstances thus ignoring the existing contracts.

The charge in Case No. C87 L-321 filed on December 7, 1987, states as follows:

City has eliminated water systems investigators and assistant investigators from the sewage division of the Water and Sewerage Department and transferred their work out of the AFSCME 207 unit into the Sanitary Chemists and Technicians Unit. Said removal was accomplished without notice to AFSCME. The removal and the failure to bargain thus violated the statute as cited.

*Facts:*

The parties stipulated to the facts and exhibits in this matter. AFSCME represents a bargaining unit of City of Detroit employees which includes the job titles of water systems investigator and assistant water systems investigator in the Department of Water and Sewerage. Historically there have been ten investigator positions budgeted. The job descriptions for these positions indicate that investigators are responsible for assisting in the disinfection of water mains and reservoirs, sampling and testing discharges into the waste water system, disinfecting temporary emergency connections, gathering samples from newly constructed suburban mains and water systems, and performing related work as required. The job descriptions indicate that a valid motor vehicle operator's license is required.

SCATA represents the water systems chemists and laboratory technicians working in the Water and Sewerage Department. The job description for these employees indicate that they are responsible for the performance of routine chemical, physical and bacteriological tests and analyses and related work as required. A driver's license is not a job requirement.

Prior to May of 1979 sample procurement and analysis was performed at field sites by the SCATA chemists and technicians. In 1979, the scope of sampling analysis increased. For efficiency purposes, the City placed SCATA chemists and technicians in laboratory locations and created the water systems investigator title series. AFSCME water systems investigators were assigned to procure samples at the field sites for analysis at the laboratories and to perform a single analysis at the site. SCATA chemists and technicians continued to perform sampling procurement and analysis at field sites on a non-routine, emergency basis between 1979 and 1987.

In 1983 certain analyses previously performed ad hoc became mandatory under the Michigan Department of Natural Resources permit issued to the City. Department standards required that samples be analyzed either at sites or immediately after procurement. Between 1983 and 1987 the City experienced numerous problems with invalid samples and other aspects of the sampling procedure which often required chemists and technicians to travel to field sites to respond to problems. In order to meet the permit standards, beginning June 1, 1987 the City reassigned SCATA chemists and technicians to the job of procuring samples at field sites and performing the now mandatory analysis at the field site. This assignment required truck driving over an approximate 40 mile area to various sample sites. The new assignment also required SCATA employees to be responsible for basic truck maintenance including checking gas, oil, transmission, coolant, brake fluid, filters, and changing flat tires. The chemists and technicians were given two to three weeks to make arrangements for a valid driver's license, which was made a job requirement.

Following the reassignment, a special conference was held on Tuesday, June 16, 1987 at the request of SCATA. SCATA expressed concern that its members were being coerced to do the work of another bargaining unit. Included in SCATA's list of concerns were the requirement of a valid driver's license, and the additional respons-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ibility of vehicle maintenance. The City responded that the changes effected June 1, 1987 were in accordance with the provisions of the master agreement. It was the City's position that job specifications provided general descriptions of duties but were not so specific as to limit the overlapping which is common in job-related positions. The City also indicated that employees without valid driver's licenses or who were unable to drive would be given sufficient time to meet this requirement.

A special conference was also held on June 16, 1987 with AFSCME representatives. AFSCME raised objections to the transfer of duties previously assigned to AFSCME members. The City's response was that the job duties were within the chemist's job specifications and that management had the right to reassign duties in order to maintain an effective and a productive operation. During the period of 1984-87 five of the ten budgeted AFSCME investigator employees had been transferred at their own request; one investigator was discharged in February of 1987. The remaining four investigators were transferred in June of 1987 to do similar work in other divisions of the department. No AFSCME employee was laid off as a result of the reassignment nor were any budgeted AFSCME investigator positions lost.

On December 2, 1987 a SCATA employee was informed that because her Michigan driver's license had been temporarily suspended she would be placed on an unpaid departmental leave. She was also informed that if she did not return to work with a restored license within 30 calendar days action would be taken to terminate her employment.

*Discussion and Conclusions:*

As indicated above, this case concerns a change in job assignment which resulted in SCATA employees performing tasks previously assigned to AFSCME employees. Both Unions claim that the City had a bargaining obligation prior to making this change. The City maintains that it had a management right to effect the changes in job assignments, and further that there was no significant impact on working conditions in either bargaining unit sufficient to give rise to a bargaining obligation.

