UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

              Plaintiff,                            Hon. Sean F. Cox

v.
                                           Case No. 77-71100

City of Detroit, *et al.,*

              Defendants.

_____/

**MOTION BY DETROIT WATER AND SEWERAGE DEPARTMENT
TO REINSTATE CASE AND FOR ENTRY
OF ORDER PURSUANT TO FED. R. CIV. P. 60(b)(6)**

      The Detroit Water and Sewerage Department ("DWSD"), by and through its counsel, moves this Honorable Court for entry of an order clarifying the applicability of this Court's previous Orders to the Detroit retail water and sewer operation that will be established as part of the creation of the Great Lakes Water Authority and the Leases and Memorandums of Understandings that have been entered into thereafter. (*See Exhibit A, Proposed Order*)

      As discussed in the attached Brief in Support, since this Court's March 27, 2013 Opinion and Order Terminating Second Amended Consent Judgment and Closing this Case (D.E. No. 2528), parties to this action entered into a

Memorandum of Understanding (hereafter "MOU")[1] creating a regional water and sewer authority known as the Great Lakes Water Authority (Authority). The Authority will "operate, control, and improve both the Water Supply and Sewage Disposal Systems owned by the City and presently operated by the Detroit Water and Sewerage Department." *(See Exhibit B, Memorandum of Understanding,* p. 1) In the MOU, the City of Detroit (the City) also reserved "the right to continue to operate and retain employees to operate, maintain, repair and improve the local system in Detroit, including capital improvements and repairs, and billing and collection services . . . ." *Id.* at 5.

On June 12, 2015, the City and the Authority approved and executed water and sewer lease agreements (Leases) transferring control of the Systems (except the Detroit local system infrastructure) and assigning all revenues of the Systems to the Authority for an initial term of 40 years subject to the financial terms set forth in the MOU and the Articles of Incorporation, the effectiveness of which remains subject to satisfaction of several conditions precedent. Once those conditions are satisfied, on a date certain the Leases are effective (the "Effective Date").

---

[1]  The parties to the MOU are the City of Detroit, Wayne County, Oakland County, Macomb County, and State of Michigan.

Thus, through the MOU and the lease agreements since executed, the City will continue to provide retail water and sewage services to its individual retail customers. The Parties understand that the Detroit local system must maintain compliance with the Clean Water Act and the NPDES Permit. However, this change to a local retail system has necessitated a need for clarification of this Court's previous Orders in relation to the City's local system. As such, DWSD is seeking entry of the Order attached as *Exhibit A* pursuant to Fed. R. Civ. P. 60(b)(6).

DWSD sent a draft of this Motion, Brief and Proposed Order to counsel for Wayne County, Oakland County and Macomb County, and sought their clients' concurrence in the relief requested. Counsel for Macomb County has indicated its concurrence in the relief requested in the Proposed Order, and Oakland and Wayne Counties have indicated they have no objection to entry of the Proposed Order.

For the reasons stated above and in the accompanying Brief in Support, DWSD respectfully requests that this Court grant its motion and reinstate this matter for the limited purpose of entering the Order attached as *Exhibit A*.

Respectfully submitted,
**DYKEMA GOSSETT PLLC**
By: /s/ *Kathryn J. Humphrey*
Kathryn J. Humphrey (P32351)
Mark D. Jacobs (P41878)
Lauren M. Phillips (P74102)
Attorneys for Detroit Water & Sewerage Dept.
400 Renaissance Center, 37th Floor
Detroit, MI 48243
313-568-6848
khumphrey@dykema.com

Dated: Sept. 23, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

                                      Honorable Sean F. Cox

v.

