UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

            Plaintiff,                       Hon. Sean F. Cox

v.

                                          Case No. 77-71100

City of Detroit, *et al.,*

            Defendants.

_____/

**DEFENDANTS THE DETROIT WATER AND SEWERAGE
DEPARTMENT'S AND THE CITY OF DETROIT'S REQUEST FOR
INDICATIVE RULING UNDER RULE 62.1(a)(3) ON THIS
JOINT MOTION FOR RELIEF UNDER RULE 60(b)(6)**

The Detroit Water and Sewerage Department ("DWSD") and the City of

Detroit ("City"), by and through their counsel, respectfully move under Federal

Rule of Civil Procedure 62.1 for an indicative ruling on this joint motion under

Federal Rule of Civil Procedure 60(b)(6) for an order clarifying the applicability of

this Court's previous Orders to the City's retail water and sewer operation that will

be restructured in conjunction with the creation of a regional water and sewer

authority known as the Great Lakes Water Authority (the "Authority").[1]   (*See*

*Exhibit A, Proposed Order.*)

_____

[1] Even though the City's appeal of this Court's March 27, 2013 Opinion and Order
is currently pending before the United States Court of Appeals for the Sixth Circuit
(and thus, the Court lacks the authority to grant the relief requested herein), this

As discussed in the attached Brief in Support, since this Court's March 27, 2013 Opinion and Order Terminating Second Amended Consent Judgment and Closing this Case (D.E. No. 2528), parties to this action entered into a Memorandum of Understanding (hereafter "MOU")[2] creating the Authority.  The Authority will "operate, control, and improve both the Water Supply and Sewage Disposal Systems owned by the City and presently operated by the Detroit Water and Sewerage Department."  (*See Exhibit B, Memorandum of Understanding* at 1.) In the MOU, the City also reserved "the right to continue to operate and retain employees to operate, maintain, repair and improve the local system in Detroit, including capital improvements and repairs, and billing and collection service . . .." *Id.* at 5.

On June 12, 2015, the City and the Authority approved and executed water and sewer lease agreements (the "Leases") transferring control of the Systems (except the Detroit local system infrastructure) and assigning all revenues of the Systems to the Authority for an initial term of 40 years subject to the financial terms set forth in the MOU and the Articles of Incorporation, the effectiveness of which remains subject to satisfaction of several conditions precedent.  Once those conditions are satisfied, on a date certain the Leases are effective.

---

Court does have the authority to provide an indicative ruling on the Motion under Federal Rule of Civil Procedure 62.1(a)(3).

[2]  The signatories to the MOU are chief executives of the City of Detroit, Wayne County, Oakland County, Macomb County, and State of Michigan.

Thus, through the MOU and the Leases since executed, the City will continue to provide retail water and sewage services to its individual retail customers. The parties understand that the City's local system must maintain compliance with the Clean Water Act and the NPDES Permit. However, these changes to the system require this Court to clarify and/or modify its previous Orders in relation to the City's local system, which is why it is appropriate to grant the requested relief. Moreover, granting the requested relief would allow the Court to resolve all motions pending before it, including but not limited to, union-related issues that were the subject of a prior order issued by the United States Court of Appeals for the Sixth Circuit Court of Appeals.

Thus, for the reasons stated above and in the accompanying Brief in Support, the City and DWSD respectfully moves for relief from, or clarification of, the prior Orders under Rule 60(b)(6), but also requests an indicative ruling on their motion under Rule 62.1(a)(3) so that the City may approach the Sixth Circuit and request remand of the matter only to the extent that it would allow this Court to enter the Proposed Order attached as *Exhibit A*.[3]

---

[3] In accordance with L.R. 7.1, DWSD and the City sent a draft of this Motion, Brief and Proposed Order to counsel for Wayne County, Oakland County and Macomb County, and sought their clients' concurrence in the relief requested. Counsel for Macomb County and Oakland County do not object to entry of the Proposed Order. The City also provided copies of this Motion, Brief and Proposed Order to the United States and the State of Michigan prior to filing. The United States stated that it takes no position on this Motion at this time.

