UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CITY OF DETROIT, ET AL,

    Defendants,

Case No.: 77-71100
Hon. Sean F. Cox

FILED
DEC 14 2015
CLERK'S OFFICE
DETROIT

## STIPULATED ORDER REGARDING LABOR MATTERS

WHEREAS, the Court has presided over the instant litigation, as filed under the Clean Water Act, against the Defendant City of Detroit and its Water and Sewerage Department (DWSD);

WHEREAS, on November 4, 2011, the Court issued an Order which addressed various labor issues (November 4th Order). (Docket No. 2410) These labor issues were derived from a Root Cause Committee that was established on September 9, 2011, and was tasked with identifying the "root causes" of the Defendant's failure to comply with the Clean Water Act and the NPDES permit issued under such act (Docket No 2397);

WHEREAS, several unions that represent DWSD employees sought to intervene in this cause of action, after the Court's November 4th Order. The Court denied the motions to intervene (Docket Nos. 2413, 2422, 2436, 2445);

WHEREAS, the unions Michigan AFSCME Council 25, AFSCME Local 207 and Senior Accountants and Appraisers Association (SAAA) appealed this Court's denial of their motion to intervene. Council 25 voluntarily dismissed its appeal (Docket No. 2531), but AFSCME Local 207 and SAAA received a ruling from the Sixth Circuit Court of Appeals, remanding to the District Court with a limited grant of intervention for these two unions. *U.S. v. City of Detroit*, 712 F.3d 925 (6th Cir 2013) (April 8, 2013) (Docket No. 2531);

WHEREAS this Court granted the request of Michigan AFSCME Council 25 to intervene in this cause of action for the purpose indicated (Docket No. 2565, Nov. 5, 2015). As such, Michigan AFSCME Council 25, AFSCME Local 207 and SAAA are hereinafter defined as "Intervening Unions";

WHEREAS, on March 27, 2013, the District Court ordered this case "closed" (Docket No. 2528, Mar. 27, 2013), yet it retained jurisdiction to enforce certain orders. This occurred shortly before the Sixth Circuit Court's ruling which granted limited intervention, and on May 22, 2013, the City of Detroit filed its own appeal before the Sixth Circuit (Docket No. 2532, May 22, 2013);

WHEREAS, there have been a number of labor disputes which occurred after the Court's November 4th Order. Various unions filed unfair labor practice charges and unit clarification petitions at the Michigan Employment Relations Commission, and filed grievances under the union contract or City Employment Terms as applicable;

WHEREAS, the DWSD unions and DWSD disagreed over the scope of what this Court ordered. Also, many of the Unions' claims have been stayed pursuant to paragraph 13 of the November 4th Order;

WHEREAS, the parties and the Intervening Unions desire to resolve their disputes in lieu of further litigation;

WHEREAS, on October 13, 2015, the bankruptcy Court referred this matter to the Mediator, the Honorable Judge Victoria A. Roberts, in an effort to resolve certain labor disputes between the Intervening Unions and DWSD. At that time the disputes included unfair labor practice charges, unit clarification disputes and grievances that followed the November 4th Order (Case No. 13-53846, *In re City of Detroit*, Docket No. 10227);

WHEREAS the mediating entities reached agreements with the unit clarification issues they had amongst each other, in the Michigan Employment Relations Commission Case No. UC14 F-010, except the issue concerning the Plant Technician and Office Support Specialist titles and the placement of work

3

from the AFSCME union into the IUOE union. This remaining dispute has been addressed by Orders of The Hon. Victoria Roberts on December 8, 2015, and December 10, 2015, in *In re City of Detroit,* Case No. 13-53846 (Docket Nos. 10689 and 10698), which calls for MERC to adjudicate certain disputes of the Intervening Unions and other unions with DWSD on an expedited basis;

