UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.

City of Detroit, *et al.*,

    Defendants.

_____/

Sean F. Cox
United States District Court Judge
District Court Case No. 77-71100



FILED
DEC 15 2015
CLERK'S OFFICE
DETROIT

### OPINION & ORDER
### ON JOINT MOTION FOR RELIEF FROM JUDGMENT
### FILED BY THE CITY OF DETROIT AND
### THE DETROIT WATER AND SEWERAGE DEPARTMENT

In 1977, the United States Environmental Protection Agency initiated this case against the City of Detroit ("the City") and the Detroit Water and Sewerage Department ("DWSD"), alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. The violations alleged in this case, which are undisputed, involve the DWSD's wastewater treatment plant and its National Pollutant Discharge Elimination System ("NPDES") permit. Over the years, a number of other agencies and entities were made parties to this case.

This case was originally assigned to the Honorable John Feikens, who presided over this action for decades, during which time he took various actions aimed at allowing the DWSD to achieve compliance with its NPDES permit and the Clean Water Act. This case was reassigned to this Court on November 24, 2010, following Judge Feikens's retirement. At that time, the Michigan Department of Environmental Quality ("MDEQ") was addressing renewed permit violations and attempting to negotiate yet another remedial plan.

1

As set forth more fully in prior opinions and orders (*see, e.g.*, Docket Entry Nos. 2397 & 2528), this Court concluded that the DWSD had not achieved even short-term compliance with its NPDES permit, as it self-reported new violations shortly after signing an Administrative Consent Order. This Court further concluded that the record in this case established that, unless more fundamental corrective measures were taken to address the underlying root causes of non-compliance, the DWSD would remain in a recurring cycle where the DWSD is cited for permit violations, the DWSD and the MDEQ agree to a detailed remedial plan, but the DWSD is unable to follow it and is again cited for the same type of violations. Rather than order a remedy on its own, without input from City leaders, the Court took a somewhat unorthodox approach. This Court created a court-ordered committee ("the Root Cause Committee") to devise and propose a workable plan to address and remedy the underlying root causes of the DWSD's inability to comply with its NPDES permit and the Clean Water Act.

On November 4, 2011, this Court adopted the Root Cause Committee's Plan of Action, and its proposed procurement policy, and ordered its implementation. Thereafter, the DWSD hired its first permanent Director since 2008, who began working on implementing the changes ordered.

Significantly, this Court's November 4, 2011 Order (Docket Entry No. 2410) also included a number of directives that concerned labor issues ("the Court's November 4th Labor Mandates"):

>  Specifically, the Court hereby **ORDERS** that:
> 
> 1. The Director of the DWSD, with the input and advice of union leadership, shall develop a DWSD employee training program, a DWSD employee assessment program, and a DWSD apprenticeship training program.

2.  Any City of Detroit Executive Orders imposing furlough days upon City employees shall not apply to DWSD employees.

3.  The DWSD shall act on behalf of the City of Detroit to have its own CBAs that cover DWSD employees ("DWSD CBAs"). DWSD CBAs shall not include employees of any other City of Detroit departments. The Director of the DWSD shall have final authority to approve CBAs for employees of the DWSD.

4.  The Court hereby strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ("bump") into the DWSD based on seniority. Future DWSD CBAs shall adopt a seniority system for the DWSD that does not provide for transfer rights across City of Detroit Departments (ie., does not provide for "bumping rights" across city departments).

5.  DWSD management must be able to explore all available means and methods to achieve compliance with its NPDES permit and the Clean Water Act. DWSD CBAs shall not prohibit subcontracting or outsourcing and the Court hereby strikes and enjoins any provisions in current CBAs that prohibit the DWSD from subcontracting or outsourcing.

6.  DWSD CBAs shall provide that excused hours from DWSD work for union activities are limited to attending grievance hearings and union negotiations, with prior notification to DWSD management. The Court strikes and enjoins any current CBA provisions to the contrary.

7.  DWSD CBAs shall include a three-year time period pertaining to discipline actions.

8.  The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.

9.  DWSD CBAs shall provide that promotions in the DWSD shall be at the discretion of management and based upon skill, knowledge, and ability, and then taking seniority into account. The Court strikes and enjoins and current CBA provisions to the contrary.

