UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v

City of Detroit, *et al.*,

    Defendants.
_____/

No. 2:77-cv-71100

HON. SEAN F. COX

# STATE OF MICHIGAN'S BRIEF SUPPORTING THE CITY OF DETROIT'S RULE 60(B)(6) MOTION FOR RELIEF

Bill Schuette
Attorney General

Jaclyn Shoshana Levine
(P58938)
Assistant Attorney General
Attorneys for Defendant State of Michigan
Environment, Natural Resources and Agriculture Division
P.O. Box 30755
Lansing, Michigan  48909
(517) 373-7540
LevineJ2@michigan.gov

Dated:  May 17, 2017

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents .................................................................................................. i

Index of Authorities .............................................................................................. ii

Concise Statement of Issues Presented ............................................................... iv

Controlling or Most Appropriate Authority ........................................................ iv

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 3

I.   This Court should re-open this case for the limited purpose of ruling on whether federal law and the court's prior orders require DWSD's drainage fee ........................................................ 3

    A.   The potential outcomes in the pending state court actions present extraordinary circumstances ....................... 4

    B.   This litigation was resolved based on the court's equitable powers and the principles of equity mandate the requested relief .................................................................. 8

    C.   DWSD has brought this motion within a reasonable amount of time ............................................................................. 10

Conclusion and Relief Requested ....................................................................... 11

# INDEX OF AUTHORITIES

Page

**Cases**

*Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund,*
249 F.3d 519 (6th Cir. 2001) .................................................................................. 4

*City of Detroit, By & Through Detroit Water & Sewerage Dep't v. State of Mich., Michigan Dep't of Transp., Wayne Cty.,*
803 F.2d 1411 (6th Cir. 1986) ................................................................................ 5

*Hopper v. Euclid Manor Nursing Home, Inc.,*
867 F.2d 291 (6th Cir. 1989) .................................................................................. 4

*Olle v. Henry & Wright Corp.,*
910 F.2d 357 (6th Cir. 1990) ............................................................................. 4, 9

**Statutes**

33 U.S.C. § 1251 .......................................................................................................... 1

**Rules**

Fed. R. Civ. P. 60(b) .................................................................................................... 3

Fed. R. Civ. P. 60(b)(6) ....................................................................................... passim

Fed. R. Civ. P. 60(c)(1) ............................................................................................... 4

**Regulations**

40 C.F.R. § 35.2140 ................................................................................................ 2, 5

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 .............................................................................................. 1

## Other Authorities

59 Fed. Reg. No. 75, 18689 (April 19, 1994) ............................................. 5

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Should this Court re-open this case for the limited purpose of ruling on whether federal law and its prior orders require the City of Detroit to charge its drainage fee?

    City of Detroit through its Water and Sewerage Department answers: Yes.

    State of Michigan through its Department of Environmental Quality answers: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:

Fed. R. Civ. P. 60(b)(6).

iv

# INTRODUCTION

The City of Detroit and its Water and Sewerage Department (DWSD) move this Court for entry of an order granting post-judgment relief pursuant to Fed. R. Civ. P. 60(b)(6). DWSD asks this Court to re-open this case to rule that the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1251 *et seq.*, and this Court's prior orders require it to charge a drainage fee for infiltration and inflow to its combined sewer system, i.e., the stormwater that mixes with sanitary sewage and industrial waste in the combined sewer system prior to treatment and discharge. DWSD points to this Court's December 15, 2015, order clarifying the Board of Water Commissioner's authority over retail operations as a recent example of an order addressing the drainage fee and its ongoing compliance with environmental laws. (D.E. # 2572.)

DWSD seeks this ruling to preempt claims in two cases filed in state courts (and future state cases) asserting that the drainage fee violates state law. *See* Supremacy Clause, U.S. Const. art. VI, cl. 2. DWSD claims that if the state court plaintiffs prevail, it would be forced to violate federal regulations that require it to implement a user charge

1

system to pay for operating and maintaining the infrastructure it constructed with federal funding. *See* 40 C.F.R. § 35.2140 (user charge system). Detroit also asserts that without the drainage fee, it would ultimately be forced out of compliance with this Court's orders, the Clean Water Act, and its National Pollutant Discharge Elimination System (NPDES) permit because it has no alternative method consistent with both state and federal law to raise adequate funds to operate and maintain its system.

For the reasons explained below, the State of Michigan, through its Department of Environmental Quality (DEQ), respectfully requests that the court grant this motion to re-open the case to issue the ruling that DWSD seeks. If the court grants this motion and determines that briefing would be beneficial, DEQ asks that the court's order provide for notice to the parties to the state court actions and a briefing schedule for all parties that wish to address the issue.