*Case No. C87 F-149 (SCATA):*

The record reflects that SCATA employees, whose job duties were previously performed in a laboratory, were given the responsibility to procure and test samples at the field sites. Because this assignment involved driving on a regular basis, the employees were informed that they were required to possess a valid driver's license and were given two to three weeks to obtain a license. In addition, they were informed that they would be expected to perform routine maintenance on the City vehicles they drove.

The Commission has found that the assignment of additional job responsibilities which are within the general scope of an employee's normal job duties does not require prior notice or bargaining. *City of Westland,* 1987 MERC Lab Op 793, *City of Westland,* IMPER 19152, 1988 MERC Lab Op__(Case No. C86 G-173 issued 11-25-88). The assignment of new responsibilities which substantially alter the nature of the job, however, may give rise to an obligation to bargain. Furthermore, the imposition of a new qualification for a particular assignment has been found to constitute a change in working conditions requiring prior bargaining. *City of Ecorse,* 1979 MERC Lab Op 370; *Macomb County Road Commission,* 1979 MERC Lab Op 939.

In the instant case the chemical analysis work performed by SCATA employees was not substantially different from duties performed in the past. However, the conditions under which this work was to be performed were changed. The additional responsibility of performing the work at the field site changed the location of the work,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

made driving and vehicle maintenance a necessary part of the job, and required that the employees maintain a valid driver's license. In line with the cases cited above, I find that these changes were sufficient to give rise to a bargaining obligation. By failing to give notice to SCATA and provide an opportunity for bargaining prior to effectuating these changes I find that the City has violated Section 10(1)(e) of PERA.

*Case No. C87 L-321 (AFSCME):*

AFSCME contends that the City's unilateral removal of the sampling work from its employees and subsequent transfer of this work to SCATA employees constitutes an unfair labor practice. In recent Commission decisions, unless the work in dispute could be demonstrated to be "exclusive" bargaining unit work, it was found that an employer had no duty to bargain over its removal or assignment to non-unit employees. *Grand Rapids Public Schools,* 1986 MERC Lab Op 560; *Richmond Community Schools,* 1986 MERC Lab Op 850; *City of Livonia,* 1986 MERC Lab Op 948. However, in City of Southfield, 162 Mich App 729 (1987), rev'g 1985 MERC Lab Op 1025, the Michigan Court of Appeals rejected the "rule of exclusivity" as having no basis in law. The Court stated that:

The key question . . . is whether the proposed unilateral adjustment to work previously performed by the bargaining unit would impose an adverse impact on unit members . . . the dispositive question is not whether the work was performed exclusively by union employees in the past, but rather whether the Employer's proposed reassignment would be inconsistent with previously established operating practices, would effect a change in conditions of employment, or result in a *significant* impairment of job tenure, employment security or reasonably anticipated work opportunities for those in the bargaining unit. [Emphasis added]

Applying the above standard to the facts of this case, I find that the impact on the AFSCME bargaining unit is *de minimus.* No significant impairment of employment opportunities for AFSCME employees resulted since there was no reduction in the number of budgeted investigator positions and the existing investigators continued to perform similar work although in different divisions. The Employer's reassignment of the work was not inconsistent with previous practice; this type of work is included in SCATA employees' job descriptions, they had previously performed the work and continued to perform the work on an emergency basis. I therefore find that the Employer had no obligation to bargain with AFSCME regarding the reassignment of the on-site sampling work.

**RECOMMENDED ORDER IN CASE NO. C87 F-149**

Based upon the above findings of fact and conclusions of law, the City of Detroit, its officers and agents, are hereby ordered to:

1. Cease and desist from refusing to bargain in good faith by unilaterally changing working conditions without providing SCATA with notice and the opportunity to demand bargaining.

2. Upon demand, bargain with SCATA regarding the driver's license requirement and the assignment of vehicle maintenance duties to SCATA chemists and technicians.

3. Until this bargaining obligation has been met, cease and desist from enforcing a driver's license requirement for chemists and technicians represented by SCATA and make whole any employee disciplined as a result of failure to meet this requirement.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**RECOMMENDED ORDER IN CASE NO. C87 L-321**

It is hereby ordered that the charges be dismissed.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.