                                      Case No. 77-71100

City of Detroit, *et al.,*

      Defendants

_____/


**BRIEF IN SUPPORT OF MOTION TO REINSTATE CASE AND FOR
ENTRY OF ORDER PURSUANT TO FED. R. CIV. P. 60(b)(6)**

# CONCISE STATEMENT OF ISSUE PRESENTED

The Detroit Water and Sewerage Department ("DWSD") seeks clarification regarding whether the Detroit retail water and sewer operation is subject to all of this Court's previous orders relating to DWSD's past compliance issues and subsequent restructuring.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 60(b)(6)

*Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367 (1992)

*Heath v. DeCourcy,* 888 F.2d 1105 (6th Cir. 1989)

*Heath v DeCourcy,* 992 F.2d 630 (6th Cir. 1993)

## STATEMENT OF FACTS

### A. Introduction

After thirty-four years of judicial oversight, on March 27, 2013 this Court dismissed this long standing case having been satisfied that the City of Detroit ("the City") and the Detroit Water and Sewerage Department ("DWSD") finally achieved substantial compliance with both the Clean Water Act 33 U.S.C. § 1251 *et. seq.* ("the Clean Water Act") and the requirements of the City's National Pollutant Discharge Elimination System ("NPDES") Permit. Since that time, the City, DWSD, and the regional customer communities have successfully worked together to continue to remain in substantial compliance with the Clean Water Act and the NPDES Permit.

Ultimately, through the continued collaborative efforts of the City, Macomb County, Oakland County, Wayne County and the State of Michigan, the Parties executed a Memorandum of Understanding (MOU) that set forth the framework for the implementation of a new regional water authority (*Exhibit B*). This MOU also provides that the City may continue to operate and maintain its own separate, independent local retail water and sewer systems. *Id.* at p. 1. This point is further clarified within the lease agreements between the GLWA and the City, and the associated water and sewer services agreement. DWSD seeks an Order clarifying

the extent to which this Court's previous Orders in this case should remain applicable to the City in operating a Detroit retail system.

## B. Brief Procedural History

This action was initially instituted by the United States Environmental Protection Agency ("EPA") against the City on May 6, 1977, alleging violations of the Clean Water Act.  (D.E. No. 1)  The case was originally assigned to the Honorable John Feikens.  At that time, the City provided water and sewage disposal services for much of Southeastern Michigan through its water and sewer department, DWSD.

In the years preceding this action, DWSD had fallen into a state of disrepair and incurred multiple, serious violations of the NPDES Permit.  During the course of the litigation, the facts revealed that DWSD continued to struggle with serious regulatory compliance issues including flawed dewatering equipment, dewatering capacity issues, the adequacy and qualifications of staff, and DWSD's inability to timely procure critical replacement and repair parts.  (D.E. No. 2397, pp. 9-11)  As a result of these on-going problems, as well as others too numerous to name here, DWSD could not sustain long-term compliance with federal or state environmental laws despite attempts to implement a number of different remedial plans. Consequently, DWSD remained under federal oversight literally for decades.

DWSD was created, operates, and is managed as a unitary department. (D.E. No. 2397, p. 6)   DWSD is a department of city government, although managed as a separate enterprise fund. *Id.*   As such, DWSD's water and waste water systems were commonly managed and operated under the City's Charter. *Id.*

After many years of judicial oversight by the Honorable John Feikens, this action was assigned to the Honorable Sean F. Cox on November 29, 2010.  (D.E. No. 2323)   At that time, serious environmental compliance issues continued to exist at DWSD.  It was clear from the 30 plus year history of the case that the City could not, without significant intervention by this Court, rectify the internal operational issues that impeded DWSD's ability to achieve compliance with its NPDES Permit and the Clean Water Act.