Respectfully submitted,

**MILLER CANFIELD PADDOCK AND STONE, P.L.C.**
By: /s/  *Sonal Hope Mithani*
Sonal Hope Mithani (P51984)
Attorneys for the City of Detroit
101 N. Main Street, 7th Floor
Ann Arbor, MI  48104
734-668-7786
mithani@millercanfield.com

**CITY OF DETROIT LAW DEPARTMENT**
By: /s/  *Charles N. Raimi*
Charles N. Raimi (P29746)
Attorneys for the City of Detroit
2 Woodward Avenue, Suite 500
CAYMC
Detroit, MI  48226-3437
raimic@detroitmi.gov

**DYKEMA GOSSETT PLLC**
By: /s/  *Kathryn J. Humphrey*
Kathryn J. Humphrey (P32351)
Mark D. Jacobs (P41878)
Lauren M. Phillips (P74102)
Attorneys for Detroit Water & Sewerage Dept.
400 Renaissance Center, 37th Floor
Detroit, MI  48243
313-568-6848
khumphrey@dykema.com

Dated:  October 12, 2015

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

                                      Honorable Sean F. Cox

v.

                                        Case No. 77-71100

City of Detroit, *et al.,*

      Defendants

_____/

**BRIEF IN SUPPORT OF DEFENDANTS THE DETROIT WATER AND
SEWERAGE DEPARTMENT'S AND THE CITY OF DETROIT'S
REQUEST FOR INDICATIVE RULING UNDER RULE 62.1(a)(3) ON
<u>THEIR JOINT MOTION FOR RELIEF UNDER RULE 60(b)(6)</u>**

## CONCISE STATEMENT OF ISSUE PRESENTED

Should this Court provide the Detroit Water and Sewerage Department ("DWSD") and the City of Detroit (the "City") with an indicative ruling granting their Rule 60(b)(6) motion to clarify the extent to which the Court's previous orders in this matter apply to the anticipated local retail system that the City will operate after the Great Lakes Water Authority commences its operation of a regional water system?

25265652.2\088888-02304

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Federal Rule of Civil Procedure 62.1(a)(3)

Federal Rule of Civil Procedure 60(b)(6)

*Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367 (1992)

*Heath v. DeCourcy,* 888 F.2d 1105 (6th Cir. 1989)

*Heath v DeCourcy,* 992 F.2d 630 (6th Cir. 1993)

*Thompson v. Bell,* 580 F.3d 423 (6th Cir. 2009)

25265652.2\088888-02304

## STATEMENT OF FACTS

### A. Introduction

After thirty-six years of judicial oversight, on March 27, 2013 this Court dismissed this case having been satisfied that the City and DWSD had achieved substantial compliance with both the Clean Water Act 33 U.S.C. § 1251 *et. seq.* ("the Clean Water Act") and the requirements of the City's National Pollutant Discharge Elimination System ("NPDES") Permit.   Since that time, the City, DWSD, and the regional customer communities have successfully worked together to continue to remain in substantial compliance with the Clean Water Act and the NPDES Permit.

Ultimately, through the continued collaborative efforts of the City, Macomb County, Oakland County, Wayne County and the State of Michigan, the parties executed a Memorandum of Understanding ("MOU") that set forth the framework for the implementation of a new regional water authority (*Exhibit B*).   This MOU also provides that the City may continue to operate and maintain its own separate, independent local retail water and sewer systems.   *Id.* at 1.   This point is further clarified within the lease agreements between the Great Lakes Water Authority ("Authority") and the City, and the associated water and sewer services agreement. DWSD and the City seek relief under Rule 60(b)(6) to clarify whether and how aspects of this Court's previous Orders in this case remain applicable to the City in

operating a Detroit retail system. But, out of concern that this Court lacks authority to address the substantial issues raised by their request for relief (due to the City's pending appeal of the Court's March 27, 2013 Order), DWSD and the City ask that this Court provide an indicative ruling on this motion that informs the Sixth Circuit that while the appellate court should retain jurisdiction of the appeal and not dismiss it, a limited remand to address the issues raised in the motion would be appropriate insofar as this Court believes that it would either grant the relief requested in this motion or that this motion raises a substantial issue.