WHEREAS, the mediating parties have resolved certain unfair labor practice charges as listed in paragraph 13 of the 2015 Labor Mandates below, and for those not resolved, have agreed upon a mechanism for resolution, as shown in paragraph 13 of the 2015 Labor Mandates below;

WHEREAS, on March 26, 2013, Michigan AFSCME Council 25 and its affiliated Local 2920 executed a union contract, which terminates no earlier than June 30, 2018. This union contract contains a reopener clause, and this year the parties reopened the contract to bargain certain terms. The parties did not reach complete resolution of the terms being bargained during the reopener and, on December 14, 2015, the DWSD implemented certain employment terms on Local 2920, pursuant to Article 54 of that Local's contract. DWSD ultimately implemented these terms at this time, due to the impending deadline being faced by this Court that all labor matters must be resolved by or before December 15, 2015. This Court imposed that deadline because of the existence of another hard

deadline concerning the Great Lakes Water Authority creation and transition process;

Upon receiving the above information from the parties, and the Court being fully advised in the premises, this Court Orders the following:

**I. 2015 Labor Mandates**:

A. The parties shall be governed by the following thirteen "2015 Labor Mandates":

1. DWSD, with the input and advice of any or all involved/affected unions, must establish training or apprentice programs.

2. If the City of Detroit should choose to implement furlough days for its employees in the future, whether DWSD implements them for DWSD employees will be the subject of bargaining with its involved/affected unions.

3. The DWSD shall act on behalf of the City of Detroit to have its own Collective Bargaining Agreements that cover DWSD employees ("DWSD CBAs"). DWSD CBAs shall not include employees of any other City of Detroit departments. No DWSD CBAs will become effective prior to Board of Water Commissioners' approval.

4. DWSD, in its reasonable discretion and consistent with its operational needs and staffing requirements, may allow employees displaced from other City of Detroit departments to bump into DWSD, and exercise their seniority rights in

their union. These employees can displace the least senior employee in a related lower classification requiring similar job skills, provided the employee can perform the duties of the new position as reasonably determined by DWSD. In addition, employees seeking to bump must have the necessary skills, training, education, performance, attendance, expertise, competency, certifications, licensing and ability to perform the job, as determined by DWSD in its reasonable discretion and consistent with its operational needs. Bumping must permit (or not interfere with) DWSD's compliance with applicable state and federal environmental and other laws. Bumps must be done without loss of city-wide seniority.

5. DWSD management must be able to explore all available means and methods to achieve compliance with its National Pollutant Discharge Elimination System Permit ("NPDES") permit and the Clean Water Act. Thus, if DWSD intends to outsource work currently performed by DWSD union-represented employees, the current provisions in existing CBAs will apply. In situations where no CBAs exist as of the date of this Order, DWSD should provide timely notice to the affected unions of its intent to outsource or subcontract. If a union wishes to have an opportunity to perform work for which subcontracting bids are sought, any union may submit a proposal to DWSD's Director on a timely basis, proposing that Unions perform the same work instead of it being outsourced. Contractor and union proposals must be evaluated by the same qualifications and quality

6

standards. The DWSD shall retain the work with the union if the union proposal demonstrates that: (a) members of the collective bargaining unit have the necessary skill, expertise and experience to perform the work; (b) members can perform the work in a manner that permits (or does not interfere with) the DWSD's compliance with state and federal environmental and other applicable laws; (c) the cost of the union proposal is reasonably close to the lowest bid from contractors; and (d) its proposal reasonably addresses the work that needs to be done. Taking these considerations into account, DWSD will make the final decision concerning what competitive proposal[s] to accept.

The parties to this stipulated order must meet by February 1, 2016, to discuss a strategy for insourcing work. Discussions must cover employee job security, operations, economic considerations and DWSD's then current vendor contractual obligations.

Upon request of AFSCME made on or before February 1, 2016, the above provisions will be inserted into that union's CBA.