10. Past practices on operational issues shall not limit operational changes initiated by management with respect to DWSD CBAs.

11.    The Court strikes and enjoins any provisions in existing CBAs that prevent DWSD management from assigning overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management. DWSD CBAs shall provide that management has the discretion to assign overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management.

12.    Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated.

13.    The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(Docket Entry No. 2410 at 5-7).

Soon after, three labor unions whose members include employees of the DWSD (Michigan AFSCME Council 25, AFSCME Local 207, and the Senior Accountants and Appraisers Association "SAAA") filed motions seeking to intervene in this action. This Court denied those motions to intervene as untimely. All three of those unions filed interlocutory appeals with the United States Court of Appeals for the Sixth Circuit.

On March 27, 2013, after having entered a number of orders in this action, this Court issued an Opinion and Order Terminating Second Amended Consent Judgment and Closing this Case. Thereafter, the City filed an appeal. At that time, the interlocutory appeals filed by two of the three[1] labor unions who had sought to intervene in this case were still pending in the Sixth Circuit.

---

[1] AFSCME Council 25 dismissed its appeal.

On April 8, 2013, the Sixth Circuit reversed this Court's denial of the motions to intervene filed by AFSCME Local 207 and SAAA. *United States v. City of Detroit*, 712 F.3d 925 (6th Cir. April 8, 2013). It appears from certain language contained in the Opinion that, at that time it was issued, the Panel may not have been aware that this Court had already closed this case. *See, e.g United States v. City of Detroit*, 712 F.3d at 931 (stating that "despite significant progress" the underlying district court case "cannot be expected to end any time soon") and at 932 (stating that "intervention can be limited on a prospective basis" allowing the unions to participate "in new matters" including "participation in shaping future remedial efforts").

In any event, the Sixth Circuit remanded for a limited grant of intervention as to AFSCME Local 207 and SAAA. In that opinion, the majority noted that interested parties "should not be able to join at a late stage and re-litigate issues that they watched from the sidelines." *Id.* at 932. The majority nevertheless reversed and remanded "for a limited grant of intervention." In doing so, the majority stated that "the scope of intervention can be limited on a prospective basis," that the "district court can confine the issues the Unions may raise, limiting intervention to matters that are forum-appropriate" and "[g]iven the district court's greater familiarly with this case and interest in managing its own docket, the district court retains broad discretion in setting the precise scope of intervention." *Id.* at 933. The majority noted, however, that "the core of the Unions' purpose for intervention must be participation in shaping future remedial efforts" and noted that "getting all interested parties to the table promotes an effective and fair solution." *Id.* at 932-33.

This Court intended to hold a status conference with the parties, including the two intervening unions, after issuance of the Mandate. But before the Mandate issued as to the Sixth

Circuit's April 8, 2013 decision,[2] however, the City of Detroit filed a Notice of Appeal in this action. (Docket Entry No. 2532).[3]

After the City filed its Notice of Appeal, the City filed for bankruptcy protection under Chapter 9 of the United States Bankruptcy Code. The City's appeal was held in abeyance pending resolution of the bankruptcy petition pursuant to 11 U.S.C. § 362 of the Bankruptcy Code.

During the City of Detroit's bankruptcy proceedings, the Honorable Steven Rhodes ordered the City and other parties to mediate issues concerning the DWSD and the potential creation of a regional authority to manage the DWSD system. The undersigned was appointed as the mediator of those matters.

In September of 2014, the City and the counties of Macomb, Oakland, Wayne, along with the State of Michigan, executed a Memorandum of Understanding ("MOU") to establish a regional water and sewer/storm water authority to be called the Great Lakes Water Authority (the "GLWA"). The GLWA has since been established and it has entered into a lease agreement with the City pertaining to the regional assets of the DWSD system. The lease agreement has been executed, but will not be effective until certain conditions have been met, by no later than January 1, 2016.

Pursuant to the MOU, the GLWA will operate all regional water and sewer systems and

---

[2]The Mandate issued on May 31, 2013.