# ARGUMENT

**I.     This Court should re-open this case for the limited purpose of ruling on whether federal law and the court's prior orders require DWSD's drainage fee.**

This Court's March 27, 2013, order terminated the second consent judgment and closed the case, constituting a final order in the case. (D.E. # 2528.)  Fed. R. Civ. P. (Rule) 60(b) lists five grounds on which a party may seek relief "from a final judgment, order, or proceeding[.]"  In brief summary, those five grounds are:  (1) mistake, (2) newly discovered evidence, (3) fraud, misrepresentation, or misconduct, (4) void judgment, (5) the judgment has been satisfied, released or discharged, the basis for the judgment has been vacated, or it is no longer equitable to apply.  The grounds that DWSD cites for re-opening this case – the potential for state court rulings that conflict with or undermine its ability to meet its federal law obligations – is not among those five grounds for relief.  However, Rule 60(b)(6) additionally provides a catch-all provision, saying that relief may be granted for "any other reason that justifies relief."

3

Rule 60(b)(6) is interpreted to apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Whether to grant a motion under Rule 60(b)(6) is entrusted to a district court's discretion. *See Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (reviewing decision on motion for abuse of discretion). The Sixth Circuit has explained that a motion under Rule 60(b)(6) should be granted where "principles of equity *mandate* relief." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (emphasis in original). Further, a motion under Rule 60(b)(6) must be made within a reasonable amount of time. Fed. R. Civ. P. 60(c)(1).

### A. The potential outcomes in the pending state court actions present extraordinary circumstances.

DEQ is hesitant to re-open this lengthy federal litigation on any regular basis, or for issues that may be better addressed in a separate action with a less complicated history. In other circumstances it may not support a motion to re-open this case. But implementing a user charge system for stormwater was central to this litigation from its

4

earliest years. *See City of Detroit, By & Through Detroit Water & Sewerage Dep't v. State of Mich., Michigan Dep't of Transp., Wayne Cty.*, 803 F.2d 1411, 1412-14 (6th Cir. 1986) (citing consent judgment and orders concerning user charges in case seeking to require payment by parties that discharged stormwater to combined sewer system). As DWSD argues, the regulations under the Clean Water Act in place today continue to require it to have a user charge system with specific features to operate and maintain infrastructure it constructed with federal construction grants. *See* 40 C.F.R. § 35.2140.

More importantly, the drainage fee is an important component of DWSD's ability to meet its legal obligations to correct existing combined sewer overflows (CSO) and prevent future overflows. As the Environmental Protection Agency explained when it adopted its Combined Sewer Overflow Policy, CSOs can cause water quality exceedances that "may pose risks to human health, threaten aquatic life and its habitat, and impair the use and enjoyment of the Nation's waterways." *See* 59 Fed. Reg. No. 75, 18689 (April 19, 1994). Thus, operating and maintaining a combined sewer system in compliance with the Clean Water Act and an NPDES permit is not an abstract

5

regulatory task, but an obligation that is essential to protecting public health and the environment.

DWSD's current NPDES permit requires it to correct existing overflows from its combined sewer system and to prevent future overflows. (Ex. A, Current NPDES Permit, Sec. 1.A.15.d, pp. 35-43.) DWSD and its co-permittee, the Great Lakes Water Authority (GLWA), have also recently filed an application seeking to renew the NPDES permit, which will continue to address its CSO obligations. (Ex. B, Cover Letter to NPDES Permit Renewal Application.) Whether DWSD has the financial means to fulfill its legal obligations concerning CSOs is important both to compliance under the existing NPDES permit and to developing the new NPDES permit, including terms that may require capital improvements to the combined sewer system.

DWSD's suggestion that it has limited ability to raise revenue if the state courts declare the drainage fee an unlawful tax are troubling. While DWSD may save its drainage fee in the state court challenges, an adverse decision in those actions have the potential to undermine the on-the-ground progress DWSD (and GLWA) have made toward

6

protecting public health and the environment from CSOs under its NPDES permits.

Further, DWSD has argued in the state court actions that the Clean Water Act and this Court's orders require the drainage fee and preempt state law.  (Ex. C, *Warehousing* City of Detroit Brief (excerpt), pp. 17-20.)  Those arguments ask the state court to rule on the meaning of the Clean Water Act and this Court's orders, leaving the potential for conflicting state vs. federal interpretations concerning the drainage fee and preemption.  (Ex. D, *Warehousing* Plaintiff's Brief (excerpt), pp. 19-21; *Binns* First Amended Complaint, ¶ 24, PageID.27474.)  At a minimum, the lengthy and complex history of this case puts this Court in the better position to explain DWSD's obligations concerning the drainage fee under the Clean Water Act and court orders and their preemptive effect.

As this Court explained when denying DWSD authority to resolve conflicting interpretations of its orders, "the parties should seek clarification from this Court" when it is uncertain what its orders require.  (D.E. # 2489, p. 20 (emphasis added).)  This motion asks the court to do precisely that – re-open the case for the limited purpose of

clarifying whether its prior orders interpreting and applying the Clean Water Act require DWSD to charge this drainage fee. Obtaining that ruling now can only prevent the harm that would occur if a state court decided that state law bars DWSD from charging the drainage fee.

Taken as a whole, DWSD's motion argues that a state court decision poses the risk of: (1) partially defunding the operation and maintenance of the combined sewer system, including capital improvements necessary to correct overflows, and/or (2) conflicting with requirements under the Clean Water Act or this Court's orders. DEQ agrees that those potential outcomes constitute extraordinary circumstances that merit relief under Rule 60(b)(6) because of their potential to impact public health and the environment.