As a consequence, this Court took action to break the recurring cycle of non-compliance at DWSD through a series of court-ordered conferences and orders aimed at regional reconciliation and compliance with federal and state environmental regulations.  The first step was accomplished through a Stipulated Order entered on February 11, 2011 which created a regional Board of Water Commissioners, which in turn set the tone for other changes at DWSD.[2]  (D.E. No. 2334)

---

[2] Although DWSD, its assets, and the NPDES Permit all belong to the City, the DWSD provided water for almost 4 million people in Southeast Michigan and provided waste water collection, treatment and disposal services for not only Detroit, but also 76 municipal suburban

Specifically, following several months of intense negotiations, on July 8, 2011 the City and the State of Michigan, through its Department of Environmental Quality ("DEQ"), entered into a comprehensive Administrative Consent Order ("the ACO") aimed at finally achieving long-term compliance. After the ACO was executed, and believing that long-term compliance would follow, the City requested that this Court substitute the requirements of the ACO into a Consent Judgment and dismiss the case. (D.E. No. 2365)

On September 9, 2011, this Court denied the City's Motion to Dismiss. (D.E. No. 2397) Citing to the fact that DWSD had violated the terms of the ACO merely a few weeks after its execution, this Court found that more fundamental corrective measures were needed to address DWSD's inability to sustain long-term compliance. Specifically, the Court ordered the creation of a "Root Cause Committee"[3] to propose a plan that would addresses the root causes of non-compliance raised in the Court's Opinion and Order. *Id.* The Court further ruled that if "the local officials fail to devise and propose a workable solution to remedy

---

communities. Prior to the February 11 Order, DWSD operated as a unitary department under the City's Charter provisions. Agreement among the Parties to "regionalize" the Board was a ground breaking event. Through an additional Order entered on April 29, 2011, this Court held that the new board members could only be removed "for cause." (D.E. No. 2349, p. 2)

[3] The court-ordered Committee included the Mayor of the City of Detroit (and/or his designee), the City Council President and President Pro Tem, and one current member of the Board of Water Commissioners. (D.E. No. 2397, p. 44)  The Director of DWSD and the Chief Compliance Officer were later added as members of the Committee.

the underlying causes of the recurrent violations of the Clean Water Act in this case, this Court will order a more intrusive remedy on its own." *Id.* at p. 43.

On or about November 3, 2011, the Root Cause Committee submitted a "Plan of Action" by which the Committee sought this Court to invoke its equitable powers to make changes to establish the operational autonomy necessary for DWSD to operate the water department safely and effectively.  In particular, the Committee concluded that procurement, human resources, law, and finance departments were not designed with the necessary flexibility and responsiveness needed to operate a complex regional public utility such as DWSD.  (D.E. No. 2410)  On November 4, 2011, this Court issued an Order adopting the "Plan of Action" and ordered further changes relating to Collective Bargaining Agreements of DWSD staff. *Id.* at 5-7.  The Court also ordered the "Root Cause Committee" to continue to meet and discuss additional financial issues facing DWSD and to make appropriate recommendations to the Court. *Id.* at 8-10.

Over the next year, the parties and the "Root Cause Committee" continued to work to develop a system that would allow for DWSD to achieve sustained compliance with its NPDES Permit and with the Clean Water Act.  Reports and recommendations were periodically submitted to the Court regarding the progress of those changes ordered by the Court in relation to the operation of DWSD. Orders were eventually issued by this Court on October 5, 2012 and December 14,

2012, addressing a variety of matters designed to provide a clearer and more autonomous operational environment for DWSD to conduct business. (D.E. No. 2489 and 2512 respectively)

On March 27, 2013, this Court issued an Opinion and Order Terminating the Second Amended Consent Judgment and Closing the Case. (D.E. No. 2528) DWSD had finally achieved a period of sustained substantial compliance with the Clean Water Act and its NPDES Permit. This Court noted that a more empowered Board of Water Commissioners had been established, that DWSD now had its own fully functional Human Resources department that was meeting the staffing requirements in the Amended Consent Order, that DWSD had established its own Office of General Counsel, and that DWSD now had new and improved procurement policies.