Entry of the Proposed Order will **not** moot the City's appeal, which will still be pending in the Sixth Circuit. Accordingly, the City seeks the relief requested herein without prejudice to its pending appeal. However, the City submits that entry of the Proposed Order will assist the parties in concluding the negotiations and ultimately cause the conditions precedent to the Leases' effectiveness to be satisfied, thereby causing the Leases to become effective. In that event, the City will be prepared to dismiss with prejudice the appeal before the Sixth Circuit on the later of ten business days following the Effective Date of the Leases, or entry of this Order in the form originally proposed and conclusion of all appeals and/or expiration of the appeal period without any appeal having been filed.

25265652.2\088888-02304

## B.  Brief Procedural History

On May 6, 1977, the United States Environmental Protection Agency ("EPA") filed this action against the City, alleging violations of the Clean Water Act.  (D.E. No. 1.)  The case was originally assigned to the Honorable John Feikens.  At that time, the City provided water and sewage disposal services for much of Southeastern Michigan through its water and sewer department, DWSD.  DWSD was created, operates, and is managed as a unitary department.  (D.E. No. 2397 at 6.)  DWSD is a department of city government, although managed as a separate enterprise fund.  *Id.*  As such, DWSD's water and waste water systems were commonly managed and operated under the City's Charter.  *Id.*

In the years preceding this action, DWSD had fallen into a state of disrepair and incurred multiple violations of the NPDES Permit.  During the course of the litigation, the facts revealed that DWSD struggled with regulatory compliance issues including flawed dewatering equipment, dewatering capacity issues, the adequacy and qualifications of staff, and DWSD's inability to timely procure critical replacement and repair parts.  (D.E. No. 2397 at 9-11.)  As a result of these and other problems, DWSD was unable to maintain long-term compliance with federal or state environmental laws and thus, was subject to federal oversight.

This action was assigned to the Honorable Sean F. Cox on November 29, 2010.  (D.E. No. 2323.)  At that time, serious environmental compliance issues

continued to exist at DWSD.  As a result, this Court required a series of court-ordered conferences and issued several orders aimed at regional reconciliation and compliance with federal and state environmental regulations.

Through a Stipulated Order entered on February 11, 2011, the Court created a regional Board of Water Commissioners, which in turn set the tone for other changes at DWSD.[4]  (D.E. No. 2334.)  The City and the State of Michigan also entered into a comprehensive Administrative Consent Order (the "ACO"), with the aim of achieving compliance with the Clean Water Act and the City's NPDES permit.  (D.E. No. 2365-1.) The ACO sets forth a detailed remediation plan for the City.  Because the City was unable to comply with the ACO, the Court also ordered the creation of a "Root Cause Committee"[5] to propose a plan that would addresses the root causes of non-compliance identified by the Court. (D.E. 2397.)

---

[4] Although DWSD, its assets, and the NPDES Permit all belong to the City, the DWSD provided water for almost 4 million people in Southeast Michigan and provided waste water collection, treatment and disposal services for not only Detroit, but also 76 municipal suburban communities.  Prior to the February 11 Order, DWSD operated as a unitary department under the City's Charter provisions.  Agreement among the Parties to "regionalize" the Board was a ground breaking event.  Through an additional Order entered on April 29, 2011, this Court held that the new board members could only be removed "for cause."  (D.E. No. 2349 at 2.)

[5] The court-ordered Committee included the Mayor of the City of Detroit (and/or his designee), the City Council President and President Pro Tem, and one current member of the Board of Water Commissioners.  (D.E. No. 2397 at 44.)  The Director of DWSD and the Chief Compliance Officer were later added as members of the Committee.