6.   Working Stewards, Chief Stewards and Union officials may request time off from supervisors for Weingarten representation duties, labor management meetings, special conferences, grievance processing and investigation (up to and including arbitration), and negotiating collective bargaining agreements. In deciding whether to grant or deny requests, supervisors may take into account

DWSD's operational needs and need to comply with applicable state and federal environmental and other laws. Supervisors must be reasonable in granting or denying such requests, and must do so in writing. Excused hours for these purposes will be part of the Union official's paid work day.

7. DWSD CBAs shall include a (2) two year period pertaining to discipline actions.

8. DWSD retains the ability to reduce employee classifications in order to increase workforce flexibility, based on operational needs.

9. DWSD has the right to promote employees, in its reasonable discretion, taking into account skill, knowledge, ability, training, education, seniority, expertise, performance, attendance and discipline history.

10. Past practices on operational issues shall not limit operational changes initiated by management with respect to DWSD CBAs. Although efforts have been made to address past practices, vestiges of past practices may still exist. The Court's intention is that past practices not impede the future operation of DWSD and that intention is expressed in this paragraph.

11. The Court prohibits any CBA from containing provisions which prevent management from exercising reasonable discretion to assign overtime work to employees most capable of performing the necessary work within a classification. DWSD CBAs must provide that management has the reasonable

discretion to assign overtime work to employees most capable of performing the necessary work within a classification, consistent with operational needs.

12.  Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated. It may be the case that current contracts still contain provisions prohibited by this mandate. It may also be the case that past practices – unwritten – are still being engaged in. This paragraph addresses the intention that this Order will override anything to the contrary.

13.  This Court previously enjoined the Wayne County Circuit Court and Michigan Employment Relations Commission ("MERC") from exercising jurisdiction over the changes ordered by the Court. These changes are certain provisions of the November 4, 2011, October 5, 2012, December 14, 2012, and March 27, 2013 Orders, and are referred to as Labor Orders. This injunction is modified as follows:

(a)  Except as provided in this Order, labor claims filed or later filed that challenge actions of DWSD which were ordered or specifically permitted by the Labor Orders, are permanently enjoined unless dismissed with prejudice by the parties.

(b)  Upon execution of this Order, the injunction previously issued is modified to return jurisdiction to Wayne County Circuit Court, MERC and grievance arbitrators for those claims challenging DWSD actions which were neither ordered nor specifically permitted by Labor Orders. These labor claims may proceed whether filed before or after this Order's date.

(c) There are also certain pending claims where the parties disagree as to whether or not DWSD's actions, which were challenged with such claims, were ordered or specifically permitted to be taken by the Labor Orders. For such claims, the tribunal where the matter is pending will decide whether DWSD's actions were ordered by Labor Orders. This shall occur also for claims yet to be filed.

(d) The following labor claims are enjoined or dismissed:

(i) UC-14-F010/C-14-E-060 – Unit clarification petition and related ULP. AFSCME will amend its Charge and Unit Clarification Petition to dismiss all challenges and issues except for the placement of the positions of Plant Technicians and Office Support Specialists.

(ii) Any grievance contesting the removal of work from the bargaining unit pursuant to the DWSD Optimization Plan is withdrawn. This would include a grievance the parties believe was filed in or about March 2014.

(e) The following labor claims may proceed:

(i) UC-14-F010/C-14-E-060 – Unit clarification petition and related ULP. Charge and Unit Clarification petition may proceed with respect to the placement of the positions of Plant Technicians and Office Support Specialists.

(ii) C-13-132 – Individual interference claim.

(iii) C-15-091 – Implementation of CPL requirement.

(iv) C-13-D-069/C-12-L-243/C-12-L-244/C-12-G-133 – Implementation of CET – to be resolved through the bankruptcy proceedings.

(f) Labor claims not addressed in paragraphs (d) and (e) above may proceed, if the tribunal where the claims were filed determines that the claims do not challenge DWSD actions which

10

were ordered or specifically permitted by a Labor Order. Cases which will be determined in the tribunal where they were filed include:

(i) C-15-E-060 – implementation of the Way We Work.