[3]The City of Detroit's May 22, 2013 Notice of Appeal indicated that the City is appealing several orders issued in this case, including, but not limited to, the November 4, 2011 Order and the March 27, 2013 Opinion & Order Terminating Second Amended Consent Judgment And Closing This Case.

make lease payments to the City, to be applied to either the City's local infrastructure improvements or the City's share of DWSD debt service. Thus, the GLWA will operate the main assets of the system, such as water-treatment plants and the wastewater treatment plant. The City will only manage and operate the local water and sewer infrastructure in Detroit. The parties anticipate that by January 1, 2016, the GLWA will be fully operational, operating and managing the main assets of the system, and that a new, scaled-down version of the DWSD ("DWSD-R") will be operating only the local infrastructure in Detroit.

Given these changed circumstances, the City and the DWSD asked this Court to entertain a Motion for Relief from Judgment, pursuant to Fed. R. Civ. P. 60(b)(6), so that this Court can clarify the applicability of its previous Orders in this case to the City's new local retail water and sewer operation. Significantly, the relief requested by the City/DWSD included this Court ruling that the November 4, 2011 Order would still apply prospectively. They submitted an initial proposed order that contained the specific relief requested. (*See* Docket Entry No. 2559-2 at 7-8).[4]

Because this Court lacked jurisdiction to grant any relief due to the City's pending appeal in the Sixth Circuit, the City and the DWSD asked this Court to make an indicative ruling under Fed. R. Civ. P. 62.1. This Court issued an order on October 14, 2015, indicating that the case should be remanded to this Court for consideration of the requested relief. (Docket Entry No. 2563).

At roughly this same time, the Honorable Thomas J. Tucker, at this Court's

---

[4] The City/DWSD later filed alternative proposed orders (*see* Docket Entry Nos. 2561-2 and 2566-1).

7

recommendation, appointed the Honorable Victoria Roberts as a judicial mediator for the purpose of facilitative mediation of labor relations matters regarding the DWSD-R/Great Lakes Water Authority. That order was entered in connection with the bankruptcy proceeding. In connection with that mediation, Judge Roberts met with the City/DWSD and with numerous unions, including but not limited to the three unions that are parties to this case (AFSCME Council 25, AFSCME Local 207, and SAAA). (*See* Ex. 1 to this Memorandum Opinion).

On October 30, 2015, the Sixth Circuit issued an Order granting a limited remand so that this Court could consider and rule upon the Joint Motion for Relief.

Thereafter, on November 5, 2015, **this Court issued an Order (Docket Entry No. 2565) that explained the course of events and "ORDER[ED] that, if any party to this case opposes any portion of the relief requested by the City and/or the DWSD in the proposed orders (Docket Entry Nos. 2559-2 & 2561-2), that party shall file a brief of no more than 25 pages no later than November 23, 2015."**[5] (*Id.* at 3). That order expressly noted that SAAA and AFSCME Local 207 are now parties to this case and granted AFSCME Council 25 the right to intervene in this case because the Court concluded that AFSCME Council 25 should also have an opportunity to voice any objections to the relief requested by the City/DWSD and/or to propose alternative relief.

**Thus, mindful of the Sixth Circuit's observation that "getting all interested parties to the table promotes an effective and fair solution," this Court allowed AFSCME Council 25 to intervene, and also expressly gave AFSCME Local 207 and SAAA an opportunity to voice any objections to the relief requested by the City/DWSD and/or to propose alternative**

---

[5]That date was later extended to November 30, 2015, at the request of Judge Roberts.

**relief before any rulings were made by this Court. That is, this Court gave all three[6] unions the opportunity to address the requested relief concerning future remedial efforts.**

Notably, however, the only party that filed any objections to any of the relief requested by the City/DWSD – including the request that the Court rule as to any labor mandates prospectively – was AFSCME. Although this Court expressly gave SAAA the opportunity to address the relief requested by the City/DWSD, SAAA declined to do so. SAAA elected not to file any objections – or anything else for that matter[7] – in this case and chose to "watch from the sidelines."

In the mediation, Judge Roberts spent a tremendous amount of time with the City/DWSD and the various unions whose members include employees of the DWSD, over the course of several weeks. With the patient guidance of Judge Roberts, the City/DWSD and AFSCME Council 25 and AFSCME Local 207 were able to resolve a wide ranges of disputes, including but not limited to disputes over any labor mandates that should apply prospectively in this case.