### B. This litigation was resolved based on the court's equitable powers and the principles of equity mandate the requested relief.

In 2011, this Court exercised its "broad equitable power to order any relief necessary to achieve compliance with the Clean Water Act" when it ordered the parties to find the root causes of the problems at DWSD and to make recommendations on how to empower DWSD to meet its federal law obligations. (D.E. # 2397, p. 3.) This approach to

8

resolving this case was likely to "override," i.e., preempt, state and local law in some respects. (D.E. # 2397, p. 3.) Nevertheless, the court exercised its equitable powers to require DWSD to make changes to achieve compliance with the Clean Water Act and its NPDES permit as a precursor to closing the case. (D.E. # 2528, pp. 2-3, 31.)

The potential that the state courts will hold that the drainage fee is unlawful under state law threatens the compliance goals this Court set when it exercised its equitable powers in 2011. These circumstances mandate equitable relief in the form of a clarifying ruling. *See, generally, Olle*, 910 F.2d at 365 (Rule 60(b)(6) motion should be granted where equitable relief mandated). Granting this motion is also consistent with the relief granted to DWSD in 2015 under Rule 60(b)(6) when the court re-opened the case briefly to clarify how DWSD would comply with the court's orders once GLWA assumed operating large portions of its system. (D.E. # 2572.) Thus, the court should re-open the case to address DWSD's obligation to impose the drainage fee under the Clean Water Act and this Court's orders. That is a limited task that could prevent the potential harm from a conflict with state court rulings, but without requiring the court to decide state law questions.

9

### C. DWSD has brought this motion within a reasonable amount of time.

The *Warehousing* case was filed in 2015 and the *Binns* case was filed in 2017. As far as DEQ is able to tell, DWSD has brought this motion within a reasonable amount of time after identifying the potential for the state court actions to render a decision adverse to the drainage fee. In any event, DWSD has not waited so long that it would make moot any attempt by this Court to clarify DWSD's federal law obligations and obligations under its orders. Thus, this motion is timely.

## CONCLUSION AND RELIEF REQUESTED

DEQ respectfully asks this Court to enter an order that grants Detroit's motion to re-open the case for the limited purpose of clarifying whether the Clean Water Act and this Court's orders require the drainage fee. Rule 60(b)(6) permits a court to grant post-judgment relief based on "just terms." Thus, if the court grants this motion, DEQ also asks that the court's order provide notice to the parties to the state court actions and a briefing schedule for all interested parties that wish to address the substance of this drainage fee issue.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/ Jaclyn Shoshana Levine*
Jaclyn Shoshana Levine (P58938)
Assistant Attorney General
Attorneys for Defendant State of Michigan
Environment, Natural Resources and Agriculture Division
P.O. Box 30755
Lansing, Michigan  48909
(517) 373-7540
LevineJ2@michigan.gov

Dated:  May 17, 2017

## *<u>CERTIFICATE OF SERVICE</u>*

I hereby certify that on May 17, 2017, I caused to be electronically filed the foregoing document with the clerk of the court using the CM/ECF system, which will provide notification to all counsel of record currently registered in this case.

On this same day, I sent by first class mail a copy of the foregoing document to:

1. Hon. Sean F. Cox, Theodore Levin US Courthouse, 231 W. Lafayette Blvd., Room 867, Detroit, MI 48226 (Judge's copy);

2. Charles Lowe, Jr., Lowe & Lewandowski, PC, 905 W. Ann Arbor Trail, Plymouth, MI 48170;

3. George E. Constance, Warren City Attorney's Office, 29500 Van Dyke Avenue, Warren, MI 48093;

4. John D. Staran, Hafeli Staran & Christ, PC, 2055 Orchard Lake Road, Sylvan lake, MI 48320-1746;

5. John H. Fildew, Fildew Hinks, PLLC, 26622 Woodward Avenue, Suite 225, Royal Oak, MI 48067-0976;

6. Joseph W. Colaianne, Oakland County Corporation Counsel, 1200 N. Telegraph Road, Suite 419, Bldg. 14E, Pontiac, MI 48341-0419;

7. Mark D. Jacobs, Dykema Gossett, PLLC, 400 Renaissance Center, Detroit, MI 48243-1502;

8. Robert C. Walter, Detroit City Law Department, 660 Woodward Avenue, Suite 1650, Detroit, MI 48226-3491; and

9. Robert J. Hribar, 16931 19 Mile Road, Mount Clemens, MI 48044.

>Respectfully submitted,
>
>Bill Schuette
>Attorney General
>
>*/s/ Jaclyn Shoshana Levine*
>Jaclyn Shoshana Levine (P58938)
>Assistant Attorney General
>Attorneys for Defendant State of Michigan
>Environment, Natural Resources and Agriculture Division
>P.O. Box 30755
>Lansing, Michigan  48909
>(517) 373-7540
>LevineJ2@michigan.gov

Dated:  May 17, 2017

LF:  Detroit, City of (DWSD)/#1989-001860-A-L/Brief – response to motion to reopen case 2017-5-17

13