Based on this progress, this Court concluded that it was appropriate to close this case. In doing so, the Court noted that the Amended Consent Order remained a "sufficient mechanism to ensure sustained compliance with the DWSD's NPDES Permit and the Clean Water Act." (D.E. No. 2528, p. 33) The Court also retained limited jurisdiction for "the purposes of enforcement of its Orders issued on September 9, 2011, November 4, 2011, October 5, 2012, and December 4, 2012." *Id.* at n. 10. As such, the case was removed from the active docket as of March 27, 2013. *Id.*

*C. Post Dismissal History*

Since this matter was dismissed, DWSD continues to operate in substantial compliance with the Clean Water Act and the terms of the NPDES Permit and, for the third consecutive year, has won a National Association of Clean Water Agencies (NACWA) Silver Award for its wastewater operations reflecting its continued progress in compliance.    Additionally, the City has worked collaboratively with Macomb County, Oakland County, and Wayne County as well as the other regional customer communities to assure continued compliance with the Amended Consent Order (hereafter "ACO").

On July 18, 2013, the City filed for bankruptcy protection under Chapter 9 of the U.S. Bankruptcy Code.  As a major asset of the City, the treatment of DWSD was a critical component to the City's Plan of Adjustment.   After the Bankruptcy Court ordered mediation with respect to the establishment of a regional authority to govern the DWSD system, the parties executed the MOU which created the Great Lakes Water Authority ("Authority")[4].  Through this agreement, the Authority would enter into lease agreements with the City to lease DWSD's

---

[4] Prior to the dismissal of this case, the Root Cause Committee had requested that this Court order the creation of such an entity.  At that time, the Court noted that the *creation* of a regional authority was likely beyond its jurisdiction.  (D.E. No. 2528, pp. 27-28)  The Court was also concerned that it was not sufficiently informed of the potential financial ramifications that such an authority would have on the City of Detroit.  *Id.*  As such, the Court declined to order the creation of the regional authority.  *Id.*  However, in doing so, the Court noted that the parties were free to consider the sale or lease of DWSD's assets by the City through other political or legislative processes.  (D.E. No. 2528, pp. 27-28)

wholesale assets for the operation of the Authority.  In turn, the Authority would operate the regional water and sewer systems and make lease payments which would be applied either to local infrastructure improvements or to the City's share of DWSD debt service pursuant to the terms of the MOU.  (*Exhibit B,* at pp. 2-3)

As part of the MOU, the City reserved "the right to continue to operate and retain employees to operate, maintain, repair and improve the local system in Detroit, including capital improvements and repairs, and billing and collection services . . . ."  *Id.* at 5.   This local system would have significantly less responsibility than the current DWSD, but would nonetheless still impact compliance matters related to the Clean Water Act.  As such, DWSD comes before this Court seeking to clarify the extent to which this Court's previous orders apply to the Detroit local system in light of the establishment of the Authority.

Pursuant to the lease agreements between the GLWA and the City, and the accompanying Water and Sewer Services Agreement, the City has acknowledged its intent to operate, maintain, repair and improve the Detroit local systems.

## LEGAL ARGUMENT

**INSOFAR AS SOME OF THIS COURT'S PREVIOUS ORDERS MAY BE INCONSISTENT WITH THE OPERATION OF A DETROIT LOCAL WATER AND SEWER SYSTEM, AND, PURSUANT TO FED. R. CIV. P. 60 AND APPLICABLE FEDERAL CASE LAW, DWSD SUBMITS THAT THE TERMS OF THE ATTACHED PROPOSED ORDER SHOULD BE ENTERED.**

DWSD recognizes the positive impact the Court's prior Orders have had upon DWSD's success in achieving and sustaining long-term compliance. Additionally, the parties understand that the Detroit local system must maintain compliance with the Clean Water Act and the NPDES Permit. However, circumstances have dictated that clarification of this Court's previous Orders is necessary in relation to the extent to which those Orders should remain applicable to the operation of the Detroit local systems.

Indeed, throughout the lengthy history of this case, it was always assumed that some version of DWSD would remain the region's water supply and sewage disposal system authority. It was never contemplated that the City would operate an independent, local water supply and sewage disposal system that was separate and distinct from DWSD. That has changed. Now, a local retail system will be operated by the City while the regional system will be operated by the Authority. Therefore, the attached Order balances the need to retain this Court's Orders that removed barriers to compliance against the need to recognize this new form of operation for the City.