4

On or about November 3, 2011, the Root Cause Committee submitted a "Plan of Action" by which the Committee asked this Court to invoke its equitable powers to make the necessary organizational changes at DWSD in order to facilitate the safe and effective operation of the water department.  (D.E. No. 2410.)  On November 4, 2011, this Court issued an Order adopting portions of the "Plan of Action."  It also ordered the "Root Cause Committee" to continue to meet and discuss additional financial issues facing DWSD and to make appropriate recommendations to the Court.  *Id.* at 8-10.

Over the next year, the parties and the "Root Cause Committee" worked to develop a system that would allow DWSD to achieve sustained compliance with its NPDES Permit and the Clean Water Act.  Reports and recommendations were periodically submitted to the Court regarding the progress of its ordered changes to DWSD's operation.  This Court issued additional orders on October 5, 2012 and December 14, 2012, addressing a variety of other matters.  (D.E. No. 2489 and 2512, respectively.)

On March 27, 2013, after the Court concluded that DWSD had substantially complied with the Clean Water Act and its NPDES permit for a sustained period of time, the Court issued an Opinion and Order Terminating the Second Amended Consent Judgment and Closing the Case.  (D.E. No. 2528.)  In doing so, the Court noted that the ACO remained a "sufficient mechanism to ensure sustained

compliance with the DWSD's NPDES Permit and the Clean Water Act." (D.E. No. 2528, p. 33)   The Court retained limited jurisdiction for "the purposes of enforcement of its Orders issued on September 9, 2011, November 4, 2011, October 5, 2012, and December 4, 2012," *id.* at n. 10, but removed the case from the active docket as of March 27, 2013. *Id.*

### C. *Post Dismissal History*

The City appealed this Court's March 27, 2013 Order (and that appeal is still pending).   Since that time, however, the City has worked collaboratively with Macomb County, Oakland County, and Wayne County as well as the other regional customer communities to assure continued compliance the ACO.

On July 18, 2013, the City filed for bankruptcy protection under Chapter 9 of the U.S. Bankruptcy Code.  DWSD was a critical component of the City's Plan of Adjustment.  After the Bankruptcy Court ordered mediation with respect to the establishment of a regional authority to govern the DWSD system, the parties executed the MOU which established a framework for the Great Lakes Water Authority.[6]   The City, along with Macomb, Oakland and Wayne Counties,

---

[6] Prior to the dismissal of this case, the Root Cause Committee had requested that this Court order the creation of such an entity.  At that time, the Court noted that the *creation* of a regional authority was likely beyond its jurisdiction.  (D.E. No. 2528 at 27-28.)  The Court was also concerned that it was not sufficiently informed of the potential financial ramifications that such an authority would have on the City of Detroit.  *Id.*  As such, the Court declined to order the creation of the regional authority.  *Id.*  However, in doing so, the Court noted that the parties were

6

established the authority, after which the Authority and the City negotiated and entered into agreements to lease DWSD's wholesale assets to the Authority.  In turn, the Authority would operate the regional water and sewer systems and make lease payments which would be applied either to local infrastructure improvements or to the City's share of DWSD debt service pursuant to the terms of the MOU. (*Exhibit B* at 2-3.)

As part of the MOU, the City reserved "the right to continue to operate and retain employees to operate, maintain, repair and improve the local system in Detroit, including capital improvements and repairs, and billing and collection services . . . ."  *Id.* at 5.  Under the lease agreements between the City and the Authority, and the accompanying Water and Sewer Services Agreement, the City has acknowledged its intent to continue to operate, maintain, repair and improve the Detroit local systems.  The restructured local system would not serve as wide-ranging a customer base as the current DWSD, but it would still be subject to the compliance requirements of the Clean Water Act, the NPDES permit and the AOC. Thus, the City and DWSD seek relief from the Court's previous orders only insofar as those orders may needed to be modified to reflect the Authority's establishment and the more limited scope of DWSD going forward. Moreover, granting the

---

free to consider the sale or lease of DWSD's assets by the City through other political or legislative processes. *Id.*

requested relief would allow the Court to resolve all motions pending before it, including but not limited to, union-related issues that were the subject of a prior order issued by the Sixth Circuit.