(ii) Charge filed by AFSCME Council 25 on 11-17-15; no number yet.

(iii) Any grievance not addressed in Paragraphs 4 or 5 above. DWSD does not waive any defense to the grievances, including but not limited to, the defense that the grievance is barred and/or waived because it was not included in the bankruptcy proceedings.

(iv) C-15-E-067 – SAAA claim regarding work rules.

(v) C-15-J-134 – SAAA claim regarding implementation of employment conditions.

(vi) C-14-K-136 – UWUA charge regarding reorganization.

B. As outlined in the prior November 4th Order, while DWSD is a unitary department of the City of Detroit, the DWSD Human Resource division may continue its autonomous administrative structure, meaning that the division must report to the Director of DWSD and shall not have any reporting requirements to the similar function of the City of Detroit. Further, DWSD is not bound by Section 6-405 of the City's Charter, which outlines the City Civil Service Commission.

C. These above-quoted Labor Mandates, and the rulings in I.B immediately above, are the entire sum and substance of all labor or union employment rulings which will govern DWSD henceforth, as orders from this Court. These 2015 Labor Mandates and this Order replace the November 4, 2011

11

Order and its attachments, which are prospectively null and void due to their replacement with this Order, yet remain the historical law of the case retroactively. Additionally, those Orders issued from this Court which concern labor or union employment matters at DWSD are hereby null and void prospectively and are replaced by this Order. Those Orders remain the historical law of the case retroactively. This includes but is not limited to: the November 4, 2011 Order and attachments, the August 23, 2012 Order, the October 5, 2012 Order, the December 14, 2012 Order, the January 30, 2013 Order, and the March 27, 2013 Order.

D. Any of the parties to this Stipulation and Order may seek relief from this Court to request modifications of the 2015 Labor Mandates, starting one year after entry of this Order, and for as long as the 2015 Labor Mandates are in effect. This Court will grant modification if there is not a demonstrable need for the continuation of the mandate(s) at issue.

## II. AFSCME Unfair Labor Practice Charge and Unit Clarification:

E. The MERC unfair labor practice charge and unit clarification petition of Michigan AFSCME Council 25, Case No. C14 E-060 and Case No. UC14 F-010, is not entirely resolved. The union representation issue of the positions of Plant Technician and Office Support Specialists has not been resolved. AFSCME and IUOE are disputing over the proper union representation for these two positions. These and certain other disputes are subject to the orders entered by the

Hon. Victoria Roberts on December 8, 2015, and December 10, 2015, in *In re City of Detroit,* Case No. 13-53846 (Docket Nos. 10689 and 10698), which are hereby adopted as orders of this Court.

F.  Any labor contracts which have been executed shall be adjusted to reflect the MERC award in Case Nos. C14 E-060 and UC14 F-010, after a final order is entered.

### III.  Miscellaneous

G.  As stated in the Whereas findings above, the DWSD and AFSCME Local 2920 have had an existing union contract, which was in effect from March 26, 2013 and terminates no earlier than June 30, 2018.  The Court finds that the recent reopening of the Local 2920 contract and implementation of certain terms by the DWSD does not alter the initial execution date, or the term of effectiveness of the contract.  Thus, this current AFSCME Local 2920 union contract did not take "effect" and was not "extended or renewed after March 28, 2013", as pursuant to MCLA § 423.210(5).

**IT IS SO ORDERED.**

_____
Hon. Sean Cox
United States District Court Judge

12/14/15

So Stipulated:

13

_____
Richard Mack
Counsel for AFSCME Council 25
and AFSCME Local 207

Dated: December 14, 2015

_____
William Wolfson
General Counsel, DWSD

Dated: December 14, 2015

_____
Floyd Allen
for Director Designate, DWSD-R

Dated: December 14, 2015

14