The City/DWSD and AFSCME Council 25 and AFSCME Local 207 ultimately agreed to a Stipulated Order Regarding Labor Matters which was entered by this Court on December 14, 2015.

In addition, the City/DWSD and AFSCME (both AFSCME Council 25 and AFSCME Local 207) were able to resolve AFSCME's minor stated objections to the order sought by the

---

[6]Although several other unions whose members include employees of the DWSD participated in the mediation conducted by Judge Roberts, only the three unions discussed herein sought to intervene in this case.

[7]SAAA did not make any requests for an alternative order, request an evidentiary hearing, or request any alternative procedure for dealing with the pending motion.

City/DWSD. With no other party having voiced any objection to any of the provisions in the requested order, and the Court having reviewed the proposed order and finding its terms to be necessary and appropriate, this Court issued the Order on December 15, 2015.

Having reviewed that Stipulated Order Regarding Labor Matters, having reviewed all filings by the City/DWSD and AFSCME, and having not heard from any other party in this action as to any modifications of this Court's November 4th Labor Mandates that should be applied prospectively, the Court hereby **ORDERS** the following:

The Court **ORDERS** the following as its 2015 Labor Mandates that shall apply prospectively to the City/DWSD and any labor unions that were not a party to the December 14, 2015 Stipulated Order Regarding Labor Matters:

> 1. DWSD, with the input and advice of any or all involved/affected unions, must establish training or apprentice programs.
>
> 2. If the City of Detroit should choose to implement furlough days for its employees in the future, whether DWSD implements them for DWSD employees will be the subject of bargaining with its involved/affected unions.
>
> 3. The DWSD shall act on behalf of the City of Detroit to have its own Collective Bargaining Agreements that cover DWSD employees ("DWSD CBAs"). DWSD CBAs shall not include employees of any other City of Detroit departments. No DWSD CBAs will become effective prior to Board of Water Commissioners' approval.
>
> 4. DWSD, in its reasonable discretion and consistent with its operational needs and staffing requirements, may allow employees displaced from other City of Detroit departments to bump into DWSD, and exercise their seniority rights in their union. These employees can displace the least senior employee in a related lower classification requiring similar job skills, provided the employee can perform the duties of the new position as reasonably determined by

DWSD. In addition, employees seeking to bump must have the necessary skills, training, education, performance, attendance, expertise, competency, certifications, licensing and ability to perform the job, as determined by DWSD in its reasonable discretion and consistent with its operational needs. Bumping must permit (or not interfere with) DWSD's compliance with applicable state and federal environmental and other laws. Bumps must be done without loss of city-wide seniority.

5. DWSD management must be able to explore all available means and methods to achieve compliance with its National Pollutant Discharge Elimination System Permit ("NPDES") permit and the Clean Water Act. Thus, if DWSD intends to outsource work currently performed by DWSD union-represented employees, the current provisions in existing CBAs will apply. In situations where no CBAs exist as of the date of this Order, DWSD should provide timely notice to the affected unions of its intent to outsource or subcontract. If a union wishes to have an opportunity to perform work for which subcontracting bids are sought, any union may submit a proposal to DWSD's Director on a timely basis, proposing that Unions perform the same work instead of it being outsourced. Contractor and union proposals must be evaluated by the same qualifications and quality standards. The DWSD shall retain the work with the union if the union proposal demonstrates that: (a) members of the collective bargaining unit have the necessary skill, expertise and experience to perform the work; (b) members can perform the work in a manner that permits (or does not interfere with) the DWSD's compliance with state and federal environmental and other applicable laws; (c) the cost of the union proposal is reasonably close to the lowest bid from contractors; and (d) its proposal reasonably addresses the work that needs to be done. Taking these considerations into account, DWSD will make the final decision concerning what competitive proposal[s] to accept.

6. Working Stewards, Chief Stewards and Union officials may request time off from supervisors for Weingarten representation duties, labor management meetings, special conferences, grievance processing and investigation (up to and including arbitration), and negotiating collective bargaining agreements. In deciding whether to grant or deny requests, supervisors may take into account DWSD's operational needs and need to comply with applicable state and federal environmental and other laws. Supervisors must be reasonable in granting or denying such requests, and must do so in

writing. Excused hours for these purposes will be part of the Union official's paid work day.