One obvious issue which begs clarification in this instance involves the composition and appointment of member of the Board of Water Commissioners after the Leases become effective and the Board is operating just for the Detroit local system. While DWSD, and soon the Authority, provides wholesale and retail water and sewer services to a large regional customer base, the Detroit local system will serve only the individual retail customers of the City of Detroit.

An inequity would arise if the composition of the Detroit Board of Water Commissioners continued to be subject to the Consent Order entered by this Court on February 11, 2011 which created a more empowered *regional* Board of Water Commissioners. Specifically, the February 11th Order calls for Board representation from counties outside of the service area of the Detroit retail system. The Detroit local system should not be subject to these mandates inasmuch as it shall be operated only in the City and only for the benefit of its individual retail customers. Additionally, this Court's April 29, 2011 Order provided that the members of the regional Board of Water Commissioners could only be removed "for cause." This provision conflicts with the City Charter language that calls for members to serve at the pleasure of the Mayor. Again, to the extent that the City will now operate solely the Detroit local system, it may now be appropriate for the members of the Board of Water Commissioners to return to serving at the pleasure of the Mayor.

DWSD acknowledges that the Proposed Order modifies the Court's previous Orders, and submits that such relief is supported by Fed. R. Civ. P. 60(b)(6). Relief from an order pursuant to Rule 60(b)(6) "is appropriate to accomplish justice in an extraordinary situation." *Johnson v. Unknown Dellatifa,* 357 F.3d 539, 543 (6th Cir. 2004). When the relief requested does not involve the other five clauses of Rule 60(b), the Court has the discretion to consider subsection (6). "A motion made under Rule 60(b)(6) is addressed to the trial court's discretion which is 'especially broad' given the underlying equitable principles involved." *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989). Rule 60(b)(6) should be used "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present. *Id.* at 294. "The decision to grant Rule (60)(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Thompson v. Bell,* 580 F.3d 423, 442 (6th Cir. 2009).

Rule 60(b)(6) supports this Court's ability to modify its previous Orders to address the changes necessitated by the Detroit local system. In deciding this Motion, it is important for the Court to recall that the City is, and has always been, the main party to this action. Every Order entered in the 36-year history of this

case has addressed the City. DWSD, as a unitary department of the City, was always the subject of those Orders because it was the only provider of water supply and sewage disposal systems in the City. Through the entry of the attached Order, DWSD is not seeking to dramatically change the substance of the previous Orders, but merely seeks clarification of the extent to which the Detroit local systems, after the lease agreements become effective, will be governed by and subject to the Orders that were entered in this case.

The relief requested in this Motion is also permitted by this Court's broad equitable authority elaborated in institutional reform cases. Through its equitable powers, this Court has broad authority to modify its Orders as necessary to account for changes in circumstances among the parties. *See Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367 (1992). In *Rufo,* the United States Supreme Court acknowledged that a flexible approach is required in institutional reform cases. In so holding, the Court reasoned:

> The upsurge in institutional reform litigation since *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), has made the ability of a district court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased. See, *e.g., Philadelphia Welfare Rights Organization v. Shapp,* 602 F.2d 1114, 1119–1121 (CA3 1979), cert. denied, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980), in which modification of a consent decree was allowed in light of changes in circumstances that were beyond the defendants' control and were not contemplated by the court or the parties when the decree was entered.

*Rufo,* 502 U.S. at 380-381.[5]

This Court has the ability to modify its Orders upon the showing of a change in circumstances. In *Rufo,* the Court stated that "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the Court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. The *Rufo* Court's analysis is similar to the Sixth Circuit's pre-*Rufo* decision in *Heath v. DeCourcy,* 888 F.2d 1105 (6th Cir. 1989)("*Heath I*"). There, the Sixth Circuit stated: "The court need only identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective, disadvantageous, <u>or because circumstances and conditions have changed which warrant fine-tuning the decree.</u>" *Id.* at 1110 (emphasis added).