**ARGUMENT**

## I.   THE COURT HAS THE AUTHORITY TO MAKE AN INDICATIVE RULING ON THIS MOTION UNDER RULE 62.1(a)(3).

Because the City has appealed the Court's March 27, 2013 Opinion and Order, this Court lacks jurisdiction to rule on the Rule 60(b)(6) motion.  *See Pittock v Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir. 1993) ("As a general rule, a district court no longer has jurisdiction over an action as soon as a party files a notice of appeal, and at that point the appellate court assumes jurisdiction over the matter.").  *Pickens v. Howes*, 549 F.3d 377, 383 (6th Cir. 2008) (holding that after the appeal of a final order is filed, "the trial court no longer has jurisdiction to grant a Rule 60(b) motion.").  But, under Rule 62.1, this Court may provide *an indicative ruling* on the joint 60(b)(6) motion. *See* Fed. R. Civ. P. 62.1(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and pending, the court may" defer, deny or state that it would grant the motion if the court of appeals remands for that purpose);[7] s*ee also* Fed. R. Civ. P. 62.1 Advisory Committee's Note.

---

[7] The Court may also conclude that the motion raises a substantial issue for review and adjudication. *See* Fed. R. Civ. P. 62.1(a)(3).

8

District courts in the Sixth Circuit readily rely on Rule 62.1 to address motions for relief from a final judgment or order when appeals are pending.  *See*, *e.g.*,  *United States v Ocampo*, Case No. 06-21072-01, 2013 WL 686922 (E.D. Mich. Feb. 26, 2013) (acknowledging that district court has jurisdiction to hear Rule 60(b) motion based on Rule 62.1) (unpublished opinion)[8]; *Estate of Hickman v. Moore*, Case Nos. 3:09-CV-69, 3:09-CV-102, 2011 WL 4860040 (E.D. Tenn. Oct. 13, 2011) (holding that Rule 62.1 "provides the Court with authority to entertain a motion for relief, including for example, a Rule 60(b) motion.") (unpublished opinion); *House of Bryant Publications, LLC v. City of Lake City, Tenn.*, Case No. 3:14-CV-93-TAV-HBG, 2014 WL 5449672 (E.D. Tenn. Oct. 22, 2014)(court stated that under Rule 62.1, it would grant plaintiff's motion for preliminary injunction if the Court of Appeals for the Sixth Circuit remands for that purpose);  *Dugle ex rel. v. Norfolk Southern Railway Company*, Case No. 07-40, 2011 WL 1542060 (E.D. Ky Apr. 21, 2011) (court agreed to consider plaintiff's Rule 60(b)(6) motion under Rule 62.1) (unpublished opinion).  This Court, therefore, can and should address the merits of the joint DWSD/City motion for relief under 60(b)(6).

---

[8] All unpublished cases are attached as *Exhibits C-F*.

## II.   IT IS PROPER FOR THIS COURT TO CLARIFY THE APPLICABILITY OF ITS PRIOR ORDERS IN THIS MATTER BECAUSE THESE EARLIER ORDERS MAY BE INCONSISTENT WITH THE OPERATION OF A LOCAL WATER AND SEWER SYSTEM.

The parties understand that the Detroit local system must comply with the Clean Water Act and the City's NPDES Permit.  But, given the new allocation of responsibilities that will result after the Authority assumes operational responsibility for the regional system, the City and DWSD need further clarification regarding the applicability of the Court's prior orders to the remaining local retail system.  The Proposed Order (attached as *Exhibit A*) reflects some of the clarifications and/or modifications that are necessary and that this Court has the authority and discretion to adopt.

Although the Proposed Order seeks to modify the Court's previous Orders after the fact, such relief is permitted under Federal Rule of Civil Procedure 60(b)(6), which allows relief from an order "to accomplish justice in an extraordinary situation."  *Johnson v. Unknown Dellatifa,* 357 F.3d 539, 543 (6th Cir. 2004).  "A motion made under Rule 60(b)(6) is addressed to the trial court's discretion which is 'especially broad' given the underlying equitable principles involved."  *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989).  "The decision to grant Rule (60)(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the

10

competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Thompson v. Bell,* 580 F.3d 423, 442 (6th Cir. 2009).