7.   DWSD CBAs shall include a (2) two year period pertaining to discipline actions.

8.   DWSD retains the ability to reduce employee classifications in order to increase workforce flexibility, based on operational needs.

9.   DWSD has the right to promote employees, in its reasonable discretion, taking into account skill, knowledge, ability, training, education, seniority, expertise, performance, attendance and discipline history.

10.  Past practices on operational issues shall not limit operational changes initiated by management with respect to DWSD CBAs. Although efforts have been made to address past practices, vestiges of past practices may still exist. The Court's intention is that past practices not impede the future operation of DWSD and that intention is expressed in this paragraph.

11.  The Court prohibits any CBA from containing provisions which prevent management from exercising reasonable discretion to assign overtime work to employees most capable of performing the necessary work within a classification. DWSD CBAs must provide that management has the reasonable discretion to assign overtime work to employees most capable of performing the necessary work within a classification, consistent with operational needs.

12.  Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated. It may be the case that current contracts still contain provisions prohibited by this mandate. It may also be the case that past practices – unwritten – are still being engaged in. This paragraph addresses the intention that this Order will override anything to the contrary.

13.  This Court previously enjoined the Wayne County Circuit Court and Michigan Employment Relations Commission ("MERC") from exercising jurisdiction over the changes ordered by the Court. These changes are certain provisions of the November 4, 2011, October 5, 2012, December 14, 2012, and March 27, 2013 Orders, and are referred to as Labor Orders. This injunction is modified as follows:

      (a)    Except as provided in this Order, labor claims filed or later filed that challenge actions of DWSD which were ordered or specifically permitted by the Labor Orders, are permanently enjoined unless dismissed with prejudice by the parties.

      (b)    Upon execution of this Order, the injunction previously issued is modified to return jurisdiction to Wayne County Circuit Court, MERC and grievance arbitrators for those claims challenging DWSD actions which were neither ordered nor specifically permitted by Labor Orders. These labor claims may proceed whether filed before or after this Order's date.

      (c)    There are also certain pending claims where the parties disagree as to whether or not DWSD's actions, which were challenged with such claims, were ordered or specifically permitted to be taken by the Labor Orders. For such claims, the tribunal where the matter is pending will decide whether DWSD's actions were ordered by Labor Orders. This shall occur also for claims yet to be filed.

**IT IS FURTHER ORDERED** that while DWSD is a unitary department of the City of Detroit, the DWSD Human Resource division may continue its autonomous administrative structure, meaning that the division must report to the Director of DWSD and shall not have any reporting requirements to the similar function of the City of Detroit. Further, DWSD is not bound by Section 6-405 of the City's Charter, which outlines the City Civil Service Commission.

**IT IS FURTHER ORDERED** that these above-quoted Labor Mandates and above rulings are the entire sum and substance of all labor or union employment rulings which will govern DWSD henceforth, as orders from this Court. These 2015 Labor Mandates and this Opinion and Order replace the November 4, 2011 Order and its attachments, which are

prospectively null and void due to their replacement with this Order, yet remain the historical law of the case retroactively. Additionally, those Orders issued from this Court which concern labor or union employment matters at DWSD are hereby null and void prospectively and are replaced by this Order. Those Orders remain the historical law of the case retroactively. This includes but is not limited to: the November 4, 2011 Order and attachments, the August 23, 2012 Order, the October 5, 2012 Order, the December 14, 2012 Order, the January 30, 2013 Order, and the March 27, 2013 Order.

**IT IS FURTHER ORDERED** that any party to this litigation may seek relief from this Court to request modifications of the 2015 Labor Mandates, starting one year after entry of this Order, and for as long as the 2015 Labor Mandates are in effect. This Court will grant modification if there is not a demonstrable need for the continuation of the mandate(s) at issue.

**IT IS FINALLY ORDERED**, that, with the entry of the December 14, 2015 Stipulated Order Regarding Labor Mandates, and the December 15, 2015 Order, and the issuance of this Opinion & Order, this Court has resolved the pending motion. The Court directs the City, pursuant to Docket Entry No. 2564, to advise the Sixth Circuit that this Court has decided the motion.

_____
Sean F. Cox
United States District Judge

Dated: December 15, 2015

14