This Court's authority to modify its orders was further discussed in *Heath v DeCourcy,* 992 F.2d 630 (6th Cir. 1993)("*Heath II*"). In *Heath II,* the prison officials had moved the district court to modify the terms of the consent decree. The district court, instead, granted the requested modification and terminated the

---

[5] "While we note that *Rufo* and *Heath* involved prison reform, we have found no indication, nor is there any reason to believe, that this type of case has somehow been set apart from other institutional reform litigation." *Lorain NAACP v. Lorain Board of Education,* 979 F.2d 1141, 1148 (6th Cir. 1992)

13

consent decree.  In reversing the district court's decision, the Court of Appeals stated that "[t]he modification must further the purpose of the consent decree, without upsetting the basic agreement between the parties." *Id.* at 634.[6]  The Court then discussed the need to consider the factors set forth in *Rufo, supra*: (1) a significant change in circumstances; (2) that the significant change causes the consent decree to be onerous, unworkable or detrimental to the public interest; and (3) whether the modification is suitably tailored to the changed circumstances.[7] *Heath II,* 992 F.2d at 635.  Because the district court had failed to consider those factors, the matter was remanded for further consideration.

The factors discussed in *Rufo* support modification of this Court's Orders to address the local system.  First, a significant change in circumstances has occurred. DWSD is leasing all of its regional assets to the Authority.  The City will no longer be the operator of the regional water supply and sewage disposal systems.  Instead, the City will be the operator of only the Detroit local systems.

Also, as evidenced by *Exhibit A,* the proposed modifications are suitably and narrowly tailored to the changed circumstances.    Moreover, the relief requested does not modify or change the Court's previous Orders in any way that could

---

[6]  Citing to *Heath I,* 888 F.2d at 1110.

[7]  Another factor, which is not applicable here, considers "if a movant agreed to a consent decree while anticipating changes in conditions that would make its performance onerous, there is a 'heavier burden to show that the movant: (1) agreed to the consent decree in good faith; (2) made a reasonable effort to comply; and (3) should be relieved of its obligations." *Heath II,* 992 F.2d at 635 (citing *Rufo,* 502 U.S. at 381).

jeopardize the substantial compliance that has, and continues to be, accomplished. This situation is distinguishable from cases such as *Lorain NAACP, supra,* which sought to impose additional obligations on a party apart from that which was contained in the original agreement. *Id.* Here, the modifications sought by the parties are suitably and narrowly tailored to the changed circumstances.

## CONCLUSION AND RELIEF REQUESTED

The facts of this case, when applied in the context of Rule 60(b)(6), *Heath,* and *Rufo,* merit entry of the attached order. The Order does not significantly change this Court's previous Orders and continues to emphasize the importance of continued compliance. Therefore, DWSD moves this Court to reinstate this case for the limited purposes of entering the Order attached as *Exhibit A,* or alternatively, DWSD requests that this Court enter an Order incorporating the spirit of the terms set forth in the attached.

Respectfully submitted,

**DYKEMA GOSSETT PLLC**


By: /s/  Kathryn J. Humphrey
Kathryn J. Humphrey (P32351)
Mark D. Jacobs (P41878)
Lauren M. Phillips (P74102)
Attorneys for Detroit Water & Sewerage
Dept.
400 Renaissance Center, 37th Floor
Detroit, MI  48243
313-568-6848
khumphrey@dykema.com

Dated September 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system which will provide notification to all counsel of record.

DYKEMA GOSSETT PLLC

By:   /s/ Kathryn J. Humphrey
      Kathryn J. Humphrey (P32351)
      Attorneys for Detroit Water &
      Sewerage Dept.
      400 Renaissance Center, 37th Floor
      Detroit, MI 48243
      313.568.6848

*1509863*