In this case, neither the City nor DWSD are seeking to dramatically change the substance of the previous Orders; Rather, they merely seek to clarify the extent to which the Detroit local systems, after the lease agreements become effective, will be governed by and subject to the prior Orders in this case, especially with respect to provisions that may not be appropriate to apply to the local retail system that the City will operate separate from the Authority's regional system.

For example, one issue that should be addressed involves the composition and appointment of members of the Board of Water Commissioners after the agreements are effective and the Board operates only the local retail system. The Court's February 11, 2011 Order established a *regional* Board of Water Commissioners, requiring representation from counties that will now be outside the service area of the Detroit-centric retail system. Requiring ongoing compliance with this requirement would give voice to those who have no stake in the local system, and would be unfair to the City. The Detroit local system, which will only operate in the City and only for the benefit of its individual retail customers, should not be subject to these mandates.

Another area requiring modification is the Court's requirement in its April 29, 2011 Order that members of the regional Board of Water Commissioners can only be removed "for cause." This constraint conflicts with the City Charter, which calls for members to serve at the pleasure of the Mayor, and is different from the MOU, which establishes that the members of the Authority Board will serve at the will of and be removed by the appointing authority. To the extent that the City will now only operate a Detroit local system, it is appropriate for the members of the Board of Water Commissioners to return to serving at the pleasure of the Mayor.

Granting DWSD and the City relief under Rule 60(b)(6) is also appropriate in cases like this, where there is sweeping institutional reform. Through its equitable powers, this Court has the discretion to modify its Orders as necessary to account for changes in circumstances among the parties. *See Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367 (1992). In *Rufo,* the United States Supreme Court acknowledged that a flexible approach is required in institutional reform cases. In so holding, the Court reasoned:

> The upsurge in institutional reform litigation since *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), has made the ability of a district court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased. See, *e.g., Philadelphia Welfare Rights Organization v. Shapp,* 602 F.2d 1114, 1119–1121 (CA3 1979), cert. denied, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980), in which modification of a consent decree was allowed in light of changes in circumstances that

were beyond the defendants' control and were not contemplated by the court or the parties when the decree was entered.

*Rufo,* 502 U.S. at 380-381.[9]

This Court has the ability to modify its Orders upon the showing of a change in circumstances.  In *Rufo,* the Court stated that "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree.  If the moving party meets this standard, the Court should consider whether the proposed modification is suitably tailored to the changed circumstance."  *Id.* at 383.  The *Rufo* Court's analysis is similar to the Sixth Circuit's pre-*Rufo* decision in *Heath v. DeCourcy,* 888 F.2d 1105 (6th Cir. 1989) ("*Heath I*").  There, the Sixth Circuit stated: "The court need only identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective, disadvantageous, <u>or because circumstances and conditions have changed which warrant fine-tuning the decree.</u>**"**  *Id.* at 1110 (emphasis added).

This Court's authority to modify its orders was further discussed in *Heath v DeCourcy,* 992 F.2d 630 (6th Cir. 1993)("*Heath II*").  In *Heath II,* the prison officials had moved the district court to modify the terms of the consent decree.

---

[9]  "While we note that *Rufo* and *Heath* involved prison reform, we have found no indication, nor is there any reason to believe, that this type of case has somehow been set apart from other institutional reform litigation."  *Lorain NAACP v. Lorain Board of Education,* 979 F.2d 1141, 1148 (6th Cir. 1992).

The district court, instead, granted the requested modification and terminated the consent decree.  In reversing the district court's decision, the Court of Appeals stated that "[t]he modification must further the purpose of the consent decree, without upsetting the basic agreement between the parties."  *Id.* at 634.[10]  The Court then discussed the need to consider the factors set forth in *Rufo, supra*: (1) a significant change in circumstances; (2) that the significant change causes the consent decree to be onerous, unworkable or detrimental to the public interest; and (3) whether the modification is suitably tailored to the changed circumstances.[11] *Heath II,* 992 F.2d at 635.  Because the district court had failed to consider those factors, the matter was remanded for further consideration.

The *Rufo* factors encourage this Court to modify its Orders to address the changes caused by the creation of the Authority and the separation of the Detroit local system.  First, a significant change in circumstances has occurred.  DWSD is leasing all of its regional assets to the Authority.  The City will no longer be the operator of the regional water supply and sewage disposal systems.  Instead, the City will be the operator of only the Detroit local systems.   Also, as evidenced by

---

[10]  Citing to *Heath I,* 888 F.2d at 1110.

[11]  Another factor, which is not applicable here, considers "if a movant agreed to a consent decree while anticipating changes in conditions that would make its performance onerous, there is a 'heavier burden to show that the movant: (1) agreed to the consent decree in good faith; (2) made a reasonable effort to comply; and (3) should be relieved of its obligations."  *Heath II,* 992 F.2d at 635 (citing *Rufo,* 502 U.S. at 381).

25265652.2\088888-02304

*Exhibit A,* the proposed modifications are suitably and narrowly tailored to the changed circumstances.   The requested relief does not modify or change the Court's previous Orders in any way that jeopardizes compliance with the Clean Water Act or the NPDES permit.

In short, relief Rule 60(b)(6) is the proper course here because it will ensure that the Court's prior orders are properly tailored to the more streamlined Detroit-based retail system that will operate after the City's lease agreements with the Authority take effect.

<u>**CONCLUSION AND RELIEF REQUESTED**</u>

The facts of this case, when applied in the context of Rule 60(b)(6), *Heath,* and *Rufo,* merit entry of the Proposed Order.   The Order does not significantly change this Court's previous Orders and continues to emphasize the importance of ongoing and sustained compliance.   Therefore, DWSD and the City respectfully request that this Court issue an indicative ruling on their Rule 60(b)(6) motion that (1) grants the relief requested therein, and (2) states that it would enter the attached Proposed Order were the Sixth Circuit to retain jurisdiction over (and not dismiss) the pending appeal, but remand the case for the limited purpose of addressing this motion.   The City further requests that the indicative ruling provide that the City's appeal will not be dismissed immediately following the entry of the Proposed Order but, rather, the City will be obligated to dismiss with prejudice the appeal

15

before the Sixth Circuit on the later of ten business days following the Effective

Date of the Leases, or entry of this Order in the form originally proposed and

conclusion of all appeals and/or expiration of the appeal period without any appeal

having been filed.

        Respectfully submitted,

        **MILLER CANFIELD PADDOCK AND STONE,**
            **P.L.C.**
        By: /s/  *Sonal Hope Mithani*
        Sonal Hope Mithani (P51984)
        Attorneys for the City of Detroit
        101 N. Main Street, 7th Floor
        Ann Arbor, MI  48104
        734-668-7786
        mithani@millercanfield.com

        **CITY OF DETROIT LAW DEPARTMENT**
        By: /s/  *Charles N. Raimi*
        Charles N. Raimi (P29746)
        Attorneys for the City of Detroit
        2 Woodward Avenue, Suite 500
        CAYMC
        Detroit, MI  48226-3437
        raimic@detroitmi.gov

        **DYKEMA GOSSETT PLLC**
        By: /s/  *Kathryn J. Humphrey*
        Kathryn J. Humphrey (P32351)
        Mark D. Jacobs (P41878)
        Lauren M. Phillips (P74102)
        Attorneys for Detroit Water & Sewerage Dept.
        400 Renaissance Center, 37th Floor
        Detroit, MI  48243
        313-568-6848
        khumphrey@dykema.com

October 12, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system which will provide notification to all counsel of record.

<div style="margin-left: 2em;">

MILLER CANFIELD PADDOCK AND STONE, P.L.C.

By:   /s/ Sonal Hope Mithani
      Sonal Hope Mithani (P51984)
      Attorneys for the City of Detroit.
      101 N. Main Street, 7th Floor
      Ann Arbor, Michigan  48104
      734.668.7786

</div>